UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THERESA PITMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION, PETER SALZMANN, PAMELA YANCHIK CONNEALY, and RODERICK WONG,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Theresa Pitman ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Immunovant, Inc. f/k/a Health Sciences Acquisitions Corporation ("HSAC", "Immunovant", or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Immunovant securities between October 2, 2019 and February 1, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Immunovant is a clinical-stage biopharmaceutical company that develops monoclonal antibodies for the treatment of autoimmune diseases.  The Company is developing IMVT-1401, a novel fully human monoclonal antibody, which is in Phase IIa clinical trials for the treatment of myasthenia gravis ("MG") and thyroid eye disease ("TED"), also known as Graves' ophthalmopathy.  The Company has also completed initiation of Phase II clinical trials of IMVT-1401 for the treatment of warm autoimmune hemolytic anemia ("WAIHA").

3.     On September 29, 2019, HSAC, then a blank check company,[1] also known as a special purpose acquisition company ("SPAC"), entered into an agreement with Immunovant Sciences Ltd. ("Legacy Immunovant"), a private biopharmaceutical company, and shareholders of Legacy Immunovant, to effect a merger between the two entities (the "Merger").  As a result of the Merger, HSAC acquired all of the issued and outstanding shares of Legacy Immunovant, and Legacy Immunovant became a wholly owned subsidiary of HSAC.  Upon the closing of the Merger, HSAC changed its name to "Immunovant, Inc."

---

[1] A blank check company is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

2

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HSAC had performed inadequate due diligence into Legacy Immunovant prior to the Merger, and/or ignored or failed to disclose safety issues associated with IMVT-1401; (ii) IMVT-1401 was less safe than the Company had led investors to believe, particularly with respect to treating TED and WAIHA; (iii) the foregoing foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On February 2, 2021, Immunovant issued a press release "announc[ing] a voluntary pause of dosing in its ongoing clinical trials for IMVT-1401."  Immunovant disclosed that it "has become aware of a physiological signal consisting of elevated total cholesterol and LDL [low-density lipoproteins] levels in IMVT-1401-treated patients" and "[o]ut of an abundance of caution, the Company has decided to voluntarily pause dosing in ongoing clinical studies in both TED and in [WAIHA], in order to inform patients, investigators, and regulators as well as to modify the monitoring program."

6.      On this news, Immunovant's stock price fell $18.22 per share, or 42.08%, to close at $25.08 per share on February 2, 2021.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to Immunovant's most recent annual report on Form 10-K, as of June 29, 2020, there were 81,811,727 shares of the Company's common stock outstanding.  Immunovant's common stock trades on the Nasdaq Stock Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Immunovant's common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Immunovant securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Immunovant is a Delaware corporation with principal executive offices located at 320 West 37th Street, New York, New York 10018.  The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "IMVT."  Prior to the Merger, the Company (*i.e.*, HSAC) was a Delaware corporation with principal executive offices located at 412 West 15th Street, Floor 9, New York, New York 10011, and its securities traded on the NASDAQ under the ticker symbols "HSACU," "HSAC," and "HSACW."

14.     Defendant Peter Salzmann, M.D. ("Salzmann") has served as the Company's Chief Executive Officer ("CEO") at all relevant times following the Merger.

15.     Defendant Pamela Yanchik Connealy ("Connealy") has served as the Company's Chief Financial Officer at all relevant times following the Merger.

16.     Defendant Roderick Wong, M.D. ("Wong") served as the Company's President and CEO at all relevant times prior to the Merger.

17.     Defendants Salzmann, Connealy, and Wong are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Immunovant's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Immunovant's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Immunovant, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were

then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.     Immunovant and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Immunovant is a clinical-stage biopharmaceutical company that develops monoclonal antibodies for the treatment of autoimmune diseases.  The Company is developing IMVT-1401, a novel fully human monoclonal antibody, which is in Phase IIa clinical trials for the treatment of MG and TED, also known as Graves' ophthalmopathy.  The Company has also completed initiation of Phase II clinical trials of IMVT-1401 for the treatment of WAIHA.

21.     On September 29, 2019, HSAC, then a blank check company, or SPAC, entered into an agreement with Legacy Immunovant, a private biopharmaceutical company, and shareholders of Legacy Immunovant, to effect a merger between the two entities.  As a result of the Merger, HSAC acquired all of the issued and outstanding shares of Legacy Immunovant, and Legacy Immunovant became a wholly owned subsidiary of HSAC.  Upon the closing of the Merger, HSAC changed its name to "Immunovant, Inc."

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on October 2, 2019, when HSAC and Legacy Immunovant issued a press release announcing the Merger (the "October 2019 Press Release").  That press release touted the prospects of IMVT-1401, stating, in relevant part, that IMVT-1401 "is the result of a multi-year research program . . . to engineer a highly potent anti-FcRn antibody specifically optimized for subcutaneous injection with a small gauge needle"; that "IMVT-1401 is currently

being tested in a Phase 2a trial for Graves' ophthalmopathy (potentially a first-in-class anti-FcRn), with top-line data expected by Q1 2020"; and that "[Legacy] Immunovant also plans to file an IND [investigational new drug application] for . . . [WAIHA], later this year."

23.     The October 2019 Press Release also quoted Defendant Wong, who touted the Merger and IMVT-1401's commercial prospects, stating, in relevant part, that HSAC is "thrilled to have the opportunity to partner with the team at [Legacy] Immunovant" and "believe[s] IMVT-1401 is a uniquely compelling asset within the FcRn drug class, which [HSAC] expect[s] will become a cornerstone therapy for treating many auto-antibody driven diseases."

24.     Additionally, the October 2019 Press Release quoted Defendant Salzmann, who likewise highlighted the purported commercial prospects of both the Merger and IMVT-1401, stating, in relevant part, that he was "proud of the many milestones delivered by the [Legacy] Immunovant team this year, including . . . initiation of a broad Phase 2 program with both first-in-class and best-in-class potential in multiple diseases with high unmet patient need"; that Defendants "believe the potency of IMVT-1401 and the ability to administer IMVT-1401 as a simple subcutaneous injection represent important potentially differentiating features of this product candidate"; and that "[t]oday's financing transaction will allow [Defendants] to continue to pursue [their] vision of enabling normal lives for patients with autoimmune diseases."

25.     On March 30, 2020, post-Merger, Immunovant issued a press release announcing initial results from the treatment phase of its ongoing the ASCEND GO-1 trial—a Phase 2a study of IMVT-1401 in patients with TED (the "March 2020 Press Release").  That press release made positive statements regarding IMVT-1401's safety observed in the ASCEND GO-1 trial, stating, in relevant part, that "IMVT-1401 was safe and generally well-tolerated with no serious adverse events (SAEs), no withdrawals due to adverse events (AEs), and no headaches"; that "[t]he safety

and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers"; and that "[a]ll AEs were mild or moderate."

26.     The March 2020 Press Release also quoted Defendant Salzmann, who represented, in relevant part, that the ASCEND GO-1 trial's "results provide an early proof-of-concept of the potential for IMVT-1401 to ultimately become a safe and effective treatment for patients suffering from [TED]."

27.     Additionally, the March 2020 Press Release quoted the ASCEND GO-1 trial's principal investigator, who likewise touted IMVT-1401's safety profile, stating, in relevant part, that he was "encouraged by IMVT-1401's early results showing promising efficacy and safety with a subcutaneous route of administration," and that "[e]ven in this small study population, the response across multiple measures is notable."

28.     On June 29, 2020, Immunovant issued a press release reporting the Company's financial and operating results for the quarter and year ended March 31, 2020.  That press release reiterated IMVT-1401's safety results highlighted in the March 2020 Press Release, as well as additional data, all of which purportedly supported the overall safety and tolerability of IMVT-1401.  Specifically, that press release stated, in relevant part, that the "positive clinical results from ASCEND GO-1 . . . reaffirmed IMVT-1401's prior safety and pharmacodynamic findings . . . for patients with TED," while noting "two recent successful studies for other drug candidates with the same mechanism of action" that "[c]omplement[ed] these findings."

29.     Also on June 29, 2020, Immunovant filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended March 31, 2020 (the "2020 10-K").  The 2020 10-K also reiterated IMVT-1401's safety observed in the

ASCEND GO-1 trial, stating, in relevant part, that "[t]he safety and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers."

30.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Salzmann and Connealy certified that the 2020 10-K "fully complies with the requirements of Section 13(a) or Section 15(d) of the Exchange Act" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.     The statements referenced in ¶¶ 22-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HSAC had performed inadequate due diligence into Legacy Immunovant prior to the Merger, and/or ignored or failed to disclose safety issues with IMVT-1401; (ii) IMVT-1401 was less safe than the Company had led investors to believe, particularly with respect to treating TED and WAIHA; (iii) the foregoing foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

32.     On February 2, 2021, Immunovant issued a press release "announc[ing] a voluntary pause of dosing in its ongoing clinical trials for IMVT-1401."   Specifically, that press release disclosed, in relevant part:

> The Company has become aware of a physiological signal consisting of elevated total cholesterol and LDL levels in IMVT-1401-treated patients in ASCEND GO-2, a Phase 2b trial in [TED]. Cholesterol levels were not measured in prior clinical trials of IMVT-1401 in [MG] and in healthy subjects. Out of an abundance of

caution, the Company has decided to voluntarily pause dosing in ongoing clinical studies in both TED and in [WAIHA], in order to inform patients, investigators, and regulators as well as to modify the monitoring program.

ASCEND GO-2 is a randomized, placebo-controlled trial in TED evaluating different doses, each given weekly for 12 weeks. In this study, cholesterol parameters are assessed at baseline, at twelve weeks, and at week 20 following eight weeks off drug. Based on preliminary, unblinded data from about 40 patients through week 12, mean LDL cholesterol at week 12 was increased by approximately 65% in the 680mg dose group, by approximately 40% in the 340mg dose group, and did not increase in the control group. Average HDL and triglyceride levels increased to a much lesser degree. For context, commercially available statins report a reduction in LDL cholesterol between 27-60%. At the twenty-week timepoint, average LDL levels had declined to baseline or lower in the 680mg dose group, in the 340mg dose group, and in the control group.

33.     On this news, Immunovant's stock price fell $18.22 per share, or 42.08%, to close at $25.08 per share on February 2, 2021.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Immunovant securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Immunovant securities were actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Immunovant or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Immunovant;

- whether the Individual Defendants caused Immunovant to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Immunovant securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Immunovant securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Immunovant securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Immunovant securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Immunovant securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Immunovant securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Immunovant's finances and business prospects.

48.     By virtue of their positions at Immunovant, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Immunovant, the Individual Defendants had knowledge of the details of Immunovant's internal affairs.

50.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Immunovant.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Immunovant's

businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Immunovant securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Immunovant's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Immunovant securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51.     During the Class Period, Immunovant securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Immunovant securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Immunovant securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Immunovant securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of Immunovant, and conducted and participated, directly and indirectly, in the conduct of Immunovant's business affairs. Because of their senior positions, they knew the adverse non-public information about Immunovant's misstatement of income and expenses and false financial statements.

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Immunovant's financial condition and results of operations, and to correct promptly any public statements issued by Immunovant which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Immunovant disseminated in the marketplace during the Class Period concerning Immunovant's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Immunovant to engage in the wrongful

acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Immunovant within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Immunovant securities.

58. Each of the Individual Defendants, therefore, acted as a controlling person of Immunovant. By reason of their senior management positions and/or being directors of Immunovant, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Immunovant to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Immunovant and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Immunovant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  February 19, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer
(*pro hac vice* application forthcoming)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, Theresa Pitman, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Immunovant, Inc. f/k/a Health Sciences Acquisitions Corporation ("Immunovant" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Immunovant securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Immunovant securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Immunovant securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____

February 5, 2021

**(Date)**


DocuSigned by:

*Theresa Pitman*

51BD7AA44E7547E...

**(Signature)**


Theresa Pitman

**(Type or Print Name)**

DocuSign Envelope ID: 21DB3549-6AF5-49BA-B2B8-8C629D5BC808

Case 1:21-cv-00918  Document 1  Filed 02/19/21  Page 21 of 21 PageID #: 21

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 09/15/2020 | Purchase | 5 | $38.57 |
| 10/12/2020 | Purchase | 1 | $41.175 |