**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

David A. Rosenfeld
drosenfeld@rgrdlaw.com

April 20, 2021

VIA ECF

Honorable Magistrate Judge Scanlon
United States District Court Judge
Eastern District of New York
944 Federal Plaza
Central Islip, New York  11722

      Re:    *Pitman v. Immunovant, Inc. f/k/a Health Sciences Acquisition Corp.*,
            No. 1:21-cv-00918-KAM-VMS

Dear Magistrate Judge Scanlon:

      My firm represents class member SEPTA Pension Plan Master Trust (the "Pension Trust").  The Pension Trust submits this letter motion to seek appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval of its selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the class.  *See* 15 U.S.C. §78u-4(a)(3).

      This securities fraud class action was filed on behalf of purchasers and acquirers of Immunovant, Inc. ("Immunovant" or the "Company") securities between October 2, 2019 and February 1, 2021 (the "Class Period"), against Immunovant and three of its executives, alleging violations of the Securities Exchange Act of 1934 ("1934 Act").  In securities cases like this, the PSLRA directs district courts to appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).

      The Pension Trust should be appointed as lead plaintiff because it: (1) timely filed this motion; (2) has a substantial financial interest in the outcome of this litigation; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Court should approve the Pension Trust's selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

**I.      FACTUAL BACKGROUND**

      Immunovant is a clinical-stage biopharmaceutical company that develops monoclonal antibodies for the treatment of autoimmune diseases.  Immunovant is developing IMVT-1401, a novel fully human monoclonal antibody, which is in Phase IIa clinical trials for the treatment of myasthenia gravis and thyroid eye disease ("TED"), also known as Graves' ophthalmopathy.  Immunovant has also completed initiation of Phase II clinical trials of IMVT-1401 for the treatment of warm autoimmune hemolytic anemia ("WAIHA").

      On September 29, 2019, Health Sciences Acquisitions Corporation ("HSAC"), then a special purpose acquisition vehicle ("SPAC"), entered into an agreement with Immunovant Sciences Ltd. ("Legacy Immunovant"), a private biopharmaceutical company, and shareholders of Legacy Immunovant,

Robbins Geller
Rudman & Dowd LLP

Page 2

to effect a merger between the two entities (the "Merger"). As a result of the Merger, HSAC acquired all of the issued and outstanding shares of Legacy Immunovant, and Legacy Immunovant became a wholly-owned subsidiary of HSAC. Upon the closing of the Merger, HSAC changed its name to "Immunovant, Inc." Immunovant common stock trades on the Nasdaq under the ticker IMVT.

The complaint alleges that, throughout the Class Period, defendants made false and/or misleading statements and/or failed to disclose that: (i) HSAC had performed inadequate due diligence into Legacy Immunovant before the Merger, and/or ignored or failed to disclose safety issues associated with IMVT-1401; (ii) IMVT-1401 was less safe than Immunovant had led investors to believe, particularly with respect to treating TED and WAIHA; (iii) the foregoing foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability; and (iv) as a result, Immunovant's public statements were materially false and misleading at all relevant times.

On February 2, 2021, Immunovant issued a press release "announc[ing] a voluntary pause of dosing in its ongoing clinical trials for IMVT-1401." ECF No. 1, ¶¶5, 32. Immunovant disclosed that it had "become aware of a physiological signal consisting of elevated total cholesterol and LDL [low density lipoproteins] levels in IMVT-1401-treated patients" and "[o]ut of an abundance of caution, Immunovant has decided to voluntarily pause dosing in ongoing clinical studies in both TED and in [WAIHA], in order to inform patients, investigators, and regulators as well as to modify the monitoring program." *Id.* On this news, Immunovant's stock price suffered a single-session decline of more than 40%.

As a result of defendants' wrongful acts and omissions, and the decline in the market value of Immunovant's securities, the Pension Trust and other class members have suffered significant losses and damages.

## II.   ARGUMENT

### A.   The Pension Trust Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).[1]  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that: "(aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-

---

[1] The Pension Trust's counsel is aware of this Court's conferral requirement; however, because of the PSLRA's procedure whereby any "purported class member . . . including any motion by a class member who is not individually named as a plaintiff in the complaint" may file a motion for appointment as lead plaintiff, 15 U.S.C. §78u-4(a)(3)(B)(i), the Pension Trust's counsel will not know which other class members, if any, will seek appointment as lead plaintiff until after motions are filed. Consequently, the Pension Trust's counsel respectfully requests that the conferral requirement be waived.

**Robbins Geller Rudman & Dowd LLP**

Page 3

4(a)(3)(B)(iii). The Pension Trust meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1. The Pension Trust's Motion Is Timely

On February 19, 2021, the statutory notice for this action was published on *PRNewswire*, which advised class members of the pendency of the action, the alleged claims, its class definition, and the option of moving the Court to be appointed as lead plaintiff no later than April 20, 2021. *See* Ex. A, attached hereto. Because the Pension Trust's motion was timely filed by the statutory deadline, it is eligible for appointment as lead plaintiff.

### 2. The Pension Trust Possesses a Significant Financial Interest

As indicated in its Certification and loss chart, the Pension Trust purchased 16,167 shares of Immunovant securities during the Class Period and suffered approximately $247,000 in losses under both the last in, first out and first in, first out accounting methodologies as a result of defendants' alleged wrongdoing. *See* Exs. B, C, attached hereto. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.

### 3. The Pension Trust Otherwise Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements – typicality and adequacy – are satisfied." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 209 (E.D.N.Y. 2019) (citation omitted). "'Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability.'" *Id.* at 210 (citation omitted). "In analyzing the adequacy requirement in the context of appointing lead plaintiff, courts consider: '(1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.'" *Id.* (citation omitted).

Here, as the Pension Trust's Certification and loss chart evidence, the Pension Trust purchased Immunovant securities during the Class Period and suffered harm when defendants' alleged misconduct was revealed. *See* Exs. B, C., attached hereto The Pension Trust's substantial stake in the outcome of the case indicates that it has the requisite incentive to vigorously represent the class's claims. The Pension Trust is not aware of any conflicts between its claims and those asserted on behalf of the putative class and is not subject to any unique defenses.

The Pension Trust provides retirement benefits to qualified employees of Southeastern Pennsylvania Transportation Authority ("SEPTA"), one of the nation's largest overall transit systems. As a sophisticated institutional investor, the Pension Trust is familiar with the requirements and responsibilities of being a lead plaintiff in a securities class action and is willing to undertake those responsibilities on behalf of the putative class in this case. *See* Ex. B, attached hereto. Accordingly, the Pension Trust is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and

Page 4

the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members." *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001); *see City of Monroe Emps' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors."). Accordingly, the Pension Trust satisfies Rule 23's requirements.

### B. The Pension Trust's Selection of Counsel Should Be Approved

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Here, the Pension Trust has selected Robbins Geller to serve as lead counsel for the proposed class.[2]

Robbins Geller, a 200-attorney nationwide law firm with multiple offices in New York – including in this District – regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country, including within this District, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *Swanson v. Interface, Inc.*, No. 1:20-cv-05518-ARR-RER, ECF No. 20 (E.D.N.Y. Mar. 15, 2021) (appointing Robbins Geller as lead counsel in securities case); *see also In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH, ECF No. 1316 at 55 (S.D.N.Y. Jan. 21, 2020) (concerning Robbins Geller's role as lead counsel in recovering $1.025 billion for the class in a securities case, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]."). Notably, in the last year alone, Robbins Geller recovered more than $2.5 billion on behalf of investors in securities class action cases, including $1.02 billion in *Am. Realty*, $1.21 billion in *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.), and $350 million in *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555-DGC (D. Ariz.). The Pension Trust's selection of Robbins Geller as proposed lead counsel is reasonable and should be approved.

### III. CONCLUSION

The Pension Trust has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Trust respectfully requests that the Court grant its motion.

Respectfully submitted,

DAVID A. ROSENFELD

---

[2] For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com. A hard copy of the Firm's resume is available upon the Court's request, if preferred.