UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

    vs.

IMMUNOVANT, INC. f/k/a HEALTH
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, PAMELA YANCHIK
CONNEALY, FRANK M. TORTI, ANDREW
FROMKIN, DOUGLAS HUGHES, GEORGE
MIGAUSKY, ATUL PANDE, ERIC
VENKER, SVB LEERINK LLC, LIFESCI
CAPITAL LLC, CHARDAN CAPITAL
MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

               Defendants.

———————————————————— x

Civil Action No. 1:21-cv-00918-KAM-VMS

<u>CLASS ACTION</u>

**COMPLAINT FOR VIOLATIONS
OF THE SECURITIES ACT OF 1933
AND SECURITIES EXCHANGE ACT
OF 1934**

<u>DEMAND FOR JURY TRIAL</u>

Lead Plaintiff SEPTA Pension Plan Master Trust ("Plaintiff" or the "SEPTA"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Immunovant, Inc. f/k/a Health Sciences Acquisitions Corporation ("HSAC," "Immunovant," or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Immunovant securities in or traceable to the Company's follow-on public offering of securities on September 3, 2020 (the "September 2020 Offering"), as well as purchasers of the Company's securities between October 2, 2019 and February 1, 2021, inclusive (the "Class Period"), under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).[1]

---

[1]    There is currently on file in this action a complaint (ECF No. 1) alleging violations of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Pursuant to the Stipulation and Proposed Order entered into by the parties and filed on January 28, 2022 (ECF No. 25), Lead Plaintiff is now filing this Complaint alleging violations of the Securities Act, in addition

2.      Immunovant is a clinical-stage biopharmaceutical company that develops monoclonal antibodies for the treatment of autoimmune diseases.  The Company is developing IMVT-1401, a novel fully human monoclonal antibody, which is in Phase IIa clinical trials for the treatment of myasthenia gravis ("MG") and thyroid eye disease ("TED"), also known as Graves' ophthalmopathy.  The Company has also completed initiation of Phase II clinical trials of IMVT-1401 for the treatment of warm autoimmune hemolytic anemia ("WAIHA").

3.      On September 29, 2019, HSAC, then a special purpose acquisition company ("SPAC"), also referred to as a blank check company,[2] entered into an agreement with Immunovant Sciences Ltd. ("Legacy Immunovant"), a private biopharmaceutical company, and shareholders of Legacy Immunovant, to effect a merger between the two entities (the "Merger").  As a result of the Merger, HSAC acquired all of the issued and outstanding shares of Legacy Immunovant, and Legacy Immunovant became a wholly owned subsidiary of HSAC.  Upon the closing of the Merger, HSAC changed its name to "Immunovant, Inc."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Additionally, the registration statement and prospectus for the September 2020 Offering contained untrue statements of material fact and omitted material information.  Specifically, Defendants made untrue, false and/or misleading statements and/or failed to disclose that: (i) HSAC had performed

---

to Exchange Act claims, and will file an Amended Complaint on or before March 15, 2022 (the "Amended Complaint"), which will supercede all prior complaints.  Pursuant to the Stipulation, the Defendants need not answer or otherwise respond to this Complaint and they shall only be required to respond to the Amended Complaint.

[2]    A blank check company is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

inadequate due diligence into Legacy Immunovant prior to the Merger, and/or ignored or failed to disclose safety issues associated with IMVT-1401; (ii) IMVT-1401 was less safe than the Company had led investors to believe, particularly with respect to treating TED and WAIHA; (iii) undisclosed safety issues existed at the time of the September 2020 Offering and Defendants' statements, if publicly disclosed, threatened to delay and/or disrupt the testing and development schedule for IMVT-1401; (iv) the Company had failed to test cholesterol and LDL levels in patients prior to the ASCEND GO- 2 Phase IIb trial, rendering Defendants' statements about the safety of IMVT-1401 misleading; (v) the foregoing foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability; and (vi) as a result, the registration statement and prospectus for the September 2020 Offering contained misleading and untrue statements and omitted material information, and the Company's public statements were materially false and misleading at all relevant times.

5.      On February 2, 2021, Immunovant issued a press release "announc[ing] a voluntary pause of dosing in its ongoing clinical trials for IMVT-1401." Immunovant disclosed that it "has become aware of a physiological signal consisting of elevated total cholesterol and LDL [low-density lipoproteins] levels in IMVT-1401-treated patients" and "[o]ut of an abundance of caution, the Company has decided to voluntarily pause dosing in ongoing clinical studies in both TED and in [WAIHA], in order to inform patients, investigators, and regulators as well as to modify the monitoring program."

6.      On this news, Immunovant's stock price fell $18.22 per share, or 42.08%, to close at $25.08 per share on February 2, 2021.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

9.      This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v], Section 27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. §§1331 and 1337.

10.     Venue is properly laid in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District, and the September 2020 Offering was marketed in this District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff SEPTA, as set forth in the attached Certification, acquired Immunovant securities at artificially inflated prices during the Class Period and pursuant and/or traceable to the September 2020 Offering, and was damaged thereby and upon the revelation of the alleged corrective disclosures.

13.     Defendant Immunovant is a Delaware corporation with principal executive offices located at 320 West 37th Street, New York, New York 10018. The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "IMVT." Prior to the Merger, the Company (*i.e.*, HSAC) was a Delaware corporation with principal executive offices located at 412 West 15th Street, Floor 9, New York, New York 10011, and its securities traded on the NASDAQ under the ticker symbols "HSACU," "HSAC," and "HSACW."

14.     Defendant Roderick Wong ("Wong") served as Health Sciences Acquisitions Corporation's President and CEO at all relevant times prior to the Merger.

15.     Defendant Peter Salzmann, M.D. ("Salzmann") has served as the Company's Chief Executive Officer ("CEO") at all relevant times following the Merger. Defendant Salzmann signed or authorized the signing of the September 2020 Offering Registration Statement.

16.     Defendant Pamela Yanchik Connealy ("Connealy") was Chief Financial Officer ("CFO") of Immunovant from November 2019 through October 2021. Defendant Connealy signed or authorized the signing of the September 2020 Offering Registration Statement.

17.     Defendant Frank M. Torti, M.D. ("Torti") is Chairperson of the Board of Directors of Immunovant. Defendant Torti signed or authorized the signing of the September 2020 Offering Registration Statement.

18.     Defendant Andrew Fromkin ("Fromkin") is a director of Immunovant. Defendant Fromkin signed or authorized the signing of the September 2020 Offering Registration Statement.

19.     Defendant Douglas Hughes ("Hughes") is a director of Immunovant. Defendant Hughes signed or authorized the signing of the September 2020 Offering Registration Statement.

20.    Defendant George Migausky ("Migausky") is a director of Immunovant. Defendant Migausky signed or authorized the signing of the September 2020 Offering Registration Statement.

21.    Defendant Atul Pande, M.D. ("Pande") is a director of Immunovant.  Defendant Pande signed or authorized the signing of the September 2020 Offering Registration Statement.

22.    Defendant Eric Venker, M.D., Pharm. D., ("Venker") is a director of Immunovant. Defendant Venker signed or authorized the signing of the September 2020 Offering Registration Statement.

23.    The Defendants referenced above in ¶¶14-16 are referred to herein as the "Exchange Act Individual Defendants."

24.    The Defendants referenced above in ¶¶15-22 are referred to herein as the "Securities Act Individual Defendants."

25.    The Exchange Act Individual Defendants possessed the power and authority to control the contents of Immunovant's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Immunovant's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Immunovant, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

- 6 -

26.     Immunovant, the Exchange Act Individual Defendants, and the Securities Act Individual Defendants are collectively referred to herein as "Defendants."

27.     Defendant SVB Leerink LLC ("SVB Leerink") operates as an investment bank specializing in healthcare and technology with its principal executive offices located in Boston, MA.   SVB Leerink acted as a lead underwriter, joint bookrunning manager, and served as representative for the underwriters for the September 2020 Offering and helped to draft and disseminate the Prospectus for the September 2020 Offering.

28.     Defendant LifeSci Capital LLC ("LifeSci") is a boutique investment bank focusing on life sciences located in New York, NY.  LifeSci acted as an underwriter for the September 2020 Offering and helped to draft and disseminate the Prospectus for the September 2020 Offering.

29.     Defendant Chardan Capital Markets LLC ("Chardan") is a global investment bank with its principal executive offices located in New York, NY.  Chardan acted as an underwriter and joint bookrunning manager for the September 2020 Offering.  Chardan helped to draft and disseminate the Prospectus for the September 2020 Offering.

30.     Defendant Guggenheim Securities, LLC ("Guggenheim") operates as a global investment and advisory firm with its principal executive offices located in New York, NY. Guggenheim acted as a lead underwriter, joint bookrunning manager, and served as representative for the underwriters for the September 2020 Offering and helped to draft and disseminate the Prospectus for the September 2020 Offering.

31.     Defendant Robert W. Baird & Co. Incorporated ("Robert W. Baird") is a global investment bank and financial services company with its principal executive offices located in Milwaukee, WI.  Robert W. Baird acted as an underwriter for the September 2020 Offering and helped to draft and disseminate the Prospectus for the September 2020 Offering.

32.    The Defendants referenced above in ¶¶27-31 are herein collectively referred to as the "Underwriter Defendants."  The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters for the September 2020 Offering and were negligent in failing to ensure that the Registration Statement and Prospectus for the September 2020 Offering were prepared properly and accurately.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

33.    The Underwriters who drafted and disseminated the September 2020 Offering documents were paid approximately $12 million in gross fees in connection therewith.

34.    Defendant Roivant Sciences Ltd. ("Roivant") is an integrated pharma-tech business which founds and funds biopharmaceutical and health technology companies.  Defendant Roivant was a controlling shareholder of the Company at all times relevant herein.  Roivant owned more than 57% of Immunovant's outstanding common stock just prior to the September 2020 Offering.

## SUBSTANTIVE ALLEGATIONS

### Immunovant and the Offerings

35.    Immunovant is a clinical-stage biopharmaceutical company that develops monoclonal antibodies for the treatment of autoimmune diseases.  The Company is developing IMVT-1401, a novel fully human monoclonal antibody, which is in Phase IIa clinical trials for the treatment of MG and TED, also known as Graves' ophthalmopathy.  The Company has also completed initiation of Phase II clinical trials of IMVT-1401 for the treatment of WAIHA.

36.    On September 29, 2019, HSAC, then a blank check company, or SPAC, entered into an agreement with Legacy Immunovant, a private biopharmaceutical company, and shareholders of Legacy Immunovant, to effect a merger between the two entities.  As a result of the Merger, HSAC acquired all of the issued and outstanding shares of Legacy Immunovant, and

Legacy Immunovant became a wholly owned subsidiary of HSAC. Upon the closing of the Merger, HSAC changed its name to "Immunovant, Inc."

37.     On or about August 31, 2020, Immunovant filed a Form S-1 Registration Statement with the SEC for the September 3, 2020 Offering (the "September 2020 Offering Registration Statement").

38.     On or about September 1, 2020, the Prospectus with respect to the September 2020 Offering, which forms part of the September 2020 Offering Registration Statement, became effective and 5,270,093 million shares of common stock of Immunovant at $33.00 per share were sold to the public, thereby raising $163.7 million.

39.     In addition to the above-referenced 5,270,093 million shares, the September 2020 Offering included an overallotment option granted to the Underwriters to purchase up to an additional 790,513 shares of common stock and the Underwriters fully exercised this option on September 4, 2020. In total, 6,060,606 million shares were sold in the September 2020 Offering at $33.00 per share, thereby raising approximately $188.3 million.

### Materially Untrue, False and Misleading Statements
### Issued During the Class Period

40.     The Class Period begins on October 2, 2019, when HSAC and Legacy Immunovant issued a press release announcing the Merger (the "October 2019 Press Release"). That press release highlighted the prospects of IMVT-1401, stating, in relevant part, that IMVT-1401 "is the result of a multi-year research program . . . to engineer a highly potent anti-FcRn antibody specifically optimized for subcutaneous injection with a small gauge needle"; that "IMVT-1401 is currently being tested in a Phase 2a trial for Graves' ophthalmopathy (potentially a first-in-class anti-FcRn), with top-line data expected by Q1 2020"; and that "[Legacy] Immunovant also plans to file an IND [investigational new drug application] for . . . [WAIHA], later this year."

41.     The October 2019 Press Release also quoted Defendant Wong, who discussed the Merger and IMVT-1401's commercial prospects, stating, in relevant part, that HSAC is "thrilled to have the opportunity to partner with the team at [Legacy] Immunovant" and "believe[s] IMVT-1401 is a uniquely compelling asset within the FcRn drug class, which [HSAC] expect[s] will become a cornerstone therapy for treating many auto-antibody driven diseases."

42.     Additionally, the October 2019 Press Release quoted Defendant Salzmann, who likewise highlighted the purported commercial prospects of both the Merger and IMVT-1401, stating, in relevant part, that he was "proud of the many milestones delivered by the [Legacy] Immunovant team this year, including . . . initiation of a broad Phase 2 program with both first-in-class and best-in-class potential in multiple diseases with high unmet patient need"; that Defendants "believe the potency of IMVT-1401 and the ability to administer IMVT-1401 as a simple subcutaneous injection represent important potentially differentiating features of this product candidate"; and that "[t]oday's financing transaction will allow [Defendants] to continue to pursue [their] vision of enabling normal lives for patients with autoimmune diseases."

43.     On March 30, 2020, post-Merger, Immunovant issued a press release announcing initial results from the treatment phase of its ongoing the ASCEND GO-1 trial—a Phase 2a study of IMVT-1401 in patients with TED (the "March 2020 Press Release").  That press release made positive statements regarding IMVT-1401's safety observed in the ASCEND GO-1 trial, stating, in relevant part, that "IMVT-1401 was safe and generally well-tolerated with no serious adverse events (SAEs), no withdrawals due to adverse events (AEs), and no headaches"; that "[t]he safety and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers"; and that "[a]ll AEs were mild or moderate."

- 10 -

44.     The March 2020 Press Release also quoted Defendant Salzmann, who represented, in relevant part, that the ASCEND GO-1 trial's "results provide an early proof-of-concept of the potential for IMVT-1401 to ultimately become a safe and effective treatment for patients suffering from [TED]."

45.     Additionally, the March 2020 Press Release quoted the ASCEND GO-1 trial's principal investigator, who likewise stressed IMVT-1401's safety profile, stating, in relevant part, that he was "encouraged by IMVT-1401's early results showing promising efficacy and safety with a subcutaneous route of administration," and that "[e]ven in this small study population, the response across multiple measures is notable."

46.     On April 10, 2020, Immunovant filed a Form S-1 Registration Statement with the SEC.  The Registration Statement described the Company and IMVT-1401, stating in pertinent part, as follows:

> We are a clinical-stage biopharmaceutical company focused on enabling normal lives for patients with autoimmune diseases.  We are developing a novel, fully human monoclonal antibody, IMVT-1401 (formerly referred to as RVT-1401), that selectively binds to and inhibits FcRn. IMVT-1401 is the product of a multi-step, multi-year research program to design a highly potent FcRn antibody optimized for subcutaneous delivery.  These efforts have resulted in a product candidate that has been dosed at small volumes (2 mL or less) and with a small gauge needle, while still generating therapeutically relevant pharmacodynamic activity,  important attributes that we believe will drive patient preference and market adoption.  In nonclinical studies and in clinical trials conducted to date, IMVT-1401 has been observed to reduce IgG antibody levels.  High levels of pathogenic IgG antibodies drive a variety of autoimmune diseases and, as a result, we believe IMVT-1401 has the potential for broad application in these disease areas.  We intend to develop IMVT-1401 for debilitating autoimmune diseases in which there is robust evidence that pathogenic IgG antibodies drive disease manifestation and in which reduction of IgG antibodies should lead to clinical benefit.

47.     The Form S-1 Registration Statement, filed with the SEC on April 10, 2020, discussed the lack of safe and effective alternative treatments for autoimmune diseases, stating in pertinent part, as follows:

Unfortunately, safe and effective treatment options for patients suffering from autoimmune diseases are lacking.  Currently available treatments are generally limited to corticosteroids and immunosuppressants in early-stage disease and intravenous immunoglobulin, or IVIg, or plasma exchange in later-stage disease.  These approaches often fail to address patients' needs since they are limited by delayed onset of action, waning therapeutic benefit over time and unfavorable safety profiles.

48.    The Form S-1 Registration Statement, filed with the SEC on April 10, 2020, stated the IMVT-1401 was "well tolerated" in "several nonclinical studies and a multi-part Phase I clinical trial in healthy volunteers."  Additionally, the Form S-1 discussed "Safety Data" and represented that IMVT-1401 has been observed to be well-tolerated" and that there have been "no treatment-related serious AEs [adverse events]."

49.    On June 29, 2020, Immunovant issued a press release reporting the Company's financial and operating results for the quarter and year ended March 31, 2020.  That press release reiterated IMVT-1401's safety results highlighted in the March 2020 Press Release and prior public statements, as well as additional data, all of which purportedly supported the overall safety and tolerability of IMVT-1401.  Specifically, that press release stated, in relevant part, that the "positive clinical results from ASCEND GO-1 . . . reaffirmed IMVT-1401's prior safety and pharmacodynamic findings . . . for patients with TED," while noting "two recent successful studies for other drug candidates with the same mechanism of action" that "[c]omplement[ed] these findings."

50.    Also on June 29, 2020, Immunovant filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended March 31, 2020 (the "2020 10-K").  The 2020 10-K reiterated IMVT-1401's purported safety observed in the ASCEND GO-1 trial, stating, in relevant part, that "[t]he safety and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers."

51.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Salzmann and Connealy certified that the 2020 10-K "fully complies with the requirements of Section 13(a) or Section 15(d) of the Exchange Act" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

52.     On or about September 3, 2020, the Company sold 5,270,093 shares of common stock through the September 2020 Offering.

53.     The September 2020 Registration Statement described the Company and IMVT-1401, stating in pertinent part, as follows:

> We are a clinical-stage biopharmaceutical company focused on enabling normal lives for patients with autoimmune diseases.  We are developing a novel, fully human monoclonal antibody, IMVT-1401 (formerly referred to as RVT-1401), that selectively binds to and inhibits the neonatal fragment crystallizable receptor, or FcRn.  IMVT-1401 is the product of a multi-step, multi-year research program conducted by HanAll Biopharma Co., Ltd., or HanAll, to design a highly potent anti-FcRn antibody optimized for subcutaneous delivery.  These efforts have resulted in a product candidate that has been dosed in small volumes (e.g. 2 mL) and with a 27-gauge needle, while still generating therapeutically relevant pharmacodynamic activity, important attributes that we believe will drive patient preference and market adoption.  In nonclinical studies and in clinical trials conducted to date, IMVT-1401 has been observed to reduce immunoglobulin G, or IgG, antibody levels.  High levels of pathogenic IgG antibodies drive a variety of autoimmune diseases and, as a result, we believe IMVT-1401 has the potential for broad application in these disease areas. We intend to develop IMVT-1401 in diseases for which there is robust evidence that pathogenic IgG antibodies drive disease manifestation and for which reduction of IgG antibodies should lead to clinical benefit.

54.     The Registration Statement for the September 2020 Offering discussed the lack of safe and effective alternative treatments for autoimmune diseases, stating in pertinent part, as follows:

> Unfortunately, safe and effective treatment options for patients suffering from autoimmune diseases are lacking.  Currently available treatments are generally limited to corticosteroids and immunosuppressants in early-stage disease and intravenous immunoglobulin, or IVIg, or plasma exchange in later-stage disease.

- 13 -

These approaches often fail to address patients' needs since they are limited by delayed onset of action, waning therapeutic benefit over time and unfavorable safety profiles.

55.    The Registration Statement for the September 2020 Offering stated that IMVT-1401 was "well tolerated" in "several nonclinical studies and a multi-part Phase I clinical trial in healthy volunteers."  Additionally, the Registration Statement for the September 2020 Offering discussed "Safety Data" and represented that IMVT-1401 has been observed to be well-tolerated" and that there have been "no treatment-related serious AEs [adverse events]."

56.    The statements referenced above in ¶¶40-55 were each inaccurate statements of material fact and/or were materially false and misleading when made because they failed to disclose and misrepresented the following material adverse facts, which were known to Defendants or recklessly or negligently disregarded by them: (i) HSAC had performed inadequate due diligence into Legacy Immunovant prior to the Merger, and/or ignored or failed to disclose safety issues with IMVT-1401; (ii) IMVT-1401 was less safe and effective than the Company had led investors to believe, particularly with respect to treating TED and WAIHA; (iii) undisclosed safety issues existed at the time of the September 2020 Offering and Defendants' statements, if publicly disclosed, threatened to delay and/or disrupt the testing and development schedule for IMVT-1401; (iv) the Company had failed to test cholesterol and LDL levels in patients prior to the ASCEND GO- 2 Phase IIb trial, rendering Defendants' statements about the safety of IMVT-1401 misleading; (v) the foregoing foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability; and (vi) the undisclosed safety and efficacy issues foreseeably diminished IMVT-1401's prospects for regulatory approval, commercial viability, and profitability.

**The Truth Emerges**

57.     On February 2, 2021, Immunovant issued a press release "announc[ing] a voluntary pause of dosing in its ongoing clinical trials for IMVT-1401."  Specifically, that press release disclosed, in relevant part:

> The Company has become aware of a physiological signal consisting of elevated total cholesterol and LDL levels in IMVT-1401-treated patients in ASCEND GO-2, a Phase 2b trial in [TED].  Cholesterol levels were not measured in prior clinical trials of IMVT-1401 in [MG] and in healthy subjects.  Out of an abundance of caution, the Company has decided to voluntarily pause dosing in ongoing clinical studies in both TED and in [WAIHA], in order to inform patients, investigators, and regulators as well as to modify the monitoring program.
>
> ASCEND GO-2 is a randomized, placebo-controlled trial in TED evaluating different doses, each given weekly for 12 weeks.  In this study, cholesterol parameters are assessed at baseline, at twelve weeks, and at week 20 following eight weeks off drug.  Based on preliminary, unblinded data from about 40 patients through week 12, mean LDL cholesterol at week 12 was increased by approximately 65% in the 680mg dose group, by approximately 40% in the 340mg dose group, and did not increase in the control group.  Average HDL and triglyceride levels increased to a much lesser degree.  For context, commercially available statins report a reduction in LDL cholesterol between 27-60%.  At the twenty-week timepoint, average LDL levels had declined to baseline or lower in the 680mg dose group, in the 340mg dose group, and in the control group.

58.     On this news, Immunovant's stock price fell $18.22 per share, or 42.08%, to close at $25.08 per share on February 2, 2021.

59.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

60.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Immunovant securities pursuant and/or traceable to the September 2020 Offering, as well as purchasers of the Company's securities during the Class Period (the "Class"); and were

damaged thereby.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Immunovant securities were actively traded on the NASDAQ and Immunovant sold more than 6 million shares of common stock in the September 2020 Offering.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Immunovant or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- Whether the Prospectus and Registration Statement issued by Defendants to the investing public in connection with the September 2020 Offering negligently omitted and/or misrepresented material facts about Immunovant and its business;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Immunovant;

- whether the Exchange Act Individual Defendants caused Immunovant to issue false and misleading financial statements during the Class Period;

- whether the Exchange Act Individual Defendants and the Company acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Immunovant securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

66.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Immunovant securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Immunovant securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

67. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 11 of the Securities Act Against Immunovant, the Securities Act Individual Defendants, and the Underwriter Defendants

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, and is asserted against Immunovant, the Underwriter Defendants, and the Securities Act Individual Defendants. Plaintiff does not claim for purposes of this Count that Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent.

71. The Registration Statement for the September 2020 Offering was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

72.     Immunovant is the registrant for the September 2020 Offering.  As issuer of the shares, Immunovant is strictly liable for the materially inaccurate statements contained in the Registration Statement and the Prospectus and the failure of the Registration Statement and Prospectus to be complete and accurate.

73.     The Securities Act Individual Defendants each signed the Registration Statement either personally or through an Attorney-in-Fact and/or caused its issuance.  The Securities Act Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure that such statements were true and accurate, that there were no omissions of material fact that would make the statements misleading and that the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Securities Act Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact that were necessary to make the statements made therein not misleading.  As such, the Securities Act Individual Defendants are liable to the Plaintiff and the Class.

74.     The Underwriter Defendants were each underwriters, as that term is used in Section 11(a)(5) of the Securities Act, with respect to the September 2020 Offering and the Company's securities were sold through the Registration Statement.  The Underwriter Defendants were required to investigate with due diligence the representations contained therein to confirm that they did not contain materially misleading statements or omit material facts.  None of the Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements described herein, which were contained in the Registration Statement and Prospectus, were true, were without omission of any material facts, and/or were not misleading.

75.     By reasons of the conduct herein alleged, each Defendant violated Section 11 of the Securities Act.

76.     Plaintiff and putative Class members acquired Immunovant common stock in the September 2020 Offering, and in reliance on the Registration Statement and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff and the Class sustained damages when the price of IMVT securities declined substantially subsequent to and due to Defendants' violations.

**COUNT II**

**Violations of Section 12(a)(2) of the Securities Act
Against Immunovant, the Securities Act Individual
Defendants, and the Underwriter Defendants**

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of Plaintiff and the Class, against Immunovant, the Securities Act Individual Defendants, and the Underwriter Defendants (the "Count II Defendants").  Plaintiff does not claim for purposes of this Count that Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent.

79.     The Count II Defendants were sellers and offerors and/or solicitors of purchasers of the securities offered pursuant to the September 2020 Offering Prospectus.  The Count II Defendants issued, caused to be issued, and/or signed the Registration Statement in connection with the September 2020 Offering.  The Registration Statement contained a Prospectus which was used to induce investors, such as Plaintiffs and the other members of the Class, to purchase Immunovant securities.

80.     The September 2020 Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  The Securities Act Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus and in road shows to promote the September 2020 Offering.  Immunovant and the Underwriter Defendants, acting through their employees, agents and others, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectus.

81.     The Underwriter Defendants participated in the preparation and dissemination of the false and misleading Prospectus for their own financial benefit.  But for their participation in the September 2020 Offering, including their solicitation as set forth herein, that offering could not and would not have been accomplished.  Specifically, the Underwriter Defendants:

(a)     made the decision to conduct the September 2020 Offering and do it at the price set forth in the offering documents.  The Underwriter Defendants drafted, revised and/or approved the Prospectus.  The Prospectus was calculated to create interest in Immunovant securities and was widely distributed by or on behalf of these Defendants for that purpose;

(b)     finalized the Prospectus and caused it to become effective; and

(c)     conceived and planned the September 2020 Offering and orchestrated all activities necessary to affect the sale of these securities to the investing public, by issuing securities, promoting the securities and supervising their distribution and ultimate sale to the investing public.

82.     As set forth more specifically above, the Prospectus contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

- 21 -

83.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Prospectus.

84.     The Defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were accurate and complete in all material respects.  Had they done so, these Defendants would have known of the material misstatements and omissions alleged herein.

85.     By reason of the conduct alleged herein, the Count II Defendants violated §12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Immunovant common stock purchased in the Offering have the right to rescind and recover the consideration paid for their Immunovant common stock and hereby elect to rescind and tender their Immunovant common stock to the Defendants sued herein.  Plaintiff and Class members who have sold their Immunovant common stock are entitled to rescissory damages.

## COUNT III

### Violation of Section 15 of the Securities Act
### Against the Securities Act Individual Defendants and Roivant

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     This Count is brought pursuant to Section 15 of the Securities Act against the Securities Act Individual Defendants and Roivant.  Plaintiff does not claim for purposes of this

Count that Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent.

88.     Each of the Securities Act Individual Defendants and Roivant acted as controlling persons of Immunovant within the meaning of Section 15 of the Securities Act by virtue of their position as a director and/or senior officer of Immunovant and/or equity interest in control of the Company.  By reason of their senior management positions, directorships at the Company, or stock ownership, as alleged above, the Securities Act Individual Defendants and Roivant, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause Immunovant to engage in the conduct complained of herein.  By reason of such conduct, the Securities Act Individual Defendants and Roivant are liable pursuant to Section 15 of the Securities Act.

89.     Each of the Securities Act Individual Defendants and Roivant was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the September 2020 Offering to be successfully completed.

## COUNT IV

### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against Immunovant and the Exchange Act Individual Defendants

90.     Plaintiff repeats and realleges each and every allegation contained above in ¶¶ 1-68 as if fully set forth herein.

91.     This Count is asserted against Immunovant and the Exchange Act Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

92.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Immunovant securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Immunovant securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

93.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Immunovant securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Immunovant's finances and business prospects.

94.     By virtue of their positions at Immunovant, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

95.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Immunovant, the Individual Defendants had knowledge of the details of Immunovant's internal affairs.

96.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Immunovant.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Immunovant's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Immunovant securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Immunovant's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Immunovant securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

97.    During the Class Period, Immunovant securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Immunovant securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Immunovant securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Immunovant securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

98.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

99.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT V

### Violations of Section 20(a) of the Exchange Act
### Against the Exchange Act Individual Defendants

100.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

101.    During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Immunovant, and conducted and participated, directly and indirectly, in the conduct of Immunovant's business affairs.  Because of their senior positions, they knew the adverse non-public information about Immunovant's misstatement of income and expenses and false financial statements.

102.    As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Immunovant's financial condition and results of operations, and to correct promptly any public statements issued by Immunovant which had become materially false or misleading.

103.    Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants, were able to, and did, control the contents of the various reports, press releases and public filings which Immunovant disseminated in the marketplace during the Class Period concerning Immunovant's results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Immunovant to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants, therefore, were "controlling persons" of Immunovant within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Immunovant securities.

104.    Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Immunovant.  By reason of their senior management positions and/or being directors or of Immunovant, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Immunovant to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Immunovant and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

105.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Immunovant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Declaring this action to be a class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiff and other members of the Class damages together with interest thereon;

C.    With respect to Count II, ordering that the September 2020 Offering be rescinded;

D.    Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.    Awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

- 28 -

DATED:  February 1, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN

_/s/ Evan J. Kaufman_
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

_Lead Counsel for Lead Plaintiff_

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

SEPTA PENSION PLAN MASTER TRUST ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.  Plaintiff has authorized the filing of a motion for appointment as lead plaintiff.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*Nikolov v. Livent Corporation*, No. 2:19-cv-02218 (E.D. Pa.)
*In re Karyopharm Therapeutics Inc.*, No. 1:19-cv-11972 (D. Mass.)
*City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight, Inc.*, No. 1:19-cv-00128 (D. Utah)

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

IMMUNOVANT

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __16th__ day of April, 2021.

SEPTA PENSION PLAN MASTER TRUST

By: _Gino Benedetti_____
          Gino Benedetti, General Counsel

IMMUNOVANT

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 09/02/2020 | 4,080 | $33.00 |
| 09/02/2020 | 4,128 | $35.46 |
| 09/03/2020 | 2,757 | $36.26 |
| 09/16/2020 | 3,444 | $39.88 |
| 12/22/2020 | 1,758 | $49.34 |

Prices listed are rounded up to two decimal places.