## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

THERESA PITMAN, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

v.

IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION *et al.*,

       Defendants.

Case No. 1:21-cv-00918-KAM-VMS

## MEMORANDUM OF LAW IN SUPPORT OF
## THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS

Daniel Roeser
Valerie A. Haggans
Justin D. Ward
**GOODWIN PROCTER LLP**

*Attorneys for Defendants SVB Securities LLC (f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc.*

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................................. 3

ARGUMENT .................................................................................................................................. 6

I.    This Court Should Dismiss The Securities Act Claims Because Plaintiff Does Not Adequately Allege That Defendants Knew Of An "Anticipated Risk" But Rather Disclaims The Knowledge Underpinning That Theory. ...................................................... 6

II.    This Court Should Dismiss The Securities Act Claims Because Plaintiff Alleges A Disagreement With Immunovant's Scientific Judgment, Which Is Not Actionable Under The Securities Laws. ................................................................................................................ 9

III.    This Court Should Dismiss The Securities Act Claims Because There Was No Duty To Disclose IMVT-1401's "Anticipated Risk" Of Heightened Cholesterol. ......................... 11

    A.    The Offering Documents Did Not Contain Any Misleading Statements Concerning IMVT-1401's Alleged Risk Of Heightened Cholesterol. ................ 12

    B.    Item 303 Did Not Create A Duty To Disclose IMVT-1401's Alleged Risk Of Heightened Cholesterol In The Offering Documents. ................................... 13

    C.    Item 105 Did Not Create A Duty To Disclose IMVT-1401's Alleged Risk Of Heightened Cholesterol In The Offering Documents. ................................... 15

IV.    This Court Should Dismiss Plaintiff's Securities Act Claims Because Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions. ..................................................... 17

    A.    The Challenged Statements Disclosing The Design Of IMVT-1401's Trials Are Not Actionable. .................................................................................. 20

    B.    The Challenged Statements Disclosing The Observed Safety Results From Past Trials Of IMVT-1401 Are Not Actionable. ................................................. 22

    C.    The Challenged Statements Disclosing The Observed Efficacy Results From Past Trials Of IMVT-1401 Are Not Actionable. ......................................... 25

    D.    The Challenged Statements Disclosing Immunovant's Business Goals Are Not Actionable. .......................................................................................... 26

    E.    The Challenged Statement Disclosing Immunovant's Controlling Shareholder Is Not Actionable. ............................................................................. 28

    F.    The Challenged Statements Disclosing Immunovant's Risks Are Not Actionable. .............................................................................................................. 28

CONCLUSION ............................................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abely v. Aeterna Zentaris Inc.,
No. 12 CIV. 4711 PKC, 2013 WL 2399869 (S.D.N.Y. May 29, 2013)...................................10

In re Aceto Corp. Sec. Litig.,
No. 2:18-CV-2425-ERK-AYS, 2021 WL 4350501 (E.D.N.Y. Mar. 16, 2021)......................17

In re Adient plc Sec. Litig.,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .....................................29

In re Amarin Corp. PLC Sec. Litig.,
No. 319CV06601BRMTJB, 2021 WL 1171669 (D.N.J. Mar. 29, 2021).............................23

In re Apple REITs Litig.,
No. 11-CV-2919 KAM, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013)
(Matsumoto, J.), aff'd in part, vacated in part on other grounds sub nom.
Berger v. Apple REIT Ten, Inc., 563 F. App'x 81 (2d Cir. 2014) .......................................8, 9

In re Aratana Therapeutics Inc. Sec. Litig.,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)..................................................................................20

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,
28 F.4th 343 (2d Cir. 2022) ........................................................................................ passim

In re Arrowhead Pharms., Inc. Sec. Litig.,
No. CV 16-08505, 2017 WL 8791111 (C.D. Cal. Dec. 21, 2017),
aff'd, 782 F. App'x 572 (9th Cir. 2019) ...............................................................................24

Asay v. Pinduoduo Inc.,
No. 18-cv-7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ................................15

In re AT&T/DirecTV Now Sec. Litig.,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)............................................................................25, 26

Biondolillo v. Roche Holding AG,
No. CV 17-4056, 2018 WL 4562464 (D.N.J. Sept. 24, 2018) ...............................................25

In re Bristol-Myers Squibb Sec. Litig.,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................................25

Burekovitch v. Hertz,
No. 01-CV-1277 (ILG), 2001 WL 984942 (E.D.N.Y. July 24, 2001) ....................................8

In re Chembio Diagnostics, Inc. Sec. Litig.,
    No. 20-CV-2706 (ARR) (PK), 2022 WL 541891 (E.D.N.Y. Feb. 23, 2022)....................16, 17

City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.,
    No. 18-CV-3608 (VSB), 2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021) ......................12, 21, 23

In re Coty Inc. Sec. Litig.,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).....................................14

In re Duane Reade Inc. Sec. Litig.,
    No. 02 CIV 6478 NRB, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003),
    aff'd sub nom. Nadoff v. Duane Reade, Inc., 107 F. App'x 250 (2d Cir. 2004)....................27

In re EDAP TMS S.A. Sec. Litig.,
    No. 14 CIV. 6069 LGS, 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) .................................20

Emerson v. Mut. Fund Series Tr.,
    393 F. Supp. 3d 220 (E.D.N.Y. 2019) ....................................................................................6

Fait v. Regions Fin. Corp.,
    712 F. Supp. 2d 117 (S.D.N.Y. 2010), aff'd, 655 F.3d 105 (2d Cir. 2011).............................18

Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,
    53 F. Supp. 3d 882 (E.D. La. 2014).......................................................................................20

In re Gen. Elec. Co. Sec. Litig.,
    857 F. Supp. 2d 367 (S.D.N.Y.), reconsidered in part on other grounds,
    856 F. Supp. 2d 645 (S.D.N.Y. 2012).....................................................................................18

Gillis v. QRX Pharma Ltd.,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)....................................................................................10

Golesorkhi v. Green Mountain Coffee Roasters, Inc.,
    973 F. Supp. 2d 541 (D. Vt. 2013), aff'd, 569 F. App'x 43 (2d Cir. 2014)...........................29

Gregory v. ProNAi Therapeutics Inc.,
    297 F. Supp. 3d 372 (S.D.N.Y.), aff'd, 757 F. App'x 35 (2d Cir. 2018)...................... 26-27, 29

Hoey v. Insmed Inc.,
    No. CV 16-4323 (FLW), 2018 WL 902266 (D.N.J. Feb. 15, 2018) ................................. 12-13

Howard v. Arconic, Inc.,
    395 F. Supp. 3d 516 (W.D. Pa. 2019).....................................................................................16

Howard v. Arconic, Inc.,
    No. 2:17-cv-1057, 2021 WL 2561895 (W.D. Pa. Jun. 23, 2021)...........................................16

Indiana Pub. Ret. Sys. v. SAIC, Inc.,
        818 F.3d 85 (2d Cir. 2016)......................................................................................13, 14

Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,
        620 F.3d 137 (2d Cir. 2010)...........................................................................................20

Johnson v. Sequans Commc'ns S.A.,
        No. 11 CIV. 6341 PAC, 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013)............................... 27-28

In re Keryx Biopharmaceuticals, Inc., Sec. Litig.,
        No. 13 CIV. 1307 KBF, 2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ...................................22

Kleinman v. Elan Corp., plc,
        706 F.3d 145 (2d Cir. 2013)............................................................................................25

Martin v. Quartermain,
        732 F. App'x 37 (2d Cir. 2018) ......................................................................................23

In re MELA Scis., Inc. Sec. Litig.,
        No. 10 CV 8774 VB, 2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012).........................10, 24, 26

In re NovaGold Res. Inc. Sec. Litig.,
        629 F. Supp. 2d 272 (S.D.N.Y. 2009).............................................................................20

In re Novan, Inc.,
        No. 1:17CV999, 2018 WL 6732990 (M.D.N.C. Nov. 30, 2018) ..........................................10

Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,
        575 U.S. 175 (2015)......................................................................................................18

Pearlstein v. BlackBerry Ltd.,
        93 F. Supp. 3d 233 (S.D.N.Y. 2015)................................................................................14

Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S,
        11 F.4th 90 (2d Cir. 2021) ..........................................................................................9, 13

In re Rigel Pharmaceuticals, Inc. Securities Litigation,
        697 F.3d 869 (9th Cir. 2012) ...................................................................................9, 10, 11

Rombach v. Chang,
        355 F.3d 164 (2d Cir. 2004)............................................................................................8

Rosi v. Aclaris Therapeutics, Inc.,
        No. 19-CV-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021)..................................29

Rubinstein v. Credit Suisse Grp. AG,
        457 F. Supp. 3d 289 (S.D.N.Y. 2020).........................................................14, 16, 17, 29, 30

In re Sanofi Sec. Litig.,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015), aff'd sub nom.
   Tongue v. Sanofi, 816 F.3d 199 (2d Cir. 2016) ..................................................................20

In re Sibanye Gold Ltd. Sec. Litig.,
   No. 18-CV-3721(KAM)(PK), 2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)
   (Matsumoto, J.) ..............................................................................................................4, 6

Singh v. Schikan,
   106 F. Supp. 3d 439 (S.D.N.Y. 2015)..................................................................................10

Slayton v. Am. Exp. Co.,
   604 F.3d 758 (2d Cir. 2010)................................................................................................19

Stadnick v. Vivint Solar, Inc.,
   861 F.3d 31 (2d Cir. 2017)..................................................................................................15

Tongue v. Sanofi,
   816 F.3d 199 (2d Cir. 2016)......................................................................................... passim

In re TVIX Sec. Litig.,
   25 F. Supp. 3d 444 (S.D.N.Y.), aff'd sub nom. Elite Aviation LLC v. Credit
   Suisse AG, 588 F. App'x 37 (2d Cir. 2014) ........................................................................30

Ulbricht v. Ternium S.A.,
   No. 18CV6801PKCRLM, 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)......................11, 12

In re WEBMD Health Corp. Sec. Litig.,
   No. 11 CIV. 5382 JFK, 2013 WL 64511 (S.D.N.Y. Jan. 2, 2013).......................................29

In re Weight Watchers Int'l Inc. Sec. Litig.,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020)............................................................................17, 18

Y-GAR Cap. LLC v. Credit Suisse Grp. AG,
   No. 19 CIV. 2827 (AT), 2020 WL 71163 (S.D.N.Y. Jan. 2, 2020)........................................8

**Statutes and Other Authorities**

15 U.S.C. § 77z-2.................................................................................................................19

17 C.F.R. § 229.105(a)....................................................................................................15, 16

17 C.F.R. § 229.303(a)..........................................................................................................13

Fed. R. Civ. P. 8 .....................................................................................................................8

Fed. R. Civ. P. 9(b) ................................................................................................................8

Securities Act of 1933 .................................................................................................. passim

Defendants SVB Securities LLC (f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc. (together, the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint for Violations of the Federal Securities Laws (ECF No. 44, the "AC") filed by Lead Plaintiff SEPTA Pension Plan Master Trust ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff brings claims under the Securities Act of 1933 (the "Securities Act") against the Underwriter Defendants (and other Defendants) in connection with a secondary offering of stock by Immunovant, Inc. ("Immunovant") that was completed on September 2, 2020 (the "September 2020 Offering"). Plaintiff bases its claims on allegations that the documents provided to investors for the September 2020 Offering (the "Offering Documents") did not disclose an "anticipated risk" – defined as a risk "expected to occur" or, in other words, a risk known to the issuer – that a drug Immunovant is developing to treat autoimmune diseases would increase cholesterol levels. There are two fundamental problems with Plaintiff's claims. To begin with, Plaintiff does not adequately allege that Defendants knew of the "anticipated risk" at the time of the September 2020 Offering, but rather disclaims such knowledge for purposes of its Securities Act claims. Moreover, Plaintiff's allegations reduce to disagreements over scientific judgment and, specifically, the choice of scientific methodology, the interpretation of scientific data, and the design of scientific trials. Those fundamental problems permeate Plaintiff's allegations and render the Securities Act claims fatally defective. This Court should dismiss those claims for at least the following reasons.

**First**, this Court should dismiss the Securities Act claims because Plaintiff does not adequately allege that Defendants knew of the "anticipated risk" that the drug, IMVT-1401, would cause heightened cholesterol at the time of the September 2020 Offering. Plaintiff relies on earlier

animal studies of IMVT-1401 but admits that the reports of those studies – which were conducted and interpreted by a third party – indicated "only minor increases in cholesterol."  In addition, Plaintiff concedes that the only clinical trials that generated results before the September 2020 Offering did not test for cholesterol and that Defendants had no indication of heightened cholesterol in human subjects until months after the September 2020 Offering.  None of Plaintiff's allegations shows that Defendants knew of the risk that IMVT-1401 would cause heightened cholesterol when preparing the Offering Documents.  Indeed, Plaintiff disclaims the knowledge underpinning its allegations of "anticipated risk" for purposes of the Securities Act claims.

**Second**, this Court should dismiss the Securities Act claims because Plaintiff alleges a disagreement with Immunovant's scientific judgment, which is not actionable under the securities laws.  At their core, Plaintiff's allegations challenge Immunovant's scientific judgment in carrying out IMVT-1401's trials – i.e., the interpretation that the results of animal studies showed "only minor increases in cholesterol" and the failure to design the Phase 1 and Phase 2a human trials to test for cholesterol.  Such disagreements about scientific methodology, interpretation, and trial design are not actionable.  To state the obvious, the federal securities laws do not require Immunovant to analyze and design drug trials according to Plaintiff's preferences.

**Third**, this Court should dismiss the Securities Act claims because there was no duty to disclose IMVT-1401's "anticipated risk" of heightened cholesterol.  Plaintiff alleges that Defendants had a duty to disclose based on (1) misleading statements in the Offering Documents concerning that "anticipated risk," (2) Item 303 of Regulation S-K, and (3) Item 105 of Regulation S-K.  Plaintiff does not identify any misleading statements in the Offering Documents that would impose on Defendants a duty to disclose the "anticipated risk" – because the Offering Documents said nothing at all about cholesterol.  Item 303 did not create a duty to disclose because Plaintiff

2

does not plead facts showing that IMVT-1401's alleged risk constituted a trend or uncertainty at the time of the September 2020 Offering; Plaintiff has not alleged, and in fact has disclaimed, for purposes of its Securities Act claims that Defendants knew of IMVT-1401's alleged risk at the time of the September 2020 Offering; and the Offering Documents did disclose and warn of the alleged risk about which Plaintiff complains.  Item 105 did not create a duty to disclose for the same reasons.

**Fourth**, this Court should dismiss the Securities Act claims because Plaintiff does not allege any actionable misstatements or omissions.  Plaintiff bases its Securities Act claims on 15 paragraphs in the AC, each of which contains a lengthy block quote from the Offering Documents concerning (1) the design of IMVT-1401's trials; (2) the observed safety results from past trials of IMVT-1401; (3) the observed efficacy results from past trials of IMVT-1401; (4) Immunovant's business goals; (5) Immunovant's controlling stockholder; and/or (6) Immunovant's risks.  Each quote, in turn, contains a combination of accurate statements of historical fact, non-actionable statements of opinion, and/or protected forward-looking statements.  None gives rise to a claim.

For the foregoing reasons and those that follow, this Court should dismiss the claims against the Underwriter Defendants with prejudice.[1]

### **BACKGROUND**

In September 2020, Immunovant – a clinical-stage biopharmaceutical company focused on enabling normal lives for patients with autoimmune diseases – completed a secondary offering of stock underwritten by the Underwriter Defendants.  (AC ¶¶ 1, 6, 29-33; Prospectus at 88.)  In

---

[1] The Underwriter Defendants also incorporate by reference, to the extent applicable to the claims against the Underwriter Defendants, the arguments for dismissal set forth in the Memorandum of Law in Support of Immunovant Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Immunovant Motion") and the Memorandum of Law in Support of the Motion to Dismiss of Roivant Sciences, Ltd.

connection with the September 2020 Offering, Immunovant issued the Offering Documents: a Registration Statement filed with the SEC on Form S-1 and a Prospectus.  (AC ¶ 92.)[2]  At the time of the September 2020 Offering, Immunovant was in the midst of conducting trials of IMVT-1401, a monoclonal antibody that Immunovant hopes will be an effective treatment with broad application to a variety of autoimmune diseases.  (AC ¶¶ 2, 46, 84-87; Prospectus at 88-89.)

The Offering Documents described IMVT-1401's trials at length.  (AC ¶¶ 102-113.) Specifically, animal studies (in monkeys), most of which had been conducted by a third party rather than Immunovant, had been completed.  (AC ¶¶ 70, 107.)  A Phase 1 trial (in humans) had been completed.  (AC ¶ 84.)  Phase 2 trials (in humans), including both Phase 2a and Phase 2b trials, were ongoing.  (AC ¶¶ 85-87, 109, 111.)  Since initial safety results from the Phase 1 and certain of the Phase 2a trials generally were positive, finding only mild to moderate side effects, a Phase 3 trial (in humans) was planned to begin in the first half of 2021.  (AC ¶¶ 84, 109.)

The Offering Documents warned investors that, despite Immunovant's hopes, the trials might not go according to plan.  Indeed, the Offering Documents contained nearly 60 pages of detailed risk disclosures (Prospectus at 10-66), including:

- "[W]e had no involvement with or control over the nonclinical or clinical development of IMVT-1401 prior to its in-license from HanAll [a third party].  We are dependent on our licensing partner having conducted such research and development in accordance with the applicable protocols and legal, regulatory and scientific standards, having accurately reported the results of all nonclinical studies and clinical trials and other research they conducted prior to our acquisition of the rights to our product candidate, having correctly collected and interpreted the data from these studies, trials and other research, and having supplied us with complete information, data sets and reports required to adequately

---

[2] This Court may consider the Offering Documents on this motion to dismiss because they (1) are incorporated by reference into the AC (see, e.g., AC ¶ 92) and (2) were filed with the SEC and therefore are subject to judicial notice, see In re Sibanye Gold Ltd. Sec. Litig., No. 18-CV-3721(KAM)(PK), 2020 WL 6582326, at *1 (E.D.N.Y. Nov. 10, 2020) (Matsumoto, J.).  True and correct excerpts are attached to the Declaration of Heather M. Speers in support of the Immunovant Motion as Exhibit 1 (Registration Statement) and Exhibit 2 (Prospectus).

demonstrate the results reported through the date of our acquisition of this asset." (Prospectus at 24.)[3]

- "[T]he information we choose to publicly disclose regarding a particular study or clinical trial is based on what is typically extensive information, and you or others may not agree with what we determine is the material or otherwise appropriate information to include in our disclosure, and any information we determine not to disclose may ultimately be deemed significant with respect to future decisions, conclusions, views, activities or otherwise regarding a particular drug, product candidate or our business." (Prospectus at 25.)

- "Failures can occur at any stage of clinical trials, and we could encounter problems that cause us to abandon or repeat clinical trials." (Prospectus at 23.)

- "The commencement and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues, or subjects experiencing severe or unexpected adverse events, or AEs." (Prospectus at 23.)

- "If we experience delays in the commencement or completion of our clinical trials, or if we terminate a clinical trial prior to completion, the commercial prospects of our product candidate could be harmed, and our ability to generate product revenue from our product candidate, if approved, may be delayed. In addition, any delays in our clinical trials could increase our costs, cause a decline in our share price, slow down the approval process, and jeopardize our ability to commence product sales and generate revenue. Any of these occurrences may harm our business, financial condition and results of operations." (Prospectus at 24.)

In February 2021, some of these risks came to pass when Immunovant announced a setback: Participants in one of the Phase 2b trials had developed heightened cholesterol levels, which caused Immunovant to pause voluntarily its ongoing clinical trials. (AC ¶ 129.) After this announcement, Immunovant's stock price declined. (AC ¶ 134.) Immunovant's stock price declined further after it announced its annual earnings in June 2021. (AC ¶¶ 141, 143.)

Plaintiff opportunistically seized on those price declines to bring claims under Sections 11 and 12(a)(2) of the Securities Act (Counts I and II) against the Underwriter Defendants (and other Defendants). (AC ¶¶ 146-162.) Plaintiff has disclaimed any allegation of "intentional or reckless misconduct" or "scienter" for purposes of its Securities Act claims. (See AC ¶¶ 147, 155, 164.)

---

[3] Unless otherwise noted, all emphasis is added and all alterations, citations, and internal quotation marks are omitted throughout.

Instead, Plaintiff alleges that Defendants "should have known" that IMVT-1401 would cause heightened cholesterol and, consequently, Immunovant should have designed its initial clinical trials to test cholesterol and the Offering Documents should have disclosed the risk of heightened cholesterol to investors. (AC ¶¶ 71, 150.)

## ARGUMENT

Sections 11 and 12(a)(2) of the Securities Act "create[] three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading." Emerson v. Mut. Fund Series Tr., 393 F. Supp. 3d 220, 242 (E.D.N.Y. 2019). Plaintiff bases its claims on an alleged material omission – i.e., the failure to disclose the supposed risk that IMVT-1401 would cause heightened cholesterol.

"In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sibanye, 2020 WL 6582326, at *12 (Matsumoto, J.). "First, a court should begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. "Second, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at *13. Plaintiff has pleaded no such facts.

I.     **This Court Should Dismiss The Securities Act Claims Because Plaintiff Does Not Adequately Allege That Defendants Knew Of An "Anticipated Risk" But Rather Disclaims The Knowledge Underpinning That Theory.**

This Court should dismiss the Securities Act claims because Plaintiff does not adequately allege that, at the time of the September 2020 Offering, Defendants knew of the "anticipated risk"

6

that IMVT-1401 would cause heightened cholesterol.   Rather, Plaintiff disclaims such a knowledge-based theory.

**First**, Plaintiff cites earlier animal studies of IMVT-1401 but admits that the "summary portion of the reports indicated that there were only minor increases in cholesterol."  (AC ¶ 72.) Plaintiff insinuates that someone at Immunovant must have known about supposedly contradictory data underlying the reports that showed the "anticipated risk" that IMVT-1401 would cause heightened cholesterol, but then concedes that a "third-party," not any Defendant, "conducted the animal studies."  (AC ¶ 140; see also id. ¶ 70.)  Indeed, the Offering Documents disclosed that Immunovant was "dependent" on a third party "having accurately reported the results of all nonclinical studies" and "having correctly collected and interpreted the data from these studies." (Prospectus at 24.)  Tellingly, Plaintiff's own confidential witness – whose opinion is the only basis for Plaintiff's interpretation of the animal studies (see AC ¶¶ 70-72) – claims to have learned about the allegedly heightened cholesterol only when Immunovant re-examined the data from the animal studies with the benefit of hindsight in January 2021, after the September 2020 Offering (AC ¶ 140).[4]

**Second**, Plaintiff concedes that IMVT-1401's Phase 1 and Phase 2a trials – the only human trials that generated results before the September 2020 Offering – did not test for cholesterol.  (AC ¶ 89.)  Therefore, Defendants had no indication of higher cholesterol in human subjects at the time of the September 2020 Offering and did not receive any indication until months later with the initial Phase 2b results.  (See AC ¶¶ 71, 140.)

---

[4] Plaintiff does not allege the confidential witness' qualifications or the statistical methodology that he/she used to reach his/her opinion.  (See AC ¶¶ 70-72.)

But there is more.  Plaintiff disclaims the very theory on which its Securities Act claims turn.  Plaintiff defines an "anticipated risk" as a risk that "**is expected to occur** based on knowledge of the class of drugs" (AC ¶ 62) – in other words, a risk known to the issuer.  Yet Plaintiff disclaims knowledge for purposes of its Securities Act claims:  "Plaintiff **does not claim** for purposes of this Count that Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent."  (AC ¶ 147; see also id. ¶¶ 155, 164.)  "Plaintiff should be taken at its word, and the facts alleged only in support of scienter should not be considered in support of the Section 11 [or Section 12(a)(2)] claim."  Y-GAR Cap. LLC v. Credit Suisse Grp. AG, No. 19 CIV. 2827 (AT), 2020 WL 71163, at *7 (S.D.N.Y. Jan. 2, 2020); see also Apple REITs, 2013 WL 1386202, at *10 (Matsumoto, J.) (dismissing allegations of intent where "Plaintiffs disclaim any intent to allege fraud").

Given Plaintiff's disclaimer, the Securities Act claims cannot rest on scienter-based allegations that Defendants actually knew of the "anticipated risk" that IMVT-1401 would cause heightened cholesterol.  As a result, Plaintiff cannot plead certain elements of its Securities Act claims, including falsity, because Defendants could not disclose what they did not know.  See, e.g., Burekovitch v. Hertz, No. 01-CV-1277 (ILG), 2001 WL 984942, at *10 (E.D.N.Y. July 24, 2001) ("As defendant correctly argues, if he did not know that the brokers would have to sell his stock or at what price, he could not have had a duty to disclose this information.").  More fundamentally, Plaintiff has no case.[5]

---

[5] To the extent that Plaintiff attempts to plead actual knowledge of this "anticipated risk," this Court still should dismiss its claims.  By pleading actual knowledge, Plaintiff's Securities Act claims "sound in fraud," subjecting them to Rule 9(b).  See Rombach v. Chang, 355 F.3d 164, 170-72 (2d Cir. 2004); In re Apple REITs Litig., No. 11-CV-2919 KAM, 2013 WL 1386202, at *10 (E.D.N.Y. Apr. 3, 2013) (Matsumoto, J.), aff'd in part, vacated in part on other grounds sub nom. Berger v. Apple REIT Ten, Inc.  Plaintiff has not satisfied the pleading standard for Rule 8, much less the heightened pleading standard for Rule 9(b).  (See Immunovant Motion at 16-33.)

This Court should dismiss the Securities Act claims because Plaintiff does not adequately allege that Defendants knew of the "anticipated risk" that IMVT-1401 would cause heightened cholesterol at the time of the September 2020 Offering but rather has disclaimed such knowledge.

**II.      This Court Should Dismiss The Securities Act Claims Because Plaintiff Alleges A Disagreement With Immunovant's Scientific Judgment, Which Is Not Actionable Under The Securities Laws.**

At their core, Plaintiff's allegations challenge Immunovant's scientific judgment in carrying out IMVT-1401's trials.  Specifically, Plaintiff alleges that (1) Immunovant (and the third-party that conducted most of the animal testing) misinterpreted the results of the animal studies by concluding that they showed "only minor increases in cholesterol" (AC ¶ 72) and (2) Immunovant should have designed the Phase 1 and Phase 2a human trials to test for cholesterol (AC ¶¶ 84-91).  Since Plaintiff alleges at most mismanagement, this Court should dismiss the Securities Act claims.  Apple REITs, 2013 WL 1386202, at *9 (Matsumoto, J.) ("allegations constituting nothing more than assertions of general mismanagement, or nondisclosures of mismanagement, . . . cannot support claims under §§ 11 and 12 of the Securities Act"); see also Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S, 11 F.4th 90, 96 (2d Cir. 2021) (explaining that allegations of "corporate mismanagement" are not actionable under the securities laws).

In re Rigel Pharmaceuticals, Inc. Securities Litigation, 697 F.3d 869 (9th Cir. 2012), is directly on point.  There, the Ninth Circuit rejected a challenge to a pharmaceutical company's testing methodology.  Specifically, in Rigel, the issuer announced that it had completed a Phase 2 clinical trial with "statistically significant results" suggesting that its drug was effective and also provided details about its statistical analysis, including "p-values" used to evaluate statistical significance.  Id. at 872-75.  The plaintiff alleged that those statements were false or misleading because the issuer undertook an "inaccurate and improper statistical analysis" that generated

9

"statistically false p-values." Id. at 877. The plaintiff claimed that, under a proper statistical analysis, the efficacy results for the drug were not statistically significant. Id.

The Ninth Circuit dismissed the Securities Act claims because the plaintiff had not adequately alleged falsity. Following a line of district court cases, the Ninth Circuit held that "the securities laws do not require that companies report information only from optimal studies, even assuming that scientists could agree on what is optimal, and that companies reporting information from imperfect studies are not required to disclose alternative methods for interpreting the data." Id. at 879 (citing Padnes v. Scios Nova Inc., No. C 95-1693, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996)). The plaintiff did "not allege that Defendants misrepresented their own statistical methodology, analysis, and conclusions, but instead criticize[d] only the statistical methodology employed by Defendants" – which "did not adequately plead falsity with respect to statistic[al] results." Id.[6]

Plaintiff's claims are **weaker** than those rejected in Rigel. Here, Plaintiff does not identify any defect in Immunovant's analysis of the data, much less allege that the analysis presented in the Offering Documents was "statistically false." Instead, Plaintiff criticizes the scientific methodology used by Immunovant (and the third party conducting most of the animal testing) that

---

[6] See also Tongue v. Sanofi, 816 F.3d 199, 214 (2d Cir. 2016) (rejecting allegations amounting to "little more than a dispute about the proper interpretation of data"); Singh v. Schikan, 106 F. Supp. 3d 439, 450 (S.D.N.Y. 2015) ("Ultimately, plaintiffs' complaint more closely resembles a criticism of the DEMAND studies' design than a claim for nondisclosure, a form of hindsight pleading not cognizable under Section 11."); Abely v. Aeterna Zentaris Inc., No. 12 CIV. 4711 PKC, 2013 WL 2399869, at *8 (S.D.N.Y. May 29, 2013) (dismissing Securities Act claims where the "plaintiff's allegations amount to a non-actionable critique of defendants' study design"); Gillis v. QRX Pharma Ltd., 197 F. Supp. 3d 557, 599 (S.D.N.Y. 2016) (dismissing securities claims based on "a mere disagreement with how defendants chose to interpret the results of the clinical trial"); In re MELA Scis., Inc. Sec. Litig., No. 10 CV 8774 VB, 2012 WL 4466604, at *13 (S.D.N.Y. Sept. 19, 2012) (same); accord In re Novan, Inc., No. 1:17CV999, 2018 WL 6732990, at *12 (M.D.N.C. Nov. 30, 2018) ("Plaintiffs may not utilize securities litigation to second guess the decisions by scientists and company officials in how they approached the clinical trials.").

interpreted the animal study data to show "only minor increases in cholesterol," offering a competing interpretation of a single confidential witness whose qualifications and methodology are unknown.  (AC ¶¶ 70-72.)  Plaintiff then continues that criticism, asserting that Immunovant should have designed subsequent human trials differently based on Plaintiff's preferred interpretation of the animal studies.  (AC ¶¶ 84-91.)  None of that is actionable.  The securities laws do not require Immunovant to design its drug studies or analyze the results according to Plaintiff's preferences.  "[M]erely alleging that defendants should have used different statistical methodology in their drug trials is not sufficient to allege falsity."  Rigel, 697 F.3d at 878.

This Court should dismiss the Securities Act claims because Plaintiff pleads a disagreement with Immunovant's scientific judgment, which is not actionable under the securities laws.

**III.    This Court Should Dismiss The Securities Act Claims Because There Was No Duty To Disclose IMVT-1401's "Anticipated Risk" Of Heightened Cholesterol.**

"An omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."  Ulbricht v. Ternium S.A., No. 18CV6801PKCRLM, 2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020).  In particular, as the Second Circuit recently held, pharmaceutical companies have no duty to disclose detailed information concerning their clinical trials.  See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343, 353 (2d Cir. 2022).  Plaintiff nonetheless asserts that Defendants had a duty to disclose in the Offering Documents the "anticipated risk" that IMVT-1401 would cause heightened cholesterol and the Phase 1 and 2a trial design not to test for cholesterol.  Plaintiff alleges three bases for Defendants' supposed duty to disclose: (1) misleading statements in the Offering Documents (AC ¶ 94); (2) Item 303 of Regulation S-K (AC ¶¶ 115-118); and (3) Item 105 (formerly Item 503(c)) of Regulation S-K (AC ¶ 119).  None provides any support to Plaintiff.

11

### A. The Offering Documents Did Not Contain Any Misleading Statements Concerning IMVT-1401's Alleged Risk Of Heightened Cholesterol.

"The securities laws [] do not impose . . . an affirmative duty to disclose any and all material information; they require disclosure only when, absent disclosure, a statement would be false or misleading." Ulbricht, 2020 WL 5517313, at *7. "Just because a reasonable investor would very much like to know a fact does not create any obligation to speak up." Bristol-Myers Squibb, 28 F.4th at 353. Indeed, "although many cases talk about how once a company speaks on an issue or topic, there is a duty to tell the whole truth, there is no boundless duty to reveal all facts on the subject just because a company or its officers speak on a subject." City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp., No. 18-CV-3608 (VSB), 2021 WL 4084572, at *6 (S.D.N.Y. Sept. 7, 2021). "[T]he statement made and the fact that allegedly should have been disclosed must share a reasonable level of specificity." Id.

Plaintiff does not identify **any** misleading statement in the Offering Documents that would impose on Defendants a duty to disclose the alleged "anticipated risk" that IMVT-1401 would cause heightened cholesterol and/or the Phase 1 and Phase 2a trial design not to test for cholesterol. Nor could it. The Offering Documents did not and could not mislead investors about IMVT-1401's alleged risk of heightened cholesterol or its trial design not to test for cholesterol because the Offering Documents said **nothing** about cholesterol. Plaintiff's allegations prove the point. The AC includes 15 paragraphs of lengthy block quotes from the Offering Documents that allegedly were misleading, but **none** contains a single word about cholesterol. (See AC ¶¶ 95-114, 120-128.) Accordingly, Plaintiff has not alleged that Defendants had a duty to disclose as a result of any misleading statement in the Offering Documents. Without that, Plaintiff's claims fail. "Numerous courts around the country have found that a study's alleged flaws or shortcomings need not be disclosed to a reasonable investor." Hoey v. Insmed Inc., No. CV 16-4323 (FLW),

12

2018 WL 902266, at *9 (D.N.J. Feb. 15, 2018).  Or, as the Second Circuit succinctly put it, "disclosure is not a rite of confession."  Danske Bank, 11 F.4th at 98.

**B.      Item 303 Did Not Create A Duty To Disclose IMVT-1401's Alleged Risk Of Heightened Cholesterol In The Offering Documents.**

Item 303 requires disclosure of "material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition."  17 C.F.R. § 229.303(a).  Plaintiff asserts that, under Item 303, the alleged "anticipated risk" that IMVT-1401 would cause heightened cholesterol and the Phase 1 and Phase 2a trial design not to test for cholesterol "were known events and uncertainties . . . required to be disclosed in the Sept. 2020 Offering Documents."  (AC ¶ 116.)  Wrong.

**First**, Plaintiff does not plead facts showing that the alleged "anticipated risk" that IMVT-1401 would cause heightened cholesterol constituted a trend or uncertainty at the time of the September 2020 Offering.  "According to the SEC's interpretive release regarding Item 303, disclosure under Item 303 is necessary where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations" as of the date that the challenged document was filed with the SEC.  Indiana Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 94 (2d Cir. 2016).  Even if Plaintiff had alleged an "anticipated risk" that IMVT-1401 would cause heightened cholesterol (and it has not, see supra Section I), Plaintiff has not alleged that there **was** a trend or uncertainty at the time of the September 2020 Offering.

Specifically, Plaintiff asserts that the "anticipated risk" of IMVT-1401 and the Phase 1 and Phase 2a trial design "were having and were reasonably likely to have an impact on the Company's continuing operations" (AC ¶ 116), but Plaintiff pleads **no** facts showing any such impact at the

13

time of the September 2020 Offering.  Plaintiff's conclusory allegations are not enough.  See In re Coty Inc. Sec. Litig., No. 14-cv-919 (RJS), 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (dismissing an Item 303 claim where the "allegations fail to demonstrate that the [purported trend] occurred sufficiently in advance of the Registration Statement that it required disclosure as a negative material trend under Item 303"); Pearlstein v. BlackBerry Ltd., 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) (finding the plaintiff's allegation of a trend "implausible" where the complaint did not establish the existence of a trend at the time that the public filings were made).

**Second**, Plaintiff has not alleged for purposes of its Securities Act claims that Defendants **knew** of any trend or uncertainty related to the "anticipated risk" that IMVT-1401 would cause heightened cholesterol at the time of the September 2020 Offering.  (See supra Section I.)  As the Second Circuit has made clear, "Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report with the SEC. **It is not enough that it should have known of the existing trend, event, or uncertainty.**"  Indiana Pub. Ret. Sys., 818 F.3d at 95.  Plaintiff's failure to plead, and disclaimer of, Defendants' knowledge renders its Item 303 allegations inadequate as a matter of law.  See, e.g., Rubinstein v. Credit Suisse Grp. AG, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) (dismissing an Item 303 claim based on the allegation that the defendant "can be presumed to have known" of the alleged trend); In re Coty, 2016 WL 1271065, at *7 (dismissing an Item 303 claim based on the allegation that management "must have known" of the alleged trend).

**Third**, the Offering Documents **did disclose** and warn of the trend or uncertainty about which Plaintiff complains – i.e., a side effect of IMVT-1401 that could delay the clinical studies and threaten the FDA approval process.  (See supra at p. 5.)  Courts in this Circuit dismiss Item 303 claims where the complained-of trend or uncertainty was disclosed because, "[w]hen a

14

company's offering documents include 'repeated warnings' about a specific business vulnerability, there is 'no basis' to conclude that the company failed to fulfill its affirmative disclosure obligations under Item 303." Asay v. Pinduoduo Inc., No. 18-cv-7625 (PKC), 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020) (dismissing an Item 303 claim based on a failure to disclose details of a recent increase in marketing expenses where the company's "disclosures left no doubt that its sales and marketing expenses had grown exponentially, that they could continue to grow, and that the Company could be materially and adversely affected if its customer growth failed to keep pace").

Take, for example, Stadnick v. Vivint Solar, Inc., 861 F.3d 31 (2d Cir. 2017). There, the Second Circuit affirmed the district court's dismissal of Item 303 claims alleging the issuer's failure to warn investors of the evolving regulatory regime in Hawaii because the registration statement "included repeated warnings that its business was generally vulnerable to changing regulations, and particularly so in Hawaii." Id. at 39-40. This case is no different. The Offering Documents contained extensive disclosures about the inherent uncertainty of the clinical trial process generally and the risks associated with adverse events specifically, explaining (among other things) that (1) "[f]ailures can occur at any stage of clinical trials"; (2) "[t]he commencement and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues"; and (3) "any delays in our clinical trials could . . . cause a decline in our share price" and "harm our business, financial condition and results of operations." (See supra at p. 5.) Such disclosures defeat Plaintiff's Item 303 claim.

### C.     Item 105 Did Not Create A Duty To Disclose IMVT-1401's Alleged Risk Of Heightened Cholesterol In The Offering Documents.

Item 105 (formerly Item 503(c)) requires a registrant to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering

15

speculative or risky," including a discussion of each risk factor to "adequately describe[] the risk." 17 C.F.R. § 229.105(a).  Plaintiff asserts that, under Item 105, the Offering Documents "were required to furnish the information" of the alleged "anticipated risk" that IMVT-1401 would cause heightened cholesterol and the Phase 1 and Phase 2a trial design not to test for cholesterol.  (AC ¶ 119.)  Wrong again.

"Although there is scant caselaw on Item 105, the inquiry can be boiled down to whether the Offering Documents were accurate and sufficiently candid."  In re Chembio Diagnostics, Inc. Sec. Litig., No. 20-CV-2706 (ARR) (PK), 2022 WL 541891, at *16 (E.D.N.Y. Feb. 23, 2022). Item 105 "does not impose a stand-alone disclosure requirement."  Howard v. Arconic, Inc., 395 F. Supp. 3d 516, 572 (W.D. Pa. 2019).  Rather, it is "reserved for the 'most significant factors that make the offering speculative or risky,' not any and all risks, or any information that an investor might wish to know."  Id. at 572 (quoting 17 C.F.R. § 229.105).  "Plaintiffs must demonstrate '**actual** knowledge' of a risk to sufficiently allege an Item 105 violation."  In re Chembio, 2022 WL 541891, at *16 (quoting Rubinstein, 457 F. Supp. 3d at 300); see also Howard v. Arconic, Inc., No. 2:17-cv-1057, 2021 WL 2561895, at *28 (W.D. Pa. Jun. 23, 2021) ("like with Item 303, the [plaintiff's] failure to adequately plead [the defendant's] actual knowledge is fatal to this claim").

Plaintiff's Item 105 claims fail for the same reasons that its Item 303 claims fail.  **First**, Plaintiff does not plead facts showing that there **was** an "anticipated risk" that IMVT-1401 would cause heightened cholesterol at the time of the September 2020 Offering.  In re Chembio, 2022 WL 541891, at *16.  **Second**, Plaintiff has not alleged for purposes of its Securities Act claims that Defendants **knew** of any "anticipated risk" that IMVT-1401 would cause heightened cholesterol at the time of the September 2020 Offering but rather has disclaimed such knowledge.  (See supra

16

Section I.)  See also In re Chembio, 2022 WL 541891, at *16; Rubinstein, 457 F. Supp. 3d at 300.

**Third**, the Offering Documents **did disclose** and warn of the risk about which Plaintiff complains.

(See supra at pp. 4-5.)  This Court should dismiss Plaintiff's Item 105 claims as well.

**IV.     This Court Should Dismiss Plaintiff's Securities Act Claims Because Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions.**

Plaintiff bases its Securities Act claims on 15 paragraphs in the AC containing different statements in the Offering Documents.  (See AC ¶¶ 95, 96, 98, 100, 102, 104, 106, 107, 109, 111, 113, 121, 123, 125, 127.)[7]  As discussed above, none says anything about cholesterol.  (See supra Section III.A.)  Rather, they disclose to investors: (1) the design of IMVT-1401's trials; (2) the observed safety results from past trials of IMVT-1401; (3) the observed efficacy results from past trials of IMVT-1401; (4) Immunovant's business goals; (5) Immunovant's controlling stockholder; and/or (6) Immunovant's risks.  None is actionable.

**Statements of Historical Fact:**  Plaintiff challenges many statements of historical fact. "Statements of fact may be actionable if (1) they are false; or (2) they are literally true but misleading through their context and manner of presentation."  In re Weight Watchers Int'l Inc. Sec. Litig., 504 F. Supp. 3d 224, 247 (S.D.N.Y. 2020).  A statement of historical fact is misleading only if it amounts to "a half-truth, that is, a literally true statement that creates a materially misleading impression, by omitting certain information."  In re Aceto Corp. Sec. Litig., No. 2:18-CV-2425-ERK-AYS, 2021 WL 4350501, at *8 (E.D.N.Y. Mar. 16, 2021).  "[W]hen analyzing offering materials for compliance with the securities laws, [courts] review the documents holistically and in their entirety."  Weight Watchers, 504 F. Supp. 3d at 244.  A "violation of

---

[7] For this Court's convenience, Defendants include Appendix A to the Declaration of Heather M. Speers in support of the Immunovant Motion, a chart identifying each of the challenged statements in the Offering Documents and whether (among other things) it is an accurate statement of historical fact, a statement of opinion, and/or a forward-looking statement.

securities laws premised on misstatements cannot occur unless an alleged material misstatement was false at the time it was made." Id. at 247.  None of the challenged statements of historical fact in the Offering Documents was false or misleading when made.

**Statements of Opinion:**  Plaintiff challenges many statements of opinion.  Statements of opinion may be actionable if (1) "the speaker did not hold the belief she professed"; (2) "the supporting facts she supplied were untrue"; or (3) "the speaker omits information whose omission makes the statement misleading to a reasonable investor." Sanofi, 816 F.3d at 210.  Plaintiff has not alleged, but rather explicitly disclaimed, for purposes of its Securities Act claims that Defendants knew that any statements of opinion were false at the time of the September 2020 Offering.  (See supra Section I.)[8]  Nor has Plaintiff alleged that any "supporting facts" in the Offering Documents were untrue.  Therefore, Plaintiff must allege that Defendants omitted information that made the statements of opinion in the Offering Documents misleading.

"The Supreme Court emphasized that meeting the standard under Omnicare 'is no small task for an investor.'" Sanofi, 816 F.3d at 210 (quoting Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 194 (2015)).  An opinion must be read in light of "its surrounding text, including hedges, disclaimers, and apparently conflicting information," as well as the "customs and practices of the relevant industry." Id. at 210.  An issuer is not obligated to disclose every "fact cutting the other way" from a statement of opinion, even if investors would have been "interested in knowing" that fact. Id. at 210, 212.  Rather, "the omitted facts must

---

[8] See, e.g., In re Gen. Elec. Co. Sec. Litig., 857 F. Supp. 2d 367, 403 (S.D.N.Y.) ("Nor can this statement be read as an opinion not truly held since plaintiff had disclaimed scienter as a basis of its Securities Act claims."), reconsidered in part on other grounds, 856 F. Supp. 2d 645 (S.D.N.Y. 2012); Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 124-25 (S.D.N.Y. 2010) ("The complaint, however, is devoid of any allegation that defendants did not truly hold those opinions at the time they were made public.  Plaintiff indeed disclaims any allegation that defendants knowingly or recklessly misstated Regions' loan loss reserves."), aff'd, 655 F.3d 105 (2d Cir. 2011).

conflict with what a reasonable investor" – i.e., an investor who was reasonably informed about the industry and had taken the time to read the challenged statement of opinion in context – "would take from the statement itself." Id. at 211. None of the challenged statements of opinion in the Offering Documents omitted information that made them misleading and consequently actionable.

**Forward-looking Statements:** Plaintiff challenges many forward-looking statements protected by the safe harbor of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-2. The PSLRA defines "forward-looking statements" to include "statement[s] of the plans and objectives of management for future operations, including plans and objectives relating to the products or services of the issuer." 15 U.S.C. § 77z-2(*i*)(1)(B). The Second Circuit recently confirmed that "predictions regarding [a clinical] trial's success and [a drug's] speed to market" are forward-looking statements "protected under the PSLRA." Bristol-Myers Squibb, 28 F.4th at 354. The safe harbor applies if (among other things) (1) the forward-looking statement is identified as such and "accompanied by meaningful cautionary language" or (2) the plaintiff fails to prove the statement was made "with actual knowledge" that it was "false or misleading." 15 U.S.C. § 77z-2(c)(1)(A)(i), (c)(1)(B).

"The safe harbor is written in the disjunctive; that is, a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language **or** . . . the plaintiff fails to prove that it was made with actual knowledge." Slayton v. Am. Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010). The challenged forward-looking statements are protected under either test. **First**, the Offering Documents informed investors that they contained forward-looking statements and told investors to read such statements in conjunction with **nearly 60 pages** of highly detailed risk disclosures warning of the events about which Plaintiff complains. (Prospectus at 10-68; see supra at pp. 4-5.) Courts have found similar risk disclosures by pharmaceutical companies

19

sufficient.[9] **Second**, Plaintiff has not alleged, but rather has explicitly disclaimed, for purposes of its Securities Act claims that Defendants knew that any forward-looking statements were false or misleading at the time of the September 2020 Offering.  (See supra Section I.)  As a result, all of the challenged forward-looking statements in the Offering Documents are protected by the PSLRA's safe harbor, and none is actionable.[10]

A. **The Challenged Statements Disclosing The Design Of IMVT-1401's Trials Are Not Actionable.**

Plaintiff challenges several statements in the Offering Documents describing the design of IMVT-1401's trials.  (See AC ¶¶ 96, 98, 104, 107, 109, 111.)  Those statements are not actionable.

---

[9] See In re Aratana Therapeutics Inc. Sec. Litig., 315 F. Supp. 3d 737, 758-60 (S.D.N.Y. 2018) (concluding that, in light of a pharmaceutical company's "comprehensive disclosures of [] regulatory risk, the mere fact that the risk materialized cannot support a claim"); In re Sanofi Sec. Litig., 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015) (finding a risk disclosure that a "regulatory authority may deny or delay an approval because it was not satisfied with the structure or conduct of clinical trials" adequate because it "explicitly identifie[d] the salient risk, namely, that a regulatory authority such as the FDA could deny or delay approval"), aff'd sub nom. Tongue v. Sanofi, 816 F.3d 199; In re EDAP TMS S.A. Sec. Litig., No. 14 CIV. 6069 LGS, 2015 WL 5326166, at *10 (S.D.N.Y. Sept. 14, 2015) (holding that a company "adequately disclosed the possibility of a risk that materialized when the FDA denied approval" because the company cautioned "that factors such as 'the clinical and regulatory status of our HIFU devices,' 'the uncertainty of market acceptance for our HIFU devices' and 'the uncertainty in the U.S. FDA approval process' 'could affect future results'").  The same is true under the "bespeaks caution" doctrine, which holds that a "forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading."  Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd., 620 F.3d 137, 141 (2d Cir. 2010).

[10] See In re NovaGold Res. Inc. Sec. Litig., 629 F. Supp. 2d 272, 295 (S.D.N.Y. 2009) (rejecting the argument "that the safe harbor and bespeaks caution doctrine should not apply because the defendants knew" that the alleged misstatements "were false" where the complaint went "to great pains to allege that misstatements in the Registration Statement resulted from negligence, not fraud, and to disclaim any intention that the Securities Act claims sound in fraud"); Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn, 53 F. Supp. 3d 882, 910 (E.D. La. 2014) ("Nonetheless, plaintiff's claim fails because the PSLRA requires specific allegations that defendants made the prediction with actual knowledge of its falsity, and plaintiff expressly disclaims such allegations.").

20

**First**, the Offering Documents disclosed: (1) how clinical trials are conducted generally (AC ¶ 96); (2) how the clinical trials of IMVT-1401 were conducted specifically, including the number of participants in the trials and the purpose of the trials (i.e., safety and efficacy) (AC ¶¶ 98, 104, 109, 111); and (3) that animal studies were conducted by a third party using monkeys (AC ¶ 107). Plaintiff does not challenge the accuracy of those statements of historical fact but instead asserts that they were misleading because they failed to disclose that IMVT-1401's Phase 1 and Phase 2a trials did not test for cholesterol. (AC ¶ 94, 97, 99, 105, 108, 110, 112.) As the Second Circuit has held, a company's general description of its trial design does not require it to disclose detailed information about that design. See Bristol-Myers Squibb, 28 F.4th at 353 ("Bristol-Myers had no obligation to disclose the precise percentage of PDL1 expression which defined 'strong' expression in the Opdivo trial."). Nor could the Offering Documents have misled a reasonable investor that IMVT-1401's Phase 1 and Phase 2a trials were testing for cholesterol because the Offering Documents did not provide detailed information about the safety issues for which those trials were testing and did not even mention cholesterol. See Macquarie Infrastructure, 2021 WL 4084572, at *6.

**Second**, the Offering Documents disclosed that "subjects in clinical trials with IMVT-1401 will be carefully monitored for any AEs [i.e., adverse events], including those related to immunogenicity." (AC ¶ 107.) Plaintiff asserts that the statement was false or misleading because "Immunovant was not carefully monitoring for the AE of elevated cholesterol and LDL levels," presumably referring to the Phase 1 trial that already had been completed and the Phase 2a trials that already were underway. (See AC ¶ 108.) The challenged statement was a statement of opinion because what it means to "carefully" monitor necessarily reflects scientific judgment and also a forward-looking statement because it describes how trials "will be" conducted.

21

The challenged statement is a non-actionable statement of opinion because no reasonable investor reading it would be misled that Immunovant already had tested trial subjects for heightened cholesterol. That is all the more true since Immunovant expressly stated that (1) drug safety is tested not all at once but in phased trials (see AC ¶ 96); (2) IMVT-1401's trials still were at an "early stage" and had not yet fully evaluated the drug's safety (see AC ¶125); and (3) adverse effects could emerge in the future (see AC ¶ 123). See also In re Keryx Biopharmaceuticals, Inc., Sec. Litig., No. 13 CIV. 1307 KBF, 2014 WL 585658, at *11 (S.D.N.Y. Feb. 14, 2014) (that a drug company "should have informed the world of [its supposedly] flawed methodology" was "not falsity" but simply "less disclosure than plaintiffs would have liked"). Moreover, the challenged statement is a protected forward-looking statement. "Careful" monitoring does not require testing for cholesterol but, even if it did, "careful" monitoring in the future does not require testing for cholesterol in the past or present.

**Third**, the Offering Documents disclosed that Immunovant "currently remain[s] on track to report initial results from our ASCEND GO-2 trial in the first half of calendar year 2021"; "plan[s] to report initial results from the high dose cohort of our Phase 2a trial of IMVT-1401 in patients with WAIHA in the first quarter of calendar year 2021"; and "anticipate[s] initiating our Phase 3 trial of IMVT-1401 in patients with MG in the first half of calendar year 2021." (AC ¶ 113.) Those are quintessential protected forward-looking statements. (See supra at pp. 19-20.)

**B.    The Challenged Statements Disclosing The Observed Safety Results From Past Trials Of IMVT-1401 Are Not Actionable.**

Next, Plaintiff challenges several statements in the Offering Documents summarizing the observed safety results from IMVT-1401's past trials at the time of the September 2020 Offering. (See AC ¶¶ 98, 102, 104, 106, 107, 109, 111.) Those statements also are not actionable.

22

**First**, the Offering Documents include a table of the "Most Common Adverse Events Reported" in the Phase 1 trial. (AC ¶ 106.) Plaintiff does not challenge the accuracy of the table – which presents statements of historical fact – but asserts that the table was misleading because IMVT-1401's Phase 1 and Phase 2a trials did not test for cholesterol. (AC ¶ 108.) Nonsense. "[D]issemination of top-line results" – like those in the table – "does not trigger a duty to disclose the full results of a study." In re Amarin Corp. PLC Sec. Litig., No. 319CV06601BRMTJB, 2021 WL 1171669, at *15 (D.N.J. Mar. 29, 2021). The disclosure in a table of the safety results of IMVT-1401's Phase I trial did not require the Offering Documents to disclose the design of IMVT-1401's trials. See Macquarie Infrastructure, 2021 WL 4084572, at *6.

**Second**, the Offering Documents disclosed what Immunovant "concluded" from the results of IMVT-1401's animal studies, including the "estimated safety margin." (AC ¶ 107.) "Estimates, in particular, constitute a well-established species of opinion." Martin v. Quartermain, 732 F. App'x 37, 40 n.1 (2d Cir. 2018). Plaintiff asserts that the challenged statement was misleading because it failed to disclose that the results of the animal studies showed heightened cholesterol (see AC ¶ 108) even as Plaintiff concedes that the third party conducting the tests for cholesterol in the animal studies found only a "minor increase in cholesterol" (AC ¶ 72). The Second Circuit has rejected substantially similar allegations. In Sanofi, the plaintiff alleged that a pharmaceutical company touting "stunning" clinical data should have disclosed the FDA's reservations about the underlying trial. 816 F.3d at 213. The Second Circuit concluded that the plaintiff's claims were "little more than a dispute about the proper interpretation of data" and held that "Defendants' statements were not misleading simply because the FDA disagreed with Defendants' interpretation of the data." Id. at 214. The same is true here. Plaintiff may dispute the proper interpretation of

23

data from the animal studies, but the challenged statements were not misleading simply because Plaintiff disagrees with Immunovant.

**Third**, the Offering Documents disclosed that (1) IMVT-1401 had been observed to be "well tolerated"; (2) observed adverse events were "mild to moderate"; and (3) Immunovant had not observed any "discontinuations [of trial participants] due to AEs." (AC ¶¶ 98, 102, 104, 106, 107, 109.) Plaintiff asserts that the statements were misleading because they failed to disclose that IMVT-1401's Phase 1 and Phase 2a trials did not test for heightened cholesterol. (See AC ¶¶ 94, 99, 101, 103, 105, 108, 110, 112, 114.) Those statements of drug trial results are non-actionable statements of opinion.

They are statements of opinion because they necessarily reflect scientific and medical judgments about how to interpret the underlying data. See MELA, 2012 WL 4466604, at *13 (statements about "positive top line results" were "essentially no different than opinions").[11] Indeed, the Offering Documents warned that "the information we choose to publicly disclose regarding a particular study or clinical trial is based on what is typically extensive information"; that "you or others may not agree with what we determine is the material or otherwise appropriate information to include in our disclosure"; and that "any information we determine not to disclose may ultimately be deemed significant with respect to future decisions, conclusions, views, activities or otherwise regarding a particular drug . . . or our business." (See supra at p. 5.)

They are non-actionable because Plaintiff merely criticizes the trial design; it does not even allege that the data from the human trials contradict any of the challenged statements. As such,

---

[11] They also are puffery. See In re Arrowhead Pharms., Inc. Sec. Litig., No. CV 16-08505 PSG-PJW, 2017 WL 8791111, at *5 (C.D. Cal. Dec. 21, 2017) (statements that "'[a drug] is well tolerated with no serious adverse events' are non-actionable statements of optimism based on Defendant's interpretation of its trial results"), aff'd, 782 F. App'x 572 (9th Cir. 2019).

Plaintiff's allegations concerning statements about the results of the human trials are even **weaker** than its allegations concerning statements about the results of the animal studies. A fortiori, they are inadequate as a matter of law. See Sanofi, 816 F.3d at 213-14 (dismissing allegations criticizing drug trial design and safety results).

### C. The Challenged Statements Disclosing The Observed Efficacy Results From Past Trials Of IMVT-1401 Are Not Actionable.

Then, Plaintiff challenges several statements in the Offering Documents describing the observed results of IMVT-1401's efficacy from past trials, as well as the efficacy of other drugs in the same class (anti-FcRn antibodies), at the time of the September 2020 Offering. (See AC ¶¶ 98, 100, 104.) Those statements also are not actionable.

The Offering Documents disclosed that (1) IMVT-1401 and similar drugs were "promising" treatments; (2) "dose-dependent and reversible albumin reductions were observed"; (3) IMVT-1401 was a "viable pharmacologic target"; and (4) the results to date "support the continued development of IMVT-1401." (AC ¶¶ 98, 100, 104.) Plaintiff asserts that the statements were misleading because they characterized IMVT-1401's efficacy results as "promising" and IMVT-1401 as potentially "viable" when IMVT-1401's Phase 1 and Phase 2a trials had not tested for cholesterol. (See AC ¶¶ 99, 101, 105.) Those statements of efficacy results are non-actionable statements of opinion.[12]

---

[12] They also are puffery. As the Second Circuit has held, a drug company's disclosure of "Encouraging Top-line Results" exemplifies "expressions of puffery and corporate optimism that do not generally give rise to securities violations." Kleinman v. Elan Corp., plc, 706 F.3d 145, 153 (2d Cir. 2013); see also Biondolillo v. Roche Holding AG, No. CV 17-4056, 2018 WL 4562464, at *6 (D.N.J. Sept. 24, 2018) (describing results as "terrific news for patients" is non-actionable puffery); In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 559 (S.D.N.Y. 2004) (describing a drug as a "first-in-class novel blockbuster drug for treating cancer" is non-actionable puffery and a statement of opinion). "[R]easonable investors do not place substantial reliance on generalizations regarding a company's health or the strength of a company's product." In re AT&T/DirecTV Now Sec. Litig., 480 F. Supp. 3d 507, 523 (S.D.N.Y. 2020).

They are statements of opinion because, again, they necessarily reflect scientific and medical judgments about how to interpret the underlying data.  See MELA, 2012 WL 4466604, at *13.  They are non-actionable because Plaintiff does not allege that they omitted any information about IMVT-1401's efficacy that made the results misleading to a reasonable investor.  See Sanofi, 816 F.3d at 212.  Indeed, Plaintiff's allegations reveal a fundamental disconnect:  The challenged statements concern IMVT-1401's **efficacy** results, but Plaintiff alleges that they were misleading only because they omitted **safety** information concerning cholesterol.  See id. at 243 (a complaint does not allege falsity absent a "relationship" between the misstatement and the allegedly omitted information).  Plaintiff nowhere disputes IMVT-1401's efficacy.

**D.      The Challenged Statements Disclosing Immunovant's Business Goals Are Not Actionable.**

Further, Plaintiff challenges statements in the Offering Documents describing Immunovant's business goals at the time of the September 2020 Offering.  (See AC ¶¶ 98, 100.)  Those statements are not actionable either.

**First**, the Offering Documents expressed optimism that IMVT-1401 would prove superior to other treatments, which "often fail to address patients' needs since they are limited by delayed onset of action, waning therapeutic benefit over time and unfavorable safety profiles."  (AC ¶ 98.)  Plaintiff asserts that the statement was misleading because of the "anticipated risk" that IMVT-1401 would cause heightened cholesterol.  (AC ¶ 99.)  The challenged statement is puffery.  See AT&T/DirecTV Now, 480 F. Supp. 3d at 523 (holding that statements that a product is "an improvement," or that a business has "significantly enhanced capabilities" or possesses "competitive advantage[s]," are all "standard puffery").  It also is a statement of opinion, see Gregory v. ProNAi Therapeutics Inc., 297 F. Supp. 3d 372, 407 (S.D.N.Y.) (a statement that a drug "'could potentially amplify and be complementary to' other therapies" was an opinion), aff'd,

26

757 F. App'x 35 (2d Cir. 2018), which is non-actionable because Plaintiff does not allege that the statement omitted any information about IMVT-1401 or other treatments that would mislead a reasonable investor.  Again, Plaintiff does not allege, but rather disclaims, for purposes of the Securities Act claims that there was such an "anticipated risk" at the time of the September 2020 Offering.  (See supra Section I.)  In addition, it is a protected forward-looking statement.  See Bristol-Myers Squibb, 28 F.4th at 354.

**Second**, the Offering Documents state that Immunovant's business goal is to "become a leading biopharmaceutical company in the development and commercialization of innovative therapies for autoimmune diseases with significant unmet need" by "[m]aximiz[ing] the probability of success of IMVT-1401," its "[a]bility to rapidly establish proof-of-concept through comparatively short duration clinical trials," and its "[a]bility to rapidly initiate pivot trial programs and potentially receive regulatory approval."  (AC ¶ 100.)  Plaintiff again asserts that the statement was misleading because of the "anticipated risk" that IMVT-1401 would cause heightened cholesterol.  (AC ¶ 101.)  The challenged statement again is a statement of opinion, which again is non-actionable because Plaintiff does not allege that the statement omitted any information about Immunovant's goals or IMVT-1401 that would mislead a reasonable investor.  Again, Plaintiff does not allege, but rather disclaims, for purposes of the Securities Act claims that there was such an "anticipated risk" at the time of the September 2020 Offering.  (See supra Section I.)  "A company's statements of hope, opinion, or belief about its future performance or general market conditions are not actionable under the securities laws."  In re Duane Reade Inc. Sec. Litig., No. 02 CIV 6478 NRB, 2003 WL 22801416, at *4 (S.D.N.Y. Nov. 25, 2003) aff'd sub nom. Nadoff v. Duane Reade, Inc., 107 F. App'x 250 (2d Cir. 2004).  In addition, the challenged statement again is a protected forward-looking statement.  See Johnson v. Sequans Commc'ns

27

S.A., No. 11 CIV. 6341 PAC, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013) (statements that a company "intend[ed] to maintain our market position" and was "leveraging our strong market position and technical expertise" were forward-looking).

### E. The Challenged Statement Disclosing Immunovant's Controlling Shareholder Is Not Actionable.

Inexplicably, Plaintiff challenges a statement in the Offering Documents identifying Roivant as Immunovant's "controlling stockholder" at the time of the September 2020 Offering. (See AC ¶¶ 95, 97.)  Plaintiff does not allege how the statement was false or misleading (see AC ¶ 97) but instead admits that Roivant was Immunovant's controlling stockholder (AC ¶ 17).

### F. The Challenged Statements Disclosing Immunovant's Risks Are Not Actionable.

Finally, Plaintiff challenges certain risk disclosures in the Offering Documents.  (See AC ¶¶ 120-128.)  Specifically, Plaintiff asserts that the challenged risk disclosures were misleading because they should have (1) specifically highlighted IMVT-1401's "anticipated risk" of heightened cholesterol; (2) stated that the risk was "extremely likely," if not "certain," to come to pass; and (3) disclosed that IMVT-1401 already had "safety issues" due to the animal study data. (AC ¶¶ 122, 124, 126, 128.)  Plaintiff does not plead facts showing that any of the challenged risk disclosures were false or misleading.

**First**, the Offering Documents were not required to list every potential side effect of IMVT-1401.  See Bristol-Meyers Squibb, 28 F.4th at 355 (finding "no law to support [] an argument" that a pharmaceutical company's risk factors must disclose "why [a clinical] trial might

28

fail"). (See also supra at p. 20 n.9.)[13]  The risk disclosures were not misleading simply because they did not specifically identify a risk of heightened cholesterol.

**Second**, the Offering Documents were not required to disclose that a risk of heightened cholesterol was "extremely likely," if not "certain," to come to pass.  See Rubinstein, 457 F. Supp. 3d at 297 (concluding that "[t]he use of the word 'may' rather than 'would'" did not render risk disclosures misleading).  Plaintiff's re-assessment of the probabilities reflects only the benefit of 20/20 hindsight.  See id. at 295.

**Third**, the Offering Documents were not required to disclose that IMVT-1401 already had "safety issues" due to the animal study data.  Plaintiff misconstrues the risk disclosure concerning "safety issues" which, in context, refers to human trials – it was part of a list of problems that might arise in "clinical" trials – not animal studies.  (Prospectus at 23.)  More fundamentally, Plaintiff simply repackages its allegation that Defendants should have disclosed the "anticipated risk" that IMVT-1401 would cause heightened cholesterol.  Yet Plaintiff has not alleged for purposes of its Securities Act claims that any "anticipated risk" had occurred, let alone that Defendants knew of any "anticipated risk," at the time of the September 2020 Offering.  (See supra Section I.)  See also Rosi v. Aclaris Therapeutics, Inc., No. 19-CV-7118 (LJL), 2021 WL 1177505, at *20 (S.D.N.Y. Mar. 29, 2021) (dismissing claims where "the risks that Plaintiff emphasizes had not materialized at the time of the SEC filings, or even later"); Gregory, 297 F. Supp. 3d at 406 n.19 (dismissing claims where the relevant risk had not occurred).

---

[13] Accord Golesorkhi v. Green Mountain Coffee Roasters, Inc., 973 F. Supp. 2d 541, 554 (D. Vt. 2013) (issuers "need not show that they warned investors of the particular factor that caused their projections not to be true"), aff'd, 569 F. App'x 43 (2d Cir. 2014); In re Adient plc Sec. Litig., No. 18-CV-9116 (RA), 2020 WL 1644018, at *21 (S.D.N.Y. Apr. 2, 2020) (rejecting the argument that cautionary disclosures were insufficiently specific); In re WEBMD Health Corp. Sec. Litig., No. 11 CIV. 5382 JFK, 2013 WL 64511, at *8 (S.D.N.Y. Jan. 2, 2013) (holding that cautionary language was sufficient despite the absence of an "extended discussion of risk factors").

Not only does Plaintiff fail to plead facts showing that any of the challenged risk disclosures were actionable, but also the risk disclosures in the Offering Documents – far from being false or misleading – warned investors of the risk of "safety issues" and, therefore, are fatal to Plaintiff's claims. It is well established that a "Section 11 [or Section 12(a)(2)] claim fails as a matter of law when a registration statement [or prospectus] warns of the exact risk that later materialized." Rubinstein, 457 F. Supp. 3d at 296. The Offering Documents told investors: "The commencement and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues." (Prospectus at 23.) "Defendants are not required to predict the precise manner in which risks will manifest themselves" – i.e., that heightened cholesterol would be the specific "safety issue" that emerged. In re TVIX Sec. Litig., 25 F. Supp. 3d 444, 457 (S.D.N.Y.), aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG, 588 F. App'x 37 (2d Cir. 2014). Ultimately, Plaintiff's allegations reflect only a hindsight assessment of exactly how the disclosed risk of "safety issues" materialized. That cannot support a Securities Act claim: "A plaintiff may not plead a Section 11 [or Section 12(a)(2)] claim with the benefit of 20/20 hindsight or base the claim on a backward-looking assessment of the registration statement [or prospectus]." Rubinstein, 457 F. Supp. 3d at 295.

*     *     *

For all of these reasons, none of the challenged statements in the Offering Documents on which Plaintiff bases its Securities Act claims is actionable.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the foregoing reasons, this Court should dismiss the claims against the Underwriter Defendants with prejudice.

30

Dated: May 27, 2022

Respectfully submitted,

*/s/ Daniel Roeser*
Daniel Roeser
Valerie A. Haggans
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
droeser@goodwinlaw.com
vhaggans@goodwinlaw.com

Justin D. Ward*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:  (617) 570-1000
Fax:  (617) 523-1231
jward@goodwinlaw.com

* Admitted only in New York

*Attorneys for Defendants SVB Securities LLC
(f/k/a SVB Leerink LLC), LifeSci Capital LLC,
Chardan Capital Markets LLC, Guggenheim
Securities, LLC, and Robert W. Baird & Co. Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a true and correct copy of the foregoing was served on all parties of record via electronic mail.

*/s/ Justin D. Ward*