**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

    -against-

IMMUNOVANT, INC. f/k/a HEALTH
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, PAMELA YANCHIK
CONNEALY, FRANK M. TORTI, ANDREW
FROMKIN, DOUGLAS HUGHES, GEORGE
MIGAUSKY, ATUL PANDE, ERIC
VENKER, SVB LEERINK LLC, LIFESCI
CAPITAL LLC, CHARDAN CAPITAL
MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

          Defendants.

-------------------------------------------------------------X

1:21-cv-00918 (KAM) (VMS)

<u>CLASS ACTION</u>

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**<u>MOTION TO DISMISS OF ROIVANT SCIENCES LTD.</u>**

WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
650 5th Ave #1500
New York, NY 10019
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

    A.    Factual Background ...........................................................................................1

    B.    Procedural History ...........................................................................................3

LEGAL STANDARD.............................................................................................................4

ARGUMENT .........................................................................................................................5

I.     The Amended Complaint Does Not State a Control-Person Claim.......................................5

    A.    Lead Plaintiff Fails to Allege a Primary Violation of the Securities Laws by Immunovant. ...............................................................................................5

    B.    Lead Plaintiff Fails to Allege that Roivant "Controlled" Immunovant for Purposes of Section 15(a) and Section 20(a). ...............................................6

    C.    Lead Plaintiff Fails to Allege "Culpable Participation" by Roivant for Purposes of Section 20(a). ...............................................................................7

II.    The Amended Complaint Does Not Plead a Primary Violation of Section 10(b) Against Roivant. ......................................................................................................11

CONCLUSION....................................................................................................................14

**TABLE OF AUTHORITIES**

Page

**CASES**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir.1995) ...............................................................11

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP,*
No. 17-cv-1235, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018)..........................................6, 7

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ...............................................4

*Arkansas Teacher Retirement System v. Bankrate, Inc.,*
18 F. Supp. 3d 482 (S.D.N.Y. 2014)...............................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................4

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994)......................................................................................................12

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996) ...........................................................8

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.,*
323 F. Supp. 3d 393 (S.D.N.Y. 2018).........................................................................6, 7

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
553 F.3d 187 (2d Cir. 2009)..................................................................................8, 10, 12

*Emerson v. Mutual Fund Series Trust*, 393 F. Supp. 3d 220 (E.D.N.Y. 2019) ...............................5

*Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455 (2d Cir. 2019).......................................................4

*Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016)...........................................10, 11

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners,*
No. 17-cv-9887, 2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019)........................................6, 7

*In re Aegean Marine Petroleum Network, Inc.,*
529 F. Supp. 3d 111 (S.D.N.Y. 2021)................................................................................13

*In re eSpeed, Inc. Securities Litigation*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006)...........................11

*In re GeoPharma, Inc. Securities Litigation*, 411 F. Supp. 2d 434 (S.D.N.Y. 2006)....................11

*In re GOL Linhas Aéreas Inteligentes S.A. Securities Litigation,*
No. 20-cv-4243, 2022 WL 1093215 (E.D.N.Y. Apr. 12, 2022)................................................4

*In re Keyspan Corp. Securities Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) .......................10

*In re Kingate Management Securities Litigation*, 784 F.3d 128 (2d Cir. 2015)............................4

*In re Lehman Bros. Mortgage-Backed Securities Litigation,*
650 F.3d 167 (2d Cir. 2011)................................................................................................6

Page

Cases—continued:

*In re Mindbody, Inc. Securities Litigation*, 489 F. Supp. 3d 188 (S.D.N.Y. 2020) .......................13

*In re MRU Holdings Securities Litigation*, 769 F. Supp. 2d 500 (S.D.N.Y. 2011) .......................11

*In re Northern Telecom Ltd. Securities Litigation*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000).................................................................................11

*In re Tenaris S.A. Securities Litigation*, 493 F. Supp. 3d 143 (E.D.N.Y. 2020) .............................6

*In re Veon Ltd. Securities Litigation*,
    No. 15-cv-08672, 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)..............................................8

*In re Weight Watchers International Inc. Securities Litigation*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020)...........................................................................4, 7

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)...............................13

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...................................................9, 11, 12

*Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020)..................................................5

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)...........................................................................5, 6

*Noto v. 22nd Century Grp., Inc.*,
    No. 21-0347, --- F.4th ----, 2022 WL 1633827 (2d Cir. May 24, 2022) ................................14

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .............................................................8, 9

*Pacific Investment Management Co. LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)............................................................................................13

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ....................................................................................12, 13

*Police & Fire Retirement System of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210, 227 (S.D.N.Y. 2009)......................................................................5

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)..............................................................................6

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)................................................................10

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Communications Ltd.*,
    No. 17-cv-4937, 2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019)..............................................7

*Saltz v. First Frontier, L.P.*, 485 F. App'x 461 (2d Cir. 2012)...................................................13

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip
Morris Cos., Inc.*, 75 F.3d 801 (2d Cir. 1996) ................................................................11

*Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019)........................................8

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ...............................................10

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017)..........................................................1, 5

Page

Cases—continued:

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ........................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................4, 8, 11, 12

*Turner v. MagicJack VocalTec, Ltd.*,
   No. 13 Civ. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) .................................................10

*Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020) .......................................11

*Wyche v. Advanced Drainage Systems, Inc.*, 710 F. App'x 471 (2d Cir. 2017) ............................10

## STATUTES AND REGULATIONS

Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74
   (codified as amended at 15 U.S.C. § 77a *et seq.*)
      § 77k..................................................................................................................................5
      § 77*l* ...............................................................................................................................5
      § 77*o*...........................................................................................................................3, 5

Securities Exchange Act of 1934, Pub. L. No. 73-291, 48 Stat. 881
   (codified as amended at 15 U.S.C. § 78a *et seq.*)
      § 78j ........................................................................................... *passim*
      § 78t ........................................................................................... *passim*
      § 78u-4 .........................................................................................4, 5, 8

17 C.F.R. § 240.10b-5................................................................................................11, 12, 13

## OTHER AUTHORITIES

Christine Lagorio-Chafkin, *How to Structure an Earn-out*, Inc.,
   https://www.inc.com/guides/earn-out-structuring.html ...........................................................9

**INTRODUCTION**

The memoranda filed by Immunovant, Inc. and the Underwriter Defendants ably demonstrate why this case should be dismissed. Roivant Sciences Ltd. files this separate motion to dismiss only to highlight the absence of allegations against Roivant. Throughout Lead Plaintiff's 108-page amended complaint, one struggles to find any substantive, factual allegations that Roivant had actual control over, participated in, or even knew about any purported wrongdoing at Immunovant. The allegations against Roivant are palpably deficient, and the claims against it should be dismissed.

**BACKGROUND**

Accepting the well-pleaded factual allegations of the Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") as true solely for purposes of this motion, *see Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 33 (2d Cir. 2017), Roivant incorporates by reference the factual background set forth in Immunovant's memorandum. It adds the following brief recitation to better enable the Court to consider the particular grounds for Roivant's dismissal.

**A.     Factual Background**

Roivant is a healthcare company focused on founding and funding biopharmaceutical and health technology companies. Am. Compl. ¶ 17. Immunovant (formerly known as Immunovant Sciences Ltd. ("Legacy Immunovant")), is one such company—a clinical-stage biopharmaceutical company focused on developing drugs to treat autoimmune diseases. *Id.* ¶¶ 46–47.

Prior to the start of the putative class period, Legacy Immunovant was a private company in which Roivant held a majority stake. *Id.* ¶ 17. At all relevant times, Immunovant's operations focused exclusively on the development of IMVT-1401, a drug designed to treat rare autoimmune diseases for which there are currently few available treatment options. *Id.* ¶¶ 2, 98. According to

1

the Amended Complaint, the Korean company that developed the compound now known as IMVT-1401 initially licensed the development rights to Roivant, which later granted the license to Immunovant. *Id.* ¶ 77. Lead Plaintiff does not specify what role, if any, Roivant played in the development of IMVT-1401 during the brief period that it held the license. Nor does Lead Plaintiff allege any facts indicating either (a) that Roivant had *any part* in IMVT-1401's development and clinical testing at any time after Immunovant licensed the drug, or (b) that Roivant had *any knowledge* of the results of any preclinical studies or clinical trials of IMVT-1401 — including, as relevant here, certain preclinical studies in cynomolgus monkeys or IMVT-1401's Phase 1 and Phase 2a clinical trials.

On October 2, 2019, the first day of the putative class period, Immunovant issued a press release announcing its intention to become a public company via a merger with a special purpose acquisition company (or "SPAC") known as Health Sciences Acquisition Corporation ("HSAC"). *Id.* ¶¶ 47, 50. The merger was approved by HSAC's shareholders on December 16, 2019. *Id.* ¶ 52. Following the merger, Roivant remained a majority shareholder of the newly public Immunovant, Inc. ("Immunovant"), and retained its majority interest in Immunovant throughout the putative class period. *Id.* ¶ 17. Under the terms of the share exchange agreement governing the merger between Legacy Immunovant and HSAC (the "Share Exchange Agreement"), Roivant was also entitled to receive up to 20 million additional "earnout shares" of Immunovant common stock if Immunovant's stock price went above certain pre-defined price targets. *Id.* ¶ 273. However, the Amended Complaint does not contain allegations that Roivant had *any involvement* in (let alone control over) the management of Immunovant, its day-to-day operations, or any statements made by Immunovant to investors or anyone else — much less factual support for such allegations.

2

On or about September 2, 2020, Immunovant sold approximately 5.27 million shares of common stock to the public via a follow-on offering. *Id.* ¶ 92. In connection with that offering, Immunovant filed a Form S-1 Registration Statement and Prospectus with the Securities and Exchange Commission (the "September 2020 Offering Documents"). *Id.* Lead Plaintiff does not allege that Roivant had *any part* in drafting, revising, or approving the September 2020 Offering Documents, or that Roivant directed the preparation of those documents in any way.

On February 2, 2021, following a series of promising Phase 1 and Phase 2a clinical trials, Immunovant announced a "voluntarily pause in clinical dosing of IMVT-1401" after observing elevated total cholesterol and LDL levels in patients treated with IMVT-1401 during a Phase 2b trial. *Id.* ¶ 129. Immunovant's stock price declined in response to the company's February 2, 2021 announcement. *Id.* ¶ 134.

## B.    Procedural History

The initial complaint in this action was filed on February 19, 2021. Lead Plaintiff SEPTA Pension Plan Master Trust was appointed on December 29, 2021. On March 15, 2022, Lead Plaintiff filed the Amended Complaint, asserting claims against Immunovant, certain Immunovant officers and directors, the banks that underwrote an offering of Immunovant securities, and Roivant. As to Roivant in particular, the Amended Complaint asserts control-person claims against Roivant under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78t(a), and Section 15(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77*o*(a), as well as primary securities fraud claims against Roivant under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).

3

## LEGAL STANDARD

A securities-fraud plaintiff's pleading burdens are well established.  Like all plaintiffs, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts look at a complaint's "well-pleaded factual allegations," and "draw on [their] judicial experience and common sense" to "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  Courts may also consider facts outside of the complaint of which they can take judicial notice. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019).

A securities-fraud plaintiff must also meet rigorous pleading requirements that routinely lead to dismissal of complaints. *See, e.g.*, *In re GOL Linhas Aéreas Inteligentes S.A. Sec. Litig.*, No. 20-cv-4243, 2022 WL 1093215, at *1 (E.D.N.Y. Apr. 12, 2022); *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 238 (S.D.N.Y. 2020).  As relevant here, a plaintiff's Exchange Act claims must comply with the Private Securities Litigation Reform Act ("PSLRA"). *E.g.*, *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).  Accordingly, Lead Plaintiff's claims under Sections 10(b) and 20(a) are subject to the PSLRA's "exacting" and "onerous" pleading requirements. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 138 (2d Cir. 2015).  Under that statute, "the complaint [must] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint [must] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Similarly, the complaint must "state with particularity facts

4

giving rise to a *strong inference* that the defendant acted with the required state of mind." *Id.* !
§ 78u-4(b)(2)(A) (emphasis added).

## ARGUMENT

### I.     The Amended Complaint Does Not State a Control-Person Claim.

Section 15(a) of the Securities Act and Section 20(a) of the Exchange Act are "parallel"
control person provisions whose "terms are interpreted in the same manner." *Police & Fire Ret.
Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 227 (S.D.N.Y. 2009).  To state a claim
for control person liability under Section 15 against Roivant, Lead Plaintiff must plausibly allege
(1) a "primary violation" of Sections 11 or 12(a)(2) of the Securities Act by Immunovant, and (2)
Roivant's "actual control" of Immunovant. *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220,
260 (E.D.N.Y. 2019).  To plead a violation of Section 20(a), Lead Plaintiff must similarly allege
a violation of Section 10(b) of the Exchange Act by Immunovant and Roivant's actual control, as
well as Roivant's "culpable participation" in Immunovant's primary violation. *McIntire v. China
MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 121 (S.D.N.Y. 2013).   The Amended
Complaint meets none of these requirements.

### A.     Lead Plaintiff Fails to Allege a Primary Violation of the Securities Laws by Immunovant.

As set out in the memoranda submitted by Immunovant and the Underwriter Defendants,
Lead Plaintiff does not plausibly allege a "primary violation" of Sections 10(b), 11, or 12(a)(2) by
Immunovant.  Because the Amended Complaint does not plead a primary violation of the securities
laws by Immunovant, Lead Plaintiff's control person claims necessarily fail as well. *E.g.*,
*Stadnick*, 861 F.3d at 40; *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 808 (S.D.N.Y. 2020).

**B.** **Lead Plaintiff Fails to Allege that Roivant "Controlled" Immunovant for Purposes of Section 15(a) and Section 20(a).**

Lead Plaintiff also fails to plausibly allege that Roivant had "actual control" over Immunovant. To establish "control" within the meaning of Sections 15(a) and 20(a), a plaintiff must demonstrate that the defendant "actually possess[ed], in fact, rather than in theory, the ability to direct the actions of the controlled person," and that the defendant had "actual control over the *transaction* in question." *McIntire*, 927 F. Supp. 2d at 122 (emphasis in original) (citation omitted); *see also In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (adopting the same definition of "control" for Section 15(a) and Section 20(a)). As a result, "it is not sufficient for [a plaintiff] to allege that [a defendant] has control person *status*; instead, [the plaintiff] must assert that [the defendant] exercised *actual* control over the matters at issue." *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 17-cv-1235, 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018) (emphasis in original) (quotation marks omitted).

Lead Plaintiff's allegations regarding Roivant's "actual control" over Immunovant rest entirely on Roivant's status as a controlling shareholder of Immunovant. *See* Am. Compl. ¶ 165 ("Roivant acted as [a] controlling person[] of Immunovant . . . by virtue of [its] . . . equity interest in control [over] the Company."); ¶ 294 (similar); ¶ 306 (similar). These kinds of unadorned status allegations are "an inadequate basis for pleading actual control." *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 166 (E.D.N.Y. 2020) (dismissing control person claim against controlling shareholder); *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, No. 17-cv-9887, 2019 WL 1437617, at *7 (S.D.N.Y. Mar. 29, 2019) (same); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 460–61 (S.D.N.Y. 2018) (same); *Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (same); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (same). At base, Lead Plaintiff alleges only that

6

Roivant was a "corporate parent." *DoubleLine Cap.*, 323 F. Supp. 3d at 460. But that position "says nothing regarding the control that [the parent] *actually exerts* over [its subsidiary's] operations" or specific representations made by the subsidiary. *Id.* (emphasis added); *see Grupo Verzatec*, 2019 WL 1437617, at *7 ("The Court cannot 'reasonably infer' that RFE could exert day-to-day control of NPI and Nudo simply due to [RFE's] status as controlling shareholders.").

Lead Plaintiff's vague assertion that "Roivant was intimately involved with IMVT-1401, including the licensing of IMVT-1401 from HanAll" does nothing to bolster its claims. Am. Compl. ¶ 294. That summary allegation does not even conclusorily allege control; any role that Roivant may have had in the early stages of IMVT-1401's development and licensing is irrelevant to whether Roivant had "*actual* control" over the "matters at issue" — namely, Immunovant's allegedly misleading statements during the putative class period. *Alpha Cap. Anstalt*, 2018 WL 1627266, at *20; *see id*. at *19 (dismissing control person claim where plaintiffs failed to allege that defendants "exercised actual control" in connection with the "statements at issue in this case"). Because Lead Plaintiff offers nothing more than "bare status allegations" as to Roivant, the control person claims should be dismissed. *Grupo Verzatec*, 2019 WL 1437617, at *7.

**C.      Lead Plaintiff Fails to Allege "Culpable Participation" by Roivant for Purposes of Section 20(a).**

Lead Plaintiff's Section 20(a) claim should also be dismissed because Lead Plaintiff has failed to adequately plead culpable participation. Section 20(a) requires Lead Plaintiff to "allege some level of culpable participation [by the control-person defendant] at least approximating recklessness in the section 10(b) context." *In re Weight Watchers*, 504 F. Supp. 3d at 264; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). This inquiry mirrors the Section 10(b) scienter inquiry, *see, e.g.*, *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, No. 17-cv-4937, 2019 WL 1407453, at *11 (S.D.N.Y. Mar. 28, 2019), and is

7

subject to the same pleading burden found in the PSLRA, *see In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672, 2018 WL 4168958, at *21 (S.D.N.Y. Aug. 30, 2018).

Scienter is "an intent 'to deceive, manipulate, or defraud,'" or "'an extreme departure from the standards of ordinary care [such that] the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *E.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs*, 551 U.S. at 319, and *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).  Under the PSLRA, Lead Plaintiff must raise a "strong inference" of scienter.  15 U.S.C. § 78u-4(b)(2).  A strong inference is "more than merely 'reasonable' or 'permissible'—it must be cogent and compelling." *Tellabs*, 551 U.S. at 315.  That "inquiry is inherently comparative." *Id.* at 323.  The test is whether the inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Lead Plaintiff falls far short of these stringent standards.  The traditional means of pleading scienter is to allege facts demonstrating "strong circumstantial evidence of conscious misbehavior or recklessness." *E.g.*, *ECA*, 553 F.3d at 198.  But here, the Amended Complaint contains precisely zero allegations that Roivant knew of Immunovant's purported fraud.  Instead, Lead Plaintiff seems to be asking this Court once again to infer that Roivant knew of Immunovant's purported fraud because Roivant was Immunovant's parent.  That is obviously insufficient. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996).  "[T]he mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient to impute the scienter of the subsidiary to the parent or affiliate." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 301 (S.D.N.Y. 2019).

Lead Plaintiff then strains to salvage its Section 20(a) claim under a "motive and opportunity" theory. *See, e.g.*, *ECA*, 553 F.3d at 198.  In this Circuit, "[s]ufficient motive

8

allegations '*entail concrete benefits* that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (emphasis added) (quoting *Novak*, 216 F.3d at 307).  "Motives that are generally possessed by most corporate directors and officers," such as a "desire for the corporation to appear profitable" and a "desire to keep stock prices high to increase officer compensation," do not pass muster.  *Id.* These standards exist for good reason.  If it were otherwise, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."  *Id.* at 140.

Under these standards, Lead Plaintiff comes nowhere close to plausibly alleging "motive and opportunity" scienter.  Lead Plaintiff's 108-page pleading contains only three paragraphs addressing Roivant's motive to perpetrate a fraud.  Am. Compl. ¶¶ 272–74.  The first simply notes that Roivant "was financially motivated to engage in the fraud . . . in order to monetize its investment."  *Id.* ¶ 272.  This conclusory allegation fails because it in no way distinguishes Roivant from any other company or executive.  It is therefore far "too generalized to demonstrate scienter." *Kalnit*, 264 F.3d at 139.

Alternatively, Lead Plaintiff points to the "earn-out" share provision in the Share Exchange Agreement whereby Roivant was entitled to receive additional shares of Immunovant if the latter's share price hit certain price targets.  But here too, Lead Plaintiff runs headlong into binding law. An earn-out provision is a common feature of modern corporate transactions.[1]  Saying it gave Roivant an incentive to allow fraud is the same as saying that Roivant had an incentive for Immunovant's share price to increase—that is, the same motivation that companies and executives

---

[1] *See* Christine Lagorio-Chafkin, *How to Structure an Earn-out*, Inc., https://www.inc.com/ guides/earn-out-structuring.html (last visited May 26, 2022).

have everywhere. Second Circuit precedent could not be clearer: that defendants will receive benefits "based on corporate earnings and *higher stock prices* does not strengthen the inference of fraudulent intent." *ECA*, 553 F.3d at 201 (emphasis added); *see Wyche v. Advanced Drainage Sys., Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017). "Absent some . . . allegation to explain how a defendant benefit[ed] from an inflated stock price," a defendant's "stock ownership does not provide sufficient motive to sustain [a plaintiff's] pleading burden." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994).

In fact, the existence of the earn-out share provision and Roivant's lack of sales in Immunovant stock *undermines* Lead Plaintiff's scienter claims. The earn-out provision conveys that Roivant had confidence in the company's future financial success and wished to *increase* its stock holdings. So does Roivant's maintaining its position in Immunovant stock throughout the class period. Because it did not sell any stock, Roivant "stood to lose a lot of money if the value of [Immunovant's] stock fell." *Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008). That is, Lead Plaintiff alleges "no concrete benefit" to Roivant that would "justify the[ ] risks" associated with a securities fraud. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016). The natural inference that arises from Roivant's not having sold any shares is that Roivant did not know any drop was coming, because it did not know of the purported fraud. Courts routinely infer a lack of scienter from the absence of stock sales. *E.g.*, *id.* at 600–01; *see, e.g.*, *Turner v. MagicJack VocalTec, Ltd.*, No. 13 Civ. 0448, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014) (holding lack of stock sales "rebuts an inference of scienter"); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d

10

358, 383 (E.D.N.Y. 2003) (same).[2]   The inference that Roivant lacked scienter is "cogent and compelling." *Tellabs*, 551 U.S. at 315.

Lead Plaintiff's contrary inference is not.  It also makes no sense.  *See Gillis*, 197 F. Supp. 3d at 601 ("Courts regularly 'refuse to infer scienter when confronted with such illogical allegations.'" (alterations omitted) (quoting *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006)).  The gist of the Amended Complaint is that the defendants, including Roivant, knew that Immunovant stock was a ticking time bomb — i.e., that there were potential safety issues with the company's principal asset, IMVT-1401 — but declined to release that information in order to benefit themselves.  But as noted, Roivant never sold stock.  So Lead Plaintiff's theory is that Roivant *knowingly* kept itself exposed to the ticking time bomb up until the bomb exploded.  Even the stock price's achieving the earn-out target prices simply increased Roivant's exposure to the looming loss.  Lead Plaintiff's "view of the facts defies economic reason."  *Kalnit*, 264 F.3d at 140.  It certainly fails to create even "a reasonable inference of fraudulent intent," *id.* at 141 — much less a cogent and compelling one.

## II.    The Amended Complaint Does Not Plead a Primary Violation of Section 10(b) Against Roivant.

To plead a violation of Section 10(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, a plaintiff must "plead six familiar elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic

---

[2] *See also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir.1995); *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 236 (S.D.N.Y. 2020); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 519 (S.D.N.Y. 2011); *In re eSpeed, Inc. Secs. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000).

loss; and (6) loss causation." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021). To the extent that Lead Plaintiff also intends to bring a Section 10(b) claim against Roivant based on so-called "scheme liability," the pleading requirements are the same, except that Lead Plaintiff must plead that the defendant "committed a deceptive or manipulative act," in lieu of a misrepresentation or omission. *Id.* at 105.

As outlined in Immunovant's motion to dismiss, the Section 10(b) claims are defective for numerous reasons. Roivant incorporates and adopts those arguments. But the Section 10(b) claim against Roivant should be dismissed for the additional reason that Lead Plaintiff comes nowhere close to pleading that Roivant violated Section 10(b).

*First*, and most fundamentally, Lead Plaintiff's Section 10(b) claim fails for the same reason its Section 20(a) claim fails: Lead Plaintiff fails to allege facts giving rise to a "strong inference" of scienter. *E.g.*, *ECA*, 553 F.3d at 201; *Kalnit*, 264 F.3d at 138; *see supra*, pp.7–11. The Amended Complaint includes zero allegations suggesting Roivant actually knew of any purported fraud at Immunovant. Lead Plaintiff's indirect "motive and opportunity" allegations actually undermine scienter. Roivant did not sell any stock despite allegations that the stock would collapse as soon as the truth became known. Thus, the Amended Complaint raises a strong inference that Roivant was *unaware* of any purported fraud. *See supra*, pp.10–11. Lead Plaintiff's allegations certainly do not satisfy the PSLRA's "cogent and compelling" standard for scienter. *Tellabs*, 551 U.S. at 315.

*Second*, the Amended Complaint does not plead a single "misstatement or omission" attributable to Roivant. *Danske Bank*, 11 F.4th at 98. A plaintiff "may not maintain an aiding and abetting suit under § 10(b)," *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994), and Second Circuit precedent dictates that a plaintiff asserting a Rule

12

10b-5(b) claim must attribute a false or misleading statement "*to the defendant*," *e.g.*, *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 153 (2d Cir. 2010) (emphasis added); *see id.* at 157–58; *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it"). Here, Lead Plaintiff cannot attribute a single statement to Roivant, and instead simply "clump[s] [Roivant] together" with other parties. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021). Those allegations do not suffice. *E.g.*, *id.*; *Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 465 (2d Cir. 2012) (affirming dismissal where "no omission or misstatement was alleged by" two defendants).

*Third*, as to any purported scheme claim, Lead Plaintiff has not alleged any "deceptive or manipulative act" "committed" by Roivant. *E.g.*, *Danske Bank*, 11 F.4th at 105. The established law in this Circuit "require[s] scheme claims to be premised on deceptive acts that are distinct from misstatements and omissions that underlie an accompanying Rule 10b-5(b) claim." *Id.* at 105 n.6; *see In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020). But, here, the pleading failing is more fundamental: There are no allegations of any deceptive or manipulative act by Roivant at all. *Danske Bank*, 11 F.4th at 105.

*Fourth*, in all events, Lead Plaintiff has failed to plead reliance, which is a "critical element in private actions under Rule 10b-5." *Pac. Inv. Mgmt. Co.*, 603 F.3d at 156. Under Second Circuit law, "[a]ttribution is necessary to show reliance." *Id.* "Without explicit attribution" of allegedly false statements to Roivant, "reliance on [Roivant's] participation can only be shown through an indirect chain . . . too remote for liability." *Id.* (quotation marks omitted). But the Amended Complaint does not attribute *any* of the allegedly false statements to Roivant. There is no allegation that Roivant "affirmatively 'injected'" *any* information about IMVT-1401 into the

13

market at all, much less any "inaccurate information." *Noto v. 22nd Century Grp., Inc.*, No. 21-0347, --- F.4th ----, 2022 WL 1633827, at *7 (2d Cir. May 24, 2022). Lead Plaintiff would need to show "[r]eliance by the plaintiff upon the defendant's deceptive acts" to plead a scheme claim. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008). Because Lead Plaintiff does not identify any allegedly deceptive acts committed by Roivant, it necessarily fails to allege reliance as well.

In short, the Amended Complaint fails to plead any of the necessary elements for a primary violation of Section 10(b) against Roivant.

## CONCLUSION

For the foregoing reasons, the Court should grant Roivant's motion and dismiss the Amended Complaint's claims against Roivant with prejudice.

Dated:  May 27, 2022                                     WILLIAMS & CONNOLLY LLP

                                                        By:  */s/ John S. Williams*
                                                             John S. Williams (JW-6927)
                                                             jwilliams@wc.com
                                                             680 Maine Ave, S.W.
                                                             Washington, D.C. 20024

                                                             650 5th Ave #1500
                                                             New York, NY 10019
                                                             Telephone: (202) 434-5000
                                                             Facsimile: (202) 434-5029

                                                             *Counsel for Roivant Sciences Ltd.*

14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 27, 2022, a true and correct copy of the foregoing Memorandum of Law in Support of the Motion To Dismiss of Roivant Sciences Ltd. was served via electronic mail to all counsel of record.

Dated:  May 27, 2022                                      /s/ *John S. Williams*