UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THERESA PITMAN, Individually and on Behalf of All Others Similarly Situated, | x<br>:<br>:<br>:<br>:<br>: |
| Plaintiff, | :<br>: Civil Action No. 1:21-cv-00918-KAM-VMS |
| v. | :<br>: |
| IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION, RODERICK WONG, PETER SALZMANN, FRANK M. TORTI, ANDREW FROMKIN, DOUGLAS HUGHES, GEORGE MIGAUSKY, ATUL PANDE, ERIC VENKER, SVB LEERINK LLC, LIFESCI CAPITAL LLC, CHARDAN CAPITAL MARKETS LLC, GUGGENHEIM SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, and ROIVANT SCIENCES LTD., | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>:<br>:<br>: |
| | x |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
IMMUNOVANT DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    ALL OF PLAINTIFF'S CLAIMS SOUND IN FRAUD .................................... 2

III.   THE ENTIRE AC SHOULD BE DISMISSED FOR FAILURE TO PLEAD FALSITY ............................................................................................................ 2

     A.    Plaintiff's Dispute About Trial Design Is Not Actionable.................................... 3

     B.    The AC Contains No Well-Pled Facts That Elevated Cholesterol Was an "Anticipated Risk" When the Challenged Statements Were Made. ...................... 5

           1.    The FE allegations regarding the animal studies do not demonstrate that increased cholesterol was an "anticipated risk." ............ 5

           2.    The scientific literature identified in the AC does not demonstrate that increased cholesterol was an "anticipated risk." ................................. 7

           3.    Other companies' monitoring activities do not demonstrate that increased cholesterol was an "anticipated risk" of IMVT-1401. ............... 8

     C.    Many of the Challenged Statements Are Inactionable as a Matter of Law. .......... 9

           1.    Defendants' honestly and reasonably held opinions are inactionable. ............................................................................................ 10

           2.    The corporate puffing statements are immaterial as a matter of law. ....... 11

           3.    The forward-looking statements are immune from liability. .................... 12

           4.    Many statements are disconnected from the purported basis for falsity.................................................................................................... 15

IV.   THE EXCHANGE ACT CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER ............................ 15

     A.    Plaintiff's Belated Attempt to Change its Theory of Fraud Is Unavailing. ......... 16

     B.    Defendants' Lack of Motive Undermines any Inference of Scienter. ................. 17

     C.    Plaintiff Fails to Plead Conscious Misbehavior or Recklessness. ....................... 19

V.    PLAINTIFF FAILS TO PLEAD SCHEME LIABILITY .............................................. 21

VI.   CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbad v. Amman*,
285 F. Supp. 2d 411 (S.D.N.Y. 2003)............................................................................17

*Abely v. Aeterna Zentaris Inc.*,
2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...........................................................3, 17

*In re Adient plc Securities Litigation*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)...................................................................13

*Altimeo Asset Management v. Qihoo 360 Technology Co.*,
19 F.4th 145 (2d Cir. 2021) .............................................................................................6

*Anderson v. Peregrine Pharmaceuticals, Inc.*,
654 F. App'x 281 (9th Cir. 2016) ..............................................................................20, 21

*In re Bank of America AIG Disclosure Securities Litigation*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).......................14

*Barnum v. Millbrook Care Ltd. Partnership*,
850 F. Supp. 1227 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994) .................................8

*In re BHP Billiton Ltd. Securities Litigation*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017).................................................................................12

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)................................................................................9

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)...............................................................................12

*In re Carter-Wallace, Inc. Securities Litigation*,
150 F.3d 153 (2d Cir. 1998)..............................................................................................8

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .........................................................................6

*In re Curaleaf Holdings, Inc. Securities Litigation*,
519 F. Supp. 3d 99 (E.D.N.Y. 2021) ...............................................................................14

*In re Delcath Systems, Inc. Securities Litigation*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)..............................................................................11

*In re DRDGOLD Ltd. Securities Litigation*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007)..............................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..................................................................................................17

*Garden City Employees' Retirement System v. Anixter Int'l, Inc.*,
  2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)...........................................................................9

*In re General Electric Securities Litigation*,
  844 F. App'x 385 (2d Cir. 2021) ..........................................................................................15

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................16

*Hoey v. Insmed Inc.*,
  2018 WL 902266 (D.N.J. Feb. 15, 2018) ...............................................................................19

*Huang v. Avalanche Biotechnologies, Inc.*,
  2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) ...........................................................................4

*Johnson v. Sequans Commuications S.A.*,
  2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ...........................................................................13

*In re Keryx Biopharmaceuticals, Inc., Securities Litigation*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014).............................................................................4

*Kleinman v. Elan Corp., plc*,
  706 F.3d 145 (2d Cir. 2013)....................................................................................................5

*Lehmann v. Ohr Pharmaceutical, Inc.*,
  830 F. App'x 349 (2d Cir. 2020) .....................................................................................18, 19

*Malik v. Network 1 Financial Securities Litigation*,
  2022 WL 453439 (2d Cir. Feb. 15, 2022)....................................................................16, 18, 19

*In re Massey Energy Co. Securities Litigation*,
  883 F. Supp. 2d 597 (S.D.W. Va. 2012)..................................................................................12

*In re MELA Sciences, Inc. Securities Litigation*,
  2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)........................................................................19

*In re MF Global Holdings Ltd. Securities Litigation*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013).....................................................................................14

*Midwest Operating Engineers Pension Trust Fund v. Alkermes Public Ltd. Co.*,
  2021 WL 5782079 (2d Cir. Dec. 7, 2021) ..............................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mogensen v. Body Central Corp.*,
 15 F. Supp. 3d 1191 (M.D. Fla. 2014)...................................................................................18

*In re Northern Telecom Ltd. Securities Litigation*,
 116 F. Supp. 2d 446 (S.D.N.Y. 2000)..................................................................................17

*Nguyen v. Endologix, Inc.*,
 962 F.3d 405 (9th Cir. 2020) ...............................................................................................16

*In re Novan, Inc.*,
 2018 WL 6732990 (M.D.N.C. Nov. 30, 2018).......................................................................3

*Oklahoma Firefighters Pension & Retirement System v. Xerox Corp.*,
 300 F. Supp. 3d 551 (S.D.N.Y. 2018)..................................................................................13

*In re OSI Pharmaceuticals, Inc. Securities Litigation*,
 2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007).....................................................................18

*Panther Partners Inc. v. Jianpu Technology Inc.*,
 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020).....................................................................14

*In re Petrobras Securities Litigation*,
 116 F. Supp. 3d 368 (S.D.N.Y. 2015)..................................................................................12

*In re PXRE Group, Ltd., Securities Litigation*,
 600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd*, 357 F. App'x 393 (2d Cir. 2009).....................18

*Richman v. Goldman Sachs Group, Inc.*,
 868 F. Supp. 2d 261 (S.D.N.Y. 2012)..................................................................................12

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
 697 F.3d 869 (9th Cir. 2012) .................................................................................................3

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)................................................................................................15

*In re Romeo Power Inc. Securities Litigation*,
 2022 WL 1806303 (S.D.N.Y. June 2, 2022) .......................................................................18

*Rubinstein v. Credit Suisse Group AG*,
 457 F. Supp. 3d 289 (S.D.N.Y. 2020)....................................................................................9

*South Cherry St., LLC v. Hennessee Group LLC*,
 573 F.3d 98 (2d Cir. 2009)..................................................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Salix Pharmaceuticals, Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)...................................................................14

*In re Sanofi Securities Litigation*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)..........................................................................4

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    840 F.3d 698 (9th Cir. 2016) ...................................................................................15

*SEB Investment Management AB v. Endo International, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ......................................................................11

*SEC v. Rio Tinto PLC*,
    41 F.4th 47 (2d Cir. 2022) ......................................................................................22

*In re Sepracor, Inc. Securities Litigation*,
    308 F. Supp. 2d 20 (D. Mass. 2004) .......................................................................15

*In re Sibanye Gold Ltd. Securities Litigation*,
    2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)........................................................22

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010)...............................................................................13, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................16

*TransEnterix Inv. Group v. TransEnterix, Inc.*,
    272 F. Supp. 3d 740 (E.D.N.C. 2017).....................................................................18

*In re Wachovia Equity Securities Litigation*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).....................................................................21

*Wagner v. Royal Bank of Scotland Group PLC*,
    2013 WL 4779039 (S.D.N.Y. Sept. 5, 2013)..........................................................17

*Xiaojiao Lu v. Align Technology, Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ..................................................................15

**Other Authorities**

21 C.F.R. § 312.32(a)......................................................................................................11

## I.    INTRODUCTION

Every argument in Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss ("Opposition") hinges on its unsupported theory that Immunovant's clinical trials could not properly assess safety or tolerability without monitoring cholesterol.

There are two fundamental problems with this theory, each of which mandates dismissal of the entire Amended Complaint ("AC"). **First**, this theory amounts to a dispute about trial design, which is inactionable under the securities laws. Plaintiff claims it is *technically* only challenging disclosures. But the *reasons* it claims each disclosure is misleading require one to first buy into its theory that Immunovant's clinical trials did not adequately assess safety or tolerability because they did not monitor for elevated cholesterol—*that is a dispute about trial design*.

**Second**, the AC contains no well-pled facts to support Plaintiff's underlying premise that elevated cholesterol was an "anticipated risk" *at the time* the trials were designed, or the challenged statements were made. It relies heavily on one unidentified former Immunovant employee's ("FE") after-the-fact review of animal study results, and his opinion that the experts who prepared the summary results interpreted the data incorrectly. The AC, however, provides no specific details or statements from the FE that call into the question the conclusions reached by those experts. Plaintiff also relies on a handful of scientific articles, but none of those articles—which are indisputably incorporated by reference and proper for the Court's consideration on this motion— demonstrate a causal connection between mild decreases in albumin and increases in cholesterol.

**Plaintiff's Exchange Act claims should be dismissed for an additional reason**: Plaintiff fails to plead a strong inference of scienter. Scienter can be pled based on motive and opportunity, or conscious misbehavior or recklessness. However, where motive is lacking, the allegations of recklessness must be correspondingly greater. Here, Plaintiff fails on both fronts: it pleads no legally cognizable motive, and alleges no facts demonstrating that the so-called "anticipated risk"

of elevated cholesterol was so obvious that Defendants must have been aware of it at the time the challenged statements were made.

Recognizing the deficiencies in the AC, the Opposition attempts to introduce new facts not alleged in the AC, parrots Plaintiff's conclusory allegations, advances strawman arguments, and parades inapposite cases. None of these are availing.

The Court should reject these arguments and dismiss the AC with prejudice.

## II.    ALL OF PLAINTIFF'S CLAIMS SOUND IN FRAUD

There is no dispute that the Exchange Act claims, which necessarily sound in fraud, are subject to the heightened pleading standards of Rule 9(b) and the PSLRA. Plaintiff, however, argues that its Securities Act claims—which are based on a subset of the same challenged statements and allegedly misleading for the same reasons—should not be subject to Rule 9(b). (Opp'n at 76-77.)[1] Plaintiff is wrong, even under the four-factor test it proposes. (*Id.* at 77 n.31.) On balance, those factors weigh strongly in favor of applying Rule 9(b). (*See* MTD at 14 n.11 (addressing (i) blanket disclaimer of fraud, (ii) inclusion of classic fraud language, (iii) reliance on fraud-based reasons to support alleged falsity, and (iv) physical separation of claims).)

## III.   THE ENTIRE AC SHOULD BE DISMISSED FOR FAILURE TO PLEAD FALSITY

Even under the more lenient pleading standard of Rule 8, Plaintiff fails to plead falsity for the reasons below.[2]

---

[1] "¶" refers to the AC; "Opp'n" refers to Plaintiff's Opposition; "MTD" refers to the Memorandum of Law in Support of Immunovant Defendants' Motion to Dismiss; "Ex." refers to exhibits attached to the Declaration of Heather M. Speers. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted.

[2] Plaintiff does not dispute that the Court may properly consider 20 of the 27 exhibits submitted with the MTD; it objects only to exhibits 9, 13, 14, 15, 21, 22, and 23. (Opp'n at 13-17.) Exhibits 9 and 15 are addressed *infra* at footnotes 6 and 15. As to the rest, Defendants provide them for context only and they are properly before the Court. (*See* MTD at 3 n.1.) Plaintiff does not dispute that Exhibit 13 is incorporated by reference. (Opp'n at 16.) Nor does it dispute that the Court may take

### A.    Plaintiff's Dispute About Trial Design Is Not Actionable.

Plaintiff does not and cannot dispute that disagreements over trial design are inactionable under the securities laws. Indeed, the law on this point is well-settled. (MTD at 17-18.) Instead, Plaintiff attempts to distinguish its allegations from those in Defendants' authorities by arguing that, here, "there is no scientific dispute over how Immunovant designed its trials, interpreted data or used a statistical methodology to conduct trials." (Opp'n at 41.) But that is simply not true.

The AC and Opposition are rife with allegations and arguments that expressly contest trial design and try to dictate how Immunovant "should have" designed its clinical trials or "failed to test" for cholesterol. (*See, e.g.*, ¶71 ("Immunovant *should have designed* all clinical trials in humans to include a standard cholesterol panel."); ¶¶84, 89, 94(c), 99, 110, 119(e), 168, 169, 171(c), 174, 176, 188, 198, 206, 208, 210, 214, 221, 225, 229, 231, 241, 250, 261, 265 (similar "failed to test" and "should have" allegations); Opp'n at 41 ("*Had Immunovant complied with good clinical practices it would have* monitored, assessed, and mitigated anticipated risks, including cholesterol."); *id.* at 20, 32, 36, 39, 47, 50, 72, 84 n.39 (similar "failed to test" and "should have" arguments).) These types of hindsight disputes over whether and when a company should have tested for a particular safety outcome are precisely the kind of "non-actionable critique of defendants' study design" that courts in this circuit routinely reject. *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *8 (S.D.N.Y. May 29, 2013).

Moreover, Immunovant never claimed that the results from any trial "were all of the safety results or that these results included every occurrence of every possible side effect."[3] *In re Rigel*

---

judicial notice of SEC filings (Exs. 9, 13-15), press releases (Ex. 14), earnings call transcripts (Ex. 21), and analyst reports (Exs. 22-23), for purposes of demonstrating what was publicly stated and when, as opposed to the truth of the matters asserted therein. (Opp'n at 16-17.)

[3] Plaintiff does not dispute that a trial can be designed to assess safety even if it does not test for every possible risk. *See In re Novan, Inc.*, 2018 WL 6732990, at *13 (M.D.N.C. Nov. 30, 2018)

*Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 (9th Cir. 2012); *see Huang v. Avalanche Biotechs., Inc.*, 2016 WL 6524401, at \*8 (N.D. Cal. Nov. 3, 2016). To the contrary, Immunovant's statements about IMVT-1401's safety and tolerability referred to the adverse events and outcomes actually *observed* and *reported* in a particular trial. (*See, e.g.*, ¶98 (IMVT-1401 "was *observed* to be well-tolerated" and "the majority of adverse events . . . *reported* were mild or moderate"); ¶¶104, 109, 193, 220, 224, 238, 240, 242.) That is, "reasonable investors would not be misled to believe that defendants were making predictions as to the *final* safety" of IMVT-1401 based on Immunovant's disclosures. *Huang*, 2016 WL 6524401, at \*8-9 (granting motion to dismiss).

Accordingly, it is irrelevant whether the fact pattern here is *identical* to those in Defendants' authorities. The MTD identified myriad examples of cases involving different disputes about trial design, all held to be inactionable under the securities laws. (MTD at 17-19.) Plaintiff identifies no authority suggesting that the fact pattern here is so unique that it should result in a different outcome. (*See* Opp'n at 39-41.) To the contrary, just like Plaintiff here, the plaintiffs in cases cited in the MTD claimed they, too, were only challenging disclosures and not the underlying design or methodology, and in each instance, the courts rejected plaintiffs' arguments. *See, e.g.*, *In re Keryx Biopharms., Inc., Sec. Litig.*, 2014 WL 585658, at \*10 (S.D.N.Y. Feb. 14, 2014) ("[I]f this Court were to determine that the statements defendants made were actionable, it would essentially be the 'thin end of the wedge': it would be equivalent to a determination that if a researcher leaves any of its methodology out of its public statements . . . it could amount to an actionable false statement or omission.").)

---

("The securities laws do not impose a requirement that companies report only information from optimal studies, even if scientists could agree on what is optimal."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 533 (S.D.N.Y. 2015) ("Had the FDA at any point concluded that there were serious defects in study design that would render the study incapable of producing valid evidence of safety and effectiveness, it had authority to issue a clinical hold.").

Like those cases, the AC amounts to a dispute over clinical trial design, which cannot be cured by amendment; therefore, the entire AC should be dismissed with prejudice.

**B.      The AC Contains No Well-Pled Facts That Elevated Cholesterol Was an "Anticipated Risk" When the Challenged Statements Were Made.**

Plaintiff's theory of falsity hinges on the notion that elevated cholesterol was an "anticipated risk," and therefore, Immunovant's failure to disclose that cholesterol was not monitored in its early clinical trials rendered all of the challenged statements misleading. (*See, e.g.*, Opp'n at 31 (statements regarding clinical trial results); *id.* at 34-35 (albumin reductions); *id.* at 36 (trial design and good clinical practices); *id.* at 43 (animal studies); *id.* at 44 (timetable for development of IMVT-1401).)

To support this "anticipated risk" theory, Plaintiff relies on (1) one unidentified FE's opinion about how to interpret the results of unspecified animal studies, (2) a handful of inapposite scientific articles, and (3) monitoring protocols put in place by two other companies at unidentified times. (Opp'n at 21.) None plausibly supports the notion that increased cholesterol was an "anticipated risk" *at the time* Defendants made the challenged statements.

**1.      The FE allegations regarding the animal studies do not demonstrate that increased cholesterol was an "anticipated risk."**

The only factual allegations supporting Plaintiff's claim that "animal studies showed a substantial increase in cholesterol levels" (¶94(d)) come from a single FE who reviewed the animal data after patients in one of Immunovant's clinical trials showed elevated cholesterol levels. (MTD at 20.) The Opposition, however, effectively concedes that the AC does not contain sufficient facts to support FE's knowledge or reliability, and instead, proffers additional facts Plaintiff *could* allege if granted leave to amend. (Opp'n at 23.) Those facts are not presently before the Court as "a party may not amend pleadings through a brief." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013).

But even if Plaintiff could support FE's knowledge and reliability, the allegations still fail to support that increased cholesterol was an "anticipated risk" *at the time the challenged statements were made*. As alleged in the AC, the first time that FE—or anyone at Immunovant—was aware of this risk was in *January 2021*, when elevated cholesterol was observed in the ASCEND GO-2 clinical trial. (Opp'n at 23-24.) It was only *after* this revelation—and with the knowledge that cholesterol had increased—that FE allegedly looked at the animal study results. (*Id.* at 24.)

And yet, neither the AC nor the Opposition provide the necessary details to support FE's after-the-fact opinions. (*Id.*) Allegations that "*some* of the animals showed cholesterol levels of 200 to 300 percent higher" (¶70) amount to practically nothing without allegations about what "some" means: 5 out of 500 animals or 5 out of 10 animals? (*See* MTD at 21-22.)

Unable to offer any additional facts to rectify this deficiency, Plaintiff instead argues that such details are not required. (Opp'n at 24-25 (citing *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013)).) However, *City of Providence* does not stand for such a broad proposition; the plaintiff there provided far more details than Plaintiff has here, including allegations that defendants received "daily report[s]" showing the severity of the problems, and attended regular meetings in which they "acknowledged" such problems before the public statements at issue were made. *Id.* at *3.[4]

Finally, Plaintiff identifies no facts supporting its "belief" that Immunovant failed to submit the detailed animal study results to the FDA. (*See* MTD at 23-24.) Instead, Plaintiff doubles down on its speculation and *suggests that the FDA was negligent* in its review of Immunovant's

---

[4] Plaintiff's reliance on *Altimeo Asset Management v. Qihoo 360 Technology Co.*, 19 F.4th 145 (2d Cir. 2021) (Opp'n at 23) is equally misplaced. In that case, the confidential witness alleged that the defendant directed him to keep a "low profile" concerning the company's plan to relist, while the company publicly stated that it had no such plan. *Id.* at 148, 150. Nothing even remotely similar is alleged here.

submissions because it was "extremely busy during the Class Period dealing with the COVID-19 pandemic."[5] (Opp'n at 28.) First, such speculation is not alleged in the AC and thus improper for consideration on this motion. Moreover, it misstates the timeline: Immunovant was required to submit animal study results before beginning its Phase 1 clinical trial, which occurred long before the COVID-19 pandemic. (*See* ¶¶56, 84 (results of Phase 1 trial published in April of 2019).)

### 2. The scientific literature identified in the AC does not demonstrate that increased cholesterol was an "anticipated risk."

None of the articles cited by Plaintiff discuss a causal relationship between mild decreases of albumin and increases of cholesterol—as observed in the ASCEND GO-2 trial.[6] (MTD at 24-25.) One article discusses the impact of a *complete absence* of albumin *in mice* (Ex. 27), and the other two do not address *any causal connection* between reduced albumin and increased cholesterol (Exs. 25-26). Tellingly, Plaintiff does not deny that the conclusions it drew from the articles were incorrect; instead, it argues that this is a factual dispute that cannot be resolved on a motion to dismiss. (Opp'n at 26.) Plaintiff is wrong. Where, as here, there is no dispute that the articles are incorporated by reference into the AC, "the document[s] control[] and the court need

---

[5] Unable to dispute that the AC contains no allegations of any FDA concerns over cholesterol monitoring in Immunovant's early clinical trials (MTD at 19, 24-25), Plaintiff recasts Defendants' arguments as an "attempt to blame the FDA" and raise "non-public factual issues" (Opp'n at 27-28). But it is not a factual dispute to raise the lack of such allegations and it is Plaintiff's burden to plead adequate facts that support its claim.

[6] Plaintiff argues that "Immunovant Defendants have not provided any basis for distinguishing between albumin reductions and 'mild' albumin reductions." (Opp'n at 26.) But Plaintiff does not allege that the disclosures of albumin reductions as compared to the normal range are misleading. (*See, e.g.,* Pl. App. A, Nos. 21, 75, 90, 162, 192.) As such, Plaintiff's quibbling about Defendants' characterization of the decrease as "mild" (Opp'n at 26-27) and its objection to the Court taking notice of Ex. 9 (*id.* at 15) is meaningless.

not accept as true" Plaintiff's mischaracterization of their contents.[7] *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).

Plaintiff also points to three articles about thyroid disease that purportedly indicate "treatment of thyroid hormone could negatively impact cholesterol levels." (Opp'n at 21; ¶¶80-81.) This argument, however, is specific to treatment of thyroid disease and would not apply to Immunovant's Phase 1 trial in healthy volunteers, or its Phase 2 trials in MG, and thus, provides no support as to why investors would have expected Immunovant to monitor cholesterol in those trials. Moreover, Plaintiff concedes that the cholesterol increase was *not* caused by changes in thyroid hormone levels (*see* ¶141), and as such, these articles are irrelevant.

Finally, Plaintiff attempts to diminish the abilities of the market analysts covering Immunovant, arguing that none of them had the expertise to understand the implications of such articles. (Opp'n at 27.) This is pure speculation and contrary to fundamental premises of an efficient market. (¶283.) *See In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) ("That the market can absorb technical medical information is neither novel nor surprising.").

### 3. Other companies' monitoring activities do not demonstrate that increased cholesterol was an "anticipated risk" of IMVT-1401.

Plaintiff's allegations and arguments about Immunovant's competitors monitoring cholesterol levels in their clinical trials lack any factual detail as to *when* or *why* those competitors monitored cholesterol. (*See* MTD at 25 n.18). Absent such details, that two companies chose to monitor cholesterol at some unknown point in time and for some unknown reason provides no

---

[7] Neither of the cases Plaintiff relies on involve disputes about the contents of documents that are undeniably incorporated by reference. (*See* Opp'n at 26.)

support for Plaintiff's theory that elevated cholesterol was an "anticipated risk" of IMVT-1401 at the time the challenged statements were made.

\*     \*     \*

Because Plaintiff has not plausibly pled that elevated cholesterol was an "anticipated risk" at the time the challenged statements were made—and has identified no additional facts that would cure this pleading deficiency—the entire AC should be dismissed with prejudice.[8]

## C.     Many of the Challenged Statements Are Inactionable as a Matter of Law.

Many of the challenged statements are also inactionable because they are honestly and reasonably held opinions, corporate puffery, protected forward-looking statements, and/or bear no connection to the alleged basis for falsity.[9]

---

[8] Plaintiff's claims under Items 303 and 105 fail for the same reasons. (Opp'n at 67 (citing four alleged omissions, all of which amount to the same "anticipated risk" theory).) Additionally, Plaintiff does not identify any authority suggesting that Item 303 requires a company to disclose every "anticipated risk" for a drug that is being studied in clinical trials. (*See id.* at 67-69.) And finally, Plaintiff fails to satisfy the knowledge requirement under Items 303 and 105 as it disclaims knowledge with respect to the Securities Act Defendants, (¶¶147, 155, 164), and relies solely on allegations of recklessness—as opposed to "actual knowledge"—for the Exchange Act Defendants (*see infra* §III.C.3). *See Rubinstein v. Credit Suisse Grp. A*G, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) ("Plaintiffs must demonstrate actual knowledge of an existing trend, event, or risk to allege violations of Section 303 and 105.").

[9] Plaintiff's Appendix A confirms the AC is a puzzle pleading. First, it concedes that "due to a typographical error," two statements (¶¶95, 145) were "inadvertently" used as a basis to allege fraud and should not have been challenged. (Pl. App. A, Nos. 1, 145.) Second, it states that 56 other statements that are part of block quotes were only "included in the AC for context." (Pl. App. A, Nos. 6, 8, 11, 14, 15, 21, 27, 30, 35-37, 39, 41, 50, 52-53, 55-56, 62, 64, 75, 80, 90, 94, 97-98, 101, 103, 106, 108-109, 112, 114, 116, 118, 125, 127, 133, 140, 146, 148-149, 153, 156, 162, 166, 169, 172, 174, 177, 179-180, 184, 192, 196, 209.) However, statements that are nearly identical to those 56 are allegedly misleading because Immunovant "didn't test for cholesterol." (*Compare, e.g.*, *id.* Nos. 84 *with id.* No. 101; *id.* Nos. 30, 97, 116, 148, 169 *with id.* No. 82.) Plaintiff offers no explanation for these inconsistencies, but rather "plac[es] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts." *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478-79 (S.D.N.Y. 2021). Given this, its criticism that Defendants' Appendix A is "an inappropriate way to exceed the page limits" (Opp'n at 15) is particularly unfair. Defendants' Appendix A summarizes (without supplementing) the arguments in §IV.A of the MTD and was included solely for the Court's convenience. *See, e.g., Garden City*

### 1.      Defendants' honestly and reasonably held opinions are inactionable.

Plaintiff does not dispute that many statements challenged in the AC—including those related to clinical trial results, the impact of albumin reductions, and interpretation of data from animal studies—are statements of opinion. (Opp'n at 45-46; MTD at 26-27.) And despite its incorrect claim that Defendants applied the wrong standard (Opp'n at 46-47), Plaintiff does not dispute that *Omnicare* requires Plaintiff to "identify particular (and material) facts going to the basis for the [Defendant's] opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context" (MTD at 27). Plaintiff cannot meet this standard because it fails to plead that increased cholesterol was an "anticipated risk" when these opinions were expressed. (*See supra* §III.B.)

Likewise, Plaintiff's argument that "a reasonable investor would have expected that Immunovant complied with good clinical practices and tested for all anticipated risks, including a basic cholesterol test" (Opp'n at 48) relies on this same unsupported assumption and fails for the same reasons. It also assumes that good clinical practices require testing of all "anticipated risks," which Plaintiff has not alleged. (*See* ¶¶61-69.)

Plaintiff also attempts to distance itself from the cases cited in the MTD, arguing it "does not dispute how Immunovant interpreted or described data obtained from IMVT-1401 clinical trials," but rather, that "Immunovant failed to even *obtain* data to be interpreted or described." (Opp'n at 47 (emphasis in original).) Tellingly, Plaintiff cites no case that supports such a distinction, and in any event, the distinction is nonsensical. Defendants' opinions that IMVT-1401 was "promising," "safe," and "well-tolerated" (¶¶98, 240) could only be based on the trial results observed, and not on the countless additional metrics that could have been, but were not, included

---

*Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *9 (N.D. Ill. Mar. 31, 2011) (approving similar chart).

in the trial protocol.[10]  A lack of premonition does not create securities fraud liability.

Likewise, Plaintiff's argument that "Defendants lacked a reasonable basis to assert that IMVT-1401 [did not cause any] *serious* AEs because it was likely that patients receiving IMVT-1401 experienced elevated cholesterol levels" (Opp'n at 8; *see also id.* at 20, 31-33, 37, 47-48), is without merit. A "serious adverse event" is one that results in "[d]eath, a life-threatening adverse event [*i.e.*, places the patient in immediate risk of death], inpatient hospitalization or prolongation of existing hospitalization, a persistent or significant incapacity or substantial disruption of the ability to conduct normal life functions, or a congenital anomaly/birth defect." 21 C.F.R. § 312.32(a). Plaintiff does not allege that elevated cholesterol alone qualifies as a "serious adverse event." Indeed, millions of Americans use statins to control cholesterol. As such, the lack of cholesterol monitoring does not call into question the reasonableness of such statements.

Finally, Plaintiff's argument that Defendants claimed IMVT-1401 did not cause *any* adverse events, serious or otherwise (Opp'n at 47), is pure fiction. The only challenged statements regarding adverse events are those in which Immunovant expressly limited its discussion to the "most common" or "serious" adverse events. (*See, e.g.*, ¶¶104, 106, 193, 224, 238.)

### 2.    The corporate puffing statements are immaterial as a matter of law.

Plaintiff tacitly concedes that many of the challenged statements *would be* puffery, but argues they are actionable because they were "made repeatedly." (Opp'n at 49-50.) The cases Plaintiff replies upon, however, do not stand for the broad proposition that mere repetition will convert inactionable puffery into material fact. Instead, those cases stand for the uncontroversial

---

[10] This point distinguishes the allegations here from those in *In re Delcath Systems, Inc. Securities Litigation*, 36 F. Supp. 3d 320, 333 (S.D.N.Y. 2014) and *SEB Investment Management AB v. Endo International, PLC*, 351 F. Supp. 3d 874, 897 (E.D. Pa. 2018), where plaintiffs alleged that defendants were in possession of clinical trial data that contradicted their positive statements. (*See* Opp'n at 30.)

proposition that statements "made repeatedly *in an effort to reassure the investing public*" may become actionable in light of industry-specific risks, where such statements involve assurances about matters of public concern. *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79-80 (S.D.N.Y. 2017). [11] Here, the puffery statements that Defendants repeated were standard disclosures made in SEC filings about the design and results of Immunovant's clinical trials; they were not repeated to offer assurance on a matter of public concern.

### 3. The forward-looking statements are immune from liability.

Plaintiff disputes that the forward-looking statements fall under the protections of the Safe Harbor and Bespeaks Caution doctrine, arguing they are (i) "mixed statements of present or historical fact," (ii) made with "actual knowledge," and (iii) not accompanied by "meaningful" cautionary language. (Opp'n at 51.) Plaintiff is wrong on all counts.

**Mixed Statements.** Of the 38 statements that Defendants identifies as forward-looking, Plaintiff argues that four contain both present and forward-looking portions, and that Plaintiff is challenging only the present portions: "we intend to announce," "we currently remain on track," and "IMVT-1401 is currently being tested . . . with top-line data expected by Q1 2020."[12] (Opp'n

---

[11] *See also In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (not puffery when "statements were made repeatedly in an effort to reassure the investing public about the Company's integrity"); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 243-44 (S.D.N.Y. 2012) (statement that defendants "conducted extensive training and safety programs" was not mere puffery because "[i]n an industry as dangerous as deepwater drilling, it is to be expected that investors will be greatly concerned about an operator's safety and training efforts"); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 279-80 (S.D.N.Y. 2012) (company's "repeated assertions that it complies with the letter and spirit of the law, values its reputation, and is able to address 'potential' conflicts of interest" were not mere puffery); *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 617-18 (S.D.W. Va. 2012) (statements regarding company's "commitment to corporate values" or "claim of industry leadership in safety and compliance" were not mere puffery).

[12] Plaintiff's Appendix A identifies 32 allegedly "mixed" statements, but the Opposition addresses only four. It is unclear what Plaintiff's arguments are with respect to the 28 statements not

at 52.) Notably, none of the cases Plaintiff relies upon support its assertion that these are statements of present fact. (*See id.* at 44, 52.) And Plaintiff's attempt to explain why "currently remain on track" is not forward-looking proves the opposite: according to Plaintiff, this statement was misleading because *if* cholesterol was tested, it *could* disrupt the overall schedule of IMVT-1401's development—in other words, the schedule *may* go off track *in the future*. (*Id.* at 52.) *See, e.g.*, *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020) ("on track" to achieve projections is protected forward-looking statement).[13]

**Actual Knowledge.** Although Plaintiff argues that "Defendants had actual knowledge that the statements were false or misleading" (Opp'n at 51), *it identifies no facts to support this argument*. Indeed, with respect to the Securities Act Defendants, Plaintiff disclaims knowledge. (¶¶147, 155, 164.). And with respect to the Exchange Act Defendants, Plaintiff relies solely on allegations of recklessness, which is a lower standard than actual knowledge. (*See infra* §IV.C. (addressing inadequacy of recklessness allegations).) *See Slayton*, 604 F.3d at 773 ("[T]he scienter requirement for forward-looking statements is stricter than for statements of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of knowing falsity.")

**Cautionary Language.** Because Plaintiff fails to plead actual knowledge, the Court need not consider whether there was also adequate cautionary language. *See Okla. Firefighters Pension*

---

addressed in the Opposition. As Plaintiff itself acknowledged, it is improper to include legal analysis in charts attached as exhibits, without including them in the brief. (Opp'n at 15.)

[13] The remaining statements, including "we intend" and "expected by," are classic forward-looking statements. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 769 (2d Cir. 2010) ("[W]ords such as '*expect*' identify forward-looking statements."); *Johnson v. Sequans Commc'ns S.A.*, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013) (statement that company "*intends* to maintain our market position . . . by growing our revenues" is forward-looking).

*& Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 567 (S.D.N.Y. 2018) ("statements are protected by the safe harbor if they satisfy *any one* of these three categories"). Here, however, this provides *another* avenue of protection. (MTD at 30.) Despite its argument that Defendants did not warn investors of the specific risk of elevated cholesterol, Plaintiff concedes that "a defendant need not include the particular factor that ultimately causes its projection not to come true." *Slayton*, 604 F.3d at 773. "[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014). Here, Immunovant's cautionary language—which warned that clinical trials "may be delayed by . . . unforeseen safety issues" and that IMVT-1401 "may cause adverse events or have other properties that could . . . cause us to suspend or discontinue clinical trials"—easily meets this standard. (¶123; MTD at 30.) These risk disclosures also stand in stark contrast to those in Plaintiff's cases, which involved risks that had already materialized, or disclosures that were too generic or too specific to alert investors to the broader risk. *See Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *12 (S.D.N.Y. Sept. 27, 2020) (risk already materialized); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) (disclosure too specific); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 318 (S.D.N.Y. 2013) (disclosure too generic). Here, Plaintiff concedes that the risk of cholesterol increase had not yet—and could have never—materialized. (Opp'n at 63-64.) And Immunovant's warnings that the clinical trials "may be delayed by . . . unforeseen safety issues" and that IMVT-1401 "may cause adverse events or have other properties that could . . . cause us to suspend or discontinue clinical trials" (¶123; MTD at 30), were certainly broad enough to cover the risk that ultimately materialized. *See In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) ("There is no

-14-

requirement that a Company disclose its risk in any magic words preferred by plaintiffs.").

> **4.**      **Many statements are disconnected from the purported basis for falsity.**

As a catch-all, Plaintiff claims that *every* challenged statement is "misleading for failing to disclose cholesterol was anticipated risk and not being tested" (Pl. App. A), despite the fact that many have no connection to any purported "anticipated risk" (*see* MTD at 31-32).[14] Plaintiff must do more than say that a statement is misleading; it "must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Merely repeating "the same tangential factual allegations to claim falsity," which on their face are "almost entirely untethered to the actual statements made by Defendants" is inadequate. *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276-77 (N.D. Cal. 2019).

## IV.      THE EXCHANGE ACT CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER

To plead a "strong inference" of scienter, "it is *insufficient* to set out facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent, for that gauge does not capture the stricter demand Congress sought to convey in [the PSLRA]." *Midwest Operating Eng'rs Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*, 2021 WL 5782079, at *2 (2d Cir. Dec. 7, 2021). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—*it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.*" *Id.*; *see also In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 389 n.2 (2d Cir.

---

[14] Plaintiff's reliance on *In re Sepracor, Inc. Securities Litigation*, 308 F. Supp. 2d 20, 25, 29 (D. Mass. 2004) and *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698, 700, 704 (9th Cir. 2016) to support the alleged falsity of statements about the "similarities between the monkeys and humans" is particularly puzzling. (*See* Opp'n at 43.) In each of those cases, the plaintiffs alleged that defendants *affirmatively misrepresented* the results of animal studies. Neither case stands for the proposition that the mere mention of animal studies creates a duty to disclose every possible risk that could be extrapolated from a detailed review of such results.

2021) ("Although . . . we ordinarily draw all reasonable inferences in the plaintiff's favor, when we evaluate whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, we must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."); *Malik v. Network 1 Fin. Sec., Inc.*, 2022 WL 453439, at *4 (2d Cir. Feb. 15, 2022) (similar).

Looking at the allegations holistically, as required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the far more compelling inference is that Immunovant designed and conducted each of its clinical trials in good faith, modifying the monitoring protocols over time, and after observing an unexpected cholesterol increase, promptly halted its clinical trials and updated investors. That is precisely how clinical trials should be conducted, and Plaintiff's allegations do not support any inference—much less a "cogent and compelling" inference—that Defendants committed fraud.

### A.     Plaintiff's Belated Attempt to Change its Theory of Fraud Is Unavailing.

Plaintiff cannot answer why any of the Defendants would risk their reputations or devote years of their lives and millions of dollars conducting clinical trials they knew were doomed to fail. (*See* MTD at 34); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600-01 (S.D.N.Y. 2016). So, Plaintiff belatedly attempts to revise its theory—arguing that elevated cholesterol was *not a certainty*, but merely a *risk*. (Opp'n at 63-64.) But the sole basis upon which Plaintiff challenges Immunovant's risk disclosures is the notion that this so-called "anticipated risk" *would* materialize. (*See, e.g.*, ¶122 (Immunovant "*would* encounter problems"); ¶124 ("clinical trials *would* be halted"); ¶126 (Immunovant "*would* not succeed in demonstrating safety for IMVT-1401"); ¶127 ("safety issues in IMVT-1401 *would* have a material adverse effect on business").) Plaintiff cannot hide from those allegations just because they make its theory of fraud completely implausible.

**B.      Defendants' Lack of Motive Undermines any Inference of Scienter.**

Plaintiff acknowledges that, to plead motive, it "'must allege that the corporate defendant or its officers benefitted in some concrete and personal way from the purported fraud,' typically by alleging corporate insiders 'made a misrepresentation in order to sell their own shares at a profit.'" (Opp'n at 61 (quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).) But Plaintiff identifies no such allegations.[15]

Instead, Plaintiff manufactures an implausible theory that Defendants intentionally postponed inclusion of cholesterol monitoring in clinical trials just so they could hide the risk from investors and enable Dr. Wong and Roivant to obtain earnout shares under a Share Exchange Agreement ("SEA") executed on September 29, 2019. (Opp'n at 62-63; ¶50.) There are myriad problems with this theory.[16] The most obvious is that the clinical trials were designed months before the SEA was executed. (*See* ¶84 (Phase 1 trial results published April 2019); MTD at 9 (ASCEND GO-1 trial started April 2019, ASCEND MG trial started May 2019).) Plaintiff has not alleged that the trial design was based on a future, not-yet contemplated transaction.

Nor does Plaintiff identify any case law suggesting that receipt of earnout shares—which

---

[15] Plaintiff does not dispute that the AC lacks any allegations of stock sales, or that Dr. Wong's entities purchased shares during the putative class period (Opp'n at 61; *see* Ex. 15), both of which undermine an inference of scienter. *See, e.g.*, *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000); *Abbad v. Amman*, 285 F. Supp. 2d 411, 418 n.5 (S.D.N.Y. 2003). Although Plaintiff challenges judicial notice of Dr. Wong's Form 4 filings (Opp'n at 16 (citing Ex. 15)), courts in this circuit "routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them *for the truth of their contents*." *Abely*, 2013 WL 2399869, at *22. The sole case Plaintiff relies on is not a securities fraud claim, but rather a strict liability claim under Section 16(b) for disgorgement of short-swing profits, in which the court merely held that Form 4's cannot be used to establish beneficial ownership. *See Wagner v. Royal Bank of Scotland Grp. PLC*, 2013 WL 4779039, at *3 (S.D.N.Y. Sept. 5, 2013).

[16] (*See* Reply Memorandum of Law In Support of the Motion to Dismiss of Roivant Sciences Ltd. at 5-7.)

-17-

is akin to executive compensation—can support an inference of scienter.[17] In fact, the Second

Circuit has repeatedly held that "the desire to maintain a high stock price in order to increase

executive compensation" is insufficient to establish fraudulent intent. *Malik*, 2022 WL 453439, at

\*3 (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 109 (2d Cir. 2009)); *see also*

*Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 352 (2d Cir. 2020) ("Motives that are common

to most corporate officers, such as the desire for the corporation to appear profitable and the desire

to keep stock prices high to increase officer compensation, do not constitute 'motive.'").[18]

As to Dr. Salzmann, Plaintiff completely abandons its allegations, and instead, attempts to

invent a motive based on a *shareholder vote* to reprice Dr. Salzmann's stock options *seven months*

*after the end of the class period.* (Opp'n at 64.) Given both the timing and Dr. Salzmann's lack of

control over the repricing, there is no aspect of this argument that could support an inference of

scienter even if it were properly alleged. *See TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272 F.

Supp. 3d 740, 756 (E.D.N.C. 2017) (post-class period stock transactions); *Mogensen v. Body Cent.*

*Corp.*, 15 F. Supp. 3d 1191, 1222 (M.D. Fla. 2014) (lack of control).

As to Plaintiff's allegations regarding Immunovant's secondary offerings (Opp'n at 65-

66), such arguments have been soundly rejected by courts as "too generalized."[19] *In re PXRE Grp.,*

---

[17] Plaintiff's reliance on *In re Romeo Power Inc. Securities Litigation* is misplaced. (Opp'n at 63.) That case holds that defendants' receipt of shares as part of their compensation package did not necessarily *undermine* an inference of scienter. 2022 WL 1806303, at \*5 (S.D.N.Y. June 2, 2022). It does not support Plaintiff's claim that receiving earnout shares *supports* an inference of scienter.

[18] Plaintiff's argument that Dr. Wong personally benefitted from the merger between HSAC and Legacy Immunovant is neither well-pled nor accurate. (Opp'n at 62.) Pursuant to the SEA, Dr. Wong *exchanged* his shares of Legacy Immunovant for shares in the newly-public Immunovant (formerly HSAC); no cash was received. (*See* ¶50.)

[19] In fact, the sole case Plaintiff relies on—*In re OSI Pharms., Inc. Sec. Litig.*, 2007 WL 9672541, at \*12 (E.D.N.Y. Mar. 31, 2007)—is not to the contrary. There, the plaintiffs not only alleged that defendants were "attempting to maximize the value of the offering," but also that the alleged

*Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 532-33 (S.D.N.Y. 2009) (raising capital to stave off a company's collapse insufficient to establish scienter), *aff'd*, 357 F. App'x 393 (2d Cir. 2009); *see also In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 570 (S.D.N.Y. 2007) (reliance on capital raise inadequate); *In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604, at *5 (S.D.N.Y. Sept. 19, 2012) (same); *Hoey v. Insmed Inc.*, 2018 WL 902266, at *22 (D.N.J. Feb. 15, 2018) (same).

## C.      Plaintiff Fails to Plead Conscious Misbehavior or Recklessness.

Conscious misbehavior or recklessness—in the context of a securities fraud claim—is "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Lehmann*, 830 F. App'x at 352. The alleged conduct must "at the least be *highly unreasonable* and represent an *extreme departure* from the standards of ordinary care to the extent that the danger was either known to the defendant or *so obvious* that the defendant must have been aware of it." *Id.* (cleaned up)*.* "An *egregious refusal* to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of recklessness." *Id.* Plaintiff has pled no such facts. (MTD at 37-40.)

Indeed, despite Plaintiff's insistence that it "has alleged a host of facts demonstrating that Defendants acted with scienter" (Opp'n at 54), it offers nothing but conclusory allegations of Defendants' purported "access" to animal study results and scientific literature, which are insufficient "to surmount the high threshold just described." *Lehmann*, 830 F. App'x at 352-53; *see also Malik*, 2022 WL 453439, at *3 ("In cases in which liability is premised upon alleged material omissions, if the complaint does not present facts indicating a clear duty to disclose,

scheme "allowed the Individual Defendants and the Director Defendants to sell their artificially inflated personally-held shares for gross proceeds of over $13 million." *Id.* (cleaned up).

plaintiff's scienter allegations do not provide strong evidence of conscious misbehavior or recklessness.").

For example, Plaintiff argues that as CEO of Immunovant, it would be "absurd" to suggest that Dr. Salzmann was unaware of "red flags" regarding increased cholesterol. (Opp'n at 55; *see also id.* at 56-57.) But unlike the cases Plaintiff relies upon, Plaintiff pleads no "red flags." To the contrary, the AC admits that the third-party experts who prepared the summaries of animal results *did not identify cholesterol as an anticipated risk.* (¶¶72, 140.) *See Anderson v. Peregrine Pharms., Inc.*, 654 F. App'x 281, 282 (9th Cir. 2016) (holding that defendants had no duty to "run additional testing on the results they received from an FDA-approved third-party contractor"). And despite Plaintiff's argument that "[i]t is not believable that Defendant Salzmann and other senior Immunovant employees did not carefully review and discuss those animal studies" (Opp'n at 60), Plaintiff concedes that the FE—"a senior employee in Immunovant's Non-Clinical Development group"—did not review the detailed results until *January 2021*, when "patients treated with IMVT-1401 during a Phase 2b clinical trial displayed increased cholesterol levels and the Principal Investigator notified IMVT-1401's clinical trial doctor regarding this issue" (*id.* at 23-24).

Plaintiff's allegations regarding the scientific literature are even *less* compelling. Plaintiff argues that Dr. Salzmann had a duty to monitor scientific literature about albumin reductions and "therefore either knew about or ignored obvious signs of fraud." (Opp'n at 57.) But, as discussed above, *the handful of articles identified in the AC do not address any causal link between mild albumin reductions and increased cholesterol.* (*See supra* §III.B.2.) Even if they did, Plaintiff fails to allege that any Defendant was aware of such articles, much less that the (incorrect) conclusions Plaintiff draws from such articles were so obvious as to constitute "red flags."

Relatedly, Plaintiff's arguments that Dr. Wong "acknowledged he reviewed scientific

-20-

literature about potential side effects of albumin reductions" and "minimized the negative impact of albumin reductions" (Opp'n at 58) mischaracterizes Plaintiff's own allegations. Dr. Wong was specifically addressing literature on "patients borne with close to 0% albumin," not the mild albumin reductions observed in the IMVT-1401 trials. (¶183.) The same is true for statements made by Dr. Salzmann. (*See, e.g.*, ¶205 ("And it's pretty hard to find any published literature or expert opinion on what the sequelae of a albumin – of a *mild albumin reduction* would be.").) As such, there is no basis for Plaintiff to insinuate that Drs. Salzmann or Wong minimized the impact of albumin reductions *like those observed* for IMVT-1401.

Nor is there any merit to Plaintiff's argument that Drs. Salzmann or Wong *presumably* knew about one specific risk (increased cholesterol) merely because they spoke about the development of IMVT-1401.[20] (Opp'n at 56-58.) "Such a result would eviscerate the cogent and compelling inference of scienter required by *Tellabs*." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011) (rejecting similar argument). The *only* reason Plaintiff is able to hone in on this *specific* risk is with *the benefit of hindsight* and knowledge of exactly what to look for. *See Anderson*, 654 F. App'x at 282 ("It is easy for Plaintiffs to see what went wrong in hindsight; but that does not make Defendants' failure to see that problem prior to announcing test results fraudulent, at least in the absence of some red flags.").

## V.   PLAINTIFF FAILS TO PLEAD SCHEME LIABILITY

Plaintiff itself sees scheme liability as an afterthought. (Opp'n at 66-67.) It admits that to plead scheme liability, a plaintiff must allege a "manipulative act"—*i.e.*, "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price

---

[20] Plaintiff's cases are readily distinguishable as they concern statements that *directly contradicted* allegedly known facts, as opposed to statements that are allegedly misleading due to the omission of one specific risk. (Opp'n at 56-58.)

of securities." (*Id.* at 67.) Plaintiff fails to identify any such act—apart from the making of alleged misstatements—to support its scheme claim. That is insufficient, as the Second Circuit has just reaffirmed. *SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022) (scheme claim cannot be based on alleged misstatements or omissions alone). Nothing else alleged by Plaintiff, such as a purported "fraudulent scheme to delay monitoring cholesterol in early IMVT-1401 clinical trials" could have "controll[ed] or artificially affect[ed] the price" of Immunovant stock unaccompanied by the alleged misstatements. (Opp'n at 66-67.) Absent such explanation, the scheme claim is subsumed by the 10b-5(b) claim and fails for the same reasons. (*See* MTD at 13 n.10.)

## VI.   CONCLUSION

For the reasons discussed above, the Court should dismiss the entire AC with prejudice and deny Plaintiff's request for leave to amend.[21]

---

[21] As this Court has noted, "it is within the sound discretion of the district court to grant or deny leave to amend." *In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) (Matsumoto, J.). "Where amendment would be futile, denial of leave to amend is proper." *Id.* (denying plaintiffs' request for leave to file a second amended complaint, when plaintiffs "offer[ed] no indication of what additional facts would make their complaint viable and remedy its legal deficiencies").

Dated: September 9, 2022

COOLEY LLP

By: */s/ Koji F. Fukumura*
    Koji F. Fukumura

Koji F. Fukumura (*pro hac vice*)
Heather M. Speers (*pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com
      hspeers@cooley.com

Shannon M. Eagan (*pro hac vice*)
3175 Hanover St
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 849-7400
Email: seagan@cooley.com

Aric H. Wu
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: ahwu@cooley.com

*Attorneys for Immunovant, Roderick Wong, Peter Salzmann, Frank M. Torti, Andrew Fromkin, Douglas Hughes, George Migausky, Atul Pande, and Eric Venker*

-23-