**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

THERESA PITMAN, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

v.

IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION *et al.*,

       Defendants.

Case No. 1:21-cv-00918-KAM-VMS

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS</u>**

Daniel Roeser
Valerie A. Haggans
Justin D. Ward
**GOODWIN PROCTER LLP**

*Attorneys for Defendants SVB Securities LLC (f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.     Plaintiff Disclaims the Knowledge Necessary for Its "Anticipated Risk" Theory. ........... 2

II.    The Securities Act Claims Are Grounded in a Scientific Disagreement. .......................... 3

III.   Immunovant Did Not Have a Duty to Disclose the Alleged Risk of Heightened
       Cholesterol. ...................................................................................................... 6

       A.      The Offering Documents Did Not Give Rise to a Duty to Disclose. ...................... 7

       B.      Items 303 and 105 Did Not Give Rise to a Duty to Disclose. .............................. 8

IV.    The Opposition Does Not Identify Any Actionable Misstatements or Omissions. ........... 9

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Apple REITs Litig.,
  2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) (Matsumoto, J.), aff'd in part,
  vacated in part on other grounds sub nom. Berger v. Apple REIT Ten, Inc.,
  563 F. App'x 81 (2d Cir. 2014) ...................................................................................3

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,
  28 F.4th 343 (2d Cir. 2022) ....................................................................................7, 9

Einhorn v. Axogen, Inc.,
  42 F.4th 1218 (11th Cir. 2022) ..................................................................................2

Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,
  53 F. Supp. 3d 882 (E.D. La. 2014) ........................................................................3, 8

In re Gen. Elec. Co. Sec. Litig.,
  857 F. Supp. 2d 367 (S.D.N.Y. 2012)........................................................................3

In re Keryx Biopharms., Inc., Sec. Litig.,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)..............................................................4

In re Omega Healthcare Invs., Inc. Sec. Litig.,
  563 F. Supp. 3d 259 (S.D.N.Y. 2021)........................................................................8

In re Rigel Pharmaceuticals, Inc. Securities Litigation,
  697 F.3d 869 (9th Cir. 2012) .................................................................................4, 5

Schueneman v. Arena Pharmaceuticals, Inc.,
  840 F. 3d 698 (9th Cir. 2016) ................................................................................5, 6

Silvercreek Mgmt., Inc. v. Citigroup, Inc.,
  248 F. Supp. 3d 428 (S.D.N.Y. 2017)........................................................................3

Sir Speedy, Inc. v. L & P Graphics, Inc.,
  957 F.2d 1033 (2d Cir. 1992).....................................................................................5

In re Veon Ltd. Sec. Litig.,
  2021 WL 930478 (S.D.N.Y. Mar. 11, 2021) .............................................................7

**Statutes**

Private Securities Litigation Reform Act of 1995 ..................................................2, 3, 9

Securities Act of 1933.............................................................................................. passim

Securities Exchange Act of 1934 ............................................................................................1, 9

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................3

## PRELIMINARY STATEMENT

Plaintiff's Opposition ("Opp.") confirms that the Securities Act claims are fatally defective, treating them as an afterthought worth just 10 of its 85 pages (see Opp. 70-81) and a few other points scattered throughout the Exchange Act arguments. This Court should dismiss them.

**First**, the Securities Act claims are limited to "strict liability and negligence." (Opp. 76.) Yet those claims are based on an alleged "anticipated risk" – which Plaintiff defines as a risk "**expected** to occur based on **knowledge** of the class of drugs." (AC ¶ 62.) Plaintiff cannot pursue a knowledge-based theory while simultaneously disclaiming scienter.

**Second**, the Securities Act claims are based on a disagreement with how Immunovant designed its human clinical trials and how third-party experts interpreted the cholesterol data from a preclinical study of animals. Plaintiff does not dispute that a disagreement about scientific judgment cannot support Securities Act claims, but that is all Plaintiff alleges.

**Third**, Defendants had no duty to disclose the "facts" that Plaintiff claims were omitted from the Offering Documents. Plaintiff concedes that the Offering Documents said nothing about cholesterol and disclosed that health issues might emerge during the clinical trials. Further disclosures about the alleged risk of heightened cholesterol were not required.

**Fourth**, Plaintiff has not identified any false or misleading statements in the Offering Documents. The Underwriter Defendants' opening brief systematically explained why each of the challenged statements was a true statement of fact, a non-actionable opinion, a protected forward-looking statement, puffery, or a combination thereof. Plaintiff offers no meaningful response.

This Court should dismiss the claims against the Underwriter Defendants with prejudice.[1]

---

[1] The Underwriter Defendants incorporate, to the extent applicable, the arguments for dismissal in the reply briefs of the Immunovant Defendants and Roivant. Unless otherwise noted, all emphasis

## ARGUMENT

**I.       Plaintiff Disclaims the Knowledge Necessary for Its "Anticipated Risk" Theory.**

Plaintiff admits that it has disclaimed scienter and that its Securities Act claims "sound in strict liability and negligence."  (Opp. 76; see Br. 8.)[2]  Plaintiff insists that its disclaimer is consistent with the "anticipated risk" theory that forms the basis of the Securities Act claims. (Opp. 73.)  Wrong.  The AC defines an "anticipated risk" as "a risk that has not yet been observed or established for the product **but is expected to occur based on knowledge of the class of drugs**."  (AC ¶ 62.)  That definition requires subjective awareness of a risk based on known facts.

Plaintiff draws a false distinction between a "known risk" and an "anticipated risk," arguing that only the former involves knowledge.  (Opp. 73.)  Both involve knowledge, just of different risks: a "known risk" requires knowledge that a side effect has emerged in **that specific drug** while an "anticipated risk" requires knowledge of the **same class of drugs**.  (AC ¶ 62.)[3]

Plaintiff protests that it need not allege knowledge because knowledge is not an element of the Securities Act claims.  (Opp. 72.)  Plaintiff misses the point.  Having grounded its Securities Act claims in a theory of "anticipated risk" – which, by Plaintiff's definition, requires knowledge – Plaintiff cannot state a claim by disclaiming knowledge and limiting its Securities Act claims to "strict liability or negligence."  See Einhorn v. Axogen, Inc., 42 F.4th 1218, 1224-25, 1229 (11th

---

is added and all alterations, citations, and internal quotation marks are omitted throughout.  Unless otherwise defined, all capitalized terms have the meanings in the Memorandum of Law in Support of the Underwriter Defendants' Motion to Dismiss ("Opening Brief" or "Br.").

[2] Plaintiff does not dispute that its disclaimer bars certain Securities Act claims in their entirety. Plaintiff cannot (1) challenge pure statements of opinion as false because that would require subjective awareness of their falsity (see Br. 18 & n.8); (2) challenge forward-looking statements because the PSLRA requires "actual knowledge" (i.e., a higher standard than recklessness) that such statements are false (see id. 20 & n.10); or (3) invoke a duty to disclose under Items 303 and 105, both of which require actual knowledge (see id. 14, 16-17).

[3] In contrast, a "potential risk" is one "for which there is reason to suspect it might occur."  (AC ¶ 62.)  Even if that definition required only negligence, the AC nowhere alleges a "potential risk."

2

Cir. 2022) (holding plaintiff could not allege actual knowledge when it had disclaimed scienter).[4]

Plaintiff asserts that "even if the Securities Act Defendants are alleged to have known some facts [that] does not convert Plaintiff's claim into one alleging Defendants engaged in intentional or reckless conduct." (Opp. 78.)  The single case cited by Plaintiff does not hold that a plaintiff can limit its claim to "strict liability or negligence" when alleging knowledge of falsity.  See Silvercreek Mgmt., Inc. v. Citigroup, Inc., 248 F. Supp. 3d 428, 449 (S.D.N.Y. 2017).  Rather, as this Court has held, such disclaimers should be given effect.  See In re Apple REITs Litig., 2013 WL 1386202, at *10 (E.D.N.Y. Apr. 3, 2013) (Matsumoto, J.), aff'd in part, vacated in part on other grounds sub nom. Berger v. Apple REIT Ten, Inc., 563 F. App'x 81 (2d Cir. 2014).[5]

When Plaintiff's disclaimer is given effect, its "anticipated risk" theory necessarily fails.

## II.     The Securities Act Claims Are Grounded in a Scientific Disagreement.

Plaintiff does not dispute that it cannot state a Securities Act claim based on a scientific disagreement with Immunovant's drug trial design or trial data analysis.  (Br. 9-10 & n.6.)  Instead, Plaintiff asserts that "there is no scientific dispute."  (Opp. 41.)  Wrong again.

Plaintiff's claims turn on a scientific disagreement over how Immunovant designed drug trials and how authors of a study analyzed trial data.  Specifically, Plaintiff contends that (1) "Immunovant failed to follow FDA regulations and good clinical practices in connection with IMVT-1401" because it "should have – but failed to – monitor, assess, and attempt to mitigate all

---

[4] See also In re Gen. Elec. Co. Sec. Litig., 857 F. Supp. 2d 367, 403 (S.D.N.Y. 2012) ("Nor can this statement be read as an opinion not truly held since plaintiff had disclaimed scienter as a basis of its Securities Act claims.").

[5] If Plaintiff's disclaimer is not given effect, then the Securities Act claims sound in fraud and must satisfy the heightened pleading standard of Rule 9(b), which the AC has not met.  (Br. 8 n.5.)  See also Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn, 53 F. Supp. 3d 882, 911 (E.D. La. 2014) (court "must either: (1) accept plaintiff's fraud disclaimer and dismiss this claim for failure to allege actual knowledge of the falsity of the prediction, or (2) ignore the fraud disclaimer and apply the heightened pleading standards of Rule 9(b) and the PSLRA").

anticipated risks, including cholesterol" (Opp. 36; see also id. 41), and (2) "even though the underlying data for the animal studies **clearly** showed substantial increases in cholesterol of animals which received IMVT-1401, the summary of findings at the beginning of the reports **incorrectly** failed to reflect these increases" (id. 25).  Plaintiff makes a few arguments, scattered throughout the brief, why the AC supposedly alleges more.  None saves the Securities Act claims.

**First**, Plaintiff argues that its claims are "based on Defendants' **descriptions** of the design of IMVT-1401 clinical trials and not whether the trials were **designed** correctly."  (Id. 39-40.) False.  Plaintiff repeatedly alleges that the drug trials were designed incorrectly because Immunovant did not test for cholesterol until Phase 2b – i.e., "failed to conduct a basic lipid screen."  (Id. 41.)  Immunovant's alleged failure to disclose that supposed design flaw is the **sole** basis for Plaintiff's assertion that the Offering Documents misled investors about the trial design: "Since Immunovant had not monitored the anticipated risk of elevated cholesterol levels, those statements were false and misleading."  (Id.)  Courts in this Circuit routinely dismiss claims "based on assertions that the methodology of a drug trial had not been sufficiently disclosed," as well as claims that descriptions of trials are misleading "because the defendants had not followed established statistical protocol."  In re Keryx Biopharms., Inc., Sec. Litig., 2014 WL 585658, at *10 (S.D.N.Y. Feb. 14, 2014) (collecting cases).

**Second**, Plaintiff argues that, "according to FE, the summary of findings [which found only 'minor increases' in cholesterol in the animal data] was wrong and false, and not the result of a scientific disagreement."  (Opp. 25.)  That argument makes no sense.  To say that the findings of a scientific study are "wrong and false" is to state a "scientific disagreement" with those findings.  The Ninth Circuit reached the same conclusion in In re Rigel Pharmaceuticals, Inc. Securities Litigation, 697 F.3d 869, 879 (9th Cir. 2012).  Plaintiff tries to distinguish Rigel with

4

the circular argument that it is "inapposite" (Opp. 40) because Plaintiff's claims are not based on a scientific dispute; but that argument is untrue and Plaintiff's "distinction" does not follow.

In <u>Rigel</u>, the plaintiffs alleged that study results were "false" because the company had conducted an "inaccurate and improper statistical analysis." 697 F.3d at 877. If the company had conducted the "right" analysis, then the study results allegedly would have been different. <u>Id</u>. Thus, the disclosed results were "false." <u>Id.</u> The Ninth Circuit held that "Plaintiff's allegations of 'falsity' essentially are disagreements with the statistical methodology adopted by the doctors and scientists who designed and conducted the study" and failed to state a claim. <u>Id.</u> at 878.

Here, Plaintiff's theory of "falsity" is even weaker. Plaintiff's challenge to Immunovant's animal study is inherently statistical because it involves the interpretation of cholesterol levels in a sample of animals. (AC ¶ 140.) Unlike the plaintiffs in <u>Rigel</u>, however, Plaintiff does not explain how the study's statistical analysis was wrong. Plaintiff's "FE" alleges that "**<u>some</u>** of the animals showed cholesterol levels of 200 to 300 percent higher when compared with the control group." (<u>Id.</u>) Observing larger increases in "some" animals is entirely consistent with a summary of findings of only minor increases across an entire sample of animals. (<u>Cf.</u> Opp. 25.) For example, where "figures represented averages," that "meant that some results would have been higher, some lower." <u>Sir Speedy, Inc. v. L & P Graphics, Inc.</u>, 957 F.2d 1033, 1040 (2d Cir. 1992).[6]

**Third**, Plaintiff relies heavily on <u>Schueneman v. Arena Pharmaceuticals, Inc.</u>, 840 F. 3d 698 (9th Cir. 2016), for the proposition that it can state a claim based on the animal study data. (Opp. 74.) <u>Arena</u> actually shows just how wrong Plaintiff is.

---

[6] Plaintiff's claim also is weaker than the claims in <u>Rigel</u> because the animal study's finding about "minor increases" in cholesterol was not disclosed in the Offering Documents. Rather, the Offering Documents were silent about cholesterol. (<u>See</u> <u>infra</u> Section III.A.) Plaintiff cannot state a Securities Act claim by challenging a scientific finding that was not shared with investors.

- In <u>Arena</u>, a rat study showed that a trial drug "was causing mammary tumors, brain cancer, skin cancer, and nerve sheath cancer in the rats." 840 F.3d at 701. Here, Plaintiff alleges that **some** monkeys in the study experienced increases in cholesterol but not that **any** experienced adverse health effects (like heart disease), much less a fatal effect like cancer. (AC ¶¶ 70-72, 140.)

- In <u>Arena</u>, the company knew that the rat study was "**the** sticking point with the FDA" yet told investors that "all the animal studies . . . supported [its] case for [FDA] approval." 840 F.3d at 708. Here, Plaintiff neither alleges that the FDA expressed concern about the animal studies nor identifies any statement in the Offering Documents that they supported FDA approval.

- In <u>Arena</u>, the Ninth Circuit found the company's statements connecting the animal studies to FDA approval plausibly misleading but cautioned that there would be no claim if the case had turned on "the reasonableness of Arena's interpretation of the Rat Study versus the FDA's interpretation." <u>Id.</u> at 709. Here, Plaintiff's claim about the animal studies arises from its "FE's" disagreement with the reasonableness of the interpretation of trial data by third-party authors.

Plaintiff's scientific disagreement does not state a Securities Act claim. (Br. 9-10 & n.6.)

### III. Immunovant Did Not Have a Duty to Disclose the Alleged Risk of Heightened Cholesterol.

Plaintiff does not dispute that the Offering Documents informed investors that IMVT-1401 was a novel treatment, that it was in the middle of phased clinical trials, that safety issues were being tested throughout the clinical trials, and that safety issues might emerge that could disrupt the trials. (Br. 4-5, 22, 30; AC ¶¶ 96, 109, 111.) Plaintiff argues that those disclosures were not adequate because they did not identify heightened cholesterol specifically as one of the safety issues that might emerge or disclose that cholesterol was not being tested until Phase 2b of the trials. (<u>See</u> Opp. 68.) Wrong for a third time. As the Second Circuit has recently held, pharmaceutical companies have no "obligation to disclose **why** [a clinical] trial might fail."

6

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343, 355 (2d Cir. 2022).

**A.    The Offering Documents Did Not Give Rise to a Duty to Disclose.**

Plaintiff does not dispute that the Offering Documents said nothing about cholesterol.  (See Opp. 75.)    Therefore, the Offering Documents necessarily contained no statements about cholesterol that could give rise to a duty to disclose.  (Br. 12-13.)  That is fatal to Plaintiff's claims: "[C]ompanies may remain silent even with respect to information that a reasonable investor might consider material."  In re Veon Ltd. Sec. Litig., 2021 WL 930478, at *6 (S.D.N.Y. Mar. 11, 2021). Plaintiff's arguments to the contrary fail as a matter of law.

**First**, Plaintiff challenges statements that "IMVT-1401 clinical trials show[ed] the drug was 'safe,' 'well-tolerated' and without any 'serious AEs'" because "animals given IMVT-1401 experienced substantial elevations in cholesterol."  (Opp. 75-76; see also AC ¶ 98.)  The animal study found only "minor increases" in cholesterol.  (AC ¶ 72.)  Plaintiff does not argue that this finding is inconsistent with the drug being "well tolerated."  Plaintiff just disagrees with the study's interpretation of the underlying data, which does not state a claim.  (See supra Section II.)[7]

**Second**, Plaintiff challenges the statement:   "Dose-dependent and reversible albumin reductions were observed in the single-ascending and multiple-ascending dose cohorts. . . .These reductions were not associated with any AEs or clinical symptoms and did not lead to any study discontinuations."  (Opp. 75; see also AC ¶ 104.)  Plaintiff argues that, "[s]ince the Offering Documents discussed the albumin reductions and since a key risk of albumin reductions is

---

[7] Plaintiff asserts:  "Statements in the Offering Documents, such as, 'several nonclinical studies . . . demonstrated . . . [IMVT-1401] was observed to be well tolerated' were affirmative statements about IMVT-1401's nonclinical studies and the tolerability of IMVT-1401."  (Opp. 75.)  That statement was a general statement about the animal studies and human trials together.  (AC ¶ 98.) Plaintiff misleadingly omits the portions in the ellipses – in support of its affirmative misstatement claim, no less – to make it seem as if the statement concerned only the animal studies.

cholesterol elevation," there was "a duty to fully disclose the risks associated with albumin reductions and IMVT-1401." (Opp. 75.)  Not so.  "[I]t is black letter law in this Circuit that the disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."  In re Omega Healthcare Invs., Inc. Sec. Litig., 563 F. Supp. 3d 259, 277 (S.D.N.Y. 2021).  Plaintiff does not challenge the accuracy of the historical disclosure about albumin reductions and, as a matter of law, cannot claim that the disclosure was misleading because Immunovant should have warned about the alleged risk of heightened cholesterol in the future.

**B.      Items 303 and 105 Did Not Give Rise to a Duty to Disclose.**

Plaintiff cannot rely on Items 303 or 105 to give rise to a duty to disclose for the Securities Act claims.  Indeed, Plaintiff does not dispute that Items 303 and 105 require (1) actual knowledge of (2) a trend or uncertainty (Item 303) or risk (Item 105).  (Br. 13-17.)  Plaintiff alleges neither.

**First**, Plaintiff has disclaimed actual knowledge for purposes of its Securities Act claims. (Br. 14, 16-17.)  See also Bulmahn, 53 F. Supp. 3d at 898.  That is the end of the matter.

**Second**, Plaintiff does not plead facts showing an "anticipated risk" that IMVT-1401 would cause heightened cholesterol at the time of the September 2020 Offering.  (Br. 13-14, 16.)  Plaintiff contends that "the AC alleges numerous facts" but points to none.  (Opp. 68.)  Instead, Plaintiff offers the conclusory assertion that "Defendants were in possession of data that contradicted the safety of IMVT-1401."  (Id.)  On its face, that allegation does not show the trend, uncertainty, or risk required by Items 303 and 105.  Indeed, Plaintiff itself admits that the risk "that IMVT-1401 caused elevations in cholesterol" only "materialized once Immunovant announced the halting of the IMVT-1401 clinical trial" (id. 70) – i.e., after the September 2020 Offering.

Even if there were a trend, uncertainty, or risk, the disclosures in the Offering Documents were sufficient.  (Br. 14-15, 17.)  Plaintiff argues that those disclosures "are the definition of

8

boilerplate and contain no warnings concerning the risk and uncertainty associated with IMVT-1401 increasing cholesterol levels in humans." (Opp. 69; see also id. 68.) The Offering Documents, however, satisfied the requirements of Items 303 and 105. (Br. 14-15, 17.)

**IV.      The Opposition Does Not Identify Any Actionable Misstatements or Omissions.**

The Opening Brief explained in detail that the AC did not identify any actionable misstatements in the Offering Documents but only accurate statements of historical fact, non-actionable opinions under Omnicare, protected forward-looking statements under the PSLRA, puffery, or a combination thereof. (Br. 17-30.) Plaintiff's scattered responses – throughout its Exchange Act arguments – demonstrate that Plaintiff has not stated a Securities Act claim.

**First**, as discussed above, Plaintiff argues that statements about trial design were misleading because "Immunovant had not monitored the anticipated risk of elevated cholesterol levels." (See supra Section II.) The Second Circuit has made clear that a company's general description of its trial design does not require it to disclose more detailed information. (Br. 21.)[8]

**Second**, as discussed above, Plaintiff argues that "Defendants' statements assuring investors that clinical trial results showed IMVT-1401 was safe, well tolerated and without serious AEs, were materially false and misleading when made." (Opp. 33; see also supra Section III.A.) Plaintiff asserts that "Defendants knew or recklessly disregarded that IMVT-1401's clinical trials were not reliable indicators of safety, tolerability or AEs because Immunovant had failed to monitor or assess cholesterol." (Opp. 33.) Plaintiff, however, has disclaimed scienter with respect to its Securities Act claims. (See supra Section I.)

---

[8] The Opposition tries to distinguish Bristol-Myers Squibb on the ground that the alleged omissions here were not competitively sensitive. (Opp. 40-41.) This ignores the Second Circuit's key holding: General disclosures about the risk of "negative or unexpected data" do not become misleading or inadequate simply because they lack detail about how negative or unexpected data might arise. 28 F.4th at 355. Plaintiff relies on just such an impermissible theory.

**Third**, as discussed above, Plaintiff argues that "Defendants' statements concerning the impact of albumin reductions" were actionable because they "were reasonably understood to rest on a factual basis." (Opp. 51; see also id. 35-36, supra Section III.A.)[9]  Statements of opinion about the impact of albumin reductions may rest on a factual basis, but they still are non-actionable. (Br. 25-26.)  Moreover, Plaintiff does not dispute the fundamental disconnect that the challenged statements concern IMVT-1401's **efficacy** results but Plaintiff alleges that the statements were misleading only because they omitted **safety** information concerning cholesterol. (Id. 26.)

**Fourth**, Plaintiff argues that statements about the timetable for the development of IMVT-1401 "were rendered misleading by the failure to disclose the known significant risks to the viability and timetable for the development of IMVT-1401." (Opp. 44-45.)  Again, Plaintiff has disclaimed knowledge with respect to its Securities Act claims. (See supra Section I.)

**Fifth**, as discussed above, Plaintiff argues that 60+ pages of risk disclosures in the Offering Documents were "generic and boilerplate." (Opp. 79-80; see also supra Section III.B.)  Those disclosures are at least as detailed and company-specific as disclosures approved by other courts in this Circuit (Br. 14-15, 17, 19-20 & n.9, 30) and, further, fatal to Plaintiff's claims (Br. 30).[10]

## CONCLUSION

For the foregoing reasons and those in the Opening Brief, this Court should dismiss the claims against the Underwriter Defendants with prejudice.

---

[9] Plaintiff cites a number of statements about albumin that were not in the Offering Documents (see, e.g., Opp. 4, 20, 27, 34-36, 58) and, therefore, cannot support a Securities Act claim.  Plaintiff also asserts that one individual Defendant "knew or recklessly disregarded multiple facts" contrary to those statements (id. 51 n.25), but that allegation cannot support a Securities Act claim because Plaintiff has disclaimed scienter. (See supra Section I.)

[10] In any event, Plaintiff's argument – i.e., "Immunovant[] . . . failed to warn investors that . . . the IMVT-1401 clinical trials did not monitor, assess or mitigate a key anticipated risk" (Opp. 79-80) – would impose an affirmative obligation on Immunovant to accuse itself of at least negligently designing its clinical trials.  There is no such obligation. (Br. 12-13.)

10

Dated: September 9, 2022

Respectfully submitted,

*/s/ Daniel Roeser*
Daniel Roeser
Valerie A. Haggans
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
droeser@goodwinlaw.com
vhaggans@goodwinlaw.com

Justin D. Ward*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:  (617) 570-1000
Fax:  (617) 523-1231
jward@goodwinlaw.com

* Admitted only in New York

*Attorneys for Defendants SVB Securities LLC*
*(f/k/a SVB Leerink LLC), LifeSci Capital LLC,*
*Chardan Capital Markets LLC, Guggenheim*
*Securities, LLC, and Robert W. Baird & Co. Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2022, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

*/s/ Daniel Roeser*