**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THERESA PITMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION *et al.*, <br><br> Defendants. | Case No. 1:21-cv-00918-KAM-VMS |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Daniel Roeser
Valerie A. Haggans
Justin D. Ward
**GOODWIN PROCTER LLP**

*Attorneys for Defendants SVB
Securities LLC (f/k/a SVB Leerink
LLC), LifeSci Capital LLC, Chardan
Capital Markets LLC, Guggenheim
Securities, LLC, and Robert W.
Baird & Co. Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

I.    This Court Should Dismiss The Securities Act Claims Because Plaintiff Alleges Nothing More Than A Disagreement With Immunovant's Scientific Judgment, Which Is Not Actionable Under The Securities Laws. ............................................................................ 5

II.    This Court Should Dismiss The Securities Act Claims Because There Was No Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design. ...... 10

    A.    No Statements In The Offering Documents Created A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design. ......... 11

    B.    Item 303 Did Not Create A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design In The Offering Documents. ..................................................................................................... 12

    C.    Item 105 Did Not Create A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design In The Offering Documents. ..................................................................................................... 16

III.    This Court Should Dismiss The Securities Act Claims Because Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions. ............................................................ 17

    A.    Any Alleged Misstatements Or Omissions Concerning IMVT-1401's Clinical Trials Are Not Actionable. .................................................................. 20

    B.    Any Alleged Misstatements Or Omissions Concerning The Potential Negative Impact of Albumin Reductions Are Not Actionable. ........................... 23

    C.    Any Alleged Misstatements Or Omissions Concerning Immunovant's Compliance With Good Clinical Practices Are Not Actionable. ........................ 24

    D.    Any Alleged Misstatements Or Omissions Concerning IMVT-1401's Nonclinical Animal Studies Are Not Actionable. .............................................. 25

    E.    The Risk Disclosures in the Offering Documents Are Not Actionable. ............... 26

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abely v. Aeterna Zentaris Inc.,
No. 12 CIV. 4711 PKC, 2013 WL 2399869 (S.D.N.Y. May 29, 2013)....................................9

In re Adient plc Sec. Litig.,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...................................26

Altayyar v. Etsy, Inc.,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), aff'd, 731 F. App'x 35 (2d Cir. 2018) .......................19

In re Amarin Corp. plc  Sec. Litig.,
No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669 (D.N.J. Mar. 29, 2021) .....................20

In re Apple REITs Litig.,
No. 11-CV-2919 KAM, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013), aff'd in
part, vacated in part on other grounds sub nom. Berger v. Apple REIT Ten,
Inc., 563 F. App'x 81 (2d Cir. 2014) ............................................................................6, 14, 15

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,
28 F.4th 343 (2d Cir. 2022) ............................................................................................. passim

In re Arrowhead Pharms., Inc. Sec. Litig.,
No. CV 16-08505, 2017 WL 8791111 (C.D. Cal. Dec. 21, 2017),
aff'd, 782 F. App'x 572 (9th Cir. 2019) .................................................................................21

Asay v. Pinduoduo Inc.,
No. 18-cv-7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) .................................15

In re AstraZeneca plc Sec. Litig.,
No. 21-CV-722 (JPO), 2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022) .....................11, 21, 25

In re AT&T/DirecTV Now Sec. Litig.,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)....................................................................................23

Biondolillo v. Roche Holding AG,
No. CV 17-4056, 2018 WL 4562464 (D.N.J. Sept. 24, 2018) ................................................23

In re Bristol-Myers Squibb Sec. Litig.,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)....................................................................................23

Cachia v. Bellus Health Inc.,
No. 21 CIV. 02278-GBD, 2022 WL 4367444 (S.D.N.Y. Sept. 21, 2022) ..........................9, 10

In re Chembio Diagnostics, Inc. Sec. Litig.,
    586 F. Supp. 3d 199 (E.D.N.Y. 2022) ...............................................................16, 17

City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.,
    No. 17 Civ. 3501 (JFK), 2019 WL 452051 (S.D.N.Y. Feb. 5, 2019)........................13

In re Coty Inc. Sec. Litig.,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)...................13, 14

Employees' Retirement System of the City of Baton Rouge & Parish of East
    Baton Rouge v. MacroGenics, Inc.,
    61 F.4th 369 (4th Cir. 2023) ...........................................................................6, 7, 8

Fait v. Regions Fin. Corp.,
    712 F. Supp. 2d 117 (S.D.N.Y. 2010), aff'd, 655 F.3d 105 (2d Cir. 2011)..............18

In re Gen. Elec. Co. Sec. Litig.,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012), reconsidered in part on other grounds,
    856 F. Supp. 2d 645 (S.D.N.Y. 2012).....................................................................18

Gillis v. QRX Pharma Ltd.,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016).........................................................................8

Golesorkhi v. Green Mountain Coffee Roasters, Inc.,
    973 F. Supp. 2d 541 (D. Vt. 2013), aff'd, 569 F. App'x 43 (2d Cir. 2014)..............26

Gregory v. ProNAi Therapeutics Inc.,
    297 F. Supp. 3d 372 (S.D.N.Y.), aff'd, 757 F. App'x 35 (2d Cir. 2018)..................23

Hoey v. Insmed Inc.,
    No. CV 16-4323 (FLW), 2018 WL 902266 (D.N.J. Feb. 15, 2018) ........................12

Howard v. Arconic, Inc.,
    395 F. Supp. 3d 516 (W.D. Pa. 2019).......................................................................16

Howard v. Arconic, Inc.,
    No. 2:17-cv-1057, 2021 WL 2561895 (W.D. Pa. Jun. 23, 2021)...........................16

Indiana Pub. Ret. Sys. v. SAIC, Inc.,
    818 F.3d 85 (2d Cir. 2016)................................................................................12, 14

In re Keryx Biopharms., Inc., Sec. Litig.,
    No. 13 Civ. 1307 KBF, 2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) .....................25

Kleinman v. Elan Corp., plc,
    706 F.3d 145 (2d Cir. 2013)......................................................................................23

Lopez v. CTPartners Exec. Search Inc.,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)..................................................................13

In re MELA Scis., Inc. Sec. Litig.,
    No. 10 CV 8774 VB, 2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)...................8, 17

In re Novan, Inc. Sec. Litig.,
    No. 1:17CV999, 2018 WL 6732990 (M.D.N.C. Nov. 30, 2018) ...........................10

Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,
    575 U.S. 175 (2015).......................................................................................18

Pearlstein v. BlackBerry Ltd.,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015)..................................................................13

Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S,
    11 F.4th 90 (2d Cir. 2021) .........................................................................6, 12

In re Rigel Pharmaceuticals, Inc. Securities Litigation,
    697 F.3d 869 (9th Cir. 2012) ..........................................................................7, 8

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)......................................................................... 14-15

Rubinstein v. Credit Suisse Grp. AG,
    457 F. Supp. 3d 289 (S.D.N.Y. 2020)...............................................14, 16, 17, 27

In re Sanofi Sec. Litig.,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015), aff'd sub nom. Tongue v. Sanofi, 816
    F.3d 199 (2d Cir. 2016)...................................................................................8

In re Sibanye Gold Ltd. Sec. Litig.,
    No. 18-CV-3721 (KAM) (PK), 2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)....................3, 5

Singh v. Schikan,
    106 F. Supp. 3d 439 (S.D.N.Y. 2015)................................................................9

Stadnick v. Vivint Solar, Inc.,
    861 F.3d 31 (2d Cir. 2017)..............................................................................15

Tongue v. Sanofi,
    816 F.3d 199 (2d Cir. 2016)...................................................................... passim

In re TVIX Sec. Litig.,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014) aff'd sub nom. Elite Aviation LLC v.
    Credit Suisse AG, 588 F. App'x 37 (2d Cir. 2014) .............................................27

Ulbricht v. Ternium S.A.,
    No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)..............10, 11

In re WebMD Health Corp. Sec. Litig.,
    No. 11 Civ. 5382 JFK, 2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ..........................................26

Y-GAR Cap. LLC v. Credit Suisse Grp. AG,
    No. 19 Civ. 2827 (AT), 2020 WL 71163 (S.D.N.Y. Jan. 2, 2020).........................................14

Zagami v. Cellceutix Corp.,
    No. 15 Civ. 7194 (KPF), 2016 WL 3199531 (S.D.N.Y. June 8, 2016)....................................7

**Statutes and Other Authorities**

17 C.F.R. § 229.105 .............................................................................................................16

17 C.F.R. § 229.303 .............................................................................................................12

Fed. R. Civ. P. 8..................................................................................................................15

Fed. R. Civ. P. 9(b) .........................................................................................................14, 15

Securities Act of 1933................................................................................................. *passim*

Defendants SVB Securities LLC (f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc. (together, the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 82, the "SAC") filed by Lead Plaintiff SEPTA Pension Plan Master Trust ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff brings claims under the Securities Act of 1933 (the "Securities Act") against the Underwriter Defendants (and other Defendants) in connection with a secondary stock offering by Immunovant, Inc. ("Immunovant") that was completed on September 2, 2020 (the "September 2020 Offering"). Plaintiff bases those claims on allegations that the offering documents for the September 2020 Offering (the "Offering Documents") did not disclose that there was a "potential risk" that IMVT-1401 (a drug that Immunovant is developing to treat autoimmune diseases) could elevate cholesterol levels or that the design of IMVT-1401's human clinical trials did not assess cholesterol. On their face, Plaintiff's allegations reduce to mere disagreements over scientific judgment – specifically, the interpretation of scientific data and the design of scientific trials – which permeate the SAC and do not state a Securities Act claim as a matter of law. This Court should dismiss Plaintiff's Securities Act claims for at least the following reasons.

**First**, the Securities Act claims turn on allegations that (1) Immunovant (and the third party that conducted most of the animal testing) misinterpreted the results of animal studies of IMVT-1401 by concluding that those studies showed only minor increases in cholesterol and (2) Immunovant should have designed the Phase 1 and Phase 2a human clinical trials of IMVT-1401 to test for cholesterol. Such disagreements about scientific interpretation, methodology, and trial design are not actionable. To state the obvious, the federal securities laws do not require

Immunovant to analyze and design drug trials according to Plaintiff's preferences.  That is all the more true in this case where Plaintiff bases its disagreement on the alleged opinion of a single confidential witness who supposedly first analyzed the animal study results with the benefit of hindsight after human patients displayed elevated cholesterol levels and long after the Offering Documents were issued.

**Second**, there was no duty to disclose IMVT-1401's "potential risk" of elevated cholesterol levels or that the Phase 1 and 2a trial designs did not test for cholesterol.  Plaintiff alleges that Defendants had a duty to disclose based on (1) allegedly misleading statements in the Offering Documents; (2) Item 303 of Regulation S-K; and (3) Item 105 of Regulation S-K.  Plaintiff does not identify any statements in the Offering Documents that would create a duty to disclose IMVT-1401's "potential risk" or trial design, because the Offering Documents said nothing at all about cholesterol.  Item 303 did not create a duty to disclose because Plaintiff does not plead facts showing a trend or uncertainty related to IMVT-1401's "potential risk" or trial design at the time of the September 2020 Offering; Plaintiff has not alleged, and in fact has disclaimed, for purposes of its Securities Act claims that Defendants knew of any such trend or uncertainty; and, to the extent that any disclosure was required, the Offering Documents disclosed and warned of the "potential risk" about which Plaintiff complains.  Item 105 did not create a duty to disclose for the same reasons.

**Third**, a review of the alleged misstatements or omissions shows that none are actionable.  Most of the challenged statements are opinions.  For opinions to be actionable, Plaintiff must allege that the Offering Documents omitted information that conflicted with what a reasonable investor would take from the statements.  The challenged statements of opinion are not actionable simply based on Plaintiff's disagreement about IMVT-1401's "potential risk" or trial design – especially

2

where the information on which Plaintiff apparently bases its allegations (i.e., one confidential witness's interpretation of animal study data) post-dates the Offering Documents by more than three months.   Moreover, no reasonable investor could have been misled by the Offering Documents, which expressly warned of the risks about which Plaintiff now complains.   And the remaining challenged statements are accurate statements of historical fact, protected forward-looking statements, and/or puffery.

For the foregoing reasons and those that follow, this Court should dismiss the claims against the Underwriter Defendants with prejudice.[1]

## BACKGROUND

In September 2020, Immunovant – a clinical-stage biopharmaceutical company focused on enabling normal lives for patients with autoimmune diseases – completed a secondary offering of stock underwritten by the Underwriter Defendants.  (SAC ¶¶ 1, 7, 31-36; Prospectus at 88.)  In connection with the September 2020 Offering, Immunovant issued the Offering Documents: a registration statement filed with the SEC on Form S-1 and a prospectus.  (SAC ¶ 125.)[2]  At the time of the September 2020 Offering, Immunovant was in the midst of conducting trials of IMVT-1401, a monoclonal antibody that Immunovant hopes will be an effective treatment with broad application to a variety of autoimmune diseases.  (SAC ¶¶ 2, 48; Prospectus at 88-89.)

---

[1] The Underwriter Defendants also incorporate by reference, to the extent applicable, the arguments for dismissal in the Memorandum of Law in Support of Immunovant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Immunovant Motion") and the Memorandum of Law in Support of the Motion to Dismiss of Roivant Sciences, Ltd.

[2] This Court may consider the Offering Documents on this motion to dismiss because they (1) are incorporated by reference into the SAC (see, e.g., SAC ¶ 125) and (2) were filed with the SEC and, therefore, are subject to judicial notice, see In re Sibanye Gold Ltd. Sec. Litig., No. 18-CV-3721 (KAM) (PK), 2020 WL 6582326, at *1 (E.D.N.Y. Nov. 10, 2020) (Matsumoto, J.).  True and correct excerpts of the prospectus, which are identical to the relevant excerpts of the Form S-1 (see SAC ¶ 125), are attached to the Declaration of Heather M. Speers in support of the Immunovant Motion as Exhibit 3.

The Offering Documents described IMVT-1401's trials at length. (SAC ¶¶ 134-145.) Animal studies in monkeys had been completed by third-party HanAll Biopharma before IMVT-1401 was licensed by Immunovant. (See id. ¶¶ 49, 149.) A Phase 1 trial in humans also had been completed. (Id. ¶ 114.) Phase 2 trials in humans, including both Phase 2a and Phase 2b trials, were ongoing. (Id. ¶¶ 117-118.) Initial safety results from the Phase 1 trial and certain of the Phase 2a trials were positive, finding only mild to moderate side effects. (Id. ¶¶ 114, 139.)

The Offering Documents warned investors that, despite those initial positive results, the trials might not go according to plan. Indeed, the Offering Documents contained nearly 60 pages of detailed risk disclosures. (Prospectus at 10-66.) Those risk disclosures included:

- "[W]e had no involvement with or control over the nonclinical or clinical development of IMVT-1401 prior to its in-license from HanAll. We are dependent on our licensing partner having conducted such research and development in accordance with the applicable protocols and legal, regulatory and scientific standards, having accurately reported the results of all nonclinical studies and clinical trials and other research they conducted prior to our acquisition of the rights to our product candidate, having correctly collected and interpreted the data from these studies, trials and other research, and having supplied us with complete information, data sets and reports required to adequately demonstrate the results reported through the date of our acquisition of this asset." (Id. at 24.)

- "[T]he information we choose to publicly disclose regarding a particular study or clinical trial is based on what is typically extensive information, and you or others may not agree with what we determine is the material or otherwise appropriate information to include in our disclosure, and any information we determine not to disclose may ultimately be deemed significant with respect to future decisions, conclusions, views, activities or otherwise regarding a particular drug, product candidate or our business." (Id. at 25.)

- "Failures can occur at any stage of clinical trials, and we could encounter problems that cause us to abandon or repeat clinical trials." (Id. at 23.)

- "The commencement and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues, or subjects experiencing severe or unexpected adverse events, or AEs." (Id.)

- "If we experience delays in the commencement or completion of our clinical trials, or if we terminate a clinical trial prior to completion, the commercial prospects of our product candidate could be harmed, and our ability to generate product revenue from our product candidate, if approved, may be delayed. In addition, any delays in our clinical trials could increase our costs, cause a decline in our share price, slow down the approval process, and

4

jeopardize our ability to commence product sales and generate revenue.  Any of these occurrences may harm our business, financial condition and results of operations." (Id. at 24.)

In February 2021, some of these risks came to pass when Immunovant announced a setback:  Participants in one of the Phase 2b trials had developed elevated cholesterol levels, which caused Immunovant voluntarily to pause its ongoing trials out of an abundance of caution to inform patients, investigators, and regulators and to modify the monitoring program.  (SAC ¶ 120.)  After this announcement, Immunovant's stock price declined.  (Id. ¶ 172.)  Immunovant's stock price declined further after it announced its annual earnings in June 2021.  (Id. ¶ 180.)

Plaintiff opportunistically seized on those price declines to bring claims under Sections 11 and 12(a)(2) of the Securities Act (Counts I and II) against the Underwriter Defendants (and other Defendants).  (Id. ¶¶ 195-211.)

## ARGUMENT

"In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sibanye, 2020 WL 6582326, at *12 (Matsumoto, J.).  "First, a court should begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.  "Second, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at *13.  Plaintiff has pleaded no such facts.

I. **This Court Should Dismiss The Securities Act Claims Because Plaintiff Alleges Nothing More Than A Disagreement With Immunovant's Scientific Judgment, Which Is Not Actionable Under The Securities Laws.**

At their core, Plaintiff's allegations challenge Immunovant's scientific judgment in carrying out IMVT-1401's trials.  Plaintiff alleges that (1) Immunovant (and the third-party that

5

conducted most of the animal testing) misinterpreted the results of the animal studies by concluding that they showed "only minor increases in cholesterol" (SAC ¶ 97) and (2) Immunovant should have designed the Phase 1 and Phase 2a human trials to test for cholesterol (id. ¶¶ 114-121).  Challenges to data interpretation or trial design are not a basis for Securities Act claims.  In re Apple REITs Litig., No. 11-CV-2919 KAM, 2013 WL 1386202, at *10 (E.D.N.Y. Apr. 3, 2013) (Matsumoto, J.) ("allegations constituting nothing more than assertions of general mismanagement, or nondisclosures of mismanagement, . . . cannot support claims under §§ 11 and 12 of the Securities Act"), aff'd in part, vacated in part on other grounds sub nom. Berger v. Apple REIT Ten, Inc., 563 Fed.Appx. 81 (2d Cir. 2014); see also Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S, 11 F.4th 90, 96 (2d Cir. 2021) (explaining that allegations of "corporate mismanagement" are not actionable under securities laws).

Employees' Retirement System of the City of Baton Rouge & Parish of East Baton Rouge v. MacroGenics, Inc., 61 F.4th 369 (4th Cir. 2023), is directly on point.  In MacroGenics, the Fourth Circuit dismissed Securities Act claims challenging how a clinical-stage biopharmaceutical company interpreted study data.  While clinical trials were ongoing, the issuer released interim, "topline" results that it described as "positive" and "promising" while cautioning that further testing was required.  Id. at 376-79.  Several months later, the issuer released additional underlying data that the market interpreted negatively, causing the issuer's stock price to drop by 22 percent. Id. at 379-80.  The plaintiffs claimed that the company misled investors by failing to disclose the underlying data alongside the "topline" results.  Id. at 385.

The Fourth Circuit disagreed, holding that "[w]here a company accurately reports the results of a scientific study, it is under no obligation to second-guess the methodology of that study." Id.  The Fourth Circuit concluded that the plaintiffs' "negative interpretation" of the data

6

was "merely a difference of opinion, which is insufficient to establish a securities law violation." Id. at 387.  The Fourth Circuit explained:  "We cannot instruct the district court to proceed with this case due to a difference of opinion because 'securities law is simply not a vehicle through which courts will police disagreements in the [medical] research community or the parameters of clinical trials." Id. at 388 (quoting Zagami v. Cellceutix Corp., No. 15 Civ. 7194 (KPF), 2016 WL 3199531, at *13 (S.D.N.Y. June 8, 2016)).  The Fourth Circuit recognized: "It would be a great disservice to stifle biopharmaceutical companies' pursuit of medical advancements by failing to safeguard against an inundation of lawsuits alleging securities-law violations." Id. at 388.

In re Rigel Pharmaceuticals, Inc. Securities Litigation, 697 F.3d 869 (9th Cir. 2012), also is directly on point.  In Rigel, the issuer announced that it had completed a Phase 2 clinical trial with "statistically significant results" suggesting that its drug was effective and also provided details about its statistical analysis, including "p-values" used to evaluate statistical significance. Id. at 872-75.  The plaintiff alleged that those statements were false or misleading because the issuer undertook an "inaccurate and improper statistical analysis" that generated "statistically false p-values." Id. at 877.  The plaintiff claimed that, under a proper statistical analysis, the efficacy results for the drug were not statistically significant. Id.

The Ninth Circuit dismissed the Securities Act claims because the plaintiff had not adequately alleged falsity.  The Ninth Circuit held that "the securities laws do not require that companies report information only from optimal studies, even assuming that scientists could agree on what is optimal, and that companies reporting information from imperfect studies are not required to disclose alternative methods for interpreting the data." Id. at 879.  The plaintiff did "not allege that Defendants misrepresented their own statistical methodology, analysis, and

7

conclusions, but instead criticize[d] only the statistical methodology employed by Defendants" – which "did not adequately plead falsity with respect to statistic[al] results." Id.[3]

Plaintiff's claims concerning the IMVT-1401 animal studies are weaker than those rejected in MacroGenics and Rigel because Plaintiff effectively admits that its claims reduce to scientific disagreements. Plaintiff's Securities Act claims are based on allegations that (1) "Immunovant's pre-clinical animal studies clearly showed that IMVT-1401 substantially raised the cholesterol levels of animals" (SAC at 30 & ¶¶ 92-100) and (2) "even though increased cholesterol was a potential risk of IMVT-1401, Immunovant failed to monitor or assess cholesterol in early clinical trials" (Id. at 37 & ¶¶ 114-121).[4]  Those allegations, in turn, are based on two scientific disagreements.

**First**, Plaintiff alleges a disagreement about the interpretation of animal studies. (Id. ¶¶ 92-100.) In Plaintiff's own words:

> According to FE [i.e., Plaintiff's confidential witness], the reports for the animal studies contained detailed information showing the increases in cholesterol levels. While the reports conclusively and unambiguously showed that cholesterol levels increased for animals taking IMVT-1401, the summary portion of the reports erroneously indicated that there were only minor increases in cholesterol. Nevertheless, a reading of the full report, as opposed to a reading of just the summary, clearly showed substantial elevations in cholesterol levels for the animals.

---

[3] See also Tongue v. Sanofi, 816 F.3d 199, 214 (2d Cir. 2016) (rejecting claims amounting to "little more than a dispute about the proper interpretation of data"); Gillis v. QRX Pharma Ltd., 197 F. Supp. 3d 557, 599 (S.D.N.Y. 2016) (dismissing securities claims based on "a mere disagreement with how defendants chose to interpret the results of the clinical trial"); In re MELA Scis., Inc. Sec. Litig., No. 10 CV 8774 VB, 2012 WL 4466604, at *13 (S.D.N.Y. Sept. 19, 2012) (same).

[4] Specifically, Plaintiff identifies four "facts" that "indicated elevated . . . cholesterol levels were a potential risk of IMVT-1401":  (1) "IMVT-1401's preclinical animal studies revealed substantial elevations in cholesterol of animals which received IMVT-1401"; (2) "IMVT-1401 reduces a protein named serum albumin and numerous scientific studies and articles indicated albumin reductions elevate cholesterol"; (3) "IMVT-1401 targets thyroid conditions and numerous scientific studies connect thyroid issues to cholesterol"; and (4) "companies developing similar drugs monitored cholesterol levels." (SAC ¶ 6.) Plaintiff does not base its Securities Act claims on a failure to disclose the second, third, or fourth "facts" but instead admits that those "facts" were publicly disclosed. (See, e.g., id. ¶¶ 101-113.) See also, e.g., In re Sanofi Sec. Litig., 87 F. Supp. 3d 510, 539 & n.13 (S.D.N.Y. 2015) (dismissing claim where allegedly omitted information already was publicly available), aff'd sub nom. Tongue, 816 F.3d 199.

8

(Id. ¶ 97.)  Scientific disagreements about data interpretation – i.e., where Plaintiff's confidential witness allegedly concluded that animal study data showed "substantial elevations in cholesterol" and the authors of the reports concluded that animal study data showed "only minor increases in cholesterol levels" – do not state a Securities Act claim.  (See supra at 6-8 & n.3.)

**Second**, Plaintiff alleges a disagreement about the design of subsequent human trials based on its own interpretation of animal studies.  (SAC ¶¶ 98-100; see also id. ¶¶ 114-121.)  Again, in Plaintiff's own words:

> The clear and unambiguous results from the IMVT-1401 animal studies established that elevated cholesterol levels were a potential risk of IMVT-1401. Even though there was a chance IMVT-1401 could impact humans and monkeys differently such that IMVT-1401 would not elevate cholesterol in humans, the monkey results were important datapoints and created a potential risk for humans such that IMVT-1401 clinical studies should have monitored and assessed this risk under Good Clinical Practices and procedures.

(Id. ¶ 98.)  In particular, Plaintiff alleges that "Immunovant should have designed each of the phase 1 and 2 clinical trials so that each of the participants' cholesterol was tested and monitored." (Id. ¶¶ 119.)  Putting aside that even Plaintiff admits that animal study results may not translate to human trials because "IMVT-1401 could impact humans and monkeys differently such that IMVT-1401 would not elevate cholesterol in humans" (id. ¶ 98), scientific disagreements about trial design – i.e., where Plaintiff asserts that each phase of the human trials should have tested and monitored cholesterol and Immunovant designed Phase 2b to be the first human trial to test and monitor cholesterol – do not state a Securities Act claim.  "[S]ecurities law is not a tool to second guess how clinical trials are designed and managed."  Cachia v. Bellus Health Inc., No. 21 CIV. 02278-GBD, 2022 WL 4367444, at *5 (S.D.N.Y. Sept. 21, 2022).  (See also supra at 6-8 & n.3.)[5]

---

[5] See also Singh v. Schikan, 106 F. Supp. 3d 439, 450 (S.D.N.Y. 2015) ("Ultimately, plaintiffs' complaint more closely resembles a criticism of the DEMAND studies' design than a claim for nondisclosure, a form of hindsight pleading not cognizable under Section 11."); Abely v. Aeterna Zentaris Inc., No. 12 CIV. 4711 PKC, 2013 WL 2399869, at *8

Not only do Plaintiff's allegations reduce to admitted scientific disagreements about data interpretation and trial design, but also those disagreements rest entirely on hindsight. "Any second guessing now by a reasonable investor of [the drug's] design strength with the benefit of hindsight is not permitted." E.g., Bellus, 2022 WL 4367444, at *6. Yet that is precisely what Plaintiff does. Plaintiff admits that IMVT-1401's Phase 1 and Phase 2a trials, the only human trials that generated results before the September 2020 Offering, did not test cholesterol. (SAC ¶¶ 114-119.) Plaintiff further admits that its single confidential witness, whose opinion is the only basis for Plaintiff's interpretation of the animal studies (see id. ¶¶ 93-97), first reviewed the animal data in January 2021, with the benefit of hindsight, after human patients displayed elevated cholesterol levels. (Id. ¶ 94.) That was more than three months after the Offering Documents were issued. Therefore, by Plaintiff's own admission, the Underwriter Defendants had no indication of elevated cholesterol levels in either animal studies or human subjects at the time of the September 2020 Offering and did not receive any indication until months later from the initial Phase 2b results. Such allegations do not show that, at the time that the Offering Documents were issued, there was any misstatement or omission concerning IMVT-1401's trial results or design.[6]

For these reasons, this Court should dismiss Plaintiff's Securities Act claims.

## II.   This Court Should Dismiss The Securities Act Claims Because There Was No Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design.

"An omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." Ulbricht v. Ternium S.A., No. 18-CV-6801 (PKC) (RLM),

---

(S.D.N.Y. May 29, 2013) (dismissing Securities Act claims that "amount to a non-actionable critique of defendants' study design"); accord In re Novan, Inc. Sec. Litig., No. 1:17CV999, 2018 WL 6732990, at *12 (M.D.N.C. Nov. 30, 2018) ("Plaintiffs may not utilize securities litigation to second guess the decisions by scientists and company officials in how they approached the clinical trials.").

[6] Moreover, Plaintiff simply ignores Immunovant's express warnings that (1) it could not guarantee that animal studies by third parties had been properly conducted and (2) the underlying data could be interpreted differently. (See supra at 4.)

10

2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020).  As the Second Circuit recently held, pharmaceutical companies have no duty to disclose detailed information concerning their clinical trials.  See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343, 353 (2d Cir. 2022).  Nevertheless, Plaintiff alleges that the Underwriter Defendants had a duty to disclose in the Offering Documents that there was a "potential risk" that IMVT-1401 could elevate cholesterol levels and that the Phase 1 and 2a trial design did not test cholesterol.  Plaintiff alleges three bases for that supposed duty to disclose: (1) purported misleading statements in the Offering Documents (SAC ¶¶ 127-151); (2) Item 303 of Regulation S-K (id. ¶¶ 152-156); and (3) Item 105 of Regulation S-K (id. ¶ 157).  None provides any support to Plaintiff.

### A.   No Statements In The Offering Documents Created A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design.

"The securities laws [] do not impose . . . an affirmative duty to disclose any and all material information; they require disclosure only when, absent disclosure, a statement would be false or misleading."  Ulbricht, 2020 WL 5517313, at *7.  "Just because a reasonable investor would very much like to know a fact does not create any obligation to speak up."  Bristol-Myers Squibb, 28 F.4th at 353.  "There is no boundless duty to reveal all facts on a subject just because a company or its officers speak on a subject."  In re AstraZeneca plc Sec. Litig., No. 21-CV-722 (JPO), 2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022).  "[T]he statement made and the fact that allegedly should have been disclosed must share a reasonable level of specificity."  Id.

Plaintiff does not identify any misleading statement in the Offering Documents that would create a duty to disclose that there was a "potential risk" that IMVT-1401 would cause elevated cholesterol levels or that the Phase 1 and 2a trial design did not test cholesterol.  Nor could Plaintiff because the Offering Documents said nothing about cholesterol.  Plaintiff's allegations prove the point.  The SAC includes 16 lengthy block quotes from the Offering Documents that allegedly

11

were misleading, but none contains a single word about cholesterol.  (See SAC ¶¶ 130-151, 159-164.)  Accordingly, Plaintiff has not alleged a duty to disclose as a result of any misleading statement in the Offering Documents.  Without that, Plaintiff's claims fail.  "Numerous courts around the country have found that a study's alleged flaws or shortcomings need not be disclosed to a reasonable investor."  Hoey v. Insmed Inc., No. CV 16-4323 (FLW), 2018 WL 902266, at *9 (D.N.J. Feb. 15, 2018).  Or, as the Second Circuit succinctly put it, "disclosure is not a rite of confession."  Danske Bank, 11 F.4th at 98.

**B.      Item 303 Did Not Create A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design In The Offering Documents.**

Item 303 requires disclosure of "material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition."  17 C.F.R. § 229.303(a).  "According to the SEC's interpretive release regarding Item 303, disclosure under Item 303 is necessary where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations" as of the date that the challenged document was filed with the SEC.  Indiana Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 94 (2d Cir. 2016).  Plaintiff alleges that, under Item 303, the "[potential] risk"[7] of elevated cholesterol and the Phase 1 and 2a trial design not to test cholesterol were "known events and uncertainties" required to be disclosed in the Offering Documents.  (SAC ¶ 153.)

**First**, Plaintiff does not plead facts showing that there was a trend or uncertainty related to IMVT-1401's "potential risk" or the Phase 1 and 2a trial design at the time of the September 2020

---

[7] In paragraph 153 of the SAC, Plaintiff alleges "an anticipated risk that IMVT-1401 would increase cholesterol levels in patients."  The Underwriter Defendants assume that the reference to "anticipated risk" was an error.

Offering.  By Plaintiff's own admission, the Underwriter Defendants had no indication of elevated cholesterol in either animal studies or human subjects at the time of the September 2020 Offering and did not receive any indication until months later with the initial Phase 2b trial results.  (See supra at 10.)  See also In re Coty Inc. Sec. Litig., No. 14-cv-919 (RJS), 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) ("allegations fail to demonstrate that the [purported trend] occurred sufficiently in advance of the Registration Statement that it required disclosure as a negative material trend under Item 303"); Pearlstein v. BlackBerry Ltd., 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) (allegation of trend "implausible" where complaint did not establish existence of trend at time that public filings were made).

Second, Plaintiff does not plead facts showing that any trend or uncertainty related to IMVT-1401's "potential risk" or the Phase 1 and 2a trial design was reasonably likely to have material effects on Immunovant's financial conditions or operations.  Plaintiff alleges that, "[i]f elevations in cholesterol were observed during the . . . Phase 2b trial, those results would likely materially impact Immunovant's financial condition or results of operation because Immunovant would need to materially adjust the clinical trial schedule and capital expenditures."  (SAC ¶ 156.) Yet Plaintiff pleads no facts showing any such impact, much less any such impact at the time of the September 2020 Offering, and Plaintiff's conclusory allegations are not enough.  See City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc., No. 17 Civ. 3501 (JFK), 2019 WL 452051, at *8 (S.D.N.Y. Feb. 5, 2019) (plaintiffs "failed to sufficiently allege that it was reasonably likely" that a potential adverse event "would have had a material effect" where they had "not made allegations addressing the 'anticipated magnitude'" of that event); Lopez v. CTPartners Exec. Search Inc., 173 F. Supp. 3d 12, 34 (S.D.N.Y. 2016) (rejecting allegation that

13

alleged workplace misconduct might have material effect on company's financial condition where, "[e]xcept with the benefit of hindsight, that scenario was speculative and conjectural").

**Third**, Plaintiff does not plead facts showing that the Underwriter Defendants knew of any trend or uncertainty related to IMVT-1401's "potential risk" or the Phase 1 and 2a trial design at the time of the September 2020 Offering.  As the Second Circuit has made clear, "Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report with the SEC.  It is not enough that it should have known of the existing trend, event, or uncertainty." Indiana Pub. Ret. Sys., 818 F.3d at 95.  Plaintiff disclaims any such actual knowledge for purposes of its Securities Act claims:  "Plaintiff **does not claim** for purposes of this Count that Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent."  (SAC ¶¶ 196, 204 (emphasis added).)

"Plaintiff should be taken at its word, and the facts alleged only in support of scienter should not be considered in support of the Section 11 [or Section 12(a)(2)] claim." Y-GAR Cap. LLC v. Credit Suisse Grp. AG, No. 19 Civ. 2827 (AT), 2020 WL 71163, at *7 (S.D.N.Y. Jan. 2, 2020); see also Apple REITs, 2013 WL 1386202, at *10 (Matsumoto, J.) (dismissing allegations of intent where "Plaintiffs disclaim any intent to allege fraud").  Plaintiff's failure to plead, and disclaimer of, the Underwriter Defendants' actual knowledge renders its Item 303 allegations legally inadequate.  See, e.g., Rubinstein v. Credit Suisse Grp. AG, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) (dismissing Item 303 claim based on allegation that defendant "can be presumed to have known" of alleged trend); In re Coty, 2016 WL 1271065, at *7 (dismissing Item 303 claim based on allegation that management "must have known" of alleged trend).[8]

---

[8] To the extent that Plaintiff attempts to plead actual knowledge related to IMVT-1401's "potential risk" or the Phase 1 and 2a trial design, this Court still should dismiss its claims.  If plaintiff were to plead actual knowledge, then its Securities Act claims would "sound in fraud" and be subject to Rule 9(b). See Rombach v. Chang, 355 F.3d 164, 170-

**Fourth**, to the extent that any disclosure was required, the Offering Documents made it. The Offering Documents disclosed and warned of the trend or uncertainty about which Plaintiff complains – i.e., that a side effect of IMVT-1401 could delay the clinical studies and harm Immunovant's financial condition and results of operations. (See supra at 4-5.) Courts in this Circuit dismiss Item 303 claims where the complained-of trend or uncertainty was disclosed because, "[w]hen a company's offering documents include 'repeated warnings' about a specific business vulnerability, there is 'no basis' to conclude that the company failed to fulfill its affirmative disclosure obligations under Item 303." Asay v. Pinduoduo Inc., No. 18-cv-7625 (PKC), 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020) (dismissing Item 303 claim based on failure to disclose details of recent increase in marketing expenses where company's "disclosures left no doubt that its sales and marketing expenses had grown exponentially, that they could continue to grow, and that the Company could be materially and adversely affected if its customer growth failed to keep pace").

Take, for example, Stadnick v. Vivint Solar, Inc., 861 F.3d 31 (2d Cir. 2017). There, the Second Circuit affirmed the district court's dismissal of Item 303 claims alleging the issuer's failure to warn investors of a regulatory regime in Hawaii because the registration statement "included repeated warnings that its business was generally vulnerable to changing regulations, and particularly so in Hawaii." Id. at 39-40. The same reasoning applies here. The Offering Documents contained extensive disclosures about the inherent uncertainty of the clinical trial process generally and the risks associated with adverse events specifically, explaining (among other things) that (1) "[f]ailures can occur at any stage of clinical trials"; (2) "[t]he commencement

---

72 (2d Cir. 2004); Apple REITs, 2013 WL 1386202, at *10. Plaintiff's allegations related to IMVT-1401's "potential risk" or the Phase 1 and 2a trial design do not satisfy the pleading standard for Rule 8, much less the heightened pleading standard for Rule 9(b). (See Immunovant Motion at 31-36.)

and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues"; and (3) "any delays in our clinical trials could . . . cause a decline in our share price" and "harm our business, financial condition and results of operations."  (See supra at 4-5.)

For these reasons, Plaintiff does not state a Securities Act claim under Item 303.

**C.      Item 105 Did Not Create A Duty To Disclose IMVT-1401's "Potential Risk" Of Elevated Cholesterol Or Trial Design In The Offering Documents.**

Item 105 requires a registrant to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky," including a discussion of each risk factor to "adequately describe[] the risk."   17 C.F.R. § 229.105(a).  Plaintiff asserts that, under Item 105, the Offering Documents "were required to furnish the information" of the "potential risk" of elevated cholesterol levels and that the Phase 1 and 2a trial design did not test cholesterol.  (SAC ¶ 157.)

"Although there is scant caselaw on Item 105, the inquiry can be boiled down to whether the Offering Documents were accurate and sufficiently candid."  In re Chembio Diagnostics, Inc. Sec. Litig., 586 F. Supp. 3d 199, 229 (E.D.N.Y. 2022).  Item 105 "does not impose a stand-alone disclosure requirement."  Howard v. Arconic, Inc., 395 F. Supp. 3d 516, 572 (W.D. Pa. 2019).  It is "reserved for the 'most significant factors that make the offering speculative or risky,' not any and all risks, or any information that an investor might wish to know."  Id. at 572 (quoting 17 C.F.R. § 229.105).  "Plaintiffs must demonstrate '**actual** knowledge' of a risk to sufficiently allege an Item 105 violation."  In re Chembio, 586 F. Supp. 3d at 229 (quoting Rubinstein, 457 F. Supp. 3d at 300); see also Howard v. Arconic, Inc., No. 2:17-cv-1057, 2021 WL 2561895, at *28 (W.D. Pa. Jun. 23, 2021) ("like with Item 303, the [plaintiff's] failure to adequately plead [the defendant's] actual knowledge is fatal to this claim").

16

Plaintiff's Item 105 claim fails for much the same reasons that its Item 303 claim fails. **First**, Plaintiff does not plead facts showing that there was a "potential risk" that IMVT-1401 would cause elevated cholesterol at the time of the September 2020 Offering.  (See supra at 12-13.)  See also In re Chembio, 586 F. Supp. 3d at 229.  **Second**, Plaintiff has disclaimed for purposes of its Securities Act claims that the Underwriter Defendants knew of any "potential risk" of elevated cholesterol levels.  (See supra at 14.)  See also In re Chembio, 586 F. Supp. 3d at 229; Rubinstein, 457 F. Supp. 3d at 300.  **Third**, to the extent that any disclosure was required, the Offering Documents disclosed and warned of the risk about which Plaintiff complains.  (See supra at 15-16.)

For these reasons, Plaintiff does not state a Securities Act claim under Item 105.

**III.   This Court Should Dismiss The Securities Act Claims Because Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions.**

A review of the alleged misstatements or omissions shows that Plaintiffs' Securities Act claims also should be dismissed because none of the challenged statements is actionable.

Most of the challenged statements are opinions.  Plaintiff's Securities Act claims turn on allegations – repeated time and again – that the Offering Documents did not disclose that there was a "potential risk" that IMVT-1401 could elevate cholesterol levels and that the design of IMVT-1401's human trials did not test cholesterol.  (See, e.g., SAC ¶¶ 4-5.)  The challenged statements concerning clinical trial results and design are opinions.  See Sanofi, 816 F.3d at 213-14 (dismissing allegations criticizing safety results and drug trial design as non-actionable opinions); see also In re MELA, 2012 WL 4466604, at *13 (statements about "positive top line results" and failure to disclose allegedly unsound trial design were "essentially no different than opinions").  Statements of opinion may be actionable if (1) "the speaker did not hold the belief she professed"; (2) "the supporting facts she supplied were untrue"; or (3) "the speaker omits

17

information whose omission makes the statement misleading to a reasonable investor." Sanofi, 816 F.3d at 210. Plaintiff has explicitly disclaimed for purposes of its Securities Act claims that Defendants knew any statements of opinion were false at the time of the September 2020 Offering. (See supra at 14.)[9] Plaintiff has not alleged that any "supporting facts" in the Offering Documents were untrue. Therefore, Plaintiff must allege that the Underwriter Defendants omitted information that made the statements of opinion in the Offering Documents misleading.

"The Supreme Court emphasized that meeting the standard under Omnicare 'is no small task for an investor.'" Sanofi, 816 F.3d at 210 (quoting Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 194 (2015)). An opinion must be read in light of "its surrounding text, including hedges, disclaimers, and apparently conflicting information," as well as the "customs and practices of the relevant industry." Id. An issuer is not obligated to disclose every "fact cutting the other way" from a statement of opinion, even if investors would have been "interested in knowing" that fact. Id. at 210, 212. Rather, "the omitted facts must conflict with what a reasonable investor" – i.e., an investor who was reasonably informed about the industry and had taken the time to read the challenged statement of opinion in context – "would take from the statement itself." Id. at 211.

The Second Circuit has held that statements of opinion are not actionable simply because a plaintiff alleges – like Plaintiff here – that different data interpretations or trial designs should have been disclosed. In Sanofi, the plaintiff alleged that a pharmaceutical company touting "stunning" clinical data should have disclosed the FDA's reservations about the underlying trial

---

[9] See, e.g., In re Gen. Elec. Co. Sec. Litig., 857 F. Supp. 2d 367, 403 (S.D.N.Y. 2012) ("Nor can this statement be read as an opinion not truly held since plaintiff had disclaimed scienter as a basis of its Securities Act claims."), reconsidered in part on other grounds, 856 F. Supp. 2d 645 (S.D.N.Y. 2012); Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 124-25 (S.D.N.Y. 2010) ("The complaint, however, is devoid of any allegation that defendants did not truly hold those opinions at the time they were made public. Plaintiff indeed disclaims any allegation that defendants knowingly or recklessly misstated Regions' loan loss reserves."), aff'd, 655 F.3d 105 (2d Cir. 2011).

18

design (i.e., the use of single-blinded studies).  816 F.3d at 213.  The Second Circuit concluded that the plaintiff's claims were "little more than a dispute about the proper interpretation of data" and held that "Defendants' statements were not misleading simply because the FDA disagreed with Defendants' interpretation of the data." Id. at 214.  The same is true here.  The challenged statements are not actionable simply because Plaintiff disagrees with Immunovant, especially where the information on which Plaintiff bases its allegations – i.e., one confidential witness' interpretation of animal study data – post-dates the Offering Documents by more than three months.  (See supra at 10.)  See also Altayyar v. Etsy, Inc., 242 F. Supp. 3d 161, 173-75 (E.D.N.Y. 2017) (finding that hindsight disagreement with defendants' opinions did not render them false), aff'd, 731 F. App'x 35 (2d Cir. 2018).

Moreover, no reasonable investor could have been misled about IMVT-1401's "potential risk" of elevated cholesterol levels because the Offering Documents expressly warned that (1) "the information we choose to publicly disclose regarding a particular study or clinical trial is based on what is typically extensive information"; (2) "you or others may not agree with what we determine is the material or otherwise appropriate information to include in our disclosure"; and (3) "any information we determine not to disclose may ultimately be deemed significant with respect to future decisions, conclusions, views, activities or otherwise regarding a particular drug . . . or our business."  (See supra at 4.)  And no reasonable investors could have been misled about IMVT-1401's trial design not to test cholesterol because the Offering Documents did not even mention cholesterol.  (See supra at 11-12.)

Nevertheless, Plaintiff alleges four variations on the theme that the Offering Documents misstated or omitted IMVT-1401's "potential risk" and trial design.  Plaintiff alleges that the "Offering Documents contained untrue statements of material fact and omitted material

19

information concerning (i) IMVT-1401's clinical trials; (ii) the potential negative impact of albumin reductions, (iii) Immunovant's compliance with Good Clinical Practices, and (iv) IMVT's nonclinical animal studies." (SAC ¶ 128.) In so doing, Plaintiff rests its claims on statements of opinion – with the occasional accurate statement of historical fact, protected forward-looking statement, or puffery included as well. None is actionable.[10]

> ### A.     Any Alleged Misstatements Or Omissions Concerning IMVT-1401's Clinical Trials Are Not Actionable.

Plaintiff challenges statements in the Offering Documents concerning the design and results of IMVT-1401's trials. (See SAC ¶¶ 133-134, 136-137, 139, 141, 145.) None is actionable.

**First**, the Offering Documents disclosed the safety results of the Phase 1 trial: (1) IMVT-1401 had been observed to be "well tolerated"; (2) "[t]here have been no treatment-related serious AEs [adverse events] reported"; and (3) Immunovant had not observed any "discontinuations [of trial participants] due to AEs." (Id. ¶¶ 133-134, 137, 141.) The Offering Documents also included tables of a "summary of the most commonly reported AEs" and the "Most Common Adverse Events Reported" in the Phase 1 trial. (SAC ¶ 136.) Plaintiff does not challenge the accuracy of any of those statements but asserts that they were "misleading because elevated . . . cholesterol levels were potential risks of IMVT-1401 and Immunovant has not assessed or evaluated that potential AE." (See id. ¶ 135; see also id. ¶¶ 136, 143.)

"[D]issemination of top-line results" – like those in the challenged statements – "does not trigger a duty to disclose the full results of a study." In re Amarin Corp. plc Sec. Litig., No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669, at *15 (D.N.J. Mar. 29, 2021). The disclosure of the safety results of IMVT-1401's Phase I trial did not require the Offering Documents to disclose the

---

[10] For this Court's convenience, Defendants include Appendix A to the Declaration of Heather M. Speers in support of the Immunovant Motion, a chart identifying each challenged statement in the Offering Documents and the reasons that each statement is not actionable.

"potential risk" of IMVT-1401 or the design of IMVT-1401's trials.  See In re AstraZeneca, 2022 WL 4133258, at *7.  Moreover, statements of drug trial results, which necessarily reflect scientific and medical judgments about how to interpret the underlying data, are non-actionable statements of opinion.  (See supra at 5-10.)[11]  Plaintiff alleges that the challenged statements are actionable because they "lacked a reasonable basis."  (SAC ¶ 135.)  Yet Plaintiff does not plead any facts to support such conclusory allegations, which do not state a claim.  (See supra at 12-14.)

**Second**, the Offering Documents disclosed the design and safety results of Phase 2a trials: (1) the trials were designed to assess "the safety and tolerability of IMVT-1401"; (2)"[a]ll AEs were mild or moderate"; and (3) "IMVT-1401 was observed to be well-tolerated with no SAEs [serious adverse events] reported [and] no withdrawals due to AEs."  (SAC ¶ 139.)  Plaintiff asserts that those statements were misleading "because they failed to disclose that a key potential risk of IMVT-1401 was elevated cholesterol" and "clinical trials did not assess or monitor the key potential risk of elevated cholesterol levels."  (Id. ¶ 140.)  For the same reasons that the statements in the Offering Documents about the safety results of the Phase 1 trial are non-actionable, the statements in the Offering Documents about the safety results of Phase 2a trials are non-actionable. (See supra at 20-21.)

**Third**, the Offering Documents disclosed the design of the Phase 2b trial: (1) the trial "assesses the safety and tolerability of IMVT-1401"; (2) "[t]he primary endpoints of this trial are safety and tolerability"; and (3) Immunovant "remain[s] on track to report initial results" in H1 2021.  (SAC ¶ 144 (ellipsis omitted).)  Plaintiff asserts that those statements were misleading since they did not disclose that the "Phase 2b trial was very different from other clinical trials

---

[11] The challenged statements here also are puffery.  See In re Arrowhead Pharms., Inc. Sec. Litig., No. CV 16-08505 PSG-PJW, 2017 WL 8791111, at *5 (C.D. Cal. Dec. 21, 2017) (statements that "'[a drug] is well tolerated with no serious adverse events' are non-actionable statements of optimism based on Defendant's interpretation of its trial results"), aff'd, 782 F. App'x 572 (9th Cir. 2019).

21

because it assessed cholesterol levels . . . so there was a heightened risk elevations in cholesterol would be identified which would likely result in a disruption and delay of the IMVT-1401 clinical trial program." (Id. ¶ 145.) Plaintiff cannot have it both ways. After criticizing the Offering Documents for referring to "primary endpoints" of "safety and tolerability" when the trials did not test cholesterol, Plaintiff cannot criticize the Offering Documents for referring to "primary endpoints" of "safety and tolerability" when the trials did test cholesterol. (Compare id. ¶¶ 139-140, with id. ¶¶ 144-145.) In any event, for the same reasons that the statements in the Offering Documents about the safety results of the Phase 1 and 2a trials are non-actionable, the statements in the Offering Documents about the safety results of the Phase 2b trial are non-actionable. (See supra at 20-21.) Moreover, the statement that the Phase 2b trial "remain[s] on track" is a textbook forward-looking statement, which is protected because (among other things) Plaintiff has explicitly disclaimed actual knowledge of falsity for purposes of its Securities Act claims. (See supra at 10.) See also Bristol-Myers-Squibb, 28 F.4th at 354 ("predictions regarding the trial's success and [the drug's] speed to market" are forward-looking).

**Fourth**, the Offering Documents described the efficacy of IMVT-1401 and other current and prospective treatments: (1) "safe and effective treatment options for patients suffering from autoimmune diseases are lacking"; (2) "[c]urrently available treatments . . . often fail to address patients' needs"; and (3) IMVT-1401 and other drugs in the same class (i.e., anti-FcRn antibodies) "have generated promising results." (SAC ¶ 141.) Plaintiff asserts that those statements were "misleading because they created the inaccurate impression that IMVT-1401 was a safe and effective alternative for drugs targeting the same areas as IMVT-1401 even though elevated cholesterol was a key potential risk and its trial results did not include an assessment of this potential risk." (Id. ¶ 142.) Like statements about safety, statements about efficacy are statements

22

of opinion because they necessarily reflect scientific and medical judgments about how to interpret the underlying data.  (See supra at 5-10.)  For the same reasons that the Offering Documents' disclosures about safety are non-actionable, the Offering Documents' statements about efficacy are non-actionable.  (See supra at 20-22.)  See also Gregory v. ProNAi Therapeutics Inc., 297 F. Supp. 3d 372, 407 (S.D.N.Y.) (statement that drug "could potentially amplify and be complementary to other therapies" was opinion), aff'd, 757 F. App'x 35 (2d Cir. 2018).  Moreover, Plaintiff does not dispute IMVT-1401's efficacy and raises only alleged safety issues, which do not and cannot render the efficacy statements misleading.  See Sanofi, 816 F.3d at 243 (complaint does not allege falsity absent "relationship" between misstatement and allegedly omitted information).[12]

**B.   Any Alleged Misstatements Or Omissions Concerning The Potential Negative Impact of Albumin Reductions Are Not Actionable.**

Plaintiff challenges statements in the Offering Documents concerning reductions in serum albumin in patients during the Phase 1 trial.  (See SAC ¶ 146.)  The Offering Documents disclosed that, in the Phase 1 trial, (1) "[d]ose-dependent and reversible albumin reductions were observed"; (2) "[t]hese reductions were not associated with any AEs or clinical symptoms and did not lead to any study discontinuations"; and (3) "[t]he clinical relevance of isolated, mild hypoalbuminemia is unknown."  (Id.)  Plaintiff asserts that those statements were "misleading because they minimized the impact of albumin reductions," which Plaintiff contends – based on its own

---

[12] Again, the challenged statements here also are puffery.  As the Second Circuit has held, a drug company's disclosure of "Encouraging Top-line Results" exemplifies "expressions of puffery and corporate optimism that do not generally give rise to securities violations."  Kleinman v. Elan Corp., plc, 706 F.3d 145, 153 (2d Cir. 2013); see also Biondolillo v. Roche Holding AG, No. CV 17-4056, 2018 WL 4562464, at *6 (D.N.J. Sept. 24, 2018) (describing results as "terrific news for patients" is non-actionable puffery); In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 559 (S.D.N.Y. 2004) (describing drug as "first-in-class novel blockbuster drug for treating cancer" is non-actionable puffery and statement of opinion).  "[R]easonable investors do not place substantial reliance on generalizations regarding a company's health or the strength of a company's product."  In re AT&T/DirecTV Now Sec. Litig., 480 F. Supp. 3d 507, 523 (S.D.N.Y. 2020) (holding that statements that product is "an improvement," or that business has "significantly enhanced capabilities" or possesses "competitive advantage[s]," are all "standard puffery").

interpretation of the scientific literature – "elevates cholesterol," and because "the albumin reductions observed in the IMVT-1401 trial were more substantial than 'mild.'" (Id. ¶ 147.)

The challenged statements, which necessarily reflect scientific and medical judgments about how to interpret the underlying data, are non-actionable statements of opinion. (See supra at 17-19.) Plaintiff alleges that the "Offering Documents lacked a reasonable basis to represent the 'reductions were not associated with any AEs' because the reductions could have been – and likely were – associated with elevated . . . cholesterol levels." (SAC ¶ 147.) As those allegations themselves make clear, Plaintiff simply disagrees with Immunovant's interpretation of the data. (See id. ¶¶ 147-148.) Again, Plaintiff's allegations do not state a claim. (See supra at 5-10.)

### C.    Any Alleged Misstatements Or Omissions Concerning Immunovant's Compliance With Good Clinical Practices Are Not Actionable.

Plaintiff challenges statements in the Offering Documents concerning Good Clinical Practices. (See SAC ¶ 151.) The Offering Documents explained that (1) the FDA requires "Good Clinical Practice . . . and other clinical-trial related regulations and guidance to evaluate the safety, purity and potency of the proposed biologic product candidate for each proposed indication" and (2) the failure of third parties to comply with Good Clinical Practice could "have an adverse effect on Immunovant's results of operations." (Id.) Plaintiff asserts that those statements "created the untrue perception that Immunovant's clinical trials complied with Good Clinical Practices and procedures" when they "failed to comply with Good Clinical Practices because they had not monitored or assessed the key potential risk of elevated . . . cholesterol levels." (Id.)

As the Second Circuit has held, a company's general description of its trial design – let alone a general description of Good Clinical Practices – does not require it to disclose detailed information about that design. See Bristol-Myers Squibb, 28 F.4th at 353 ("Bristol-Myers had no obligation to disclose the precise percentage of PDL1 expression which defined 'strong'

24

expression in the Opdivo trial."); In re AstraZeneca, 2022 WL 4133258, at *7 (general description of trials did not require detailed disclosure about design); In re Keryx Biopharms., Inc., Sec. Litig., No. 13 Civ. 1307 KBF, 2014 WL 585658, at *11 (S.D.N.Y. Feb. 14, 2014) (that drug company allegedly "should have informed the world of [its supposedly] flawed methodology" was "not falsity" but simply "less disclosure than plaintiffs would have liked").

**D.      Any Alleged Misstatements Or Omissions Concerning IMVT-1401's Nonclinical Animal Studies Are Not Actionable.**

Plaintiff challenges statements in the Offering Documents concerning IMVT-1401's nonclinical animal studies. (See SAC ¶ 149.) The Offering Documents disclosed certain "overall" results of the nonclinical studies and explained that "subjects in clinical trials with IMVT-1401 will be carefully monitored for any AEs." (Id.) Plaintiff asserts that the statements were not accurate because they "failed to disclose that Immunovant's animal studies revealed substantial increases in cholesterol for animals taking IMVT-1401" and, "even though the animal studies showed increases in cholesterol, IMVT-1401's early clinical trials failed to 'carefully monitor' for the AE of elevated . . . cholesterol levels." (Id.)

Again, the challenged statements of drug trial results and design, which necessarily reflect scientific and medical judgments about how to interpret the underlying data and how to "carefully monitor" for adverse events, are non-actionable statements of opinion. (See supra at 17-19.) Again, Plaintiff simply disagrees with Immunovant's interpretation of study results. (See id. ¶ 150.) Again, Plaintiff's allegations do not state a claim. (See supra at 5-10.) Moreover, no reasonable investor would have read a statement of what "will" happen in the future to mean that Immunovant already had tested trial subjects for elevated cholesterol levels. That is particularly true because the Offering Documents expressly stated that (1) IMVT-1401 was being tested in multiple phases, not all at once (see SAC ¶ 139); (2) IMVT-1401's trials still were at an "early

25

stage" and had not yet fully evaluated the drug's safety (see id. ¶161); and (3) adverse effects could emerge in the future (see id. ¶ 159). Further, a statement about what "will be" done in clinical trials is a protected forward-looking statement. (See supra at 22.)

### E. The Risk Disclosures In The Offering Documents Are Not Actionable.

In addition, Plaintiff challenges certain risk disclosures in the Offering Documents. (See SAC ¶¶ 159, 161, 163.) Plaintiff asserts that those risk disclosures were misleading because they should have disclosed that (1) "elevated cholesterol was a potential risk of IMVT-1401" and (2) "Immunovant's clinical trials of IMVT-1401 revealed substantial elevations in cholesterol of animals." (Id. ¶¶ 160, 162, 164.) Plaintiff does not plead facts showing that any of the challenged risk disclosures was false or misleading.

**First**, Plaintiff's allegations, which are based on its disagreement with Immunovant's interpretation of study results, do not state a claim. (See supra at 5-10.)

**Second**, the Offering Documents were not required to list every potential side effect of IMVT-1401. See Bristol-Meyers Squibb, 28 F.4th at 355 ("no law to support [] an argument" that pharmaceutical company's risk factors must disclose "why [a clinical] trial might fail"). (See also supra at 15-17.)[13] The risk disclosures were not misleading simply because they did not specifically identify a risk of elevated cholesterol levels.

**Third**, impermissible hindsight allegations do not state a claim. Plaintiff asserts that, because Immunovant decided to update its risk disclosures in June 2022 – nearly two years after the Offering Documents were issued – the disclosures in the Offering Documents "were not

---

[13] Accord Golesorkhi v. Green Mountain Coffee Roasters, Inc., 973 F. Supp. 2d 541, 554 (D. Vt. 2013) (issuers "need not show that they warned investors of the particular factor that caused their projections not to be true"), aff'd, 569 F. App'x 43 (2d Cir. 2014); In re Adient plc Sec. Litig., No. 18-CV-9116 (RA), 2020 WL 1644018, at *21 (S.D.N.Y. Apr. 2, 2020) (rejecting argument that cautionary disclosures were insufficiently specific); In re WebMD Health Corp. Sec. Litig., No. 11 Civ. 5382 JFK, 2013 WL 64511, at *8 (S.D.N.Y. Jan. 2, 2013) (cautionary language was sufficient despite absence of "extended discussion of risk factors").

adequate." (See SAC ¶¶ 165-166.)  "A plaintiff may not plead a Section 11 [or Section 12(a)(2)] claim with the benefit of 20/20 hindsight or base the claim on a backward-looking assessment of the registration statement [or prospectus]." Rubinstein, 457 F. Supp. 3d at 295.  Immunovant's decision to update its risk disclosures does not show that the earlier disclosures were false or misleading when made almost two years earlier.

Indeed, the very risk disclosures that supposedly misled investors about safety actually did just the opposite.  It is well established that a "Section 11 [or Section 12(a)(2)] claim fails as a matter of law when a registration statement [or prospectus] warns of the exact risk that later materialized." Id. at 296.  The Offering Documents did just that, warning:  "The commencement and completion of clinical trials may be delayed by several factors, including . . . unforeseen safety issues." (SAC ¶ 159.)  "Defendants are not required to predict the precise manner in which risks will manifest themselves" – i.e., that elevated cholesterol levels would be the specific "safety issue" that emerged.  In re TVIX Sec. Litig., 25 F. Supp. 3d 444, 457 (S.D.N.Y. 2014), aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG, 588 F. App'x 37 (2d Cir. 2014).

\*　　　\*　　　\*

For all of these reasons, none of the challenged statements in the Offering Documents on which Plaintiff bases its Securities Act claims is actionable.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the claims against the Underwriter Defendants with prejudice.

27

Dated: April 28, 2023

Respectfully submitted,

*/s/ Daniel Roeser*
Daniel Roeser
Valerie A. Haggans
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
droeser@goodwinlaw.com
vhaggans@goodwinlaw.com

Justin D. Ward
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:   (617) 570-1000
Fax:   (617) 523-1231
jward@goodwinlaw.com

*Attorneys for Defendants SVB Securities LLC*
*(f/k/a SVB Leerink LLC), LifeSci Capital LLC,*
*Chardan Capital Markets LLC, Guggenheim*
*Securities, LLC, and Robert W. Baird & Co. Inc.*

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 28, 2023, a true and correct copy of the foregoing was served on all parties of record via electronic mail.

*<u>/s/ Justin D. Ward</u>*