**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

                      Plaintiff,

              -against-                    1:21-cv-00918 (KAM) (VMS)

IMMUNOVANT, INC. f/k/a HEALTH              <u>CLASS ACTION</u>
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, PAMELA YANCHIK
CONNEALY, FRANK M. TORTI, ANDREW
FROMKIN, DOUGLAS HUGHES, GEORGE
MIGAUSKY, ATUL PANDE, ERIC
VENKER, SVB LEERINK LLC, LIFESCI
CAPITAL LLC, CHARDAN CAPITAL
MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

                    Defendants.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## <u>MOTION TO DISMISS OF ROIVANT SCIENCES LTD.</u>

WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024

650 5th Ave #1500
New York, NY 10019
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................1

    A.    Factual Background ...............................................................................................1

    B.    Procedural History ................................................................................................3

LEGAL STANDARD ..............................................................................................................4

ARGUMENT ...........................................................................................................................5

I.      The Second Amended Complaint Does Not State a Control-Person Claim. .......................5

    A.    Lead Plaintiff Fails to Allege a Primary Violation of the Securities Laws by Immunovant. ..................................................................................................5

    B.    Lead Plaintiff Fails to Allege that Roivant "Controlled" Immunovant for Purposes of Section 15(a) and Section 20(a). ......................................................6

    C.    Lead Plaintiff Fails to Allege "Culpable Participation" by Roivant for Purposes of Section 20(a). ...................................................................................9

II.    The Second Amended Complaint Does Not Plead a Primary Violation of Section 10(b) Against Roivant. ........................................................................................................15

CONCLUSION .......................................................................................................................18

# TABLE OF CONTENTS

Page

## CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir.1995) ................................................13

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*,
No. 17-cv-1235, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018)...............................6, 7

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012).............................4

*Arkansas Teacher Retirement System v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)..................................................................6, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................4

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..............9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994).........................................................................................15

*Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382 (S.D.N.Y. 2020) .....................14

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996) ........................................10

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018)..............................................................6, 7, 9

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................................................................... *passim*

*Emerson v. Mutual Fund Series Trust*, 393 F. Supp. 3d 220 (E.D.N.Y. 2019) .............5

*Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286 (S.D.N.Y. 2021).............................9

*Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455 (2d Cir. 2019)....................................4

*Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016)........................13, 14

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*,
No. 17-cv-9887, 2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019)..................6, 7, 8, 9

*Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) ..................8

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)................................................................16

*In re Carter-Wallace, Inc. Securities Litigation*, 220 F.3d 36 (2d Cir. 2000) ..............10

*In re DraftKings Inc. Securities Litigation*,
--- F. Supp. 3d ----, 2023 WL 145591 (S.D.N.Y. Jan. 10, 2023)........................10

*In re Eastman Kodak Co. Securities Litigation*,
--- F. Supp. 3d ----, 2022 WL 4473629 (W.D.N.Y. Sept. 27, 2022) .....................17

*In re eSpeed, Inc. Securities Litigation*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006)............13

ii

Page

Cases—continued:

*In re GeoPharma, Inc. Securities Litigation*,
   411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006)...................................................................14

*In re GOL Linhas Aéreas Inteligentes S.A. Securities Litigation*,
   598 F. Supp. 3d 63 (E.D.N.Y. 2022) ......................................................................................4

*In re Initial Public Offering Securities Litigation*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)...................................................................................13

*In re Keyspan Corp. Securities Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) ......................13

*In re Kingate Management Ltd. Securities Litigation*, 784 F.3d 128 (2d Cir. 2015) .....................4

*In re Lehman Bros. Mortgage-Backed Securities Litigation*,
   650 F.3d 167 (2d Cir. 2011).....................................................................................................6

*In re Mindbody, Inc. Securities Litigation*, 489 F. Supp. 3d 188 (S.D.N.Y. 2020).....................17

*In re MRU Holdings Securities Litigation*, 769 F. Supp. 2d 500 (S.D.N.Y. 2011).....................13

*In re North Telecom Ltd. Securities Litigation*,
   116 F. Supp. 2d 446 (S.D.N.Y. 2000)...................................................................................13

*In re Tenaris S.A. Securities Litigation*, 493 F. Supp. 3d 143 (E.D.N.Y. 2020) ......................6, 9

*In re Weight Watchers International Inc. Securities Litigation*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020).....................................................................................9

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).............................16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...............................................................11, 12, 15

*Local No. 38 International Brotherhood of Electric Workers Pension Fund*
   *v. American Express Co.*, 724 F. Supp. 2d 447 (S.D.N.Y. 2010)...........................................11

*Malik v. Network 1 Financial Securities, Inc.*,
   No. 20-2948-cv, 2022 WL 453439 (2d Cir. Feb. 15, 2022) ...................................................10

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013).................................................................................5, 6

*Noto v. 22nd Century Group, Inc.*, 35 F.4th 95 (2d Cir. 2022) ...................................................17

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)...............................................................9, 10, 11

*Pacific Investment Management Co. LLC v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010)..............................................................................................16, 17

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ..............................................................................................15, 17, 18

*Police & Fire Retirement System of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009)......................................................................................5

Page

Cases—continued:

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*,
714 F. Supp. 2d 475 (S.D.N.Y. 2010)..................................................................6

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)..........................................13

*Saltz v. First Frontier, L.P.*, 485 F. App'x 461 (2d Cir. 2012)........................16

*San Leandro Emergency Medical Group Profit Sharing Plan
v. Philip Morris Cos., Inc.*, 75 F.3d 801 (2d Cir. 1996).................................13

*Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019)...........10

*SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022)......................................15, 17

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) ........10

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ....................13

*South Cherry Street, LLC v. Hennessee Group, LLC*, 573 F.3d 98 (2d Cir. 2009) ...........10, 11

*Special Situations Fund III QP, L.P. v. Deloittte Touche Tohmatsu CPA, Ltd.*,
645 F. App'x 72 (2d Cir. 2016) ..........................................................................11

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017)................................5

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ........18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)..............*passim*

*Turner v. MagicJack VocalTec, Ltd.*,
No. 13 Civ. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) ........................13

*Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020) ..........13

*Wyche v. Advanced Drainage Systems, Inc.*, 710 F. App'x 471 (2d Cir. 2017) ............12

**STATUTES, REGULATION, AND RULE**

Private Securities Litigation Reform Act, Pub. L. No. 104-67,
109 Stat. 737 (1995)
(codified as amended in scattered sections of 15 U.S.C.)..........................4, 9, 10, 15

§ 78u-4 .................................................................................................4, 5, 10, 12

Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74
(codified as amended at 15 U.S.C. § 77a *et seq.*)
§ 77*o*....................................................................................................*passim*

Securities Exchange Act of 1934, Pub. L. No. 73-291, 48 Stat. 881
(codified as amended at 15 U.S.C. § 78a *et seq.*)
§ 78j ......................................................................................................*passim*
§ 78t ......................................................................................................*passim*
§ 78u-4 ..............................................................................................4, 5, 10, 12

17 C.F.R. § 240.10b-5...................................................................................15, 16, 17

iv

Page

## OTHER AUTHORITIES

Christine Lagorio-Chafkin, *How to Structure an Earn-out*, Inc.,
https://www.inc.com/guides/earn-out-structuring.html (last visited April 28, 2023)..............12

# INTRODUCTION

The memoranda filed by Immunovant, Inc. and the Underwriter Defendants ably demonstrate why this case should be dismissed.  Roivant Sciences Ltd. submits this separate memorandum only to highlight that Lead Plaintiff continues to be unable to allege any claim against Roivant.  Lead Plaintiff asserts control-person claims, but fails to provide substantive, factual allegations that Roivant had actual control over Immunovant.  Lead Plaintiff asserts a securities fraud claim, but fails to allege anything that Roivant did or said, much less Roivant's scienter.  The allegations against Roivant in the Second Amended Complaint ("SAC") remain palpably deficient, and the claims against it should be dismissed.

# BACKGROUND

Roivant incorporates by reference the factual background set forth in Immunovant's memorandum.  It adds the following brief recitation to better enable the Court to consider the particular grounds for Roivant's dismissal.

## A.    Factual Background

Roivant is a healthcare company focused on founding and funding biopharmaceutical and health technology companies.  SAC ¶ 20.  Immunovant (formerly known as Immunovant Sciences Ltd. ("Legacy Immunovant")), is one such company—a clinical-stage biopharmaceutical company focused on developing drugs to treat autoimmune diseases.  *Id.* ¶ 48.

Prior to the start of the putative class period, Legacy Immunovant was a private company in which Roivant held a majority stake.  *Id.* ¶ 20.[1]  At all relevant times, Immunovant's operations focused exclusively on the development of IMVT-1401, a drug designed to treat rare autoimmune

---

[1] Contrary to Lead Plaintiff's allegations, *id.* ¶ 339, Immunovant was never a "division" of Roivant.  It was formed as a separate entity on July 6, 2018—more than a year before the putative class period began.  Decl. of John S. Williams ("Williams Decl."), Ex. A (Form 10-Q) at 9.

diseases for which there are currently few available treatment options. *Id.* ¶¶ 2–3, 141.  Plaintiff alleges that the Korean company that developed the compound now known as IMVT-1401 initially licensed the development rights to Roivant, which later granted the license to Immunovant.  *Id.* ¶ 102.  The SAC contains no allegations that Roivant played *any role* in IMVT-1401's development and clinical testing at any time after Immunovant licensed the drug.  Not surprisingly then, it also contains no allegations that Roivant had *any knowledge* of the non-public results of any preclinical studies or clinical trials of IMVT-1401—including, as relevant here, certain preclinical studies in cynomolgus monkeys or IMVT-1401's Phase 1 and Phase 2a clinical trials.

On October 2, 2019, the first day of the putative class period, Immunovant issued a press release announcing its intention to become a public company via a business combination with a special purpose acquisition company (or "SPAC") known as Health Sciences Acquisition Corporation ("HSAC").  *Id.* ¶¶ 53, 57.  The transaction was approved by HSAC's shareholders on December 16, 2019.  *Id.* ¶ 59.  Following the transaction, Roivant remained a majority shareholder of the newly public Immunovant, Inc. ("Immunovant"), and retained its majority interest in Immunovant throughout the putative class period.  *Id.* ¶ 20.  Under the terms of the share exchange agreement governing the business combination between Legacy Immunovant and HSAC (the "Share Exchange Agreement"), Roivant was also entitled to receive up to 20 million additional "earnout shares" of Immunovant common stock if Immunovant's stock price went above certain pre-defined price targets.  *Id.* ¶ 58.  However, the SAC does not contain allegations that Roivant had *any involvement* in (let alone control over) the management of Immunovant, its day-to-day operations, or any statements made by Immunovant to investors or anyone else—much less factual support for such allegations.

On or about September 2, 2020, Immunovant sold approximately 5.27 million shares of common stock to the public via a follow-on offering. *Id.* ¶ 125.  In connection with that offering, Immunovant filed a Form S-1 Registration Statement and Prospectus with the Securities and Exchange Commission (the "September 2020 Offering Documents"). *Id.*  Lead Plaintiff does not allege that Roivant had *any part* in drafting, revising, or approving the September 2020 Offering Documents, or that Roivant directed the preparation of those documents in any way.

On February 2, 2021, following promising Phase 1 and Phase 2a clinical trials, Immunovant announced a "voluntary pause in clinical dosing of IMVT-1401" after observing elevated total cholesterol and LDL levels in patients treated with IMVT-1401 during a Phase 2b trial. *Id.* ¶ 167.  Immunovant's stock price declined in response. *Id.* ¶ 172.

### B.    Procedural History

The initial complaint in this action was filed on February 19, 2021.  Lead Plaintiff SEPTA Pension Plan Master Trust was appointed on December 29, 2021.  On March 15, 2022, Lead Plaintiff filed the Amended Complaint, which asserted against Roivant control-person claims under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78t(a), and Section 15(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77o(a), as well as primary securities fraud claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).  On May 27, 2022, Roivant moved to dismiss the claims, and Defendants' motions to dismiss were fully briefed by September 9, 2022.

On February 14, 2023, the Court issued an order permitting Lead Plaintiff to file a further amended complaint "to address the facts that Plaintiff proposes be added about the Immunovant former employee, the factual issues identified [in the Memorandum and Order] . . . and any other

3

issues of concern to Plaintiff raised by the three motions." Dkt. 80 at 1–2.  Lead Plaintiff filed the SAC on March 17, 2023.

## LEGAL STANDARD

A securities-fraud plaintiff's pleading burdens are well established.  Like all plaintiffs, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts look at a complaint's "well-pleaded factual allegations," and "draw on [their] judicial experience and common sense" to "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  Courts may also consider facts outside of the complaint of which they can take judicial notice. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019).

A securities-fraud plaintiff must also meet rigorous pleading requirements that routinely lead to the dismissal of complaints. *See, e.g.*, *In re GOL Linhas Aéreas Inteligentes S.A. Sec. Litig.*, 598 F. Supp. 3d 63, 65 (E.D.N.Y. 2022).  As relevant here, a plaintiff's Exchange Act claims must comply with the Private Securities Litigation Reform Act ("PSLRA"). *E.g.*, *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).  Accordingly, Lead Plaintiff's claims under Sections 10(b) and 20(a) are subject to the PSLRA's "exacting" and "onerous" pleading requirements. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 138 (2d Cir. 2015).  Under that statute, "the complaint [must] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint [must] state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Similarly, the complaint must "state with particularity facts giving rise to a

*strong inference* that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A) (emphasis added).

## ARGUMENT

### I.     The Second Amended Complaint Does Not State a Control-Person Claim.

Section 15(a) of the Securities Act and Section 20(a) of the Exchange Act are "parallel" control person provisions whose "terms are interpreted in the same manner." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 227 (S.D.N.Y. 2009). To state a claim for control person liability under Section 15 against Roivant, Lead Plaintiff must plausibly allege (1) a "primary violation" of Sections 11 or 12(a)(2) of the Securities Act by Immunovant, and (2) Roivant's "actual control" of Immunovant. *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 260 (E.D.N.Y. 2019). To plead a violation of Section 20(a), Lead Plaintiff must similarly allege a violation of Section 10(b) of the Exchange Act by Immunovant and Roivant's actual control, as well as Roivant's "culpable participation" in Immunovant's primary violation. *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 121–22 (S.D.N.Y. 2013). The SAC meets none of these requirements.

#### A.     Lead Plaintiff Fails to Allege a Primary Violation of the Securities Laws by Immunovant.

As set out in the memoranda submitted by Immunovant and the Underwriter Defendants, Lead Plaintiff does not plausibly allege a "primary violation" of Sections 10(b), 11, or 12(a)(2) by Immunovant. Because the SAC does not plead a primary violation of the securities laws by Immunovant, Lead Plaintiff's control person claims necessarily fail as well. *E.g.*, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 40 (2d Cir. 2017).

**B.      Lead Plaintiff Fails to Allege that Roivant "Controlled" Immunovant for Purposes of Section 15(a) and Section 20(a).**

Lead Plaintiff also fails to plausibly allege that Roivant had "actual control" over Immunovant.  To establish "control" within the meaning of Sections 15(a) and 20(a), a plaintiff must demonstrate that the defendant "actually possess[ed], in fact, rather than in theory, the ability to direct the actions of the controlled person," and that the defendant had "actual control over the *transaction* in question."  *McIntire*, 927 F. Supp. 2d at 122 (emphasis in original) (citation omitted); *see In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (adopting same definition of "control" for Section 15(a) and Section 20(a)).  "[I]t is not sufficient for a plaintiff to allege that a defendant has control person *status*; instead, the plaintiff must assert that the defendant exercised *actual* control over the matters at issue."  *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 17-cv-1235, 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018) (emphasis in original) (brackets in original removed) (citation omitted).

Lead Plaintiff's theory again centers on Roivant's "status" as a controlling shareholder of Immunovant.  *Id.*  Lead Plaintiff alleges that "Roivant acted as [a] controlling person[] of Immunovant . . . by virtue of [its] . . . equity interest in and control [over] the Company."  SAC ¶ 214; *see id.* ¶¶ 339, 351 (both similar).  Unadorned status allegations are "an inadequate basis for pleading actual control."  *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 166 (E.D.N.Y. 2020) (dismissing control person claim against controlling shareholder); *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, No. 17-cv-9887, 2019 WL 1437617, at *7 (S.D.N.Y. Mar. 29, 2019) (same); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 460–61 (S.D.N.Y. 2018) (same); *Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (same); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (same).  Roivant's "status as a corporate parent . . . says nothing regarding the control that

6

[Roivant] *actually exerts* over [Immunovant's] operations" or specific representations made by the subsidiary. *DoubleLine Cap.*, 323 F. Supp. 3d at 460 (emphasis added); *see Grupo Verzatec*, 2019 WL 1437617, at *7 ("The Court cannot 'reasonably infer' that RFE could exert day-to-day control . . . simply due to [RFE's] status as controlling shareholders.").

Apart from Roivant's ownership stake, Lead Plaintiff alleges precious little. Its assertion that "Roivant was intimately involved with IMVT-1401, including the licensing of IMVT-1401 from HanAll" does nothing to bolster its claims. SAC ¶ 339. Any role that Roivant may have had in the early stages of IMVT-1401's development is irrelevant to whether Roivant had "*actual* control" over the "matters at issue"—namely, Immunovant's allegedly misleading statements during the putative class period. *Alpha Cap. Anstalt*, 2018 WL 1627266, at *20.

The SAC describes certain agreements involving Roivant and Immunovant that purportedly "describe[] the relationship and obligations of the two companies." SAC ¶ 60. Conspicuously missing is any allegation as to what those "obligations" actually are—much less any allegation that the referenced agreements provide Roivant with *any* role or oversight in crafting or approving Immunovant's public disclosures.

Lead Plaintiff's allegations that Roivant, like most large shareholders, "will be able to exercise control over all matters requiring stockholder approval" and has the right to elect a minority of Immunovant's directors, *id.* ¶ 62, likewise fail to raise a plausible inference that Roivant "could exert *day-to-day control*" over Immunovant, *Grupo Verzatec*, 2019 WL 1437617, at *7 (emphasis added). The power to appoint directors—or even the *actual* appointment of a majority of a controlled company's directors—does not establish that a defendant had control "over the alleged misrepresentations at issue in [the] case." *Bankrate*, 18 F. Supp. 3d at 486 (dismissing control-person claim against majority shareholder that appointed majority of board

members); *Grupo Verzatec*, 2019 WL 1437617, at *7–8.  To the contrary, such allegations "simply identif[y] the standard relationship between a company and a large shareholder."  *Id.* at *8.

For similar reasons, the fact that a minority of Immunovant's directors also held positions at Roivant does not demonstrate that Roivant had any control over the contents of Immunovant's challenged disclosures.  *See* SAC ¶ 65 (alleging that Immunovant directors Torti, Fromkin, and Venker were also employed at Roivant).  "[I]t would be a legal conclusion to assume" that a majority shareholder's mere appointment of such individuals as directors "gives a majority shareholder [] control over *specific representations* made by the executives of [its] subsidiary." *Grupo Verzatec*, 2019 WL 1437617, at *8.  After all, directors owe fiduciary duties "to act on behalf of the shareholders of [the company] itself, not on behalf of the entities that appointed them."  *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 580 (S.D.N.Y. 2012) (citation omitted).  And directors are presumed to act in accordance with those duties unless there are plausible allegations to the contrary.  "[A]bsent any facts undermining the assumption that [a director] acted in accordance with her duties," a plaintiff cannot make out a control-person claim "based on [a large shareholder] appointing her to the board"—even if the director in question "held a high position at [the large shareholder]."  *Id.* at 580–81.  Thus, to establish control in this context, Lead Plaintiff has "the burden of alleging facts to prove [Roivant] '*maintained control*'" over these individuals in their capacity as Immunovant's directors.  *Grupo Verzatec*, 2019 WL 1437617, at *8 (emphasis added) (no control where parent appointed two of its officers as directors of subsidiary).  Lead Plaintiff has not even attempted to carry that burden.

Plaintiff's final backstop is to point to excerpts from Immunovant's public disclosures describing Roivant's role in certain operational and administrative functions at Immunovant.  SAC ¶¶ 69–70. Those allegations do not demonstrate "control" for purposes of Section 15(a) or 20(a).

To the contrary, those excerpts show that Roivant assisted Immunovant with certain operational matters—providing, for example, administrative support and access to technology and digital platforms.   That assistance is no reason to infer that Roivant participated in Immunovant's "preparation of its financial disclosures," much less its preparation of statements about IMVT-1401's clinical trials or commercial prospects.  *DoubleLine Cap.*, 323 F. Supp. 3d at 460.  The notion that Roivant might have provided software that Immunovant used in preparing public disclosures in no way means that Roivant controlled what Immunovant said in those disclosures.

At base, Lead Plaintiff offers nothing more than "bare status allegations" as to Roivant. *Grupo Verzatec*, 2019 WL 1437617, at *7.  The control person claims should be dismissed.

### C.  Lead Plaintiff Fails to Allege "Culpable Participation" by Roivant for Purposes of Section 20(a).

Lead Plaintiff's Section 20(a) claim should also be dismissed because Lead Plaintiff has failed to adequately plead culpable participation.  Section 20(a) requires Lead Plaintiff to "allege some level of culpable participation [by the control-person defendant] at least approximating recklessness in the section 10(b) context."  *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  This inquiry mirrors the Section 10(b) scienter inquiry, *e.g.*, *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d at 165–66, and is subject to the same pleading burden found in the PSLRA, *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 322 (S.D.N.Y. 2021).

Scienter is "an intent 'to deceive, manipulate, or defraud,'" or "'an extreme departure from the standards of ordinary care [such that] the danger was *either known to the defendant or so obvious that the defendant must have been aware of it*.'"  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (emphasis added) (quoting *Tellabs*, 551 U.S. at 319, and *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)); *accord, e.g.*,

9

*Malik v. Network 1 Fin. Sec., Inc.*, No. 20-2948-cv, 2022 WL 453439, at *2 (2d Cir. Feb. 15, 2022); *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000).  Under the PSLRA, Lead Plaintiff must raise a "strong inference" of scienter.  15 U.S.C. § 78u-4(b)(2).  A strong inference "must be cogent and compelling." *Tellabs*, 551 U.S. at 324.  That "inquiry is inherently comparative." *Id.* at 323.  The test is whether the inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.  Lead Plaintiff falls far short of these stringent standards.

The traditional means of pleading scienter is to allege facts demonstrating "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.  Recklessness, in the scienter context, is a high bar.  "An *egregious* refusal to see the *obvious*, or to *investigate the doubtful*, may in some cases give rise to an inference of . . . recklessness." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996)); *accord, e.g., In re DraftKings Inc. Sec. Litig.*, --- F. Supp. 3d ----, 2023 WL 145591, at *16 (S.D.N.Y. Jan. 10, 2023).  Pointing to the corporate relationship between Roivant and Immunovant is obviously insufficient. *Chill*, 101 F.3d at 270.  "The mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient to impute the scienter of the subsidiary to the parent or affiliate." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 301 (S.D.N.Y. 2019) (citation omitted).

Rather, to plead scienter against Roivant, Plaintiff would have to point to "evidence that the 'defendants failed to review or check *information that they had a duty to monitor*, or ignored *obvious* signs of fraud.'" *S. Cherry St.*, 573 F.3d at 109 (emphasis in original) (quoting *Novak*, 216 F.3d at 308); *accord, e.g., Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 58 (2d Cir. 2018) (same).  Lead Plaintiff comes nowhere close.  It points to an Information Sharing

10

and Cooperation Agreement between Roivant and Immunovant.  SAC ¶¶ 60, 66–68.  But the Information Sharing and Cooperation Agreement states that Immunovant was to provide Roivant with certain information in Immunovant's possession only "upon reasonable request," and only so long as it was in "connection with any proper purpose"—an example of which was *Roivant's* "*own internal research purposes*."  *Id.* ¶ 68 (emphasis in original).  It is thus far from clear that Roivant even *could* have requested Immunovant's information about preclinical studies in cynomolgus monkeys.  More importantly, Lead Plaintiff never alleges that Roivant ever requested access to such information, much less that Roivant "was *required* to check" it.  *Special Situations Fund III QP, L.P. v. Deloittte Touche Tohmatsu CPA, Ltd.*, 645 F. App'x 72, 74–75 (2d Cir. 2016) (emphasis in original).  At most, Lead Plaintiff suggests that there was a "channel[ ]" for information from Immunovant.  *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010).  That is "not enough."  *Id.*  The mere potential availability of clinical-study information does not make that information "either known to the defendant or so obvious that the defendant must have been aware of it."  *E.g.*, *ECA*, 553 F.3d at 198.  Lead Plaintiff does not and cannot allege that Roivant had "*a duty to monitor*" Immunovant studies, and there were no "*obvious* signs of fraud."  *S. Cherry St.*, 573 F.3d at 109.

Lead Plaintiff then strains to salvage its Section 20(a) claim under a "motive and opportunity" theory.  *See, e.g.*, *ECA*, 553 F.3d at 198.  In this Circuit, however, "[s]ufficient motive allegations '*entail concrete benefits* that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (emphasis added) (quoting *Novak*, 216 F.3d at 307).  "Motives that are generally possessed by most corporate directors and officers," such as a "desire to keep stock prices high to increase officer compensation," do not pass muster.  *Id.*  These standards exist for good reason.  If it were

11

otherwise, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Id.* at 140. And so the ultimate inquiry remains whether there are "facts giving rise to a *strong* inference that the defendant acted with . . . an intent to deceive, manipulate, or defraud." *ECA*, 553 F.3d at 198 (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2) and *Tellabs*, 551 U.S. at 319).

Under these standards, Lead Plaintiff fails to plausibly alleging "motive and opportunity" scienter. Lead Plaintiff alleges Roivant "was financially motivated to engage in the fraud . . . to *monetize its investment*." SAC ¶ 315 (emphasis added). This conclusory allegation fails because it in no way distinguishes Roivant from any other company. It is therefore far "too generalized to demonstrate scienter." *Kalnit*, 264 F.3d at 139. It also fails on its own terms. Roivant's purported motivation "to monetize its investment" does not indicate knowledge of fraud *because Roivant never monetized its investment*. SAC ¶ 315.

Lead Plaintiff points to the "earnout" share provision in the Share Exchange Agreement whereby Roivant was entitled to receive additional shares of Immunovant if the latter's share price hit certain price targets. *Id.* ¶¶ 316–20. An earnout provision is a common feature of modern corporate transactions, particularly SPAC transactions.[2] Saying it gave Roivant an incentive to allow fraud is the same as saying that Roivant had an incentive for Immunovant's share price to increase—that is, the same motivation that companies and executives have everywhere. *E.g.*, *Kalnit*, 264 F.3d at 139. Second Circuit precedent could not be clearer that defendants' receiving benefits "based on corporate earnings and *higher stock prices* does not strengthen the inference of fraudulent intent." *ECA*, 553 F.3d at 201 (emphasis added); *see, e.g.*, *Wyche v. Advanced Drainage*

---

[2] *See* Christine Lagorio-Chafkin, *How to Structure an Earn-out*, Inc., https://www.inc.com/guides/earn-out-structuring.html (last visited April 28, 2023).

*Sys., Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017). "Absent some . . . allegation to explain how a defendant benefit[ed] from an inflated stock price," a defendant's "stock ownership does not provide sufficient motive to sustain [a plaintiff's] pleading burden." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994).

The fact that Roivant received additional Immunovant stock and sold none of it devastates Lead Plaintiff's scienter theory. "Mere ownership in the absence of profit-taking does not establish a motive that would support a strong inference that the defendant acted with the required state of mind." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 367 (S.D.N.Y. 2003) (quotation marks omitted). In fact, it suggests the opposite. Courts routinely infer a *lack* of scienter from the absence of stock sales. *E.g.*, *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600–01 (S.D.N.Y. 2016); *see, e.g.*, *Turner v. MagicJack VocalTec, Ltd.*, No. 13 Civ. 0448, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014) (holding lack of stock sales "rebuts an inference of scienter"); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383 (E.D.N.Y. 2003) (same).[3] Lead Plaintiff does not allege that Roivant sold any Immunovant stock during the putative class period (because Roivant did not). In the absence of stock sales, Lead Plaintiff can point to "no concrete benefit" to Roivant that would "justify the[ ] risks" associated with a securities fraud. *Gillis*, 197 F. Supp. 3d at 600. On the contrary, because it did not sell any stock, Roivant "stood to lose a lot of money if the value of [Immunovant's] stock fell." *Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008). The natural inference that arises from Roivant's not having sold any shares is that Roivant did not

---

[3] *See also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir.1995); *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 236 (S.D.N.Y. 2020); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 515–16 (S.D.N.Y. 2011); *In re eSpeed, Inc. Secs. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000).

know there was risk that a drop was coming, because it did not know of the purported fraud.  The inference that Roivant lacked scienter is "cogent and compelling." *Tellabs*, 551 U.S. at 324.

Lead Plaintiff's contrary inference is not.  The gist of the SAC is that the defendants, including Roivant, knew that Immunovant stock was a ticking time bomb—i.e., that there were potential safety issues with the company's principal asset, IMVT-1401—but declined to release that information in order to benefit themselves.  That theory falls apart because Roivant never sold stock even after having acquired the earnout shares.  Lead Plaintiff's theory is that Roivant, knowing of a material risk that the stock price could fall substantially if an anticipated safety risk came to pass, foreswore the opportunity to make hundreds of millions of dollars and avoid that risk.  Why?  Lead Plaintiff has no sensible answer.  A shareholder aware of a material risk that the price would collapse would "rush[] to cash out" before the risk materialized, not sit on its hands. *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 412 (S.D.N.Y. 2020) (citation omitted).  "Courts regularly 'refuse to infer scienter when confronted with such illogical allegations.'" *Gillis*, 197 F. Supp. 3d at 601 (alteration omitted) (quoting *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006)).

At bottom, the fact that Roivant did not sell its Immunovant stock gives rise to two competing inferences: either (1) Roivant did not know of the alleged fraud; or (2) Roivant decided to forego locking in hundreds of millions of dollars in profit and just hope that the significant risk of increased cholesterol would not come to pass. *See Tellabs*, 551 U.S. at 324.  Lead Plaintiff has pleaded scienter only if the second inference is "at least as compelling" as the first. *Id.* It obviously is not.  Lead Plaintiff has therefore failed to plead scienter, and that failure dooms its culpable-participation argument.

14

## II.    The Second Amended Complaint Does Not Plead a Primary Violation of Section 10(b) Against Roivant.

To plead a violation of Section 10(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, a plaintiff must "plead six familiar elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021).  A Section 10(b) claim based on "scheme liability" requires the same elements, except that Lead Plaintiff must plead that the defendant "committed a deceptive or manipulative act," in lieu of a misrepresentation or omission.  *Id.* at 105; *see SEC v. Rio Tinto plc*, 41 F.4th 47, 53–54 (2d Cir. 2022) (noting that allegations of "misstatements and omissions alone are not enough for scheme liability").

The Section 10(b) claims are defective for numerous reasons.  Roivant incorporates and adopts those arguments.  But the Section 10(b) claim against Roivant should be dismissed for the additional reason that Lead Plaintiff nowhere pleads that *Roivant* violated Section 10(b).

*First*, Lead Plaintiff's Section 10(b) claim fails for the same reason its Section 20(a) claim fails:  Lead Plaintiff fails to allege facts giving rise to a "strong inference" of scienter.  *E.g.*, *ECA*, 553 F.3d at 201; *Kalnit*, 264 F.3d at 138; *see supra*, pp.9–14.  The SAC contains no plausible theory that Roivant actually knew of, or was extremely reckless in regards to, any purported fraud at Immunovant.  Lead Plaintiff's allegations certainly do not satisfy the PSLRA's "cogent and compelling" standard for scienter.  *Tellabs*, 551 U.S. at 315.

*Second*, and most fundamentally, the SAC does not plead a single "misstatement or omission" attributable to Roivant.  *Danske Bank*, 11 F.4th at 98.  A plaintiff "may not maintain an aiding and abetting suit under § 10(b)," *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994), and Second Circuit precedent dictates that a plaintiff

15

asserting a Rule 10b-5(b) claim must attribute a false or misleading statement "*to the defendant*," *e.g.*, *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 153 (2d Cir. 2010) (emphasis added); *see id.* at 157–58; *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

Here, Lead Plaintiff does not attribute a single statement to Roivant, and instead simply "clump[s] [Roivant] together" with other parties. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021). Those allegations do not suffice. *E.g.*, *id.*; *Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 465 (2d Cir. 2012) (affirming dismissal where "no omission or misstatement was alleged by" two defendants). The closest Lead Plaintiff comes is its new allegation that there was a misrepresentation in the Share Exchange Agreement that Roivant, along with Immunovant and other parties, signed. SAC ¶ 240. But that statement (which was not false or misleading) was in a section of the Share Exchange Agreement called "Representations and Warranties of *the Company*"—i.e., Immunovant. Williams Decl., Ex. B (Proxy Statement) at Annex A-13 (emphasis added). Not surprisingly, Lead Plaintiff attributes that statement to Immunovant, alleging that "as set forth in the SEA, *Immunovant represented* it complied with FDA rules, guidelines, and Good Clinical Practices." SAC ¶ 122 (emphasis added).

Regardless, statements from the Share Exchange Agreement cannot provide a basis for 10b-5(b) liability against *any* of the parties to that agreement. The Proxy Statement to which the Share Exchange Agreement was annexed explicitly cautioned investors that "[t]he representations, warranties and covenants contained in the Share Exchange Agreement were made only for purposes of that agreement and as of specific dates [and] *solely for the benefit of the parties to the Share Exchange Agreement*"—and that investors therefore "*should not rely on the representations*

16

*and warranties as characterizations of the actual state of affairs of HSAC*."  Williams Decl., Ex.

B at 97 (emphasis added).  For that reason, Lead Plaintiff cannot plausibly allege that statements

from the Share Exchange Agreement were materially misleading to investors.

*Third*, as to any purported scheme claim, Lead Plaintiff has not alleged any "deceptive or

manipulative act" "committed" by Roivant.  *E.g.*, *Danske Bank*, 11 F.4th at 105.  The established

law in this Circuit "require[s] scheme claims to be premised on deceptive acts that are distinct

from misstatements and omissions that underlie an accompanying Rule 10b-5(b) claim."  *Id.* at

105 n.6; *see Rio Tinto*, 41 F.4th at 49; *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217

(S.D.N.Y. 2020); *In re Eastman Kodak Co. Sec. Litig.*, --- F. Supp. 3d ----, 2022 WL 4473629, at

*14 (W.D.N.Y. Sept. 27, 2022).  Here, the pleading failing is even more fundamental.  There are

no allegations of any deceptive or manipulative act by Roivant at all.  *Danske Bank*, 11 F.4th at

105.  That Lead Plaintiff has not cured this fatal defect even after Roivant raised it in its previous

Motion to Dismiss only confirms that Lead Plaintiff has no allegations to support this essential

element of a scheme-liability claim.

*Fourth*, in all events, Lead Plaintiff has failed to plead reliance, which is a "critical element

in private actions under Rule 10b-5."  *Pac. Inv. Mgmt.*, 603 F.3d at 156.  Under Second Circuit

law, "[a]ttribution is necessary to show reliance."  *Id.*  "Without explicit attribution" of allegedly

false statements to Roivant, "reliance on [Roivant's] participation can only be shown through an

indirect chain too remote for liability."  *Id.* (alteration and quotation marks omitted).  The SAC

does not attribute *any* of the allegedly false statements to Roivant.  There is no allegation that

Roivant "affirmatively 'injected'" *any* information about IMVT-1401 into the market at all, much

less any "inaccurate information."  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir.

2022).  Lead Plaintiff's scheme claim likewise falls short because the SAC still fails to adequately

show "[r]eliance by the plaintiff upon the defendant's deceptive acts." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008).  Because Lead Plaintiff does not identify any allegedly deceptive acts committed by Roivant, it necessarily fails to allege reliance as well.

In short, the SAC fails to plead any of the necessary elements for a primary violation of Section 10(b) against Roivant.  Lead Plaintiff's Section 10(b) claim against Roivant is incurably deficient and should be dismissed.  *E.g.*, *Danske Bank*, 11 F.4th at 98, 105.

## CONCLUSION

For the foregoing reasons, the Court should grant Roivant's motion and dismiss the SAC with prejudice.


Dated:  April 28, 2023                           WILLIAMS & CONNOLLY LLP

                                                 By:  */s/ John S. Williams*
                                                      John S. Williams (JW-6927)
                                                      jwilliams@wc.com
                                                      680 Maine Ave, S.W.
                                                      Washington, D.C. 20024

                                                      650 5th Ave #1500
                                                      New York, NY 10019
                                                      Telephone: (202) 434-5000
                                                      Facsimile: (202) 434-5029

                                                      *Counsel for Roivant Sciences Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on April 28, 2023, true and correct copies of the Notice of Roivant Sciences Ltd.'s Motion To Dismiss, the Memorandum of Law in Support of the Motion To Dismiss of Roivant Sciences Ltd., and the Declaration of John S. Williams in Support of Roivant Sciences Ltd.'s Motion To Dismiss were served on all counsel of record via electronic mail.

Dated:  April 28, 2023                                   */s/ John S. Williams*
                                                                  John S. Williams