# APPENDIX A

**Plaintiff's Responses to Defendants' Appendix A**

| No. | Source | ¶ | Challenged Statement[1][2] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 1. | September 2020 Offering Documents (Ex. 3) | 133 | In our multi-part, placebo-controlled Phase 1 clinical trial, IMVT-1401 has been observed to be well-tolerated with no Grade 3 or Grade 4 treatment-emergent AEs and no discontinuations due to AEs…. To date, two serious AEs have been reported, both of which have been assessed as unrelated to IMVT-1401 by the study investigator. There have been no treatment-related serious AEs reported. | • Opinion (*clinical trial results*) <br> • Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br> • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 2. | September 2020 Offering Documents (Ex. 3) | 134 | In a Phase 1 clinical trial, IMVT-1401 has demonstrated dose-dependent reductions in serum levels of IgG antibodies and was well-tolerated following subcutaneous and intravenous administration to healthy volunteers. In addition, completed clinical trials of other anti-FcRn antibodies have produced positive proof-of-concept activity in multiple IgG-mediated autoimmune diseases. We believe that these data support FcRn as a viable pharmacologic target with the potential to address multiple IgG-mediated autoimmune diseases. We intend to develop IMVT-1401 as a fixed- | • Opinion (*clinical trial results; "We believe"*) <br> • Forward-looking statement (*"We intend"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; |

---

[1]  As discussed in §III.C in Plaintiff's Ominbus Opposition to Defendants' Motions to Dismiss the Second Amended Complaint ("Plaintiff's Opposition"), the Court should not consider Defendants' Appendix A in deciding Defendants' motions to dismiss because it serves as an inappropriate way for Defendants to exceed the page limit.  If the Court is inclined to consider Defendants' Appendix A, Plaintiff concisely responds to Defendants' arguments.  Plaintiff's arguments for the following issues can be found in Plaintiff's Opposition.

[2]  "¶" refers to Plaintiff's Second Amended Complaint ("SAC"; ECF No. 82).  Plaintiff replicated Defendants' Appendix A and included a new column titled, "Plaintiff's Responses."  Defendants removed any emphasis added by Plaintiff in the SAC from the statements and therefore do not appear as they are alleged in the SAC.

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | dose, self-administered subcutaneous injection on a convenient weekly, or less frequent, dosing schedule. | • Demonstrably true (*undisputed trial results*) | lacked reasonable basis for statement<br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 3. | September 2020 Offering Documents<br>(Ex. 3) | 136 | Tables of a "summary of the most commonly reported AEs" and the "Most Common Adverse Events Reported in Phase 1 Clinical Trial of IMVT-1401" | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 4. | September 2020 | 137 | **Phase 1 Clinical Trials of IMVT-1401 in Healthy Volunteers**<br>We have completed a multi-part, placebo-controlled Phase 1 clinical trial involving 99 healthy volunteers in Australia and Canada, | • Opinion (*clinical trial results*) | • Not nonactionable opinion; omitted material facts; a reasonable |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | Offering Documents (Ex. 3) | | administering IMVT-1401 both as an intravenous infusion and as a subcutaneous injection. In this trial, 77 subjects received at least one dose of IMVT-1401 and 22 subjects received placebo.<br><br>* * *<br><br>The IgG reductions we observed in this multi-part, placebo-controlled Phase 1 clinical trial support the continued development of IMVT-1401.<br><br>*Safety Data*<br>In our multi-part, placebo-controlled Phase 1 clinical trial, IMVT-1401 has been observed to be well-tolerated with no Grade 3 or Grade 4 treatment emergent AEs and no discontinuations due to AEs. The most commonly reported AE has been mild erythema and swelling at the injection site, which typically resolved within hours and had a similar incidence between subjects receiving IMVT-1401 and placebo. To date, two serious AEs have been reported, both of which have been assessed as unrelated to IMVT-1401 by the study investigator. There have been no treatment-related serious AEs reported. | • Demonstrably true (*disclosing clinical trial design; disclosing observed and reported results*) | investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 5. | September 2020 Offering Documents (Ex. 3) | 139 | **ASCEND MG Trial**<br>In August 2019, we initiated dosing in our ASCEND MG clinical trial. The ASCEND MG trial is a multi-center, randomized, placebo-controlled Phase 2a clinical trial designed to evaluate the safety, tolerability, pharmacodynamics, and efficacy of IMVT-1401 in patients with moderate-to-severe MG… The primary endpoints of this trial are assessment of the safety and tolerability of IMVT-1401 and measurement of the changes from baseline in levels of total IgG subclasses and anti-AChR IgG…Consistent with previously reported Phase 1 results, IMVT-1401 was observed to be well-tolerated with no SAEs reported, no withdrawals due to AEs, and no imbalance in headaches.<br><br>* * * | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results; disclosing clinical trial design*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Actionable because it is false and/or omits material information necessary to make the |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | **ASCEND GO-1 Trial**<br>In May 2019, we initiated dosing in our ASCEND GO-1 trial, an open label single- arm Phase 2a clinical trial of IMVT-1401 in Canada in patients with TED. We announced initial results from this trial in March 2020…The primary endpoints of this trial are safety and tolerability of IMVT-1401 over the six-week treatment period, as well as the change from baseline in levels of anti-TSHR antibodies, total IgG antibodies and IgG antibodies by subclasses…The safety and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers. Mean albumin reduction from baseline to end of treatment was 24%. All AEs were mild or moderate and there were no headaches reported. | | statement not misleading to a reasonable investor |
| 6. | September 2020 Offering Documents (Ex. 3) | 141 | Unfortunately, safe and effective treatment options for patients suffering from autoimmune diseases are lacking. Currently available treatments are generally limited to corticosteroids and immunosuppressants in early-stage disease and intravenous immunoglobulin, or IVIg, or plasma exchange in later-stage disease. These approaches often fail to address patients' needs since they are limited by delayed onset of action, waning therapeutic benefit over time and unfavorable safety profiles.<br><br>* * *<br><br>FcRn plays a pivotal role in preventing the degradation of IgG antibodies. The physiologic function of FcRn is to modulate the catabolism of IgG antibodies, and inhibition of FcRn, such as through use of an anti-FcRn antibody, has been shown to reduce levels of pathogenic IgG antibodies. Completed clinical trials of Immunovant and other anti-FcRn antibodies in IgG-mediated autoimmune diseases have generated promising results, suggesting that FcRn is a therapeutically important pharmacologic target to reduce levels of these disease- causing IgG antibodies. | • Opinion (*clinical trial results; existing treatment options*)<br>• Puffery (*"promising results"*; *"therapeutically important"*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors |

- 4 -

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | In several nonclinical studies and a multi-part Phase 1 clinical trial in healthy volunteers, intravenous and subcutaneous delivery of IMVT-1401 demonstrated dose-dependent IgG antibody reductions and was observed to be well tolerated. In the highest dose cohort from the multiple-ascending dose portion of the Phase 1 clinical trial, four weekly subcutaneous administrations of 680 mg resulted in a mean maximum reduction of serum IgG levels of 78%, with a standard deviation of 2%. IMVT-1401 was generally well-tolerated in this study, and the majority of adverse events, or AEs, reported were mild or moderate. Injection site reactions were similar between IMVT-1401 and placebo arms. | | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 7. | September 2020 Offering Documents (Ex. 3) | 144 | **ASCEND GO-2 Trial**<br>In October 2019, we initiated dosing in our ASCEND GO-2 trial, a randomized, masked, placebo-controlled Phase 2b clinical trial in 77 patients with moderate- to-severe active TED with confirmed autoantibodies to TSHR. The ASCEND GO- 2 trial explores the potential of IMVT-1401 to improve proptosis and assesses the safety and tolerability of IMVT-1401 in this population. Patients in this trial will be treated with one of three doses of IMVT-1401 (680 mg, 340 mg or 255 mg) or placebo administered weekly by subcutaneous injection for 12 weeks. The primary endpoints of this trial are…safety and tolerability… We currently remain on track to report initial results from our ASCEND GO-2 trial in the first half of calendar year 2021. | • Puffery (*"on track"*)<br>• Forward-looking statement (*"on track"*)<br>• Demonstrably true (*disclosing clinical trial design*) | • Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors<br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 8. | September 2020 Offering Documents (Ex. 3) | 146 | Dose-dependent and reversible albumin reductions were observed in the single- ascending and multiple-ascending dose cohorts…. These reductions were not associated with any AEs or clinical symptoms and did not lead to any study discontinuations. The clinical relevance of isolated, mild hypoalbuminemia is unknown, however, a hereditary syndrome associated with deficient albumin production has been described (Congenital Analbumenia). In this syndrome, despite extremely low or absent levels of albumin, those affected have only mild symptoms, including fatigue, low blood pressure and edema. It is believed that compensatory mechanisms through the production of other proteins may allow for relatively normal physiologic function in this population. | • Opinion (*clinical trial results; "it is believed"*) <br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 9. | September 2020 Offering Documents (Ex. 3) | 149 | ***Nonclinical Studies of IMVT-1401*** <br>Cynomolgus monkeys were selected as the primary species for nonclinical testing, given the high degree of sequence homology to human FcRn and IMVT-1401's strong binding affinity for monkey FcRn. Our partner, HanAll, completed five nonclinical studies of IMVT-1401 (referred as HL161BKN for the purposes of these studies) in cynomolgus monkeys. <br><br>* * * <br><br>Importantly from the 26-week toxicity study, based on the overall toxicity profile following 26 weeks of SC injections (200 mg/kg/week), the No-Observed- Adverse-Effect-Level (NOAEL) of IMVT-1401 following SC injection was concluded to be 100 mg/kg/dose or 200 mg/kg/week; we estimate that this represents an approximate 3-fold safety margin (100 mg/kg/dose) when compared to the planned clinical dose of 680 mg/dose taking into account allometric corrections between monkeys and humans. Moreover, the estimated safety margin is increased to approximately 6-fold when | • Opinion (*preclinical trial results; "we estimate"*) <br>• Puffery (*"robust PK/TK and PD correlation"*) <br>• Demonstrably true (*describing preclinical studies; disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of |

- 6 -

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | considering IMVT-1401 was administered twice per week at 200 mg/kg/week. Overall, in these nonclinical studies, there was a robust PK/TK and PD correlation in cynomolgus monkeys after removing the confounding element of ADA. The immunogenicity response to human proteins generated in nonclinical species is generally not predictive of that in the human. Nevertheless, subjects in clinical trials with IMVT-1401 will be carefully monitored for any AEs, including those related to immunogenicity. | | statement discussed frequently and major concern to investors<br>● Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 10. | September 2020 Offering Documents<br>(Ex. 3) | 151 | The September 2020 Offering Documents discussed that the FDA drug approval process requires the "performance of adequate and well-controlled human clinical trials in accordance with applicable IND regulations, Good Clinical Practice, or GCP, and other clinical-trial related regulations and guidance to evaluate the safety, purity and potency of the proposed biologic product candidate for each proposed indication."<br><br>The September 2020 Offering Documents also discussed that the failure of third parties to comply with the "the FDA's Good Clinical Practice, or GCP" could "have an adverse effect on Immunovant's results of operations." | ● Demonstrably true (*FDA approval process*) | ● Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 11. | October 2, 2019 Press Release<br>(Ex. 4) | 221 | - Immunovant is developing IMVT-1401, a fully human antibody to FcRn that delivered a mean IgG reduction of nearly 80% in a Phase 1 study of healthy volunteers receiving 4 weekly 680 mg subcutaneous injections<br>- Top-line data from ongoing Phase 2a trial in Graves' ophthalmopathy expected by Q1 2020<br>- Top-line data from ongoing Phase 2a trial in myasthenia gravis expected by Q2 2020 | ● Forward-looking statement ("*Top-line data . . . expected*")<br>● Demonstrably true (*describing IMVT-1401; disclosing observed and reported results*) | ● Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>● Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 12. | October 2, 2019 Press Release (Ex. 4) | 222 | "We are thrilled to have the opportunity to partner with the team at Immunovant. We believe IMVT-1401 is a uniquely compelling asset within the FcRn drug class, which we expect will become a cornerstone therapy for treating many auto- antibody driven diseases," said Roderick T. Wong, M.D., President, Chief Executive Officer and Chairman of HSAC and Managing Partner and Chief Investment Officer of RTW Investments.<br><br>* * *<br><br>"I am proud of the many milestones delivered by the Immunovant team this year, including completion of a comprehensive Phase 1 program demonstrating robust IgG reductions with simple subcutaneous injections and initiation of a broad Phase 2 program with both first-in-class and best-in-class potential in multiple diseases with high unmet patient need. We believe the potency of IMVT-1401 and the ability to administer IMVT-1401 as a simple subcutaneous injection represent important potentially differentiating features of this product candidate. Today's financing transaction will allow us to continue to pursue our vision of enabling normal lives for patients with autoimmune diseases," said Pete Salzmann, M.D., Chief Executive Officer of Immunovant. | • Opinion (*clinical trial results; "thrilled"; "We believe"; "I am proud of"*)<br>• Puffery (*"uniquely compelling asset"; "cornerstone therapy"; "comprehensive Phase 1 program"; "robust IgG reductions"; "broad Phase 2 program"; "first-in-class and best-in-class potential"; "important potentially differentiating features"*)<br>• Forward-looking statement (*"we expect"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors<br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate |
| 13. | October 2, 2019 Press Release (Ex. 4) | 224 | The Merger Presentation provided details about the terms of the Merger between Legacy Immunovant and HSAC, including that "near-term value drivers" for Immunovant stock were "[f]our anticipated data readouts over the next 20 months." | • Puffery (*"near-term value drivers"*)<br>• Forward-looking statement (*"four* | • Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | *anticipated data readouts over the next 20 months")* | | risk of elevated cholesterol; type of statement discussed frequently and major concern to investors<br><br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate |
| 14. | October 2, 2019 Presentation (Ex. 4) | 225 | **IMVT-1401: Program Highlights**<br><br>**IMVT-1401: A novel, fully human monoclonal antibody inhibiting FcRn**<br>• Early evidence suggests that anti-FcRn agents could transform the treatment of autoimmune diseases mediated by pathogenic IgG antibodies<br><br>**In Phase 1, IMVT-1401 generated compelling pharmacodynamic activity**<br>• Clinically meaningful IgG reductions observed (78% IgG reduction at 680mg dose level)<br>• No difference observed between intravenous and subcutaneous formulations at equivalent doses<br><br>**IMVT-1401 has been well tolerated to date**<br>• No headaches reported in the highest dose multiple dose cohort tested<br>• No treatment-related serious adverse events (SAEs) or dose limiting toxicities reported<br>• No confirmed cases of anti-drug antibodies in any subject in multiple dose cohorts<br><br>**IMVT-1401 was designed from inception for subcutaneous (SC) injection**<br>• Requirement during development process<br>• Phase 1 data suggest every other week or less frequent dosing achievable for chronic use | • Opinion (*clinical trial results*)<br>• Puffery (*"meaningful"; "compelling"*)<br>• Demonstrably true (*describing IMVT- 1401; disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors<br><br>• Actionable because it is false and/or omits |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | | | material information necessary to make the statement not misleading to a reasonable investor |
| 15. | October 2, 2019 Presentation (Ex. 4) | 227 | **Generally well-tolerated in Phase 1 study**<br><br>Preliminary results from Phase 1 SAD/MAD cohorts<br>• 99 subjects dosed to date through SAD and MAD portions of Phase 1<br>– IMVT-1401: 77 subjects<br>– Placebo: 22 subjects<br>• Most common AEs were mild erythema and swelling at injection site<br>– Injection site reactions were not dose or frequency related<br>– Occurred at similar incidence for drug and placebo treated subjects<br>• No headaches observed in 680mg SC MAD cohort<br>• Albumin changes:<br>– Dose-dependent, reversible, and asymptomatic albumin reductions observed<br>– At day 28, mean albumin levels were 37.5 g/L in the 340 mg cohort, and 32.4 g/L in 680mg cohort (normal range 36-51 g/L)<br>• 2 SAEs observed in two separate SAD cohorts, both ruled unrelated to treatment by study investigator (cancer, appendicitis)<br>• Treatment-emergent ADA confirmed in 8% of IMVT-1401-treated subjects and 6% of placebo-treated subjects<br>– No subject in MAD cohorts has developed a confirmed ADA response to IMVT-1401<br><br>IMMUNOVANT | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing clinical trial design; disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 16. | October 2, 2019 Presentation (Ex. 4) | 229 | | • Opinion (*views about "unmet need"*)<br>• Demonstrably true (*describing existing treatment options*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 17. | October 2, 2019 Presentation (Ex. 4) | 231 | | • Demonstrably true (*disclosing clinical trial design*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 18. | October 2, 2019 Presentation (Ex. 4) | 233 | | • Opinion (*views about "limited treatment options"*) <br> • Demonstrably true (*describing existing treatment options*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br> • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 19. | October 2, 2019 Presentation (Ex. 4) | 235 | | • Demonstrably true (*disclosing clinical trial design*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 20. | October 2, 2019 Presentation (Ex. 4) | 237 | | • Demonstrably true (*disclosing clinical trial design*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 21. | November 27, 2019 Schedule 14A Proxy Statement (Ex. 2) | 240 | 4.27 <u>Preclinical Development and Clinical Trials</u>. The studies, tests, preclinical development and clinical trials, if any, conducted by or on behalf of the Company are being conducted in all material respects in accordance with experimental protocols, procedures and controls pursuant to accepted professional and scientific standards for products or product candidates comparable to those being developed by the Company and all applicable laws and regulations, including the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. parts 50, 54, 56, 58, 312, and 812. The descriptions of, protocols for, and data and other results of, the studies, tests, development and trials conducted by or on behalf of the Company that have been furnished or made available to the Purchaser or as provided in the Proxy Statement are accurate and complete in all material respects (other than to the extent certain portions thereof were redacted by the Company). The Company is not aware of any studies, tests, development or trials the results of which reasonably call into | • Demonstrably true (*disclosing clinical trial design*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

- 13 -

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | question the results of the studies, tests, development and trials conducted by or on behalf of the Company[.] | | |
| 22. | October 11, 2019 Merger Conference Call | 244 | We've been impressed by [IMVT-1401's]… robust reduction in IgG levels in comprehensive Phase I program… | • Opinion (*clinical trial results; "impressed"*)<br>• Puffery (*"robust reduction"; "comprehensive Phase 1 program"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors |
| 23. | October 11, 2019 Merger Conference Call | 246 | To these ends, I'm proud of the many milestones delivered by the Immunovant team this year, including completion of a comprehensive Phase 1 program demonstrating robust IgG reductions of 78% with simple weekly subcutaneous injections of 680 milligrams…. We've also initiated a broad Phase 2 program with both first-in-class and best-in-class potential in multiple diseases with high unmet patient need. Importantly, IMVT-1401 was also generally well tolerated in this good-sized Phase 1 trial. | • Opinion (*clinical trial results; "I'm proud of"*)<br>• Puffery (*"comprehensive Phase 1 program"; "robust IgG reductions"; "broad Phase 2 program";* | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | | *"first-in-class and best-in-class potential"*) | • Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors |
| 24. | January 17, 2020 Form S-1 | 248 | ***ASCEND-MG Trial***<br>In August 2019, we initiated dosing in a randomized, blinded, placebo-controlled Phase 2a clinical trial of IMVT-1401 for the treatment of MG. The ASCEND-MG trial assesses safety and efficacy of IMVT-1401 in an anticipated 21 patients with MG symptoms, as defined by MGFA Class II through IVa, and QMG scores greater than or equal to 12…The primary endpoints of this trial are assessment of the safety and tolerability of IMVT-1401 and identification of optimal dosing for Phase 3 administration through measurement of the changes from baseline in levels of total IgG subclasses and anti-AChR IgG…We anticipate reporting top-line results from this trial in the first half of 2020.<br><br>* * *<br><br>***ASCEND-GO 1 Trial***<br>In May 2019, we initiated dosing in our ASCEND-GO 1 trial, an open label single-arm Phase 2a clinical trial of IMVT-1401 in Canada in patients with GO… The primary endpoints of this trial will be safety and tolerability of IMVT-1401 over the six-week treatment period, as well as the change from baseline in levels of anti-TSHR antibodies, total IgG antibodies and IgG antibodies by | • Forward-looking statement (*"We anticipate reporting"*)<br>• Demonstrably true (*disclosing clinical trial design*) | • Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | subclasses…We anticipate reporting initial results from this trial in the first quarter of 2020.<br><br>* * *<br><br>***ASCEND-GO 2 Trial***<br>In October 2019, we initiated dosing in our ASCEND-GO 2 trial, a randomized, masked, placebo-controlled Phase 2b clinical trial in 77 patients with moderate- to-severe active GO with confirmed autoantibodies to TSHR. The ASCEND-GO- 2 trial explores the potential of IMVT-1401 to improve proptosis, and assesses the safety and tolerability of IMVT-1401 in this population… The primary endpoints of this trial are the proptosis responder rate measured at week 13, defined as the percentage of patients with a greater than or equal to 2 mm reduction in proptosis in the study eye without deterioration in the fellow eye, and safety and tolerability… We anticipate reporting initial results from this trial in early 2021. | | |
| 25. | January 17, 2020 Form S-1 | 250 | ***Safety Data***<br>In our multi-part, placebo-controlled Phase 1 clinical trial, IMVT-1401 has been observed to be well-tolerated with no Grade 3 or Grade 4 AEs and no discontinuations due to AEs. The most commonly reported AE has been mild erythema and swelling at the injection site, which typically resolved within hours and had a similar incidence between subjects receiving IMVT-1401 and placebo…. To date, two serious AEs have been reported, both of which have been assessed as unrelated to IMVT-1401 by the study investigator. There have been no treatment-related serious AEs reported. | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 26. | March 30, 2020 Press Release | 252 | We are very excited by the initial results of this trial…[t]hese results provide an early proof-of-concept of the potential for IMVT-1401 to ultimately become a safe and effective treatment for patients suffering from Thyroid Eye Disease…[w]e look forward to reporting the study's full results, including detailed lab observations and 12 weeks of follow up data, at an upcoming medical meeting. | • Opinion (*clinical trial results; "very excited"*)<br>• Forward-looking statement (*"[w]e look forward to"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate |
| 27. | March 30, 2020 Conference Call (Ex. 14) | 254 | I would like to start off by expressing how thrilled we are about the positive clinical results we are announcing today in thyroid eye disease. As the only subcutaneous therapy in clinical development for thyroid eye disease, we believe IMVT-1401 has the potential to be life-changing for patients, and we couldn't be happier with the outcome of this small proof-of-concept trial.<br><br>* * *<br><br>ASCEND GO-1 is the first trial of an anti-FcRn in thyroid eye disease. We had 2 major objectives for this trial: first, the study was designed to test the pharmacodynamic response to a loading dose regimen; second, the study was designed to examine the initial safety and efficacy of IMVT-1401 in thyroid eye disease.<br><br>* * *<br><br>We are also pleased to report that the safety and tolerability profile we observed in ASCEND GO-1 was in line with our expectations from our Phase 1 study in 99 healthy volunteers. We saw no serious | • Opinion (*clinical trial results; "thrilled"; "we believe"; "in line with our expectations"*)<br>• Puffery (*"potential to be life-changing"*)<br>• Demonstrably true (*disclosing clinical trial design; disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | adverse events or SAEs, no withdrawals due to adverse events and no headaches were reported in this trial. All adverse events were mild or moderate. | | statement discussed frequently and major concern to investors<br><br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 28. | March 30, 2020 Conference Call<br><br>(Ex. 14) | 256 | I think on the safety side, the FDA is going to look at the full range of a data package for any asset that's submitted. I think what we're really encouraged by in terms of our data to date is that all the adverse events that have been reported, both in our Phase I trial with healthy volunteers as well as in this trial, were just mild or moderate. We haven't had any SAEs…. | • Opinion (*clinical trial results; "I think"*)<br><br>• Forward-looking statement (*"going to look at"*)<br><br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br><br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|-----|--------|---|--------------------------|--------------------|-----------------------|
| 29. | April 10, 2020 Form S-1 | 259 | **ASCEND MG Trial**<br>In August 2019, we initiated dosing in a randomized, blinded, placebo-controlled Phase 2a clinical trial of IMVT-1401 for the treatment of MG. The ASCEND MG trial assesses safety and efficacy of IMVT-1401 in an anticipated 21 patients with MG symptoms, as defined by MGFA Class II through IVa, and QMG scores greater than or equal to 12…The primary endpoints of this trial are assessment of the safety and tolerability of IMVT-1401 and identification of optimal dosing for Phase 3 administration through measurement of the changes from baseline in levels of total IgG subclasses and anti-AChR IgG… We anticipate reporting top- line results from this trial in the third quarter of calendar year 2020.<br><br>* * *<br><br>**ASCEND GO-1 Trial**<br>In May 2019, we initiated dosing in our ASCEND GO-1 trial, an open label single- arm Phase 2a clinical trial of IMVT-1401 in Canada in patients with TED. We announced initial results from this trial in March 2020.… The primary endpoints of this trial are safety and tolerability of IMVT-1401 over the six-week treatment period, as well as the change from baseline in levels of anti-TSHR antibodies, total IgG antibodies and IgG antibodies by subclasses…The safety and tolerability profile observed was consistent with the prior Phase 1 trial of IMVT-1401 in 99 healthy volunteers. All adverse events were mild or moderate and there were no headaches reported.<br><br>* * *<br><br>**ASCEND GO-2 Trial**<br>In October 2019, we initiated dosing in our ASCEND GO-2 trial, a randomized, masked, placebo-controlled Phase 2b clinical trial in 77 patients with moderate- to-severe active TED with confirmed autoantibodies to TSHR. The ASCEND GO- 2 trial explores the potential of IMVT-1401 to improve proptosis, and assesses the safety | • Opinion (*clinical trial results*)<br>• Forward-looking statement (*"We anticipate"*)<br>• Demonstrably true (*disclosing observed and reported results; disclosing clinical trial design*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

- 19 -

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|-----|--------|---|--------------------------|--------------------|-----------------------|
| | | | and tolerability of IMVT-1401 in this population.  The primary endpoints of this trial are the proptosis responder rate . . . and safety and tolerability… We currently anticipate reporting top-line results from this trial in the first half of calendar year 2021. | | |
| 30. | April 10, 2020 Form S-1 | 262 | On March 30, 2020, we announced initial results from the ASCEND GO-1 trial. Mean reduction in total IgG levels from baseline to end of treatment was 65%. As evaluated at the end of treatment, four of seven patients (57%) improved by 2 points on the Clinical Activity Score (CAS). | • Demonstrably true (*disclosing observed and reported results*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 31. | April 10, 2020 Form S-1 | 264 | In several nonclinical studies and Phase 1 clinical trials in healthy volunteers, intravenous and subcutaneous delivery of IMVT-1401 demonstrated dose- dependent IgG antibody reductions and was observed to be well tolerated. In the highest dose cohort from the multiple-ascending dose portion of the Phase 1 clinical trial, four weekly subcutaneous administrations of 680 mg resulted in a mean maximum reduction of serum IgG levels of 78%, and the standard deviation of the reduction was 2%. In addition, no headaches, an adverse event seen with some FcRn agents, have been noted to date in any of the subjects receiving IMVT- 1401 in the 680 mg multiple-dose cohort. | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 32. | April 10, 2020 Form S-1 | 266 | **Safety Data**<br>In our multi-part, placebo-controlled Phase 1 clinical trial, IMVT-1401 has been observed to be well-tolerated with no Grade 3 or Grade 4 AEs and no discontinuations due to AEs. The most commonly reported AE has been mild erythema and swelling at the injection site, which typically resolved within hours and had a similar incidence between subjects receiving IMVT-1401 and placebo... To | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | date, two serious AEs have been reported, both of which have been assessed as unrelated to IMVT-1401 by the study investigator. There have been no treatment- related serious AEs reported. | | including cholesterol; lacked reasonable basis for statement<br><br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 33. | June 29, 2020 Press Release | 270 | In March, Immunovant announced positive clinical results from ASCEND GO-1, a Phase 2a trial of IMVT-1401 in Thyroid Eye Disease (TED), which reaffirmed IMVT-1401's prior safety and pharmacodynamic findings and demonstrated encouraging potential efficacy for patients with TED. Complementing these findings, two recent successful studies for other drug candidates with the same mechanism of action provided strong clinical validation in MG and demonstrated a within-study relationship between the degree of IgG lowering and the magnitude of clinical benefit in MG. With proof-of-biology now established for anti-FcRn agents in MG, Immunovant has chosen to accelerate Phase 3 development of IMVT-1401 in MG. | • Opinion (*clinical trial results*)<br>• Puffery (*"encouraging;" "strong clinical validation"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors |
| 34. | June 29, 2020 Form 10-K | 274 | *Safety Data*<br>In our multi-part, placebo-controlled Phase 1 clinical trial, IMVT-1401 has been observed to be well-tolerated with no Grade 3 or Grade 4 treatment-emergent AEs and no discontinuations due to AEs. The | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing* | • Not nonactionable opinion; omitted material facts; a reasonable investor would have |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | (Ex. 1) | | most commonly reported AE has been mild erythema and swelling at the injection site, which typically resolved within hours…. To date, two serious AEs have been reported, both of which have been assessed as unrelated to IMVT-1401 by the study investigator. There have been no treatment-related serious AEs reported. | *observed and reported results*) | expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br><br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 35. | August 25, 2020 Press Release | 276 | Consistent with previously reported Phase 1 results, IMVT-1401 was observed to be generally safe and well-tolerated with no serious adverse events (SAEs), no withdrawals due to adverse events (AEs), and no imbalance in headaches. Mean reductions in total serum IgG from baseline for the 340 mg and 680 mg cohorts were 59% and 76%, respectively. "We are absolutely thrilled with the results of this trial," said Pete Salzmann, M.D., Chief Executive Officer of Immunovant. "The clinical benefits we observed in this trial provide strong support that IMVT-1401 might ultimately become a best-in-class anti-FcRn agent for MG patients." | • Opinion (*clinical trial results; "thrilled"*)<br>• Puffery (*"strong support"; "best-in-class"*)<br>• Forward-looking statement (*"might ultimately become"*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | | | • Not forward-looking because mixed statement and challenges present or historical portion of statement; cautionary language not adequate<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 36. | August 25, 2020 Conference Call | 278 | In line with our prior results, IMVT-1401 was observed to be generally well tolerated with no grade 3 treatment-emergent adverse events, no withdrawals due to adverse events and no imbalances in specific AEs.<br><br>* * *<br><br>On the safety and tolerability side, our results were consistent with prior Phase I and Phase II results for IMVT-1401. Namely no severe adverse events, no withdrawals due to adverse events and a rate of mild to moderate adverse events that was well balanced with placebo. | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 37. | November 12, 2020 Credit Suisse Healthcare | 281 | And what did we see going back here to the summary of our Phase IIa open-label proof-of-concept trial? So first of all, we saw IgG reduction, which was as expected. This was primarily a 340-milligram regimen for 6 weeks. So the 65% reduction in IgG was consistent with what we had modeled this regimen would produce… | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing* | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | Conference Call | | On the safety side, importantly, there were no serious adverse events. We actually saw no headaches in this trial either… <br><br> Finally, we have an ongoing study in thyroid eye disease that's much bigger than the proof of concept, and this is our ASCEND GO-2 trial. It's a pivotal design IIb trial, testing 3 different dosage arms with an emphasis on the 2 higher doses and comparing all those to placebo. <br><br> * * * <br><br> And then from a safety and tolerability standpoint, similar to our thyroid eye disease trial, a nice profile. Again, early days, but we're looking good from a safety and tolerability standpoint. | *observed and reported results*) | include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br><br> • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 38. | January 12, 2021 Press Release | 283 | We're extremely excited about the potential for IMVT-1401 in multiple therapeutic areas and have made good progress toward the initiation of our Phase 3 trial of IMVT-1401 in Myasthenia Gravis (MG), which remains on track for the first half of 2021[.] I'm also pleased with the team's progress developing INDs for new indications. We remain on track to announce three new indications by August of 2021[.] | • Opinion (*clinical trial results; "We're extremely excited"; "pleased with"*) <br><br> • Puffery (*"good progress", "on track"*) <br><br> • Forward-looking statement (*"on track"*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br><br> • Not nonactionable puffery; objectively verifiable; failed to disclose results omitted monitoring of potential risk of elevated cholesterol; type of statement discussed frequently and major concern to investors <br><br> • Not forward-looking because mixed statement |

- 24 -

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | | | and challenges present or historical portion of statement; cautionary language not adequate |
| 39. | October 11, 2019 Merger Conference Call | 285 | Defendant Salzmann stated, "In terms of albumin reductions, we did see dose dependent reversible and asymptomatic albumin reductions in the Phase 1 trial." <br><br> Defendant Wong stated, "I would just add that there are – there's – the kind of "perfect knock out model" and that there are patients borne with close to 0% albumin and those people in the literature are generally asymptomatic with the exception of maybe a little bit of occasional edema, but they're basically healthy people." | • Opinion (*clinical trial results; interpretation of literature on albumin*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement |
| 40. | November 27, 2019 Schedule 14A Proxy Statement (Ex. 2) | 287 | Dose-dependent and reversible albumin reductions were observed in the single- ascending and multiple-ascending dose cohorts. In the 680 mg multiple-ascending dose cohort, most subjects reached nadir before administration of the final dose. Mean reduction in albumin levels at day 28 were 20% in the 340 mg multiple-dose cohort, and 31% in the 680 mg multiple-dose cohort. For subjects in the 340 mg and 680 mg cohorts, the mean albumin levels at day 28 were 37.5 g/L and 32.4 g/L, respectively (normal range 36-51 g/L). These reductions were not associated with any AEs or clinical symptoms, and did not lead to any study discontinuations. The clinical relevance of isolated, mild hypoalbuminemia is unknown, however, a hereditary syndrome associated with deficient albumin production has been described (Congenital Analbumenia). In this syndrome, despite extremely low or absent levels of albumin, those affected have only mild symptoms, including fatigue, low blood pressure and edema. It is believed that compensatory mechanisms through the production of other proteins may allow for relatively normal physiologic function in this population. | • Opinion (*clinical trial results; "It is believed"*) <br> • Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement <br> • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| 41. | February 25, 2020 SVB Leerink Global Healthcare Conference | 290 | So hypoalbuminemia, if you look at up, is the result of some very serious diseases. So normally if someone who has hypoalbuminemia, your differential diagnosis of physician might be severe liver disease, severe kidney disease, nephrotic syndrome, globally severe malnutrition but generally, hypoalbuminemia is part of the cause – I'm sorry, as a result of the condition, not a cause of a problem. In this case, we know what's causing the low albumin, which is a direct hindrance at the binding site. So the Fc receptor also recycles albumin and different assets have more or less interruption of that albumin binding site.<br><br>We have a little bit, and we did see a 20% to 30% reduction in albumin that leveled off, depending on the dose, 20% In the 340 arm, 30% in the 680 arm. That's not something that was associated with any adverse events or edema in the Phase 1 trial. And it's pretty hard to find any published literature or expert opinion on what the sequelae of a albumin – of a mild albumin reduction would be. So, we're not seeing any issues to date.<br><br>\* \* \*<br><br>For albumin, we observed an average reduction of 24%. Albumin changes were asymptomatic in this trial as they were in Phase 1. | • Opinion (*clinical trial results; interpretation of literature on albumin*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |
| 42. | August 25, 2020 Conference Call | 292 | Reductions in albumin were also consistent with prior studies, with a 16% reduction observed in the 340-milligram arm and a 26% reduction observed in the 680-milligram arm. All albumin reductions were asymptomatic. | • Opinion (*clinical trial results*)<br>• Demonstrably true (*disclosing observed and reported results*) | • Not nonactionable opinion; omitted material facts; a reasonable investor would have expected results to include assessments of important potential risks, including cholesterol; lacked reasonable basis for statement<br>• Actionable because it is false and/or omits |

| No. | Source | ¶ | Challenged Statement[12] | Dismissal Argument | Plaintiff's Responses |
|---|---|---|---|---|---|
| | | | | | material information necessary to make the statement not misleading to a reasonable investor |
| 43. | January 17, 2020 Form S-1; April 10, 2020 Form S-1 | 294 | Cynomolgus monkeys were selected as the primary species for preclinical testing, given the high degree of sequence homology to human FcRn and IMVT-1401's strong binding affinity for monkey FcRn. Our partner, HanAll, completed five preclinical studies of IMVT-1401 (referred as HL161BKN for the purposes of these studies) in cynomolgus monkeys. We are conducting two additional studies in cynomolgus monkeys. | • Demonstrably true (*describing preclinical studies*) | • Actionable because it is false and/or omits material information necessary to make the statement not misleading to a reasonable investor |

- 27 -