UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

     v.

IMMUNOVANT, INC. f/k/a HEALTH
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, FRANK M. TORTI,
ANDREW FROMKIN, DOUGLAS HUGHES,
GEORGE MIGAUSKY, ATUL PANDE,
ERIC VENKER, SVB LEERINK LLC,
LIFESCI CAPITAL LLC, CHARDAN
CAPITAL MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

                    Defendants.

———————————————————————— x

Civil Action No. 1:21-cv-00918-KAM-VMS

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
IMMUNOVANT DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ......................................................................................................... 1

II.  ALL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD
     FALSITY ................................................................................................................... 3

     A.   Disagreements Over Trial Design Are Inactionable Under the Securities
          Laws. .............................................................................................................. 3

     B.   The Challenged Statements Are Inactionable for Additional Reasons. ................ 4

     C.   None of the Challenged Statements Were Misleading by Omission. .................... 9

III. THE EXCHANGE ACT CLAIMS SHOULD ALSO BE DISMISSED FOR
     FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER ........................... 16

     A.   Defendants' Lack of Motive Undermines Any Inference of Scienter. ................ 16

     B.   Plaintiff Fails to Plead Conscious Misbehavior or Recklessness. ...................... 19

IV.  PLAINTIFF FAILS TO PLEAD A SEPARATE SCHEME CLAIM. ........................... 21

V.   CONCLUSION ........................................................................................................ 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris Inc.*,
2013 WL 2399869 (S.D.N.Y. May 29, 2013) ........................................................2, 3

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995)........................................................................................6

*Altimeo Asset Management v. Qihoo 360 Technology Co.*,
19 F.4th 145 (2d Cir. 2021) (Opp. )........................................................................11

*Anderson v. Peregrine Pharmaceuticals, Inc.*,
654 F. App'x 281 (9th Cir. 2016) .....................................................................19, 21

*In re Avon Products, Inc. Securities Litigation*,
2009 WL 848017 (S.D.N.Y. Feb. 23, 2009).............................................................2

*In re BHP Billiton Ltd. Securities Litigation*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017)........................................................................7

*Bishins v. Cleanspark, Inc.*,
2023 WL 112558 (S.D.N.Y. Jan. 5, 2023) ...............................................................8

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012).......................................................................7

*Cachia v. Bellus Health Inc.*,
2022 WL 4367444 (S.D.N.Y. Sept. 21, 2022).........................................3, 10, 15, 18

*In re Carter-Wallace, Inc. Securities Litigation*,
150 F.3d 153 (2d Cir. 1998)....................................................................................15

*In re Chembio Diagnostics, Inc. Securities Litigation*,
616 F. Supp. 3d 192 (E.D.N.Y. 2022) ....................................................................18

*City of Baton Rouge/East Baton Rouge Parish v. Bank of America, N.A.*,
2021 WL 1203925 (M.D. La. Mar. 30, 2021) .........................................................12

*City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*,
374 F. App'x 83 (2d Cir. 2010) ..............................................................................10

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .........................................................11

*In re Delcath Systems, Inc. Securities Litigation*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)........................................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..................................................................................16, 19

*In re Express Scripts Holdings Co. Securities Litigation*,
  773 F. App'x 9 (2d Cir. 2019) ...................................................................................5

*Fanni v. Northrop Grumman Corp.*,
  23 F. App'x 782 (9th Cir. 2001) ..............................................................................14

*Ford v. Voxx International Corp.*,
  2016 WL 3982466 (E.D.N.Y. July 22, 2016)...........................................................10

*Garden City Employees' Retirement System v. Anixter International, Inc.*,
  2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)..............................................................2

*In re General Electric Securities Litigation*,
  844 F. App'x 385 (2d Cir. 2021) ..............................................................................16

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).......................................................................18

*In re HEXO Corp. Securities Litigation*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021).......................................................................10

*Housey v. Proctor & Gamble Co.*,
  2022 WL 17844403 (2d Cir. Dec. 22, 2022) ......................................................13, 22

*Huang v. Avalanche Biotechnologies, Inc.*,
  2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) .............................................................6

*Huss v. Gayden*,
  571 F.3d 442 (5th Cir. 2009) ..............................................................................13, 14

*K&R Ltd. Partnership. v. Massachusetts Housing Finance Agency*,
  456 F. Supp. 2d 46 (D.D.C. 2006) .............................................................................2

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)......................................................................................12

*In re Keryx Biopharmaceuticals, Inc., Securities Litigation*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)...............................................................4

*Kleinman v. Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013)................................................................................3, 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lehmann v. Ohr Pharmaceutical, Inc.*,
    830 F. App'x 349 (2d Cir. 2020) ......................................................................18, 19

*In re Lululemon Securities Litigation*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)......................................................................10

*Malik v. Network 1 Financial Securities, Inc.*,
    2022 WL 453439 (2d Cir. Feb. 15, 2022)..........................................................17, 18

*Midwest Operating Engineers Pension Trust. Fund v. Alkermes Public Ltd. Co.*,
    2021 WL 5782079 (2d Cir. Dec. 7, 2021) ...............................................................16

*In re NextCard, Inc. Securities Litigation*,
    2005 WL 6342406 (N.D. Cal. Feb. 7, 2005) .........................................................9, 10

*In re Novan*,
    2018 WL 6732990 (M.D.N.C. Nov. 30, 2018)...........................................................3

*Oklahoma Firefighters Pension & Retirement System v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018)........................................................................8

*Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.*,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012)......................................................................17

*In re Petrobras Securities Litigation*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015).......................................................................7

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010).....................................................................20

*In re QuantumScape Securities Class Action Litigation*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) .......................................................................4

*Reeves v. Anderson*,
    2014 WL 7336459 (S.D.N.Y. Dec. 24, 2014) ...........................................................12

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ..............................................................................3, 4

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)....................................................................................10

*In re Romeo Power Inc. Securities Litigation*,
    2022 WL 1806303 (S.D.N.Y. June 2, 2022) ...........................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Salinger v. Projectavision, Inc.*,
    972 F. Supp. 222 (S.D.N.Y. 1997) ......................................................................17

*In re Sanofi Securities Litigation*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)......................................................................5

*SEB Investment Management AB v. Endo International, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .....................................................................5

*SEC v. China Northeast. Petroleum Holdings Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014)................................................................21, 22

*SEC v. Rio Tinto*,
    41 F.4th 47 (2d Cir. 2022) ...............................................................................21, 22

*In re Sibanye Gold Ltd. Securities Litigation*,
    2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)......................................................22

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 3268495 (S.D.N.Y. June 16, 2020) ......................................................18

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010).............................................................................7, 8

*South Cherry Street, LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)...................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................16, 20

*In re The Hain Celestial Group Inc. Securities Litigation*,
    2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019) ......................................................11

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)............................................................................................6

*In re Wachovia Equity Securities Litigation*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)...................................................................21

*Williams v. Globus Medical, Inc.*,
    869 F.3d 235 (3d Cir. 2017)...................................................................................11

*Zagami v. Cellceutix Corp.*,
    2016 WL 3199531 (S.D.N.Y. June 8, 2016) ..........................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

21 C.F.R.
    § 58.33.................................................................................................................................12
    § 58.35(b)(6) ........................................................................................................................12
    § 312.32.........................................................................................................................1, 6, 9

## I.    INTRODUCTION

Every argument in Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss ("Opposition") hinges on its unsupported theory that Immunovant's clinical trials could not assess safety or tolerability without monitoring cholesterol. There are two fundamental problems with this theory, each of which mandates dismissal of the Second Amended Complaint ("SAC").[1]

**First**, Plaintiff's theory amounts to an inactionable disagreement about clinical trial design. Plaintiff argues that it is only challenging Defendants' statements about the trials, not the design of the trials themselves. But the purported reason each disclosure is supposedly misleading boils down to this: Immunovant ***should have monitored*** cholesterol (but did not) in its Phase 1 and 2a clinical trials. ***That is plainly a disagreement about trial design***, which cannot—under binding Second Circuit precedent—support a securities claim.

**Second**, Plaintiff fails to plead an actionable misstatement or omission. The SAC contains no well-pled facts that elevated cholesterol was a "key potential risk" that investors would have expected Immunovant to monitor. In fact, even the term "potential risk" is a misnomer. Plaintiff does not identify a single FDA regulation that uses that term, much less one that requires every phase of every clinical trial to monitor every such risk (as if such a feat is even possible). In fact, the FDA regulation Plaintiff relies on (21 C.F.R. § 312.32) uses the term "significant risk" (not potential risk), which Plaintiff noticeably glosses over. But even if Plaintiff could reconcile these terms, it still fails to plead that increased cholesterol was a significant or key potential risk ***at the time Defendants made the challenged statements***. Instead, Plaintiff relies on the opinion of an unidentified former employee ("FE"), who believes—based on an after-the-fact review of animal

---

[1] Unless otherwise noted, "¶" refers to the SAC; "Opp." refers to Plaintiff's Opposition; "MTD" refers to the Memorandum of Law in Support of Immunovant Defendants' Motion to Dismiss; "Ex." refers to exhibits attached to the Speers Declaration; all emphasis is added; and all internal citations, quotation marks, and alterations are omitted.

study data—that the experts who analyzed the same data years earlier were wrong about the severity and significance of the cholesterol elevations observed in monkeys. The SAC, however, provides no details that call into question the conclusions reached by those experts. Plaintiff also relies on a handful of scientific articles and two trial protocols from other companies, but none support that elevated cholesterol was a "key potential risk" of IMVT-1401 *when the challenged statements were made*, much less a "significant risk" as set forth in the relevant FDA regulations.

**Plaintiff's Exchange Act claims should be dismissed for an additional reason**: Plaintiff fails to plead a strong inference of scienter. Scienter can be pled through motive and opportunity, or conscious misbehavior or recklessness. However, where motive is lacking, the allegations of recklessness must be correspondingly greater. Here, Plaintiff fails on both fronts: it pleads no plausible motive, and it alleges no facts indicating that the risk of elevated cholesterol was so obvious that Defendants must have been aware of it when they made the challenged statements.

Unable to address these deficiencies with legal authority and well-pled facts, the Opposition defaults to misdirection and guile. It misleadingly quotes conclusory allegations from the SAC in ways that suggest the quotes are from the FE or scientific articles; it misstates Defendants' arguments; it parades inapposite cases; and it accuses Defendants of raising factual disputes. None of these tactics are availing.[2]

---

[2] Additionally, Plaintiff objects to five MTD exhibits: Appendix A and Exhibits 4–6 and 13 (Opp. at 21–24). None of the objections have merit. Plaintiff contends that **Appendix A,** a chart cataloging the challenged statements and arguments in §III.B.2. of the MTD, improperly "contains 43 new arguments," but tellingly, identifies none. (*Id.* at 22.) *K&R Ltd. P'ship. v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52–53 (D.D.C. 2006) (declining to strike chart that "does not present any [new] information or argument"). Plus, Plaintiff submitted its own Appendix A and thus suffers no prejudice. *See Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *9 (N.D. Ill. Mar. 31, 2011). **Exhibit 4** is a press release and presentation, which are incorporated by reference in the SAC (Speers Decl. ¶6), and cited to provide context for statements that albumin reductions were mild (MTD at 8), and to identify risk disclosures (*id.* at 30); not to dispute well-pled facts (Opp. at 22). **Exhibits 5 and 6** are analyst reports, not cited for their truth (Opp. at 23), but rather to show what analysts said (MTD at 8–9 ("Baird Equity Research stated…"); *id.* at 12 ("Credit Suisse analyst report noted…")). *See In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848017, at *24 (S.D.N.Y. Feb. 23, 2009) ("Judicial notice can be taken of...analyst reports in determining what the market knew."). **Exhibit 13** is Dr. Wong's Forms 4, which are judicially noticeable to show his stock transactions. *Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *22 n.10 (S.D.N.Y. May 29, 2013) ("[C]ourts in this District routinely take

II.   **ALL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD FALSITY**

A.   **Disagreements Over Trial Design Are Inactionable Under the Securities Laws.**

Plaintiff cannot credibly dispute that disagreements over trial design are inactionable under the securities laws. Indeed, the law on this point is dispositive. (MTD at 24–26 (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 878 (9th Cir. 2012); *Cachia v. Bellus Health Inc.*, 2022 WL 4367444, at *5 (S.D.N.Y. Sept. 21, 2022); *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016); *Abely*, 2013 WL 2399869, at *8; *In re Novan*, 2018 WL 6732990, at *12 (M.D.N.C. Nov. 30, 2018)).)

Instead, Plaintiff attempts to distinguish its allegations from those in Defendants' authorities by claiming "there is no scientific dispute over how Immunovant interpreted data…or whether Immunovant designed its clinical trials correctly." (Opp. at 46.) But that is simply not true. The SAC and Opposition are littered with allegations and arguments about how Immunovant "should have" designed its clinical trials or "failed to test" for cholesterol. (*E.g.*, ¶119 ("Immunovant *should have designed* each of the Phase 1 and 2 clinical trials so that each of the participants' cholesterol was tested…"); ¶¶82, 98, 114, 116, 119, 140, 143, 255, 260–61, 265, 277, 304 (similar "failed to test" and "should have" allegations); Opp. at 7 ("Immunovant *should have monitored* cholesterol levels"); *id.* at 7, 31–33, 37, 40, 46, 50, 55, 69, 75 n.29 (similar "failed to monitor," "failed to test," and "should have" arguments).) This type of hindsight dispute over whether and when a company should have tested for a particular safety outcome is precisely the kind of "non-actionable critique of defendants' study design" that courts routinely reject. *Abely*, 2013 WL 2399869, at *8.

The fact pattern here need not be *identical* to those in Defendants' cases. (Opp. at 44–45.)

---

judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents.")

The point is that courts—when faced with a variety of disputes about trial design—all reach the same conclusion. (MTD at 23–26.) Indeed, just like Plaintiff here, the ***plaintiffs in those cases insisted they, too, were only challenging disclosures and not the underlying design***. And in each instance, the court rejected that argument. To hold otherwise is "equivalent to a determination that if a researcher leaves any of its methodology out of its public statements—how it did what it did or was planning to do—it could amount to an actionable false statement or omission." *In re Keryx Biopharms., Inc., Sec. Litig.*, 2014 WL 585658, at \*10 (S.D.N.Y. Feb. 14, 2014).

Nor is there merit to Plaintiff's argument that *In re QuantumScape Securities Class Action Litigation*, 580 F. Supp. 3d 714 (N.D. Cal. 2022) is somehow more "on point" than any of the clinical trial cases Defendants cite. (Opp. at 45–46.) *QuantumScape* is a case about electric car batteries, not clinical trials. In that case, defendants "unequivocal[ly] represent[ed]" the specific conditions under which its electric car batteries were tested, which plaintiffs alleged was false. 580 F. Supp. 3d at 734. The defendants cited *Rigel*, arguing this was akin to an inactionable dispute about clinical trial design. *Id.* at 735. In rejecting that argument, the court observed that "[a] more analogous situation would be if the *Rigel* defendant had told the market it used one method when it in fact used another and the difference could only be determined by the combination of experts and confidential informants." *Id.* The same distinction applies here: *QuantumScape* would be analogous if Defendants had told the market it was testing cholesterol levels, when in fact it was not. But that is not what Plaintiff alleges.

Because Plaintiff's theory is premised on an inactionable dispute about trial design, it cannot be cured by amendment, and the SAC should be dismissed with prejudice.

## B.   The Challenged Statements Are Inactionable for Additional Reasons.

In addition to the foundational problem above, the challenged statements are inactionable because they are opinions, puffery, protected forward-looking statements, or demonstrably true.

-4-

**Statements of opinion.** Defendants' interpretations of Immunovant's trial results as "positive," "robust," "well-tolerated," etc. are "opinions because reasonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015). (MTD at 27–28.) Plaintiff argues this reasoning "does not apply here" because it "does not dispute how Immunovant interpreted or described data obtained from IMVT-1401's clinical trials," but rather, that "Immunovant failed to even obtain data to be interpreted or described." (Opp. at 49.) Tellingly, Plaintiff cites no case that supports such a distinction. And, in any event, the distinction is nonsensical. Defendants' opinions about IMVT-1401 were necessarily based on the data collected and trial results actually observed, not on the countless other metrics that could have been, but were not, included in the trial protocol.[3] (*See, e.g.*, ¶133 ("IMVT-1401 has been ***observed*** to be well-tolerated" and "[t]here have been no treatment-related serious AEs ***reported***."); ¶¶136–37, 139, 141, 146, 149, 221, 225, 227, 250, 254, 256, 259, 262, 264, 266, 274, 276, 278, 281.) *See In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 15 (2d Cir. 2019) ("[A]s long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance.").

Nor is there any merit to Plaintiff's argument that "Defendants lacked a reasonable basis to represent there had been 'no treatment-related serious AEs' because patients ***may*** have experienced elevated cholesterol" (Opp. at 30; *see also id.* at 37) or "claim that IMVT-1401 was 'safe,' 'well-tolerated,' or did not cause any AEs" (*id.* at 50). To be clear, Plaintiff does not allege that elevated cholesterol, alone, qualifies as a "serious AE," which FDA regulations define as one

---

[3] This point distinguishes the allegations here from those in *In re Delcath Systems, Inc. Securities Litigation*, 36 F. Supp. 3d 320, 333 (S.D.N.Y. 2014) and *SEB Investment Management AB v. Endo International, PLC*, 351 F. Supp. 3d 874, 897 (E.D. Pa. 2018), where defendants allegedly were ***in possession*** of trial data that undermined their positive statements. (Opp. at 29.)

that results in "[d]eath, a life-threatening adverse event [*i.e.*, immediate risk of death], inpatient hospitalization or prolongation of existing hospitalization, a persistent or significant incapacity or substantial disruption of the ability to conduct normal life functions, or a congenital anomaly/birth defect." 21 C.F.R. § 312.32(a). Moreover, Defendants never claimed that IMVT-1401 did not cause *any* AEs. Rather, Defendants properly identified the "most common" and "serious" AEs that were *reported in each trial* and noted when all *reported* AEs in a trial were "mild or moderate." (*E.g.*, ¶¶133, 136–37, 139, 141, 227, 250, 266, 274.) As such, "reasonable investors would not be misled to believe that defendants were making predictions as to the *final* safety" of IMVT-1401 based on Immunovant's disclosures. *Huang v. Avalanche Biotechs., Inc.*, 2016 WL 6524401, at *8–9 (N.D. Cal. Nov. 3, 2016) (granting motion to dismiss).

Finally, Plaintiff argues that Defendants' opinion—that congenital analbumenia (a rare condition where a person has extremely low or no albumin) is typically associated with "only mild symptoms"—was false because this condition is *now* associated with high cholesterol. (Opp. at 36–37 & n.17 (citing Pl. Ex. 3 (a website updated in *February 2023*)).) This is not alleged in the SAC. But, even if this association is *now* recognized, there is no allegation it was known two years ago when the challenged statements were made. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud.").

**Puffery.** Plaintiff tacitly concedes that many of the challenged statements *would be* puffery, but argues they are actionable because they were "made repeatedly."[4] (Opp. at 51–52.) This makes no sense. Mere repetition does not convert inactionable puffery into material fact, and none of the cases cited by Plaintiff stand for this illogical proposition. Instead, those cases stand

---

[4] *Virginia Bankshares, Inc. v. Sandberg* is inapposite. There, the court found statements that a merger was "fair" and "high" value actionable because they "depended on whether provable facts" substantiated a *specific* value for the merger. *Sandberg*, 501 U.S. 1083, 1094 (1991). It sheds no light on whether statements subjectively describing a drug as a "uniquely compelling asset" or "best-in-class" are puffery. (Opp. at 51.)

for the uncontroversial notion that statements "made repeatedly" may become actionable if they contain "**specific representations or guarantees of some concrete fact or outcome**." *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79–80 (S.D.N.Y. 2017).[5] Here, the puffery statements were repeated because they are standard disclosures about Immunovant's business made in SEC filings. Defendants did not offer any guarantees about the safety of IMVT-1401, which they expressly and repeatedly disclosed had not yet been established. (*See* MTD at 9.)

**Forward-looking statements.** Plaintiff argues that the forward-looking statements are not protected by the Safe Harbor or the Bespeaks Caution Doctrine because they "are mixed statements of present or historical fact, none of them are accompanied by 'meaningful' cautionary language, and Defendants had actual knowledge that the statements were false or misleading." (Opp. at 53.)

First, of the eleven statements Defendants identified as forward-looking, the Opposition addresses only three: (i) "we intend to develop," (ii) "we currently remain on track," and (iii) "[t]op-line data…expected by Q1 2020." (*Id.*) Plaintiff argues these contain statements of "present fact," but provides no cogent explanation as to why, identifies no legal support for this assertion, and makes no attempt to distinguish Defendants' cases demonstrating otherwise. (*Id.*; MTD at 30.)

Second, although Plaintiff argues that "Defendants had actual knowledge that the statements were false or misleading" (Opp. at 53), **it identifies no facts to support this conclusion**. To the contrary, Plaintiff disclaims knowledge as to the Securities Act Defendants (¶¶196, 204, 213), and proceeds on a theory of recklessness (which is a lower standard than actual knowledge) for the Exchange Act Defendants (Opp. at 63; *see also infra* §III.B. (addressing inadequacy of recklessness allegations).) *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010) ("[T]he

---

[5] *See also In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (repeated statements that company undertook to "refuse any corruption and bribery practices" not puffery); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 243-44 (S.D.N.Y. 2012) (statements that company in dangerous industry had "extensive training and safety programs" not puffery).

scienter requirement for forward-looking statements is stricter than for statements of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of **knowing** falsity.").

Third, although Plaintiff's failure to plead actual knowledge is fatal, the presence of meaningful cautionary language provides **another** avenue of protection. *See Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 567 (S.D.N.Y. 2018) ("[S]tatements are protected by the safe harbor if they satisfy **any one** of these three categories."). (MTD at 30.) Plaintiff insists that any warning short of a disclosure specifically addressing the risk of elevated cholesterol is not meaningful. (Opp. at 54, 72–73, 78–79.) But its own authority confirms that "a defendant need not include the particular factor that ultimately causes its projection not to come true." *Slayton*, 604 F.3d at 773 (cited in Opp. at 54). Plaintiff also relies on *Bishins v. Cleanspark, Inc.*, 2023 WL 112558 (S.D.N.Y. Jan. 5, 2023), but that case does not establish a more onerous standard. (Opp. at 79.) In *Bishins*, the court found cautionary language about general acquisition risks insufficient because those warnings did not discuss the specific post-acquisition expansion at issue. 2023 WL 112558, at *9. Here, by contrast, Immunovant's warnings specifically addressed the very drug at issue: IMVT-1401. (*See, e.g.*, MTD at 6, 9; Ex. 1 at 11 (noting FDA may disagree with "the design of our clinical trials of IMVT-1401 for the treatment of MG, TED and WAIHA"); *id.* at 24 (noting IMVT-1401 "may cause adverse events or have other properties that could . . . cause us to suspend or discontinue clinical trials.").)[6]

**Demonstrably true.** Plaintiff does not dispute that all of the information Immunovant disclosed about its clinical trials (*e.g.*, number of subjects, location, etc.), the results actually

---

[6] Plaintiff's reliance on *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.* is similarly misguided (Opp. at 79), as the company there warned only about risks posed by third parties and not its own conduct. 367 F. Supp. 3d 16, 33 (S.D.N.Y. 2019). Here, Immunovant warned about risks posed by both. (MTD at 38 n. 25; ¶¶151, 159, 161, 163.)

observed and reported in those trials, existing treatment options, and the FDA approval process was accurate. (MTD at 30–31.) Instead, Plaintiff doubles down on its lie-by-omission theory. But, as discussed below (*infra* §II.C), this is far from adequately pled.

## C.    None of the Challenged Statements Were Misleading by Omission.

Plaintiff's omission argument is this: Defendants failed to disclose that elevated cholesterol was a "key potential risk" that was not monitored in the Phase 1 and 2a clinical trials, and this omission rendered all of the challenged statements materially false or misleading when made.[7] This theory of falsity, however, is entirely unsupported.

First, whether elevated cholesterol was or was not a "potential risk" is a side-show. The Opposition contends that "a reasonable investor would have expected that Immunovant complied with GCP and tested for *all potential risks*, including cholesterol." (Opp. at 50; *see also id.* at 31, 41–42.) ***But Plaintiff identifies no FDA rule or regulation mandating that clinical trials monitor every "potential risk."*** Indeed, Plaintiff does not identify a single FDA regulation (including those that are part of GCP) that even uses the term "potential risk," much less one mandating that every phase of a clinical trial must monitor them. (MTD at 25–26.) *See In re NextCard, Inc. Sec. Litig.*, 2005 WL 6342406, at *7 (N.D. Cal. Feb. 7, 2005) ("It is Plaintiffs' burden to connect the dots by clearly alleging particularized facts demonstrating why each statement was false or misleading when made."). Plaintiff relies on 21 C.F.R. § 312.32 (¶¶85–86), but that provision does not help: it focuses on whether other data sources (including animal testing and other studies) indicate "a *significant risk* in humans." As such, even if Plaintiff could show that elevated cholesterol was a key potential risk when the challenged statements were made, Plaintiff still fails to "connect the

---

[7] (*See, e.g.*, Opp. at 29–34 (discussing statements about clinical trial results); *id.* at 34–37 (albumin reductions); *id.* at 37–42 (trial design and good clinical practices); *id.* at 42–43 (animal studies).)

dots"—*i.e.*, there is no basis to support Plaintiff's assumption that a reasonable investor would have expected Immunovant to monitor *every* potential risk. *NextCard*, 2005 WL 6342406, at *7.

Second, Plaintiff fails to adequately allege that elevated cholesterol was a key "potential risk" ***at the time Defendants made the challenged statements***. This is another basis for dismissal. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("A statement believed to be true when made, but later shown to be false, is insufficient…Put another way, without ***contemporaneous*** falsity, there can be no fraud."). Plaintiff relies on three "facts": (i) a single FE's after-the-fact opinion about the animal study results, (ii) a handful of inapposite scientific articles, and (iii) monitoring protocols from two other companies.[8] (Opp. at 11–20.) None withstands scrutiny, much less is enough to plead falsity by omission.

**FE Opinion.** Plaintiff's allegation that the "animal studies revealed substantial elevations in cholesterol" (¶6) relies solely on the opinion of one FE who reviewed the animal data ***after*** patients in the Phase 2b trial showed elevated cholesterol. (MTD at 32; ¶¶93–95, 97.) For this allegation to carry any weight, however, Plaintiff must allege the "factual underpinnings for [the FE's] opinions." *Ford v. Voxx Int'l Corp.*, 2016 WL 3982466, at *6 (E.D.N.Y. July 22, 2016) (quoting *City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.,* 374 F. App'x 83, 85 (2d Cir. 2010)).

The SAC pleads no such details. Indeed, the only "fact" supporting the FE's opinion is that

---

[8] The arguments addressing these three categories are the only falsity arguments that rely on the heightened pleading standard under Rule 9(b). There is no dispute that the Exchange Act claims are subject to this standard. Plaintiff, however, argues that its Securities Act claims—which are based on a subset of the same challenged statements and allegedly misleading for the same reasons—should not be subject to Rule 9(b) because they are "analytically distinct." (Opp. at 77–78.) Tellingly, Plaintiff makes no attempt to explain ***how*** the claims are "analytically distinct"; nor could it as the challenged statements and alleged basis for falsity is ***identical***. (¶280 (incorporating by reference the Securities Act allegations).) Finally, Plaintiff fails to distinguish Defendants' cases, which show Rule 9(b) is applied even where plaintiffs include disclaimers of fraud and set apart the Securities Act and Exchange Act allegations. (MTD at 39–40 (citing *Rombach v. Chang*, 355 F.3d 164, 171–72 (2d Cir. 2004); *Cachia*, 2022 WL 4367444, at *4 n.3; *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 n.17 (S.D.N.Y. 2021)).)

"*some* animals showed 200 to 300 percent increases in cholesterol levels."[9] (MTD at 32; Opp. at 13; ¶93.) But this allegation is meaningless without context—*i.e.*, What does "some" mean and is it material? Is it X out of 1,000 animals, or Y out of 100, or Z out of 10? (*See* MTD at 32.) Plaintiff does not say. *See In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *16 (E.D.N.Y. Mar. 29, 2019) (noting that despite confidential witness allegations of seemingly large returns ($500,000 to $700,000 per quarter), the returns were immaterial when viewed in context, accounting for less than 0.1% of net sales); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 243 (3d Cir. 2017) (rejecting allegations that prior experience with "distributor turnover" should have indicated risk because the complaint "provides no details" about "how many distributors were involved" or "whether the turnover was expected").

Unable to offer any additional facts to rectify this deficiency, Plaintiff contends that such details are not required. (Opp. at 14 (citing *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013)).) *Aeropostale*, however, does not support Plaintiff's position. There, the plaintiff pled far more details than Plaintiff does here, including allegations that defendants attended meetings where "the inventory problem was *quantified*" and another in which Defendants "*acknowledged*" such problems, all before making the statements at issue. 2013 WL 1197755, at *3.[10]

Worse still, the FE's opinion about the animal results cannot establish falsity because it was formed years after the fact and with the benefit of hindsight. Immunovant first learned in

---

[9] Plaintiff argues that "the effect of IMVT-1401 on those monkeys [is] highly relevant to the potential impact on humans" (Opp. at 13), but that is nothing but conclusory rhetoric from the SAC; it is not attributed to the FE. (¶96.)

[10] Plaintiff's reliance on *Altimeo Asset Management v. Qihoo 360 Technology Co.*, 19 F.4th 145 (2d Cir. 2021) (Opp. at 15) is equally misplaced. In that case, the confidential witness alleged that the defendant directed him to keep a "low profile" concerning the company's plan to relist, while the company publicly stated that it had no such plan. *Id.* at 148, 150. Nothing even remotely similar is alleged here.

*January 2021* that elevated cholesterol was observed in the GO Phase 2b clinical trial. (¶94.)[11] Only *after* this revelation—and with the knowledge that cholesterol had increased—did FE look at the animal study results for evidence that IMVT-1401 could be the cause of the now-observed increases in cholesterol. (¶94.) Moreover, there are no facts alleged to indicate that anyone who reviewed the animal study results *in real-time* believed they indicated a potential risk of increased cholesterol in humans. Nor are there any facts alleged to discount the reliability of the conclusions they reached—*i.e.*, that overall, "there were only *minor* increases in cholesterol."[12] (¶97; Opp. at 15.) Nor does Plaintiff dispute that this same data was provided to the FDA and, thereafter, the FDA allowed Immunovant's clinical trials to proceed without cholesterol monitoring.[13] (MTD at 10.) This is fatal to Plaintiff's claim.

**Scientific Articles.** The Opposition does not meaningfully address Defendants' arguments as to why the scientific articles cited in the SAC are inapposite. (MTD at 34–36.) Instead, Plaintiff attempts to skirt the issue, arguing these are factual disputes that cannot be addressed on a motion to dismiss. (Opp. at 17.) But "[a] factual dispute does not arise simply because Plaintiffs say so." *City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.*, 2021 WL 1203925, at *3 (M.D.

---

[11] Plaintiff argues that "Immunovant likely learned about the cholesterol elevations no later than November 2020" (Opp. at 47), but this is pure speculation, unsupported by any well-pled fact, and contrary to the FE's allegations that cholesterol elevations in the GO Phase 2b trial were *first observed in January 2021* (¶94).

[12] Plaintiff argues whether "experts" prepared the summary analysis is a factual dispute (Opp. at 16), but does not allege Immunovant failed to comply with GLP regulations requiring a study director with "appropriate education, training, and experience," to be responsible for the "interpretation, analysis, documentation and reporting of results," 21 C.F.R. § 58.33, and a "quality assurance unit" to ensure "the reported results accurately reflect the raw data of the nonclinical laboratory study." 21 C.F.R. § 58.35(b)(6). (MTD at 6–7.)

[13] Plaintiff recasts this as an "attempt to blame the FDA" and raise "non-public factual issues." (Opp. at 19, *see also id.* at 20.). But it is not a factual dispute to identify Plaintiff's failure to plead adequate facts that support its claim. *See Reeves v. Anderson*, 2014 WL 7336459, at *7 (S.D.N.Y. Dec. 24, 2014) ("It is axiomatic that there cannot be a material dispute of fact over a claim when no facts or allegations are asserted in support of that claim."). Moreover, the fact that information may be "in the sole possession of the FDA" (Opp. at 20) does not give Plaintiff free reign to speculate about what such information *might* show. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) ("A plaintiff cannot base securities fraud claims on speculation and conclusory allegations.").

La. Mar. 30, 2021). Where, as here, "a document is referenced in a complaint, the documents control and the Court need not accept as true the allegations in the complaint that are inconsistent with these documents." *Housey v. Proctor & Gamble Co.*, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (rejecting plaintiff's proposed inference that was unsupported by cited articles).[14]

Articles relating to albumin. These articles do ***not*** indicate that mild decreases in albumin (like those observed in Immunovant's trials) cause increases in cholesterol. (MTD at 34.) Plaintiff does not dispute this. (Opp. at 17.) Instead, Plaintiff attacks the premise that such a showing is necessary to support that elevated cholesterol was a key potential risk of IMVT-1401.

First, Plaintiff says there is no basis to distinguish between the complete absence of albumin (addressed in the referenced articles) and mild decreases in albumin (like those observed in Immunovant's preclinical and clinical trials). (Opp. at 17.) But Defendants ***expressly*** highlighted this distinction in their public statements. (*See, e.g.*, ¶¶146, 287 ("The clinical relevance of isolated, mild hypoalbuminemia is unknown, however, a hereditary syndrome associated with deficient albumin production has been described..."); ¶290 (noting that "hypoalbuminemia" may be associated with "severe liver disease, severe kidney disease, nephrotic syndrome," but "it's pretty hard to find any published literature or expert opinion on…a mild albumin reduction…").)

Second, Plaintiff argues that "[w]ithout any basis, the Immunovant Defendants also declare ***causation*** must be the standard and disregard the importance of the articles highlighting the ***correlation*** between albumin and cholesterol and ultimately CV disease." (Opp. at 17 (arguing the articles cited in ¶¶106, 109(a) and 109(c) indicate correlation).) This argument is disingenuous at best. "Any scientist or statistician must acknowledge . . . correlation is not causation." *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("A plaintiff must present more than a single study

---

[14] Neither of Plaintiff's cases involve disputes about documents incorporated by reference. (Opp. at 17.)

showing correlation, accompanied by unrelated anecdotes and quasi-scientific musings about how a class of drugs affects the human body."); *id* at 460 ("Courts must be arbiters of truth, not junk science and guesswork."). But even setting that aside, the articles do not demonstrate any meaningful correlation between albumin and cholesterol.[15] In fact, several of the articles *refute* the notion that there is any recognized correlation. (*See, e.g.*, Ex. 15 at 1 (cited at ¶109(a)) ("***The association between serum albumin and cardiovascular disease remains controversial***"; "several observational studies ***did not find an association*** between serum albumin and [coronary heart disease]"; "Law et al ***did not find evidence for an association*** between lower levels of serum albumin and mortality from cardiovascular disease or cancer"); Ex. 22 at 4 (cited at ¶109(c)) ("How exactly microalbuminuria is linked to cardiovascular risk is ***unclear***.").) Only one article even arguably supports a correlation between albumin and cholesterol, but it was limited to a study of ***four*** genetically modified mice with ***no albumin*** and found only "***variable increases*** in total cholesterol" among this extremely limited sample.[16] (Ex. 17 (cited at ¶109(c)).)

Articles relating to thyroid conditions. Plaintiff treats the remainder of the articles as an afterthought, without addressing Defendants' key arguments. (Opp. at 18; MTD at 35–36.) Indeed, Plaintiff does not dispute (i) the lack of allegations identifying whether GO is the type of thyroid condition expected to increase or decrease cholesterol levels, (ii) that none of the cited articles address GO, or (iii) that Immunovant disclosed that the GO Phase 2a and 2b trial patients were "euthyroid," and thus, are ***not*** the type of patients that Plaintiff's articles address. (MTD at 35.)

---

[15] Although the Opposition purports to identify quotes from the articles addressing correlation (Opp. at 17–18), no such language is found in any of the articles. Rather, Plaintiff quotes its own inaccurate summaries of the articles from the SAC. (*See* MTD at 34 (providing short summaries of each article, all of which are incorporated by reference).)

[16] Moreover, the SAC provides no facts to support the reliability of any study—*e.g.*, whether it was peer-reviewed, published in a reputable medical journal, etc. *See, e.g.*, *Fanni v. Northrop Grumman Corp.*, 23 F. App'x 782, 784 (9th Cir. 2001) (noting the PSLRA requires a complaint include "facts suggesting the reliability of its assertions").

-14-

With respect to one article on MG, Plaintiff argues that, because it addresses dyslipidemia, it necessarily addresses cholesterol. (Opp. at 18.) Dyslipidemia, however, is an *imbalance* in cholesterol, not an *increase*, and thus, any discussion of dyslipidemia does not support Plaintiff's argument. Nor did the article find any relationship between MG and dyslipidemia. (Ex. 29 ("The impact of [dyslipidemia] in patients with MG has not yet been studied.").)

Finally, Plaintiff's attempt to diminish the abilities of the market analysts covering Immunovant is disingenuous at best. Plaintiff contends, with zero fact, that none of the analysts had the expertise to understand the implications of such articles because they focus solely on "the financial condition of a Company and its stock price and are not scientists." (Opp. at 18.) This is pure speculation and contrary to the fundamental premises of an efficient market. (¶328.) *See In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) ("That the market can absorb technical medical information is neither novel nor surprising."). Moreover, it is simply untrue. (*See, e.g.*, Ex. 7 at 1 (UBS: "We combed the medical literature for relationships between TED, albumin lowering, FcRN and elevated lipid levels.").)

**Other Companies.** Plaintiff's allegations and arguments about other companies monitoring cholesterol levels in their clinical trials are devoid of particularized facts. Plaintiff does not identify *when* or *why* each company did so. (Opp. at 19.) At best, Plaintiff alleges that two companies chose to monitor cholesterol at some unknown point in time and for some unknown reason. (MTD at 36.) That is a slender reed and does not come close to showing that elevated cholesterol was a "key potential risk" of IMVT-1401 that Immunovant should have monitored. *See Cachia*, 2022 WL 4367444, at *5 (rejecting plaintiff's assertion that defendants misled investors by "not following the 'critical aspect' that 'competitors had tested their drugs on more

patients with higher cough frequencies.'").[17]

## III.   THE EXCHANGE ACT CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER

To plead a "strong inference" of scienter, "it is *insufficient* to set out facts from which, if true, a reasonable person *could infer* that the defendant acted with the required intent, for that gauge does not capture the stricter demand Congress sought to convey in [the PSLRA]." *Midwest Operating Eng'rs Pension Tr. Fund v. Alkermes Pub. Co.*, 2021 WL 5782079, at *2 (2d Cir. Dec. 7, 2021). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—*it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent*." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007); *see also In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 389 n.2 (2d Cir. 2021) ("[W]hen we evaluate whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, we must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."). Plaintiff falls well short of these standards.

### A.   Defendants' Lack of Motive Undermines Any Inference of Scienter.

Plaintiff acknowledges that, to plead motive, it "must allege that the corporate defendant or its officers benefitted in some concrete and personal way from the purported fraud." (Opp. at 63 (quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).) The Opposition identifies no such allegations because there are none.[18]

Instead, Plaintiff manufactures an implausible theory that Defendants intentionally

---

[17] Plaintiff's claims under Items 303 and 105 fail for the same reasons. (Opp. at 69 (arguing same "potential risk" theory).) Also, Plaintiff cites no authority to suggest Items 303 or 105 mandate disclosure of every "potential risk" in drug development. (*Id.* at 69–72.) Immunovant's decision to develop IMVT-1402 in tandem with IMVT-1401 does not change this calculus. (*Id.* at 70.) Finally, Plaintiff disclaims knowledge as to Securities Act Defendants (¶¶196, 204, 213), and relies on allegations of recklessness for the Exchange Act Defendants (*infra* §III.B).

[18] Plaintiff does not dispute the lack of any cognizable motive for Dr. Salzmann. (MTD at 17 & n.10.)

-16-

postponed cholesterol monitoring to hide the so-called potential risk of elevated cholesterol from investors and enable Dr. Wong to obtain earnout shares under a Share Exchange Agreement ("SEA") executed on September 29, 2019. (Opp. at 64–65, 68; ¶218.) Defendants identified myriad problems with this theory, none of which Plaintiff cogently addresses. (MTD at 16–18.)

First, Plaintiff does not dispute that ***the decision about what monitoring criteria to include in the Phase 1 and 2a clinical trial protocols was made well before any possible motive based on earnout shares could have arisen***. (MTD at 17; Opp. at 65.) This should be the beginning and end of the argument. Indeed, Plaintiff does not dispute that "a theory in which fraudulent conduct predates motive is not plausible." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 358 (S.D.N.Y. 2012). (MTD at 17.) Rather, Plaintiff argues the fraudulent conduct was not the delay in cholesterol monitoring, but rather the delay in disclosing that cholesterol was not monitored. (Opp. at 65.) Plaintiff, however, cites no authority recognizing such a distinction, and does not distinguish any of Defendants' cases on this basis. (MTD at 17.)

Second, unable to dispute the lack of stock sale allegations as to Dr. Wong,[19] Plaintiff argues that Dr. Wong's mere ***receipt*** of earnout shares is sufficient to allege profit. (Opp. at 66 (citing *In re Romeo Power Inc. Sec. Litig.*, 2022 WL 1806303, at \*5 (S.D.N.Y. June 2, 2022).) But *Romeo* does not support Plaintiff's argument. That case held that defendants' increase in stock holdings from stock grants that were part of their compensation package did not necessarily ***undermine*** an inference of scienter. 2022 WL 1806303, at \*5. It does not support Plaintiff's argument that mere receipt of earnout shares (without any corresponding sale to capitalize on the alleged fraud), ***supports*** an inference of scienter. Moreover, Second Circuit law is clear that "the

---

[19] Plaintiff's unsupported speculation that stock sales by Dr. Wong's affiliated entities might not be reflected on Forms 4 (Opp. at 66) completely misses the point. To rely on stock sales for motive, Plaintiff must plead the existence, timing, and amount of such sales. *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 233–34 (S.D.N.Y. 1997).

desire to maintain a high stock price," alone, is insufficient to establish fraudulent intent. *Malik v. Network 1 Fin. Sec., Inc.*, 2022 WL 453439, at *3 (2d Cir. Feb. 15, 2022) (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 109 (2d Cir. 2009)); *see also Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 352 (2d Cir. 2020) ("Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive.'").

Third, Plaintiff's theory of motive is nonsensical. The Opposition does not dispute that Immunovant voluntarily included cholesterol monitoring as part of the GO Phase 2b clinical trial well before the earnout milestones had been achieved. (MTD at 18.) Instead, Plaintiff argues that increased cholesterol was merely a risk, not a certainty. (Opp. at 66.) But so what? It still makes no sense for Defendants to hide that risk and then voluntarily take action that could expose it, all before securing the earnout shares that were the entire motivation for their supposed fraud. (MTD at 18.) "[C]ourts regularly refuse to infer scienter when confronted with such illogical allegations." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 601 (S.D.N.Y. 2016).

Finally, in a last attempt to salvage a motive, Plaintiff argues that Immunovant was motivated to inflate its stock price to support capital raises to fund development of IMVT-1402. (Opp. at 67 (citing *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020)).) This theory is not pled in the SAC, and it contradicts Plaintiff's allegation that Immunovant used capital raised ***after*** the class period (in October 2022) to fund development of IMVT-1402. (¶190.) *Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) ("[A] party may not amend pleadings through a brief."). Regardless, a capital raise does not support motive unless there are allegations "that the company's financial survival depended on the stock offering." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 200 (E.D.N.Y. 2022) (distinguishing *Skiadas* on this basis); *see also Cachia*, 2022 WL 4367444, at *7 (same). There are no such

-18-

allegations here.

### B.        Plaintiff Fails to Plead Conscious Misbehavior or Recklessness.

Because Plaintiff fails to plead a cognizable motive, its allegations of conscious misbehavior or recklessness "must be correspondingly greater" to support a strong inference of scienter. *ECA*, 553 F.3d at 198–99. Recklessness is "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Lehmann*, 830 F. App'x at 352. The alleged conduct must "at the least be ***highly unreasonable*** and represent an ***extreme departure*** from the standards of ordinary care to the extent that the danger was either known to the defendant or ***so obvious*** that the defendant must have been aware of it." *Id.*

Plaintiff pleads no such facts. (MTD at 19–22.) The SAC offers nothing but conclusory allegations of the individual Defendants' purported "access" to animal study results and scientific articles, which is insufficient "to surmount the high threshold just described." *Lehmann*, 830 F. App'x at 352–53.[20]

For example, Plaintiff argues it would be "absurd" to suggest that Dr. Salzmann, as CEO of Immunovant, was unaware of "red flags" regarding increased cholesterol. (Opp. at 56–57.) But Plaintiff pleads no "red flags." To the contrary, the SAC admits that the third-party experts who prepared the summaries of animal study results ***did not identify cholesterol as a key potential risk***. (¶97.) *See Anderson v. Peregrine Pharms., Inc.*, 654 F. App'x 281, 282 (9th Cir. 2016) (holding that defendants had no duty to "run additional testing on the results they received from an FDA-approved third-party contractor"). Plaintiff counters that "[i]t is not believable that Defendant

---

[20] Plaintiff is wrong that *In re Barrick Gold Securities Litigation* and *Wang v. Cloopen* support a less-exacting standard. (Opp. at 60 n.24.) In *Barrick*, the complaint contained detailed descriptions of reports sent to defendants that conflicted with their statements. 2015 WL 1514597, at *11 (S.D.N.Y. Apr. 1, 2015). In *Wang*, the defendant executed the document that had the terms plaintiffs alleged were misleadingly omitted. 2023 WL 2534599, at *15 (S.D.N.Y. Mar. 16, 2023).

Salzmann and other senior Immunovant employees did not carefully review and discuss those animal studies." (Opp. at 61.) Mere speculation, however, is insufficient. "Plaintiff[] should, but do[es] not, provide specific instances in which Defendants received information that was contrary to their public declarations." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010). Indeed, the SAC does not contain a single contemporaneous fact—not a single meeting, discussion, or email—demonstrating that any individual Defendant actually reviewed or discussed the detailed animal study data before the challenged statements were made. Nor that any such discussion "was contrary to [Defendants'] public declarations." *Plumbers & Steamfitters*, 694 F. Supp. 2d at 299.

On top of this, Plaintiff has not pled any facts from which to infer that it was "so obvious" from the face of the animal study reports that there were substantial increases in cholesterol. In fact, they show the opposite: that it was not obvious to the experts who reviewed the animal studies and prepared the summaries (¶97); it was not obvious to the FDA who received the animal studies results and allowed human trials to proceed without cholesterol monitoring (¶75); and it was not obvious to the FE until he went back through the detailed reports searching specifically for *any* indication of increased cholesterol (¶¶94–95).

Plaintiff's allegations regarding the scientific literature are even worse. Even assuming Drs. Salzmann and Wong reviewed or had a duty to monitor scientific literature about albumin reductions, that does not mean they automatically "knew about or ignored obvious signs of fraud." (Opp. at 58, 61.) As discussed above, *the articles in the SAC do not establish any causal link between mild albumin reductions and increased cholesterol*. (*Supra* §II.C.) And Plaintiff does not allege that any individual Defendant was even aware of those specific articles, much less that they considered any such articles to be reliable sources of information, or that Plaintiff's (incorrect)

-20-

ot infer that Drs. Salzmann and Wong knew or should have known

ut increased cholesterol merely because they spoke repeatedly about the development of

IMVT-1401.[21] (Opp. at 57–58.) "[S]uch a result would eviscerate the cogent and compelling inference of scienter required by *Tellabs*." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011) (refusing to infer knowledge of specific subprime loan characteristics from general knowledge of a loan portfolio). Indeed, the ***only*** reason Plaintiff is able to home in on this ***specific*** risk is with ***the benefit of hindsight***. *Anderson*, 654 F. App'x at 282 ("It is easy for Plaintiffs to see what went wrong in hindsight; but that does not make Defendants' failure to see that problem prior to announcing test results fraudulent, at least in the absence of some red flags.").

\*     \*     \*

Viewed holistically, the SAC does not support any inference of fraud, much less one that is "cogent and compelling." *Tellabs*, 551 U.S. at 324. Instead, the far more compelling inference is that Immunovant designed and conducted each of its clinical trials in good faith, modified the monitoring protocols as appropriate for each phase and indication, and, after observing an unexpected cholesterol increase, promptly halted its clinical trials to determine the cause and updated investors. That is precisely how clinical trials should be conducted.

## IV.    PLAINTIFF FAILS TO PLEAD A SEPARATE SCHEME CLAIM.

Second Circuit law is clear: a scheme claim "requires ***something beyond misstatements and omissions***." *SEC v. Rio Tinto*, 41 F.4th 47, 49 (2d Cir. 2022). Plaintiff cannot dispute this binding precedent.[22] And so it argues that "Defendants engaged in a fraudulent scheme to delay

---

[21] Plaintiff's cases concern statements by defendants ***directly contradicting known contemporaneous facts***, not statements that are allegedly misleading because they omit an unknown and unidentified risk. (Opp. at 56–58).

[22] Plaintiff argues a misstatement claim and scheme claim may arise "out of the same set of facts[.]" (Opp. at 68 (quoting *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 392 (S.D.N.Y. 2014)).) To the extent this

-21-

monitoring cholesterol in early IMVT-1401 clinical trials." (Opp. at 68). But Plaintiff identifies no deception arising from this conduct alone. Rather, the only purported deception is from Defendants' disclosures about the clinical trials. (MTD at 15 n.9; Opp. at 68 (arguing "***disclosure*** of [cholesterol] risk could negatively impact the Company's stock price").) Thus, the scheme claim is subsumed by the misstatements claim. *Rio Tinto*, 41 F.4th at 55.

## V. CONCLUSION

The Court should dismiss the SAC with prejudice.[23]

---

case conflicts with *Rio Tinto*, it is not good law. The case, however, also clarifies the requirement to plead "deceptive scheme or course of conduct that [goes] ***beyond the misrepresentations***." *China Ne. Petroleum*, 27 F. Supp. 3d at 392.

[23] "[I]it is within the sound discretion of the district court to grant or deny leave to amend." *In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) (Matsumoto, J.) (denying leave to file a second amended complaint when plaintiffs "offer[ed] no indication of what additional facts would make their complaint viable and remedy its legal deficiencies"); *see also Housey*, 2022 WL 17844403, at *2 (affirming denial of leave to amend a second time).

Dated: June 30, 2023

COOLEY LLP

By: */s/ Koji F. Fukumura*
 Koji F. Fukumura

Koji F. Fukumura (*pro hac vice*)
Heather M. Speers (*pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com
        hspeers@cooley.com

Shannon M. Eagan (*pro hac vice*)
Tijana M. Brien (pro hac vice)
3175 Hanover St
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 849-7400
Email: seagan@cooley.com
        tbrien@cooley.com

Aric H. Wu
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: ahwu@cooley.com

*Attorneys for Immunovant, Roderick Wong, Peter Salzmann, Frank M. Torti, Andrew Fromkin, Douglas Hughes, George Migausky, Atul Pande, and Eric Venker*

-23-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury under the laws of the State of New York that, on June 30, 2023, true and correct copies of the Reply Memorandum of Law in Further Support of Immunovant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint was served on all counsel of record via electronic mail.

_____
Diane Aland