**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THERESA PITMAN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

IMMUNOVANT, INC. f/k/a HEALTH SCIENCES ACQUISITIONS CORPORATION *et al.*,

      Defendants.

Case No. 1:21-cv-00918-KAM-VMS

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THE UNDERWRITER DEFENDANTS'**
**<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Daniel Roeser
Valerie A. Haggans
Justin D. Ward
**GOODWIN PROCTER LLP**

*Attorneys for Defendants SVB Securities LLC (f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

I.    Plaintiff Bases Its Claims on Disagreements With Immunovant's Scientific Judgment. ......................................................................................................... 1

II.   Plaintiff Does Not Allege a Duty To Disclose .................................................... 4

    A.    The Offering Documents Did Not Create a Duty to Disclose. ............................. 4

    B.    Items 303 and 105 Did Not Create a Duty to Disclose. ..................................... 6

III.  Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions. ........................ 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Am. Int'l Grp., Inc.,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010).................................................................................8

In re Aratana Therapeutics Inc. Sec. Litig.,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)...............................................................................10

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,
   28 F.4th 343 (2d Cir. 2022) .............................................................................................6, 8

In re Arrowhead Pharms., Inc. Sec. Litig.,
   2017 WL 8791111 (C.D. Cal. Dec. 21, 2017), aff'd, 782 F. App'x 572 (9th
   Cir. 2019) ............................................................................................................................4

Bishins v. CleanSpark, Inc.,
   2023 WL 112558 (S.D.N.Y. Jan. 5, 2023) .........................................................................8

In re Blue Apron Holdings, Inc. Sec. Litig.,
   2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ....................................................................8

In re Chembio Diagnostics, Inc. Sec. Litig.,
   586 F. Supp. 3d 199 (E.D.N.Y. 2022) ...............................................................................8

In re EDAP TMS S.A. Sec. Litig.,
   2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015)..................................................................10

Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,
   53 F. Supp. 3d 882 (E.D. La. 2014)....................................................................................6

Freudenberg v. E*Trade Fin. Corp.,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)................................................................................8

In re Keryx Biopharms., Inc., Sec. Litig.,
   2014 WL 585658 (S.D.N.Y. Feb. 14, 2014).......................................................................3

Lopez v. CTPartners Exec. Search Inc.,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)...................................................................................7

In re MF Glob. Holdings Ltd. Sec. Litig.,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013).................................................................................8

Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)...................................................................................8

In re Omega Healthcare Invs., Inc. Sec. Litig.,
    563 F. Supp. 3d 259 (S.D.N.Y. 2021)..................................................................................5

Panther Partners Inc. v. Jianpu Tech. Inc.,
    2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020)....................................................................8

Phhhoto Inc. v. Meta Platforms, Inc.,
    2023 WL 2710177 (E.D.N.Y. Mar. 30, 2023)..................................................................10

In re Ply Gem Holdings, Inc.,
    2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016)....................................................................8

In re QuantumScape Sec. Class Action Litig.,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) ...............................................................................3

Ret. Sys. of the City of Baton Rouge & Parish of East Baton Rouge v.
    MacroGenics, Inc.,
    61 F.4th 369 (4th Cir. 2023) ...............................................................................1, 2, 5, 7

In re Rigel Pharms., Inc. Sec. Litig.,
    697 F.3d 869 (9th Cir. 2012) .........................................................................................1, 2

In re Salix Pharms., Ltd.,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)....................................................................8

In re Sanofi-Aventis Sec. Litig.,
    774 F. 2d 549, 565 (S.D.N.Y. 2011).............................................................................. 4-5

In re Sanofi Sec. Litig.,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015), aff'd sub nom. Tongue v. Sanofi, 816
    F.3d 199 (2d Cir. 2016)...................................................................................................10

Schueneman v. Arena Pharms., Inc.,
    840 F.3d 698 (9th Cir. 2016) ........................................................................................3, 8

In re Sepracor, Inc., Sec. Litig.,
    308 F. Supp. 2d 20 (D. Mass. 2004) ..................................................................................3

Stadnick v. Vivint Solar, Inc.,
    861 F.3d 31 (2d Cir. 2017)..................................................................................................8

Yannes v. SCWorx Corp.,
    2021 WL 2555437 (S.D.N.Y. June 21, 2021) ...................................................................8

**Statutes**

Securities Exchange Act of 1934 ...........................................................................................8

Securities Act of 1933..............................................................................................*passim*

**PRELIMINARY STATEMENT**

Plaintiff's Opposition ("Opp.") confirms that the Securities Act claims are fatally defective. Plaintiff makes clear throughout its Opposition that those claims turn on allegations that the Offering Documents did not disclose that there was a "potential risk" that IMVT-1401 could elevate cholesterol levels or that the design of IMVT-1401's human clinical trials did not assess cholesterol. In so doing, Plaintiff cannot escape the fundamental point that such allegations amount to nothing more than disagreements over the interpretation of data from animal studies and the design of human clinical trials, which cannot state a Securities Act claim.

This Court should dismiss the claims against the Underwriter Defendants with prejudice.[1]

**ARGUMENT**

I.    **Plaintiff Bases Its Claims on Disagreements With Immunovant's Scientific Judgment.**

Plaintiff does not dispute that disagreements with Immunovant's data interpretation or trial design cannot state a Securities Act claim. (Br. 5-10.) Yet Plaintiff alleges nothing more:

- Plaintiff bases its claims on a disagreement about the interpretation of animal studies of IMVT-1401. (Br. 8-9.) Plaintiff argues that the summary of those animal studies was "wrong and false" because it indicated "only minor increases in cholesterol." (Opp. 15.) Just like the claims in MacroGenics and Rigel, Plaintiff's claims based on its disagreement with the authors of the studies are not actionable under the securities laws. See Emps.' Ret. Sys. of the City of Baton Rouge & Parish of East Baton Rouge v. MacroGenics, Inc., 61 F.4th 369, 385 (4th Cir. 2023) (rejecting claims contesting "Defendants' interpretation" of data); In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 877 (9th Cir. 2012) (rejecting claims of "false study results" based on

---

[1] The Underwriter Defendants incorporate, to the extent applicable, the arguments for dismissal in the reply briefs of the Immunovant Defendants and Roivant. Unless otherwise noted, all alterations, citations, emphasis, and internal quotation marks are omitted. Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Underwriter Defendants' Opening Brief ("Br.").

"inaccurate and improper statistical analysis").

- Plaintiff bases its claims on a disagreement about the design of subsequent human trials of IMVT-1401. (Br. 9.) Plaintiff argues that Immunovant should have monitored cholesterol levels sooner: "[S]ince elevated cholesterol levels and coronary disease were potential risks, Immunovant was required to monitor and assess those risks pursuant to FDA regulations and [Good Clinical Practices]." (Opp. 12.) Again, just like the claims in MacroGenics and Rigel, Plaintiff's claims based on its disagreement about trial design are not actionable.

Plaintiff attempts to distinguish MacroGenics and Rigel (among other cases) on the ground that those cases "relat[e] to scientific disputes over the statistical methodology or scientific trial design used by the defendants in connection with the analysis or reporting of clinical trial data." (Opp. 45.) Although Plaintiff argues that "there is no scientific dispute" here (Opp. 46), Plaintiff explicitly and repeatedly challenges the interpretation of the animal studies and the design of the clinical trials. (See supra at 1-2.) Such allegations cannot support a Securities Act claim: "[S]ecurities law is simply not a vehicle through which courts will police disagreements in the [medical] research community or the parameters of clinical trials." MacroGenics, 61 F.4th at 388.

To save its claims, Plaintiff tries to turn its disagreements into disclosure violations by contending that its claims are "based on Defendants' descriptions of the IMVT-1401 clinical trials and the types of things they were focusing on, and not whether the trials were designed correctly or whether the data from the trials was analyzed or described correctly." (Opp. 44.) That "distinction" is demonstrably false. By its own admission, "Plaintiff alleges that descriptions of the trials and the results of the trials were misleading" only because "Immunovant had not monitored the potential risk of elevated cholesterol levels." (Id. 46.) Courts in this Circuit (and elsewhere) routinely dismiss claims attacking disclosures about trial design on the ground that "the

2

defendants had not followed established statistical protocol" or "that the methodology of a drug trial had not been sufficiently disclosed." In re Keryx Biopharms., Inc., Sec. Litig., 2014 WL 585658, at *10 (S.D.N.Y. Feb. 14, 2014) (collecting cases). (See also Br. 5-10.)[2]

Moreover, Plaintiff's claims fail even as reframed. Plaintiff admits that IMVT-1401's Phase 1 and Phase 2a trials, the only human trials that generated results before the September 2020 Offering, did not test cholesterol. Plaintiff also admits that its single confidential witness ("FE"), whose opinion is the only basis for Plaintiff's interpretation of the animal studies, first reviewed the animal data and formed that opinion in January 2021 – i.e., more than three months following the issuance of the Offering Documents. (Br. 10.) Therefore, at the time of the September 2020 Offering, the Underwriter Defendants had no indication of elevated cholesterol levels in either animal studies or human subjects. (Id.)[3] Plaintiff identifies no facts to the contrary, only speculation that, "[a]t minimum, Immunovant likely learned about the cholesterol elevations no later than November 2020." (Opp. 47.) Plaintiff cannot state a claim based on speculation – which is contrary to its own allegations (SAC ¶ 94) – and, in any event, November 2020 post-dates the September 2020 Offering by two months. Such allegations do not show a misstatement or omission in the Offering Documents.

---

[2] Plaintiff describes In re QuantumScape Securities Class Action Litigation, 580 F. Supp. 3d 714 (N.D. Cal. 2022), as "on point" (Opp. 44-45). Wrong. In QuantumScape, a battery company falsely stated that its "solid-state batteries were tested with uncompromised conditions or were tested in various real-world conditions" when, in fact, the defendants had purposely manipulated the studies so that they did not reflect real-world conditions. Id. at 732, 734-35. Here, Plaintiff does not allege that the Offering Documents inaccurately described Immunovant's trial methodology; Plaintiff simply asserts that the trial should have been designed differently. (See supra at 2.)

[3] That distinguishes In re Sepracor, Inc., Securities Litigation, 308 F. Supp. 2d 20 (D. Mass. 2004), and Schueneman v. Arena Pharmaceuticals, Inc., 840 F.3d 698 (9th Cir. 2016) (cited at Opp. 43, 79), in which the defendants knew that animal studies had revealed significant safety issues and that the FDA had concerns. See Sepracor, 308 F. Supp. 2d at 26 ("[T]he FDA had previously told Sepracor that the animal studies showing cardiac and liver damage were issues that had to be resolved."); Schueneman, 840 F.3d at 701, 708 (company knew "sticking point with the FDA" was that drug "was causing mammary tumors, brain cancer, skin cancer, and nerve sheath cancer" in rats). The court in Schueneman expressly cautioned that the claims would have failed if they had been based solely on "the reasonableness of Arena's interpretation of the Rat Study." 840 F.3d at 709.

II.    **Plaintiff Does Not Allege a Duty To Disclose.**

Plaintiff does not dispute that the failure to disclose a "potential risk" that IMVT-1401 could elevate cholesterol levels or that the Phase 1 and 2a trial design did not test cholesterol is actionable only if there was a duty to disclose those "facts." (Br. 10-11.) Neither the Offering Documents nor Items 303 and 105 created such a duty to disclose.

A.    **The Offering Documents Did Not Create a Duty to Disclose.**

Plaintiff does not dispute that the securities laws impose no affirmative duty to disclose any and all material information, but require disclosure only when a statement otherwise would be false or misleading. (Br. 11.) Plaintiff does not contest that the Offering Documents said nothing about cholesterol, and Plaintiff does not identify any statement in the Offering Documents that would create a duty to disclose either that there was a "potential risk" that IMVT-1401 would cause elevated cholesterol levels or that the Phase 1 and 2a trial design did not test cholesterol. (Br. 11; see also Opp. 32-34, 76.) Consequently, Plaintiff has not alleged a duty to disclose as a result of any statement in the Offering Documents, and its claims fail. (Br. 11-12.) To avoid this straightforward result, Plaintiff makes two arguments.

**First**, Plaintiff challenges the statement that "several nonclinical studies . . . demonstrated . . . [IMVT-1401] was observed to be well tolerated." (Opp. 76.) Plaintiff argues that such statements give rise to a duty to disclose because they "were affirmative statements about IMVT-1401's nonclinical studies and the tolerability of IMVT-1401." (Id.) As an initial matter, that IMVT-1401 was observed to be "well tolerated" is immaterial puffery. See In re Arrowhead Pharms., Inc. Sec. Litig., 2017 WL 8791111, at *5 (C.D. Cal. Dec. 21, 2017) (statements that "'[a drug] is well tolerated with no serious adverse events' are non-actionable statements of optimism based on Defendant's interpretation of its trial results"), aff'd, 782 F. App'x 572 (9th Cir. 2019). Immaterial puffery does not give rise to a duty to disclose. See In re Sanofi-Aventis Sec. Litig.,

4

774 F. 2d 549, 565 (S.D.N.Y. 2011) (puffery concerning drug "did not impose a duty to disclose upon Sanofi"). Moreover, Plaintiff argues that such statements were "materially untrue and misleading" because "animals given IMVT-1401 experienced substantial elevations in cholesterol." (Opp. 76-77.) Yet the animal studies found only "minor increases" in cholesterol. (See SAC ¶ 97.) Plaintiff does not and cannot argue that "minor increases" in cholesterol are inconsistent with IMVT-1401 being "well tolerated"; Plaintiff simply disagrees with the interpretation of the underlying data. (See supra at 1-2.) Scientific disagreements about the interpretation of data do not give rise to a duty to disclose. See MacroGenics, 61 F.4th at 392 (allegations grounded in scientific disagreement do not create duty to disclose).[4]

**Second**, Plaintiff challenges the statement: "Dose-dependent and reversible albumin reductions were observed" but that the "reductions were not associated with any AEs or clinical symptoms and did not lead to any study discontinuations." (Opp. 77.) Plaintiff argues that, "[s]ince the Offering Documents discussed the albumin reductions and since a key risk of albumin reductions is elevated cholesterol," there was "a duty to fully disclose the risks associated with albumin reductions and IMVT-1401." (Id.) Yet Plaintiff admits that it "is not disputing the interpretation of the reported results from IMVT-1401's clinical trials" (id. 45), and accurate statements about trial results do not give rise to a duty to disclose: "[I]t is black letter law in this Circuit that the disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." In re Omega Healthcare Invs., Inc. Sec. Litig., 563 F. Supp. 3d 259, 277 (S.D.N.Y. 2021). As the Second Circuit held, pharmaceutical companies have no "obligation to disclose why [a clinical] trial might fail."

---

[4] The statement that "several nonclinical studies . . . demonstrated . . . [IMVT-1401] was observed to be well tolerated" was a general statement about the animal studies and human trials together. (See SAC ¶ 139.) Plaintiff misleadingly omits the portions in the ellipses to make it appear that the statement concerned only the animal studies.

Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co., 28 F.4th 343, 355 (2d Cir. 2022).[5]

### B.       Items 303 and 105 Did Not Create a Duty to Disclose.

Plaintiff does not dispute that Items 303 and 105 require (1) actual knowledge (Items 303 and 105) of (2) a trend or uncertainty (Item 303) or risk (Item 105) that (3) was reasonably likely to have material effects on the issuer's financial condition or results of operations (Item 303). (Br. 12-17; see also Opp. 69, 72.)  Plaintiff alleges none of the above with respect to the "potential risk" of elevated cholesterol or the Phase 1 and 2a trial design not to test cholesterol.

**First**, Plaintiff does not plead actual knowledge.  (Br. 14, 17.)  Plaintiff does not dispute that it disclaims actual knowledge for purposes of its Securities Act claims.  (Id.)  That should be the end of the matter.  Plaintiff argues that "alleging that a defendant knew a particular fact does not amount to alleging they intentionally or recklessly misled investors." (Opp. 71; see also id. 72.)  Plaintiff cannot have it both ways.  It must plead "specific allegations that defendants made the prediction with actual knowledge of its falsity, and [P]laintiff expressly disclaims such allegations."  Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn, 53 F. Supp. 3d 882, 910 (E.D. La. 2014).

**Second**, Plaintiff does not plead facts showing any trend, uncertainty, or risk.  (Br. 13-14, 17.)  Plaintiff argues that "[t]he Underwriter Defendants would have learned of the elevated cholesterol in the animal studies, IMVT-1401's potential risk of elevations in cholesterol, and the fact that prior results did not incorporate evaluations of cholesterol." (Opp. 70; see also id. 72.) Plaintiff identifies no facts showing that the Underwriter Defendants had any indication of elevated

---

[5] Plaintiff tries to distinguish Bristol-Myers Squibb on the ground that "disclosures about the potential risk of elevated cholesterol would not have put Immunovant at a disadvantage" because "Immunovant's competitors did test for cholesterol." (Opp. 39-40.)  The Second Circuit's holding in Bristol-Myers Squibb was not so limited.  Rather, the Second Circuit held that pharmaceutical companies have no freestanding duty to disclose detailed information about their clinical trials absent a misleading statement. See 28 F.4th at 352-53.  Plaintiff has identified no such statement.

cholesterol in animal studies or human subjects at the time of the September 2020 Offering or received any indication until months later with the initial Phase 2b trial results. (Br. 13.) Instead, Plaintiff rehashes its disagreements with Immunovant's data interpretation and trial design, which do not give rise to a duty to disclose. See MacroGenics, 61 F.4th at 392. (See also supra at 1-2.)

**Third**, Plaintiff does not plead facts showing that any trend or uncertainty was reasonably likely to have material effects on Immunovant's financial conditions or operations. (Br. 13-14.) Plaintiff accuses the Underwriter Defendants of ignoring "the material disruption caused by the increases in cholesterol to the [Phase 2b] trial, including the halting of the study," and that "the elevations in cholesterol from the [] Phase 2b trial caused Immunovant to focus on developing an entirely different drug, IMVT-1402, because it does not impact cholesterol." (Opp. 70-71.) It is Plaintiff which ignores that those events occurred after the September 2020 Offering and, therefore, could not give rise to a duty to disclose in the Offering Documents. See Lopez v. CTPartners Exec. Search Inc., 173 F. Supp. 3d 12, 34 (S.D.N.Y. 2016) (no duty to disclose where, "[e]xcept with the benefit of hindsight," effect on business was "speculative and conjectural").

**Finally**, to the extent that any disclosure was required, the Offering Documents made it – warning that a side effect of IMVT-1401 could delay the clinical studies, harm Immunovant's financial condition, and cause a decline in the stock price. (Br. 4-5, 15-16, 17.) Plaintiff argues that the disclosures in the Offering Documents were "insufficient" because they did not "provide a specific warning of the potential cholesterol safety issue or that Defendants decided not to test for cholesterol in early clinical trials." (Opp. 72-73; see also id. 71, 78-79.) Although Plaintiff cites a litany of cases in attacking those disclosures (Opp. 71, 72-73, 78-79), not one stands for the proposition that offering documents must include warnings about specific potential side effects of

drugs or the specific design of clinical trials.[6] That is not surprising. The Second Circuit held just the opposite, finding it sufficient to disclose that an "announcement of any negative or unexpected data . . . will likely cause our stock price to decline significantly" and rejecting the argument that a pharmaceutical company must disclose "why [a clinical] trial might fail" or details about trial design. Bristol-Myers Squibb, 28 F.4th at 352-53, 355.[7]

### III.     Plaintiff Does Not Allege Any Actionable Misstatements Or Omissions.

The Opening Brief explained in detail the reasons that Plaintiff did not allege any actionable misstatements or omissions in the Offering Documents. (Br. 17-27.) Plaintiff's responses – scattered throughout the Exchange Act arguments – prove the point.

**First**, any alleged misstatements or omissions concerning IMVT-1401's clinical trials are not actionable. (Br. 20-23.) Plaintiff challenges statements concerning IMVT-1401's clinical trials as "materially misleading because IMVT-1401's preclinical animal trials revealed substantial elevations in cholesterol and because the referenced clinical trials did not test cholesterol levels."

---

[6] Indeed, none of those cases bears any resemblance to the facts here. Two do not address the adequacy of risk disclosures at all. See Schueneman, 840 F.3d 698; Yannes v. SCWorx Corp., 2021 WL 2555437 (S.D.N.Y. June 21, 2021). Six concern risks that already had materialized. See In re Blue Apron Holdings, Inc. Sec. Litig., 2020 WL 1950783, at *9 (E.D.N.Y. Apr. 22, 2020); Panther Partners Inc. v. Jianpu Tech. Inc., 2020 WL 5757628, at *11 (S.D.N.Y. Sept. 27, 2020); In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 315 (S.D.N.Y. 2013); Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 193-94 (S.D.N.Y. 2010); Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., 367 F. Supp. 3d 16, 33 (S.D.N.Y. 2019); In re Ply Gem Holdings, Inc., 2016 WL 5339541, at *5-6 (S.D.N.Y. Sept. 23, 2016). And the remaining four are plainly distinguishable. See Bishins v. CleanSpark, Inc., 2023 WL 112558, at *9 (S.D.N.Y. Jan. 5, 2023) (bitcoin-mining company's cautionary language inadequate when it did not address potential delay in construction timeline); In re Chembio Diagnostics, Inc. Sec. Litig., 586 F. Supp. 3d 199, 229 (E.D.N.Y. 2022) (cautionary language failed to warn of possible revocation of FDA authorization even though FDA already had expressed concerns about accuracy of company's COVID tests); In re Salix Pharms., Ltd., 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) (cautionary language insufficient where it "fail[ed] to identify even a single 'important factor' that could lead to different results" and failed to warn of potential inventory issues); In re Am. Int'l Grp., Inc., 741 F. Supp. 2d 511, 531-32 (S.D.N.Y. 2010) (generic disclosure about investment risk in credit default swaps insufficient in light of "known weaknesses" in risk-evaluation model).

[7] Plaintiff tries to distinguish Stadnick v. Vivint Solar, Inc., 861 F.3d 31 (2d Cir. 2017) (cited at Br. 15), on the ground that the Offering Documents failed to warn of the "potential risk" of elevated cholesterol levels or that the Phase 1 and 2a trial design did not test cholesterol. (Opp. 71.) In Stadnick, as in Bristol-Myers Squibb, the Second Circuit did not require such specificity. See Stadnick, 861 F.3d at 39-40 (affirming dismissal of Item 303 claim concerning failure to warn of regulatory regime in Hawaii where issuer warned "that its business was generally vulnerable to changing regulations, and particularly so in Hawaii").

(Opp. 33.)   Despite Plaintiff's protestations to the contrary (id. 34), its allegations turn on disagreements over the interpretation of the animal studies (i.e., whether they "revealed substantial elevations in cholesterol") and the design of the clinical trials (i.e., whether they should have "test[ed] cholesterol levels") – which do not state a Securities Act claim (see supra at 1-3).

**Second**, any alleged misstatements or omissions concerning the potential negative impact of albumin reductions are not actionable.  (Br. 23-24.)  Plaintiff challenges statements that "the clinical trials were not associated with any AEs or clinical symptoms" as "misleading and made without a reasonable basis" because they "minimized the impact" of albumin reductions on cholesterol levels and "cholesterol elevations were an undisclosed potential risk which was not tested for." (Opp. 35, 37.)[8]  Plaintiff admits that the only basis for its challenge is its own opinion – based on its own review of the scientific literature – that albumin reductions can lead to higher cholesterol.  (Id. 16-19.)   Again, despite Plaintiff's protestations to the contrary (id. 37), its allegations turn on its disagreements over the interpretation of data (i.e., whether albumin reductions had an impact on cholesterol levels) and trial design (i.e., whether cholesterol elevations should have been "tested for") – which do not state a Securities Act claim (see supra at 1-3).

**Third**, any alleged misstatements or omissions concerning Immunovant's compliance with Good Clinical Practices are not actionable.  (Br. 24-25.)  Plaintiff challenges such statements as "materially false because Immunovant should have – but failed to – perform ongoing surveillance" of cholesterol.  (Opp. 37.)  Again, Plaintiff's allegations turn on its disagreement over trial design (i.e., whether Immunovant "should have . . . perform[ed] ongoing surveillance" of cholesterol) – which does not state a Securities Act claim.  (See supra at 1-3.)  In any event, a company's general description of its trial design, including compliance with Good Clinical Practices, does not

---

[8] Plaintiff cites a number of statements about albumin reductions that were not in the Offering Documents (see, e.g., Opp. 35-37) and, therefore, cannot give rise to a Securities Act claim.

necessitate disclosure of detailed information about that design.  (Br. 24-25.)

**Fourth**, any alleged misstatements or omissions about IMVT-1401's animal studies are not actionable.  (Br. 25-26.)  Plaintiff challenges statements that "several nonclinical studies demonstrated . . . [IMVT-1401] was observed to be well tolerated" as "untrue" because "animals experienced substantial elevations in cholesterol."  (Opp. 42.)  Again, Plaintiff simply disagrees with the interpretation of the animal studies (i.e., whether "animals experienced substantial elevations in cholesterol") – which does not state a Securities Act claim.  (See supra at 1-2.)

**Fifth**, the risk disclosures in the Offering Documents are not actionable.  (Br. 26-27.)  As discussed above (see supra at 4-8), the Offering Documents were not required to list every potential side effect of IMVT-1401, and the 60-plus pages of disclosures in the Offering Documents were at least as detailed and specific as disclosures approved by other courts in this Circuit.  (Br. 14-15, 17, 26).[9]  Moreover, the disclosures warned of the very risk about which Plaintiff complains – i.e., that "unforeseen safety issues" might delay clinical trials, harm Immunovant's business, and cause a decline in the share price.  (Br. 4-5, 27.)

## CONCLUSION

For the foregoing reasons and those in the Opening Brief, this Court should dismiss the claims against the Underwriter Defendants with prejudice.[10]

---

[9] In re Aratana Therapeutics Inc. Sec. Litig., 315 F. Supp. 3d 737, 758-60 (S.D.N.Y. 2018) (in light of company's "comprehensive disclosures of [] regulatory risk, the mere fact that the risk materialized cannot support a claim"); In re Sanofi Sec. Litig., 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015) (risk disclosure that "regulatory authority may deny or delay an approval because it was not satisfied with the structure or conduct of clinical trials" adequate because it "explicitly identifie[d] the salient risk, namely, that a regulatory authority such as the FDA could deny or delay approval"), aff'd sub nom. Tongue v. Sanofi, 816 F.3d 199 (2d Cir. 2016); In re EDAP TMS S.A. Sec. Litig., 2015 WL 5326166, at *10 (S.D.N.Y. Sept. 14, 2015) (company "adequately disclosed" risk that FDA would deny approval by warning that "'the clinical and regulatory status of our HIFU devices,' 'the uncertainty of market acceptance for our HIFU devices' and 'the uncertainty in the U.S. FDA approval process' 'could affect future results'").

[10] After reviewing Defendants' previous motions to dismiss, this Court granted Plaintiff leave to amend.  (ECF No. 80.)  Plaintiff has not cured the defects in its claims and has not explained how it would further amend its complaint to do so.  (Opp. 84-85.)  Therefore, dismissal with prejudice is warranted.  See Phhhoto Inc. v. Meta Platforms, Inc., 2023 WL 2710177, at *23 (E.D.N.Y. Mar. 30, 2023) (Matsumoto, J.) (denying leave to amend where court "allowed [plaintiff] an opportunity to amend its complaint" based on defendant's pre-motion letter).

Dated: June 30, 2023

Respectfully submitted,

*/s/ Daniel Roeser*
Daniel Roeser
Valerie A. Haggans
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
droeser@goodwinlaw.com
vhaggans@goodwinlaw.com

Justin D. Ward
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:  (617) 570-1000
Fax:  (617) 523-1231
jward@goodwinlaw.com

*Attorneys for Defendants SVB Securities LLC
(f/k/a SVB Leerink LLC), LifeSci Capital LLC,
Chardan Capital Markets LLC, Guggenheim
Securities, LLC, and Robert W. Baird & Co. Inc.*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 30, 2023, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

*/s/ Justin D. Ward*