**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

        -against-                      1:21-cv-00918 (KAM) (VMS)

IMMUNOVANT, INC. f/k/a HEALTH         <u>CLASS ACTION</u>
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, PAMELA YANCHIK
CONNEALY, FRANK M. TORTI, ANDREW
FROMKIN, DOUGLAS HUGHES, GEORGE
MIGAUSKY, ATUL PANDE, ERIC
VENKER, SVB LEERINK LLC, LIFESCI
CAPITAL LLC, CHARDAN CAPITAL
MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

                    Defendants.

-----------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE**
**<u>MOTION TO DISMISS OF ROIVANT SCIENCES LTD.</u>**

 

WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
650 5th Ave #1500
New York, NY 10019
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

**TABLE OF CONTENTS**

I.    The SAC Does Not State a Control-Person Claim Against Roivant. .................................2

    A.    No Primary Violation by Immunovant ......................................................................2

    B.    No Control by Roivant....................................................................................................2

    C.    No Culpable Participation Under Section 20(a) ......................................................4

II.    The SAC Does Not Plead a Section 10(b) Claim Against Roivant. ..................................7

CONCLUSION...........................................................................................................................8

i

## TABLE OF AUTHORITIES

Page

### CASES

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*,
No. 17-cv-1235, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018).........................................2, 4

*Arkansas Teacher Retirement System v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)................................................................................2, 3, 4

*Behrendsen v. Yangtze River Port & Logistics Ltd.*, No. 19-cv-00024, 2021
WL 2646353 (E.D.N.Y. June 28, 2021) ...................................................................................4

*Boston Retirement System v. Alexion Pharmaceuticals, Inc.*, 556 F. Supp. 3d
100 (D. Conn. 2021) .................................................................................................................4

*Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382 (S.D.N.Y.
2020) .........................................................................................................................................6

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393
(S.D.N.Y. 2018) .....................................................................................................................2, 4

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase
Co.*, 553 F.3d 187 (2d Cir. 2009)....................................................................................4, 5, 7

*Emerson v. Mutual Fund Series Trust*, 393 F. Supp. 3d 220 (E.D.N.Y. 2019) .............................2

*Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016)...............................................6

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) .........................................................5

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*, No. 17-cv-9887,
2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019) ......................................................................2, 3

*Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) ...................................3

*In re Bank of America Corporation Securities, Derivative, & ERISA
Litigation*, 757 F. Supp. 2d 260 (S.D.N.Y. 2010)....................................................................8

*In re BISYS Securities Litigation*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) .....................................6

*In re Henry Schein, Inc. Securities Litigation*, No. 18-cv-01428, 2019 WL
8638851 (E.D.N.Y. Sept. 27, 2019)..........................................................................................4

*In re KeySpan Corporation Securities Litigation*, 383 F. Supp. 2d 358
(E.D.N.Y. 2003)........................................................................................................................6

ii

Page

*In re Tenaris S.A. Securities Litigation*, 493 F. Supp. 3d 143 (E.D.N.Y. 2020) ........................2, 4

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)................................7

*Local No. 38 International Brotherhood of Electrical Workers Pension Fund
    v. American Express Co.*, 724 F. Supp. 2d 447 (S.D.N.Y. 2010)...............................................4

*Nayani v. LifeStance Health Group, Inc.*, No. 22-cv-6833, 2023 WL 3260260
    (S.D.N.Y. May 4, 2023)............................................................................................................5

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11
    F.4th 90 (2d Cir. 2021) ............................................................................................................8

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)...............................................................6

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)...................................................................6

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir.
    2018) ........................................................................................................................................5

*South Cherry Street, LLC v. Hennessee Group, LLC*, 573 F.3d 98 (2d Cir.
    2009) ........................................................................................................................................5

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    645 F. App'x 72 (2d Cir. 2016) ...............................................................................................5

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017)...................................................2

*STMicroelectronics v. Credit Suisse Group*, 775 F. Supp. 2d 525 (E.D.N.Y.
    2011) ........................................................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)............................................5, 7

*Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020) ...............................................6

**STATUTES**

Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74
    (codified as amended at 15 U.S.C. § 77a *et seq.*)
    § 77k...........................................................................................................................................2
    § 77*l* .........................................................................................................................................2
    § 77*o*........................................................................................................................................1

Page

Securities Exchange Act of 1934, Pub. L. No. 73-291, 48 Stat. 881
(codified as amended at 15 U.S.C. § 78a *et seq.*)
§ 78j ...................................................................................................................1, 2, 7
§ 78t ....................................................................................................................1, 2, 4
§ 78u-4 ........................................................................................................................5

Plaintiff devotes only the final few pages of its 85-page opposition to its claims against Roivant. *See* Opp. 81–84. But Plaintiff ignores the caselaw requiring dismissal of its control-person claims under Sections 15 and 20(a) and its primary-liability claim under Section 10(b):

Control-Person Liability: Numerous cases hold that liability under Sections 15 and 20(a) requires that the defendant have *actual* control not merely over the alleged primary violator (here, Immunovant), but over the *transaction at issue*—here, Immunovant's purportedly false statements. Plaintiff does not address that body of case law, and the one case Plaintiff cites shows why its control-person claims against Roivant should be dismissed.

Culpable Participation/Scienter: To plead scienter under a "conscious misbehavior or recklessness" theory, Second Circuit authority requires that a defendant not only have access to information, but also a duty to monitor it. It therefore does not matter whether Roivant *could* have accessed supposedly negative information about Immunovant's study design or data without a *duty* by Roivant to do so. Similarly, as to "motive-and-opportunity," case upon case forecloses that theory of scienter where—as here—a defendant did not sell any shares or "monetize" its investment. SAC ¶ 315; Opp. 64. Plaintiff addresses neither set of cases.

Primary Violation of Section 10(b): At a minimum, a Section 10(b) claim requires that the defendant made a false statement or committed a deceptive act. Plaintiff has never alleged that Roivant did either. As to a false-statement claim, the Supreme Court has held that such claims can proceed against only the "maker" of the statement. Here, Plaintiff's claim against Roivant is based on a statement that Plaintiff alleges *Immunovant* made. And Plaintiff's "scheme" claim never identifies *any* relevant act by Roivant, let alone a deceptive one.

For these reasons, and many more, the Second Amended Complaint ("SAC") should be dismissed with prejudice.

1

## I.   The SAC Does Not State a Control-Person Claim Against Roivant.

Plaintiff does not dispute that the control-person claims cannot survive absent plausible allegations of (1) a "primary violation" of the securities laws by Immunovant; (2) Roivant's "actual control" of Immunovant and of the specific transactions at issue; and (3) for the Section 20(a) claim, Roivant's "culpable participation." *E.g.*, *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 260 (E.D.N.Y. 2019); *see* Opp. 80.  As explained in Roivant's opening memorandum, the SAC fails as a matter of law to plead *any* of those elements.  Mem. 5–14.

### A.   No Primary Violation by Immunovant

Plaintiff's control-person claims fail at the first step because, as shown by Immunovant and the Underwriter Defendants, the SAC does not adequately allege a "primary violation" of Sections 10(b), 11, or 12(a)(2).  *E.g.*, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 40 (2d Cir. 2017).

### B.   No Control by Roivant

To plead control, Plaintiff must plausibly allege that Roivant "exercised *actual* control over the matters at issue" in this litigation, *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 17-cv-1235, 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018) (citation omitted)—that is, "control over the alleged misrepresentations" by Immunovant, *Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014).  Absent allegations that Roivant "could exert *day-to-day control*" over Immunovant—including, most importantly, control over the content of Immunovant's disclosures to investors—Plaintiff's control-person claims necessarily fail.  *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, No. 17-cv-9887, 2019 WL 1437617, at *7 (S.D.N.Y. Mar. 29, 2019) (emphasis added); *see In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 166 (E.D.N.Y. 2020); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 460–61 (S.D.N.Y. 2018); *Bankrate*, 18 F. Supp. 3d at 486.

2

The crux of Plaintiff's claim is the unremarkable circumstance that Roivant held a majority position in Immunovant and could appoint directors to Immunovant's board. Such allegations "simply identif[y] the standard relationship between a company and a large shareholder"; they do not make out a control-person claim. *Grupo Verzatec*, 2019 WL 1437617, at *8. Merely alleging that a large shareholder "will be able to exercise control over all matters requiring stockholder approval, including the election of [the subsidiary's] directors," SAC ¶ 62 (internal quotation marks omitted), does not raise a plausible inference that the shareholder had actual control over the subsidiary's daily operations. Nor does appointment of board members. A parent company's appointment of a majority of the subsidiary's directors does not mean that the parent had control "over the alleged misrepresentations at issue in [the] case," *Bankrate*, 18 F. Supp. 3d at 486—*even if* the appointed directors also held "high position[s]" at the parent company, *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 580–81 (S.D.N.Y. 2012) (citation omitted); *see Grupo Verzatec*, 2019 WL 1437617, at *7–8; *Bankrate*, 18 F. Supp. 3d at 486 (dismissing control-person claim despite the fact that defendant "controlled more than 50% of Bankrate's stock" and "had four sitting representatives on Bankrate's seven person board").

Plaintiff does not respond to these authorities and instead relies on a single case. But that case contradicts its "status" theory. *See* Opp. 82. The plaintiff in *STMicroelectronics v. Credit Suisse Group*, 775 F. Supp. 2d 525 (E.D.N.Y. 2011), did not simply rely on allegations of corporate ownership. It alleged that the defendant had "*direct involvement . . . in the underlying events*" and that "the [two] entities' executives overlap[ped] significantly at the highest levels." *Id.* at 536 (emphasis added; citation omitted). No such facts are alleged here.

Finally, Plaintiff cannot save its control-person claims by repeating the SAC's allegations that Roivant provided administrative support and access to technology and digital platforms

3

pursuant to "agreements" between Roivant and Immunovant. *Compare* Opp. 82–83, *with* Mem. 7–8. Plaintiffs' own descriptions of those agreements show that they do not demonstrate Roivant's *control over*, as opposed to assistance to, Immunovant—much less any involvement by Roivant *in Immunovant's public statements*. *See DoubleLine Cap.*, 323 F. Supp. 3d at 460; *Alpha Cap. Anstalt*, 2018 WL 1627266, at *20; *Bankrate*, 18 F. Supp. 3d at 486. Plaintiff fails to plead control by Roivant over Immunovant.

### C.   No Culpable Participation Under Section 20(a)

Plaintiff's Section 20(a) claim also fails because the SAC does not plead Roivant's culpable participation in Immunovant's alleged violations. *See* Mem. 9–14. Courts in this district routinely dismiss control-person claims for failure to plead scienter. *See, e.g.*, *Behrendsen v. Yangtze River Port & Logistics Ltd.*, No. 19-cv-00024, 2021 WL 2646353, at *17 (E.D.N.Y. June 28, 2021); *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d at 166; *In re Henry Schein, Inc. Sec. Litig.*, No. 18-cv-01428, 2019 WL 8638851, at *29 (E.D.N.Y. Sept. 27, 2019). Plaintiff again relies only on *Boston Retirement System v. Alexion Pharmaceuticals, Inc.*, 556 F. Supp. 3d 100 (D. Conn. 2021), to support its contention that pleading culpable participation does not require scienter. Opp. 83. But even *Boston Retirement* acknowledged authority that the "majority of courts require pleading facts that support an individualized inference of the control person's scienter." 556 F. Supp. 3d at 143 (quoting *In re EZCorp, Inc. Sec. Litig.*, 181 F. Supp. 3d 197, 212 (S.D.N.Y. 2016)).

The Opposition does nothing to bolster the SAC's conclusory scienter allegations. Plaintiff lacks any "strong circumstantial evidence of conscious misbehavior or recklessness." *E.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). As explained in Roivant's opening brief, access to purportedly negative information is "not enough." *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010); Mem. 10–11. Roivant must either have had "*a duty to monitor*" the

4

information—i.e., been "*required* to check" it—or "ignored *obvious* signs of fraud." *E.g.*, *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *accord, e.g.*, *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 58 (2d Cir. 2018); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 645 F. App'x 72, 74–75 (2d Cir. 2016). The case Plaintiff cites is not to the contrary. Opp. 84. In *Nayani v. LifeStance Health Group, Inc.*, No. 22-cv-6833, 2023 WL 3260260 (S.D.N.Y. May 4, 2023), the plaintiffs alleged that the defendants *did* actively monitor the data in question, *see* Amended Complaint at 14–15, *Nayani*, No. 22-cv-6833 (S.D.N.Y. Dec. 19, 2022), ECF No. 45 (describing data monitoring procedures by company where defendants worked). Accordingly, Plaintiff's repeated assertions that Roivant could have had "full access" to IMVT-1401 data under contractual provisions fall far short of alleging scienter. Opp. 57–58, 83–84.

Plaintiff's theory of motive-and-opportunity scienter is equally inadequate. "Motive and opportunity" are not "magic words"; they are simply one helpful "gloss" for analyzing whether a defendant acted with "the requisite state of mind." *S. Cherry St.*, 573 F.3d at 109–10 (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)). The inquiry remains whether there are "facts giving rise to a *strong* inference that the defendant acted with . . . *an intent to deceive, manipulate, or defraud*." *ECA*, 553 F.3d at 198 (second emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2) and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)).

Plaintiff's proposed "inference" of scienter makes no sense. Plaintiff's theory is that Roivant had motive and opportunity to commit fraud so that it (and Dr. Wong) "could monetize their investments." Opp. 64; *accord* SAC ¶ 315. That theory is insufficient under Second Circuit law. Courts routinely hold that motive-and-opportunity pleading requires not just stock sales, but sales that are "*unusual or suspicious*." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y.

5

2011) (emphasis added) (quoting *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009)); *see Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 235 (S.D.N.Y. 2020); *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 382 (E.D.N.Y. 2003).

But the Court need not even wade into whether the stock sales must be suspicious, because *Roivant never monetized its investment*: it never sold a single share of Immunovant stock.  Roivant was Immunovant's "largest shareholder[] and shared the pain" when the price dropped.  *Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (rejecting motive-and-opportunity allegations); *see Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008).  Court after court has recognized that, in circumstances like these, the far more compelling inference is that the defendant did not know of the purported fraud.  *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 412 (S.D.N.Y. 2020); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444–45 (S.D.N.Y. 2005); *see Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 601 (S.D.N.Y. 2016) ("illogical" to infer intent in similar circumstance (quoting *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006) (collecting cases))); Mem. 12–14 & n.3 (collecting cases).

Plaintiff has no coherent response to these cases, so instead it tries a non sequitur.  Plaintiff again claims that there was "only a *risk* and not a *certainty*" that IMVT-1401 would raise cholesterol levels.  Opp. 66 (emphasis in original).  But why would Roivant have left itself exposed to the "risk"?  Plaintiff suggests Roivant would have been motivated to acquire the earnout shares, *e.g.*, *id.* 64–65, but *Roivant did not sell Immunovant stock after acquiring its earnout shares either*.  Note that, not counting any earnout shares, Roivant owned more than 38.4 million shares of Immunovant stock.  Williams Reply Decl., Exs. A–B (showing Roivant's share ownership in April 2020).  On Plaintiff's theory of loss causation, those shares alone lost *$921,778,011* in value when the stock dropped.  *See* Opp. 9 (describing $18.22 and $5.76 per-share drops).  The Court is tasked

6

with asking whether Plaintiff's requested inference of scienter is "as compelling" as the "nonculpable explanations." *Tellabs*, 551 U.S. at 324. The options are: Did Roivant know that IMVT-1401 carried this undisclosed risk and nonetheless decide to leave itself fully exposed to $900 million in losses? Or did Roivant not sell any stock because it did not know of the alleged risk? To state the alternatives is to answer the question. Plaintiff comes nowhere close to pleading the requisite "*strong* inference" of scienter. *E.g.*, *ECA*, 553 F.3d at 198 (citation omitted).

## II.    The SAC Does Not Plead a Section 10(b) Claim Against Roivant.

Plaintiff devotes a single page to arguing that Roivant is liable under Section 10(b). Opp. 81. Plaintiff argues only that Roivant is liable on a false-statement theory because of a statement in the Share Exchange Agreement ("SEA") that governed the merger between Immunovant and HSAC, which Roivant and other parties signed. *See id.* But Plaintiff offers no response to the fact that *its own complaint* attributed the challenged statement to Immunovant—presumably because it has none. Plaintiff described that statement as something "*Immunovant represented*," not Roivant. SAC ¶ 122 (emphasis added). Plaintiff is right; the challenged statement (which in any event is not false or misleading) is explicitly a representation by Immunovant. Mem. 16 (citing Williams Decl., Ex. B). That forecloses any claim against Roivant as a matter of law. The Supreme Court has made clear that only the "maker" of a statement can be held liable under Section 10(b). *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 148 (2011). To make a statement, the Court observed, is essentially "to state" it. *Id.* at 142; *see id.* at 142–43 (noting that "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed"). As Plaintiff alleges, Immunovant "represented"—i.e., stated—the challenged representation in the SEA. SAC ¶ 122. There is no false-statement claim against Roivant.

7

Plaintiff ignores the dispositive issue that Immunovant was the maker of the statement and focuses instead on whether it can plead reliance on Immunovant's representation.  Opp. 81. Plaintiff relies on a single case that held that statements from a merger agreement that was disclosed to investors in a joint proxy statement could have been understood by investors "to constitute a statement of fact."  *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 298 (S.D.N.Y. 2010).  But the joint proxy in that case did not caution investors *not* to rely on the merger agreement; to the contrary, it told readers "to 'read the merger agreement carefully and in its entirety.'"  *Id.* (quoting proxy).  The proxy here, by contrast, stated outright that the SEA was "solely for the benefit of the parties" to the SEA and that investors "*should not rely on the representations and warranties* as characterizations of the actual state of affairs of HSAC."  Mem. 16–17 (emphasis added) (citing Williams Decl., Ex. B at 97).  Plaintiff does not explain how any investor could reasonably rely on representations in the SEA as "statements of fact" when the proxy told investors not to rely on them as to "the actual state of affairs at HSAC."

Finally, Plaintiff does not allege a scheme claim against Roivant.  Roivant challenged Plaintiff to identify a single "deceptive or manipulative act" *by Roivant*.  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 & n.6 (2d Cir. 2021) ("scheme claims [must] be premised on deceptive acts . . . distinct from misstatements and omissions"); Mem. 17. Even after amending its complaint a second time, Plaintiff has not done so.  *See* Opp. 68.  Its silence speaks loudly.

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice.

8

Dated:  June 30, 2023                          WILLIAMS & CONNOLLY LLP

                                    By:  */s/ John S. Williams*
                                         John S. Williams (JW-6927)
                                         jwilliams@wc.com
                                         680 Maine Ave, S.W.
                                         Washington, DC 20024

                                         650 5th Ave #1500
                                         New York, NY 10019
                                         Telephone: (202) 434-5000
                                         Facsimile: (202) 434-5029

                                         *Counsel for Roivant Sciences Ltd.*

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 30, 2023, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system and via electronic mail.


Dated: June 30, 2023                                          <u>/s/ *John S. Williams*</u>