UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THERESA PITMAN, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

     vs.

IMMUNOVANT, INC. f/k/a HEALTH
SCIENCES ACQUISITIONS
CORPORATION, RODERICK WONG,
PETER SALZMANN, FRANK M. TORTI,
ANDREW FROMKIN, DOUGLAS HUGHES,
GEORGE MIGAUSKY, ATUL PANDE,
ERIC VENKER, SVB LEERINK LLC,
LIFESCI CAPITAL LLC, CHARDAN
CAPITAL MARKETS LLC, GUGGENHEIM
SECURITIES, LLC, ROBERT W. BAIRD &
CO. INCORPORATED, and ROIVANT
SCIENCES LTD.,

                    Defendants.

---

Civil Action No. 1:21-cv-00918-KAM-VMS

CLASS ACTION

**PLAINTIFF'S OBJECTIONS TO THE
FEBRUARY 25, 2024
REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

                                                                                                    **Page**

I.      INTRODUCTION .................................................................................................................1

II.     LEGAL STANDARDS .........................................................................................................3

        A.      Standard of Review.................................................................................................3

        B.      Legal Standards on a Motion to Dismiss ...............................................................3

III.    ARGUMENT .........................................................................................................................6

        A.      The R&R Erroneously Recommends that Plaintiff's Claims Be Dismissed ...........6

        B.      The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege
                Claims Under the Securities Act............................................................................12

                1.      The R&R Erroneously Finds that Plaintiff Fails to Adequately
                        Allege Violations of Items 303 and 105 ....................................................15

                2.      The R&R Erroneously Finds that Plaintiff Fails to Adequately
                        Allege Claims Under Section 15 of the Securities Act..............................16

        C.      The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege
                Claims Under the Exchange Act.............................................................................16

                1.      The R&R Erroneously Determines that Plaintiff Fails to
                        Adequately Allege Defendants Issued Materially False and
                        Misleading Statements ...............................................................................16

                2.      The R&R Erroneously Finds Plaintiff Did Not Adequately Plead
                        Scienter ......................................................................................................18

                3.      The R&R Erroneously Recommends Dismissal of Plaintiff's
                        Section 20(a) Claim ...................................................................................21

        D.      The R&R Erroneously Recommends that Plaintiff Be Denied Leave to
                Replead ..................................................................................................................21

IV.     CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  19 F.4th 145 (2d Cir. 2021) ...............................................................................................13

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ...............................................................................................13

*Ayers v. Suffolk Cnty. Dist. Att'y Off.*,
  No. 20-cv-1192 (RPK) (SIL), 2022 WL 4539580
  (E.D.N.Y. Sept. 28, 2022) ....................................................................................................7

*Azaz v. Artus*,
  No. 09-cv-03857 (KAM) (SMG), 2012 WL 5289519
  (E.D.N.Y. Oct. 19, 2012) ......................................................................................................9

*Dogbe v. Delta Air Lines, Inc.*,
  969 F. Supp. 2d 261 (E.D.N.Y. 2013) ..................................................................................7

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...........................................................................................6, 18

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)..................................................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)...............................................................................................................5

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)...............................................................................................................4

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017).....................................................................................5

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)..................................................................................................4

*In re NIO, Inc. Sec. Litig.*,
  No. 19-cv-1424 (NGG) (JRC), 2021 WL 3566300
  (E.D.N.Y. Aug. 12, 2021).................................................................................................4, 5

*In Re: Philip Morris Int'l Inc. Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) ...................................................................................... *passim*

**Page**

*In re Tenaris S.A. Sec. Litig.*,
   493 F. Supp. 3d 143 (E.D.N.Y. 2020) .................................................................................5, 6

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ................................................................................................15

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013)..................................................................................................8

*LeMatta v. Casper Sleep, Inc.*,
   No. 20-cv-2744 (MKB), 2022 WL 4637795
   (E.D.N.Y. Sept. 30, 2022).....................................................................................................7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)................................................................................................22

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)................................................................................................................5

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)........................................................................................5, 6, 19

*Nutriband, Inc. v. Kalmar*,
   No. 19-cv-2511 (NGG) (SJB), 2020 WL 4059657
   (E.D.N.Y. July 20, 2020) ....................................................................................................18

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)..................................................................................................4

*Saskatchewan Healthcare Emps.'s Pension Plan v. KE Holdings Inc.*,
   No. 1:21-cv-11196-GHW, 2024 WL 775195
   (S.D.N.Y. Feb. 26, 2024) ................................................................................................4, 13

*See v. Gov't Emps. Ins. Co.*,
   No. 21-cv-547 (PKC) (JMW), 2023 WL 2731697
   (E.D.N.Y. Mar. 30, 2023) .....................................................................................................9

*Steamship Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*,
   No. 22-cv-8228 (JSR), 2023 WL 8287681
   (S.D.N.Y. Nov. 30, 2023) ...................................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).........................................................................................................4, 6

**Page**

*U.S. v. Male Juvenile,*
    121 F.3d 34 (2d Cir. 1997)....................................................................................................3

*Velez v. DNF Assocs., LLC,*
    No. 1:19-cv-11138-GHW-SDA, 2020 WL 6946513
    (S.D.N.Y. Nov. 25, 2020) ....................................................................................................3

*Wang v. Cloopen Grp. Holding Ltd.,*
    661 F. Supp. 3d 208 (S.D.N.Y. 2023).................................................................................5

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
    §77k..............................................................................................................................1, 4
    §77l(a)(2) .....................................................................................................................1, 4
    §77o........................................................................................................................1, 4, 16
    §78j(b)..........................................................................................................................1, 4
    §78t(a) ..............................................................................................................................1

17 C.F.R.
    §240.10b-5(b)....................................................................................................................5

28 U.S.C.
    §636(b)(1) .........................................................................................................................3
    §636(b)(1)(A).....................................................................................................................3

Federal Rules of Civil Procedure
    Rule 8 ..............................................................................................................................13
    Rule 9(b) ...................................................................................................................4, 5, 13
    Rule 12(b)(6).................................................................................................................3, 4
    Rule 72(b) ..........................................................................................................................1
    Rule 72(b)(2).....................................................................................................................3

Lead Plaintiff SEPTA Pension Plan Master Trust ("Plaintiff") respectfully submits these specific objections under Fed. R. Civ. P. 72(b) to Magistrate Judge Vera M. Scanlon's Report and Recommendation, dated February 25, 2024 (the "R&R"). ECF No. 103. In the R&R, Magistrate Judge Scanlon determined that Plaintiff's claims under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") should be dismissed with prejudice with no leave to replead. For the reasons set forth below, Plaintiff respectfully objects to the R&R.[1]

## I.    INTRODUCTION

Defendant Immunovant, Inc. ("Immunovant"), a clinical-stage biopharmaceutical company, conducted clinical trials on IMVT-1401, its only drug candidate during the Class Period (October 2, 2019 to February 1, 2021). This action focuses on Defendants' materially untrue, false and misleading statements about IMVT-1401. Plaintiff's Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC") alleges claims under Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.[2] ECF No. 82.

The SAC alleges detailed facts, corroborated by multiple sources, showing there was an undisclosed important potential risk that IMVT-1401 could elevate LDL and total cholesterol levels, which would increase the risk of cardiovascular disease. Among other things, Immunovant's

---

[1]    Unless otherwise indicated, emphasis is added and internal quotations, citations and alterations are omitted.

[2]    Plaintiff respectfully refers the Court to the SAC and Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the SAC (ECF No. 95) for a detailed discussion of the facts and Plaintiff's claims. Plaintiff respectfully refers the Court to the arguments in Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the SAC as to why Defendants' motions to dismiss should be denied in their entirety, and Plaintiff incorporates those arguments herein. References to "¶" and "¶¶" refer to the SAC.

preclinical animal studies revealed substantial elevations in the cholesterol levels of animals which received the drug, numerous scientific studies and articles would have put them on notice about this potential risk, and other companies developing similar drugs monitored cholesterol levels in their trials. *Id*. at 3. And significantly, Immunovant itself was secretly monitoring cholesterol in IMVT-1401's Phase 2b trial, strongly indicating Defendants were aware of this important potential risk. Defendants, however, failed to disclose this risk to investors.

The SAC alleges Defendants misrepresented and failed to disclose that: (1) IMVT-1401 was not as safe as Defendants led investors to believe; (2) there was a potential risk IMVT-1401 would substantially increase cholesterol levels; (3) Immunovant failed to monitor and assess this potential risk during its Phase 1 or 2a clinical trials; (4) Immunovant failed to follow Good Clinical Practices ("GCP"); and (5) Immunovant's business, operations, and financial condition were not as Defendants represented. *Id*. at 2. Since Defendants failed to adequately warn investors about potential risks of IMVT-1401, Immunovant common stock traded at artificially inflated prices and reached predetermined price targets enabling Defendants Roivant Sciences Ltd. ("Roivant"), Roderick Wong and others to obtain "earnout shares" valued at more than $600 million. ¶7. Eventually, on February 2, 2021, investors learned of this important potential risk when Immunovant suddenly announced the halting of its Phase 2b clinical study because of reported elevations in cholesterol, causing Immunovant stock to decline by more than 42%. ¶319.

Plaintiff alleges claims under the Securities Act based on materially untrue and misleading statements and omissions in the offering documents for Immunovant's September 2020 stock offering (the "Sept. 2020 Offering Documents"). Plaintiff alleges claims under the Exchange Act based on Defendants' materially false and misleading statements made during the Class Period in SEC filings, press releases, presentations and during conference calls.

- 2 -

Plaintiff filed the SAC on March 17, 2023.  ECF No. 82.  Defendants split into three groups and served three motions to dismiss the SAC on April 28, 2023.  Plaintiff served the Omnibus Opposition to Defendants' Motions to Dismiss the SAC on June 9, 2023 (ECF No. 95) and on June 30, 2023, Defendants served reply briefs.  *See* ECF Nos. 97-100.  Plaintiff and Defendants requested that Magistrate Judge Scanlon hear oral argument on the motion to dismiss briefing to "facilitate a more complete presentation of the issues to the Court."  ECF No. 101.  On February 22, 2024, Magistrate Judge Scanlon rejected the parties' request for oral argument.  On February 25, 2024, Magistrate Judge Scanlon issued the R&R recommending "that Defendants' motions to dismiss be granted and that the [SAC] be dismissed in its entirety."  ECF No. 103 at 3.

## II.   LEGAL STANDARDS

### A.   Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1).  Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report.  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).  When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*; *U.S. v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected.  28 U.S.C. §636(b)(1)(A); *Velez v. DNF Assocs., LLC*, No. 1:19-cv-11138-GHW-SDA, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020).

### B.   Legal Standards on a Motion to Dismiss

On a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to

- 3 -

plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts must "accept all factual allegations in the complaint as true" on Rule 12(b)(6) motions); *In re NIO, Inc. Sec. Litig.*, No. 19-cv-1424 (NGG) (JRC), 2021 WL 3566300, at *4 (E.D.N.Y. Aug. 12, 2021) ("In considering the sufficiency of the operative complaint, the court . . .'draw[s] all reasonable inferences in the plaintiff's favor.'").

### 1.    The Securities Act

The Securities Act imposes "a stringent standard of liability," which "is virtually absolute [against the issuer], even for innocent misstatements[.]" *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Rule 9(b)'s heightened pleading standards do not apply. *Saskatchewan Healthcare Emps.'s Pension Plan v. KE Holdings Inc.*, No. 1:21-cv-11196-GHW, 2024 WL 775195, at *31 (S.D.N.Y. Feb. 26, 2024). "Sections 11, 12(a)(2), and 15 of the Securities Act impose liability on certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010).

The elements of a Section 11 claim are as follows: "(1) [Plaintiff] purchased a registered security"; "(2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Id*. at 358-59 (citing 15 U.S.C. §77k(a)). Section 12(a)(2) applies to prospectuses or oral communications. *Id*.

### 2.    The Exchange Act

The elements of a claim under Section 10(b) and Rule 10b-5(b) are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

- 4 -

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  Exchange Act claims are subject to Rule 9(b) so "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiff satisfies Rule 9(b) if a complaint specifies the allegedly fraudulent statements, identifies the speaker of those statements, states when and where the statements were made, and explains why the statements were fraudulent.  *NIO*, 2021 WL 3566300, at *4.

Rule 10b-5 prohibits "mak[ing] any untrue statement of a material fact or [] omitt[ing] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 224 (S.D.N.Y. 2023) (citing 17 C.F.R. §240.10b-5(b)).  Further, "[w]hile parties generally have no independent duty to disclose all material nonpublic information, once a party chooses to speak, it has a duty to be both accurate and complete."  *Id*. at 226.  Omissions are material where there is a "substantial likelihood" that the disclosure of the omitted fact "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).  "[A] complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017).

### 3. Scienter

Scienter may be plead by showing: (1) that the defendants had "motive and opportunity" to commit the fraud; or (2) "strong circumstantial evidence of recklessness or conscious misbehavior."  *Novak v. Kasaks*, 216 F.3d 300, 309-10 (2d Cir. 2000); *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d

- 5 -

143, 162-63 (E.D.N.Y. 2020).  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,'" so long as it is "at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 324.

To show motive, a plaintiff "must allege that the corporate defendant or its officers benefitted in some concrete and personal way from the purported fraud," typically by alleging corporate insiders "made a misrepresentation in order to sell their own shares at a profit."  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Recklessness may be shown "where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud."  *Novak*, 216 F.3d at 308.

## III.   ARGUMENT

### A.   The R&R Erroneously Recommends that Plaintiff's Claims Be Dismissed

The R&R determines that Plaintiff has not adequately pled falsity under the Securities Act and has not adequately plead falsity or scienter under the Exchange Act.  Additionally, the R&R determines that Plaintiff has not adequately pled control person claims under both the Securities Act and the Exchange Act because Plaintiff has not adequately pled the underlying violations.  Plaintiff objects to these recommendations.

The R&R fails to draw inferences in Plaintiff's favor, inappropriately draws inferences in favor of Defendants, and inappropriately considers facts not alleged in the SAC or properly in the record.  *See*, *e.g.*, *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (reversing district court's dismissal of securities-fraud complaint, because "[i]n granting the defendants' motion to dismiss, the [district] court did not draw" "all reasonable inferences in favor of the non-moving

party"); *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 265 n.2 (E.D.N.Y. 2013) (Matsumoto, J.) ("The court, however, declines, as it must, to infer or assume any facts not contained in plaintiff's Amended Complaint for purposes of the instant motions to dismiss."); *Ayers v. Suffolk Cnty. Dist. Att'y Off.*, No. 20-cv-1192 (RPK) (SIL), 2022 WL 4539580, at *5 (E.D.N.Y. Sept. 28, 2022) (denying motion to dismiss because it relied on "assertions . . . not contained in the complaint or incorporated documents[] and . . . not susceptible to judicial notice").

> In finding for Defendants, the R&R states:
>
> The Court views the overarching issue pertaining to both the Securities Act and the Exchange Act claims presented by Plaintiff's allegations and, by extension, Defendants' motions to dismiss, to be whether Defendants' challenged statements were material misrepresentations or omissions ***because the clinical trials for the Drug should have been designed differently***, such that cholesterol ***levels should have been monitored in earlier phases of the trials***, and because the decision not to monitor cholesterol in earlier phases of the trials should have been disclosed to investors, in view of, in Plaintiff's view, the clear link between the Drug and decreased albumin levels, as well as between decreased albumin levels and elevated cholesterol levels.

R&R at 12-13. The R&R should be rejected because it incorrectly describes as an "overarching issue" for both Plaintiff's Securities Act and Exchange Act claims whether Defendants' statements were material misrepresentations or omissions because the clinical trials should have been ***designed differently***. *Id.* Contrary to the R&R, Plaintiff does not allege how Immunovant should have designed its clinical trials or that Defendants violated the securities laws because they should have designed the clinical trials differently. Rather, Plaintiff focuses exclusively on Defendants' ***statements*** about IMVT-1401 and its clinical trials. Specifically, Plaintiff does not allege that Defendants were required to test for elevations in cholesterol. Immunovant was free to design its trials as it wanted. But once Defendants made statements about those trials, they were obligated to provide complete and accurate disclosures. *LeMatta v. Casper Sleep, Inc.*, No. 20-cv-2744 (MKB), 2022 WL 4637795, at *9 (E.D.N.Y. Sept. 30, 2022) ("[B]ecause [Defendants] chose to speak about

- 7 -

[a topic], [Defendants] had an obligation to ensure its statements were 'both accurate and complete[.]'").

*Since* elevated cholesterol levels were an important potential risk, and ***because*** Immunovant did not test for cholesterol elevations in the early clinical trials, Defendants' statements about safety and the lack of adverse events were misleading. Had Defendants simply advised investors that they did not monitor cholesterol in the early clinical trials but were monitoring cholesterol in the later trials, Plaintiff would not have alleged Defendants' statements were misleading. Therefore, contrary to the R&R, whether Immunovant should have designed its clinical trials differently is not an overarching issue of Plaintiff's claims. Rather, Plaintiff's claims focus on whether Defendants' statements were inaccurate or misleading. Since the R&R incorrectly describes an overarching issue of Plaintiff's claims, and since that issue is an important basis for the R&R's recommendation to grant Defendants' motions to dismiss, Plaintiff respectfully requests that the Court reject the R&R's recommendations.

The R&R also incorrectly frames each of Plaintiff's claims as being about a dispute over the proper interpretation or analysis of scientific data and finds Defendants' views reasonable. *See, e.g.*, R&R at 13 (quoting *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013)) (stating, "where a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement"). Plaintiff does not dispute the interpretation of scientific data or the interpretation of clinical trial results. Plaintiff alleges that Defendants failed to disclose an important potential risk of IMVT-1401 (*i.e.*, that it could elevate cholesterol) and that Defendants' descriptions of the drug as safe and well-tolerated were misleading because Immunovant did not monitor cholesterol in early clinical trials. The SAC alleges a reasonable investor would have wanted to know of this important

potential risk and that statements about safety did not incorporate the monitoring or evaluation of this risk.

And even if *some* of Plaintiff's claims are properly considered a scientific dispute, as opposed to simply factual or opinion statements, the R&R incorrectly determines that Defendants' interpretations were reasonable. Indeed, in finding that all of Defendants' views are reasonable as a matter of law, the R&R incorrectly failed to draw inferences in Plaintiff's favor, considered facts not properly before the Court, and drew inferences in Defendants' favor.

In reaching its recommendations, the R&R relies heavily on the Second Circuit's holding in *In Re: Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408 (2d Cir. 2023) ("*Philip Morris*"), which was decided on December 26, 2023, months after Defendants' motions to dismiss had been fully briefed. As a result, Plaintiff has not had an opportunity to address or distinguish that holding so the Court should review its application *de novo*. *See*, *e.g.*, *Azaz v. Artus*, No. 09-cv-03857 (KAM) (SMG), 2012 WL 5289519, at *2 (E.D.N.Y. Oct. 19, 2012) (Matsumoto, J.) (applying *de novo* review to an issue raised *sua sponte* by the magistrate); *see also See v. Gov't Emps. Ins. Co.*, No. 21-cv-547 (PKC) (JMW), 2023 WL 2731697, at *7 n.11 (E.D.N.Y. Mar. 30, 2023) (applying *de novo* review to address a Second Circuit decision issued after the end of briefing, such that the parties "could not have raised that decision").

The R&R relies on *Philip Morris* to reach the conclusion that it was reasonable for Defendants to not view elevated cholesterol as an important potential risk. R&R at 16. The R&R also concluded that it was reasonable for Defendants to describe IMVT-1401 as safe, well tolerated and without adverse events without disclosing that elevated cholesterol was an important potential risk or that Immunovant failed to monitor cholesterol levels. R&R at 21.

Plaintiff's claims, however, are distinguishable from the claims addressed in *Philip Morris*.

In *Philip Morris*, the Second Circuit addressed, among other things, the following:

> Second, where a securities-fraud defendant's challenged statements express an interpretation of scientific data that is ***ultimately endorsed by the Food and Drug Administration*** (the "FDA"), are such statements per se "[ ]reasonable" (i.e., supported by "meaningful inquiry") as a matter of law under *Tongue v. Sanofi*, 816 F.3d 199, 210, 214 (2d Cir. 2016) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188, 135 S.Ct. 1318, 191 L.Ed.2d 253 (2015))[.]

89 F.4th at 414. In *Philip Morris*, the FDA conducted a detailed "June 2020 Scientific Review" and the Second Circuit found that the "conclusions by the FDA essentially mirror Defendants' carefully measured statements about the IQOS studies' implications for long-term health outcomes." *Id*. at 421. The Second Circuit held that "the FDA's ultimate endorsement of Defendants' interpretation of the clinical-studies data conclusively establishes that Defendants' statements were reasonable, and therefore not actionable, under *Tongue* and *Omnicare*." *Id*. at 422.

Unlike in *Philip Morris*, the FDA did not review or analyze IMVT-1401 in the context of Defendants' statements about the safety of the drug and nothing Plaintiff alleges to be misleading or omitted was endorsed by the FDA. Nevertheless, the R&R determined that the FDA endorsed Defendants' scientific position, stating in part as follows:

> The reasonableness of Defendants' scientific position is evidenced by ***the FDA's approval of the clinical trial primarily at issue***, for thyroid eye disease, which was designed in 2018 and updated in February 2019 and August 2019. See ECF No. 82 ¶91. If the issues with cholesterol levels tied to the Drug were as obvious and critical as Plaintiff claims, the FDA would not have permitted the clinical trials to proceed without cholesterol monitoring until Phase 2b and would not, as Plaintiff admits, allowed for progress with the Drug such that "Immunovant could potentially sell IMVT-1401 to patients if it ultimately obtains FDA approval." Id. ¶184. The design of the trial to commence cholesterol monitoring of certain risks to the human subjects diagnosed with cholesterol-related factors part-way through the trial could be subject to reasonable scientific disagreement, but the FDA accepted Defendants' proposed approach when it approved the trial. Defendants' statements were thus reasonable. Defendants have not satisfactorily alleged securities claims based on their post-hoc reassessment of the trial design where the actual trial met the FDA's standards. This

- 10 -

alleged reasonable scientific disagreement between Plaintiff and Defendants is not the permissible subject of a securities fraud action.

R&R at 16-17. Plaintiff objects to the R&R's determination that the reasonableness of Defendants' position is supported by the FDA's review of the design of the IMVT-1401 clinical trial.

First, the SAC does not allege facts about the FDA's review of the clinical trials which would enable the Court to consider the above facts or draw the above inferences, so this finding is inappropriate. Second, even if the FDA may have reviewed the design of the clinical study, unlike in *Philip Morris*, it did not review anything related to Defendants' ***statements*** which Plaintiff challenged. Third, Plaintiff does not allege that Immunovant was required to monitor cholesterol in early clinical trials or that there were flaws in the design of the early clinical trials. Rather, Plaintiff alleges that Defendants were required to disclose all material facts concerning the safety of IMVT-1401, including that cholesterol elevations were an important potential risk. Fourth, there is nothing in the record to suggest that the FDA considered whether cholesterol elevations were an important potential risk of IMVT-1401. Fifth, what the FDA did and did not consider raises a host of factual issues inappropriate at this stage, including whether Immunovant even provided the FDA with the underlying data for the animal studies or whether the FDA discussed cholesterol with Immunovant.

Furthermore, even though Plaintiff claims Defendants' statements of GCP compliance were misleading because under GCP they were required to monitor all important potential risks, including cholesterol, there are no facts in the record from which one can draw the conclusion that the FDA reviewed whether the early clinical trials were conducted in accordance with GCP. And, the GCP allegation stands by itself and is distinct from the challenges to Defendants other statements. In fact, *Philip Morris* even treats statements regarding compliance with GCP separately from other statements. *See Philip Morris*, 89 F.4th at 418. Since the R&R relies heavily on *Philip Morris*, Plaintiff respectfully requests that the Court reject the conclusions in the R&R.

- 11 -

**B.     The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege Claims Under the Securities Act**

The R&R determines Plaintiff has not adequately alleged falsity or control person claims and therefore recommends dismissal of Plaintiff's claims under the Securities Act based on statements in the Sept. 2020 Offering Documents.  R&R at 21.  In finding for Defendants, the R&R states that "Plaintiff's allegations against Defendants are founded on a fundamental disagreement as to the interpretation of scientific data" and "Plaintiff has not alleged sufficient facts to support the conclusion that Defendants misleadingly interpreted the available scientific material . . . in taking the position that mild albumin increases were . . . of unclear import." *Id*. at 16.  To that end, the Court found that Plaintiff did "not satisfactorily allege[] securities claims based on [its] post-hoc reassessment of the trial design where the actual trial met the FDA's standards." *Id*. at 17.

Plaintiff objects to the R&R because it fails to credit Plaintiff's well pled allegations showing it is plausible that elevated cholesterol was an important risk of IMVT-1401.  The R&R fails to give proper weight to the SAC's numerous detailed facts supporting a plausible inference elevated cholesterol was an important anticipated risk, including the substantial elevations shown from the data in the animal studies. *See* ¶¶91(a), 92-98.  The R&R incorrectly minimizes the cholesterol data from the animal studies as a scientific disagreement even though the data from the studies showed 200 to 300 percent increases in cholesterol and that "each of the studies revealed significant increases in cholesterol."  ¶93.

At the same time, the R&R gives undue weight to the indications in the summary portion of the report that there were only minor increases in cholesterol.  R&R at 41-42.  The R&R should have accepted as true the fact that the animal studies showed substantial elevations in cholesterol and should have also accepted as true that the summary portion was wrong when it indicated that there

- 12 -

were only minor increases in cholesterol. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("[F]act-specific question[s] cannot be resolved on the pleadings.").

Furthermore, the R&R should have viewed all of Plaintiff's allegations together, instead of in isolation, which further support an inference that cholesterol elevations were an important potential risk. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021) ("We can infer from these allegations, taken together, that the statement in the Proxy Materials . . . was misleading."). Indeed, the SAC alleges that Immunovant itself was monitoring cholesterol in the Phase 2b trial and therefore the R&R should have drawn the inference that Immunovant itself viewed cholesterol elevations as an important potential risk. Accordingly, the R&R should have accepted that elevated cholesterol levels were an important potential risk of IMVT-1401 as true.

The R&R also incorrectly applied Rule 9(b) instead of Rule 8 as the pleading standard for Plaintiff's Securities Act claims. The R&R, however, states that Plaintiff "fails to meet this Circuit's heightened fraud standard in the Securities Act context" and inappropriately applies the more stringent Rule 9(b) pleading standard to Plaintiff's Securities Act claims even though Rule 8 should apply. R&R at 21. *Saskatchewan Healthcare*, 2024 WL 775195, at *32 (discussing how Securities Act claims sound in negligence and not fraud). The R&R fails to provide any analysis as to why it applies Rule 9(b) instead of Rule 8, and the R&R ignores that the SAC separates the Securities Act and Exchange Act claims. *Id.* ("the complaint is 'structured so as to draw a clear distinction between negligence and fraud claims,' [and] [t]he allegations related to the Securities Act claims reside in a separate section of the complaint, and each Securities Act claim is pleaded independently").

Additionally, the R&R concludes that the omitted facts from the Sept. 2020 Offering Documents would not substantially undermine the conclusion of a reasonable investor without explaining the basis for the conclusion. R&R at 16. Contrary to the R&R, a reasonable investor

- 13 -

would have deemed it important to learn that an important potential risk of IMVT-1401 was elevated cholesterol and that Defendants described IMVT-1401 as safe and well-tolerated, even though Immunovant did not evaluate this important potential risk.

Even when the R&R appears to accept Plaintiff's facts as plausibly pled, it still determined that the statements in the Sept. 2020 Offering Documents were not misleading.  The R&R states:

> A reasonable investor's conclusions about Defendants' fairly general statements about the Drug development would not have been substantially undermined even by Plaintiff's interpretation of the scientific data as showing that the albumin increases were clinically significant.  The statements by Defendants are not well characterized as alleged misrepresentations or omissions for securities law purposes and are not actionable.

R&R at 16.  Plaintiff objects to the above finding in the R&R that the statements in the Sept. 2020 Offering Documents were not misleading because the SAC alleges facts raising a plausible inference those statements were misleading and because investors would have found those omitted facts material.  ¶¶125-128.  At a minimum, whether the statements are misleading is typically an issue of fact inappropriate for a motion to dismiss.  *See Steamship Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, No. 22-cv-8228 (JSR), 2023 WL 8287681, at *10 (S.D.N.Y. Nov. 30, 2023) (Rakoff, J.) ("whether a statement is false or misleading is a question of fact").  Additionally, the R&R cites to *Philip Morris* to support its conclusion that the omitted statements would not substantially undermine the "conclusion [that] a reasonable investor would reach from [the] statement."  R&R at 15-16 (citing *Philip Morris*, 89 F.4th at 423).  Plaintiff objects to the R&R because it determined that the omissions are not material as a matter of law but reached its conclusion without any meaningful discussion.

It cannot be seriously disputed that the eventual reported elevations in cholesterol were material facts, as shown by the halting of the IMVT-1401 study at the end of the Class Period, the modification of the clinical trial protocol, and the emphasis Immunovant placed on the development

of IMVT-1402 as a replacement drug. ¶¶118, 184-194. An inference should therefore be drawn in favor of Plaintiff that the failure to disclose that elevations in cholesterol were an important potential risk was also material. At a minimum, it is an issue of fact not appropriate to be resolved at the motion to dismiss stage. *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 146 (2d Cir. 2021) (the Court is "required to credit the plaintiffs' plausible theory when evaluating a Rule 12(b)(6) motion" and give "defendants' contrary and competing explanation for [their] statements . . . little weight at this stage of litigation[.]").

Furthermore, the R&R's conclusion that Defendants' statements of compliance with GCP are not actionable under *Philip Morris* should be rejected. Plaintiff's claims are distinguishable from those alleged in *Philip Morris*. In *Philip Morris*, the court held that the GCP statements were not actionable because the plaintiffs pointed to "GCP violations" as the "facts" that "[D]efendants knew of," but "omitted" from, their "statements about . . . compliance with GCP." 89 F.4th at 419. Here, Plaintiff alleges that the statements about GCP compliance were misleading because Defendants failed to disclose that Immunovant did not test for an important potential risk, elevated cholesterol. ¶151. Whether Immunovant monitored cholesterol, an important potential risk, was an omitted fact, not simply a statement that Immunovant failed to comply with GCP.

### 1. The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege Violations of Items 303 and 105

With respect to Plaintiff's Securities Act claims based on violations of Items 303 and 105, the R&R refers to its application of *Philip Morris* to Plaintiff's alleged misrepresentations and omissions and states, "[b]ecause Plaintiff has not alleged sufficient facts to substantially undermine Defendants' reasonably held scientific position, the Court also cannot reach the conclusion that Plaintiff's contrary scientific position as to the aforementioned items made them reasonably likely to materially affect Immunovant's financial condition or operational results." R&R at 22-23. For the

- 15 -

same reasons Plaintiff objects to the R&R's recommendations regarding the misrepresentations and omissions in the Sept. 2020 Offering Documents, Plaintiff objects to the R&R with respect to its rejection of Plaintiff's Items 303 and 105 claims.

### 2.  The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege Claims Under Section 15 of the Securities Act

The R&R states, "[b]ecause the Court finds that there is no primary violation, supra, Sec. III(A)(1), there cannot be any control person liability."  R&R at 24.  Since Plaintiff adequately alleges underlying Securities Act claims, Plaintiff objects to the R&R's recommendation that Plaintiff's Section 15 claims be dismissed.

### C.  The R&R Erroneously Finds that Plaintiff Fails to Adequately Allege Claims Under the Exchange Act

The R&R concludes that the SAC fails to adequately allege Defendants issued materially false or misleading statements or omitted material information during the Class Period.  The R&R also concludes that the SAC fails to adequately allege scienter or control person claims.  As discussed below, Plaintiff objects to these findings and respectfully requests that the Court reject those findings in the R&R.

### 1.  The R&R Erroneously Determines that Plaintiff Fails to Adequately Allege Defendants Issued Materially False and Misleading Statements

As with Plaintiff's claims under the Securities Act based on the Sept. 2020 Offering Documents, the R&R cites to *Philip Morris* and determines that most of Defendants' statements are not actionable under the Exchange Act because they are differences of scientific opinion and that Defendants' competing views were reasonable as a matter of law.  *See, e.g.*, R&R at 27-29 (statements categorized as "1, 2(a), 2(d), 2(g), 3(b), 3(c), 3(d), 3(e), and 4").  Specifically, the R&R states:

- 16 -

Here, Defendants' fairly general statements about the Drug development were not substantially undermined by Plaintiff's interpretation of the scientific data, namely that the animal studies, literature in the field, diseases treated, and other companies' trial designs show that Defendants' statements were misleading. Plaintiff has not alleged facts to show that Defendant's interpretation of the literature and other sources indicated that mild albumin increases evidenced a lack of clinical symptoms or was unclear.

R&R at 29. Plaintiff objects to the R&R because, as discussed above in connection with Plaintiff's Securities Act claims, it fails to draw inferences in Plaintiff's favor, inappropriately considers facts not properly before the Court, and inappropriately draws inferences in Defendants' favor. Additionally, for the reasons discussed above, Plaintiff's claims are distinguishable from *Philip Morris*.

With respect to the statements identified as 3(g) (R&R at 28: "statements that all studies and trials were being conducted in all material respects in accordance with accepted standards and applicable laws and regulations, given the failure to disclose the failure to comply with GCP and FDA rules by failing to monitor cholesterol levels, *see id.* ¶¶ 239-40"), the R&R recommends dismissal based on *Philip Morris*. As discussed above, Defendants' statements concerning compliance with GCP were misleading because Defendants failed to disclose they did not monitor cholesterol, which is a fact, and therefore distinguishable from *Philip Morris* and actionable.

The R&R identifies categories 2(a), 2(b), 2(f), and 3(a) as inactionable puffery. Plaintiff objects to the R&R because those statements are objective and identifiable. For example, category 2(b) refers to statements about "first-in-class and best-in-class potential" (¶¶222, 246, 252, 254, 276) can be refuted because elevations in cholesterol would cause IMVT-1401 to objectively not be "first-in-class" or "best-in-class."

The R&R also does not consider any of the alleged omissions to be material. As discussed above, an inference should be drawn in Plaintiff's favor that the omission of elevations in cholesterol was both an important potential risk and was also material. At a minimum, it is an issue of fact not

- 17 -

appropriate to be resolved at the motion to dismiss stage. *Nutriband, Inc. v. Kalmar*, No. 19-cv-2511 (NGG) (SJB), 2020 WL 4059657, at *6 (E.D.N.Y. July 20, 2020) ("In resolving a Rule 12(b)(6) motion, the court's task is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof . . . [i]n this context, the court must draw reasonable inferences in favor of the non-moving party.'").

### 2. The R&R Erroneously Finds Plaintiff Did Not Adequately Plead Scienter

The SAC alleges numerous detailed facts raising a strong inference of scienter under both a recklessness standard and under motive and opportunity. The R&R's scienter recommendations should be rejected because the R&R fails to recognize the strength of the underlying facts and because it does not consider the SAC's scienter allegations holistically. *Nutriband*, 2020 WL 4059657, at *7 ("The court's job is not to scrutinize each allegation in isolation, but to consider whether the allegations holistically raise a strong inference of scienter.").

To demonstrate motive, a plaintiff "must allege that [the corporate defendant] or its officers benefitted in some concrete and personal way from the purported fraud," typically by alleging corporate insiders "ma[de] a misrepresentation in order to sell their own shares at a profit." *JP Morgan Chase Co.*, 553 F.3d at 198. Here, Plaintiff has done just that by alleging the Exchange Act Defendants stood to benefit financially from hiding from investors that there was a potential risk that IMVT-1401 could elevate cholesterol levels and could cause cardiovascular disease.

Among other things, the SAC alleges Defendants Roivant and Wong were motivated to artificially inflate the price of Immunovant shares and delay disclosing to investors that elevated cholesterol levels were a potential risk of IMVT-1401 until after they received their lucrative earnout shares. ¶¶316-319. Instead of crediting these allegations, the R&R inappropriately dismissed them as simply a "generalized motive for [i]ncentive compensation." R&R at 35. Obtaining Immunovant

- 18 -

shares worth hundreds of millions of dollars based on Immunovant reaching pre-defined price targets is neither a generalized motive nor incentive compensation and the R&R's recommendation should be rejected.

With respect to Plaintiff's recklessness scienter allegations, "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308. The key question is whether "defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *Id*. The SAC alleges each of the Exchange Act Defendants had access to: (i) the results of the IMVT-1401 animal studies revealing substantial elevations in cholesterol; (ii) the medical studies and literature indicating albumin reductions and IMVT-1401 elevates cholesterol levels; (iii) information concerning IMVT-1401's clinical trials, including that early clinical trials failed to monitor cholesterol; and (iv) information concerning the testing procedures of other companies developing compounds similar to IMVT-1401. ¶¶301-322. And importantly, each of the Exchange Act Defendants were in position to know that Immunovant was monitoring cholesterol in the ASCEND GO-2 Phase 2b trial and therefore should have known cholesterol elevations were an important potential risk. ¶312.

Nevertheless, the R&R concludes, without a meaningful discussion, that Plaintiff's "allegations do not constitute a sufficiently pled 'recklessness' theory of scienter." R&R at 40. The R&R relies on *Philip Morris* and states that a "disagreement as to the interpretation of scientific data is not a basis upon which scienter can be sufficient pled." R&R at 40-41. As discussed above, Plaintiff's claims are distinguishable from *Philip Morris*, and since the R&R's application of *Philip Morris* impacts its recommendation on scienter, the R&R should be rejected.

Additionally, not every statement Plaintiff challenges as misleading can be classified as a scientific disagreement. For example, Defendant Salzmann told investors, "it's pretty hard to find any published literature or expert opinion on what the sequelae of a albumin – of a mild albumin reduction would be." ¶290. Whether literature on a particular topic exists is a fact and not a scientific disagreement. The R&R also describes Defendant Wong's statement that "people in the literature are generally asymptomatic . . ." (¶285) as a scientific disagreement but Plaintiff was not disputing Defendant Wong's interpretation of the literature. Rather, Plaintiff alleges Defendant Wong was minimizing the impact of albumin reductions in IMVT-1401 by pointing to a lack of symptoms in people with albumin reductions in the literature, even though those were two separate things. ¶¶285-286.

With respect to scienter regarding the elevations in cholesterol in the animal studies, the R&R inappropriately draws inferences in Defendants' favor, such as commenting that IMVT-1401 could impact humans and monkeys differently, even though that is not at issue because monkeys were picked precisely to reveal potential risks in humans. R&R at 41. The issue is not whether what happens in monkeys will definitely happen in humans, but whether the animal study results put Defendants on notice that there was a potential risk. Here, based on the allegations in the SAC, there is a strong inference Defendants were on notice that cholesterol elevations were an important potential risk. The R&R also states that "Plaintiff adopts the position that the Former Employee's conclusion as to the data that the animals experienced significant increases in cholesterol levels is conclusive and unambiguous" but describes the discrepancy with the summary of the data as a "disagreement." R&R at 41-42. The R&R, drawing all reasonable inferences in Plaintiff's favor, should have accepted as true Plaintiff's allegation that the summary of the data was wrong for pleading purposes.

With respect to the existence of literature and reports, the R&R states, "Plaintiff has identified specific studies that it alleges supports its scientific position but Plaintiff has failed to allege that Mr. Wong, Roivant, Dr. Salzmann or Immunovant, reviewed such studies, agreed with the conclusions reached in such studies, and more importantly, agreed with the conclusions that Plaintiff alleges should be drawn as to cholesterol-related risks, particularly as to the trial design." R&R at 43. The R&R fails to acknowledge the point of those allegations, which was to show the widespread existence of literature which would have put Defendants on notice of a connection between albumin reductions and elevations in cholesterol. The SAC alleges Defendants were under a duty to search out similar types of articles under GCP, and had they complied with GCP they would have learned about them. ¶¶304, 309-310, 312. And the scientific literature was simply one of a long list of facts putting Defendants on notice about the risk of cholesterol elevations. Finally, the R&R incorrectly disposes of the detailed background allegations of Defendants Wong, Roivant and Salzmann as simply "generalized allegations about . . . educational backgrounds" and the "core-business argument" as not being sufficient to plead scienter, but fails to consider them holistically along with Plaintiff's other allegations. R&R at 43.

### 3.     The R&R Erroneously Recommends Dismissal of Plaintiff's Section 20(a) Claim

The R&R states, "[a]s there is no primary violation, there is no control person liability." R&R at 45-46. Since Plaintiff adequately alleges the underlying Exchange Act claims, Plaintiff objects to the R&R's recommendation that Plaintiff's Section 20(a) claim be dismissed.

### D.     The R&R Erroneously Recommends that Plaintiff Be Denied Leave to Replead

The R&R states that Plaintiff should be denied leave to replead because the "pleading deficiencies" are "inextricably intertwined with Plaintiff's theory of the case and are therefore not curable." R&R at 46. The R&R further states that even if curable, Plaintiff should be denied leave

- 21 -

to replead because "[m]ultiple pleadings have been filed in this action" and "[g]ranting leave to file another pleading in this action would be unreasonable." *Id.* Plaintiff respectfully requests that in the event the Court adopts the recommendations in the R&R, that Plaintiff be afforded the opportunity to file an amended complaint to address any deficiencies recognized by the Court because Plaintiff has not had the benefit of the Court's views on Plaintiff's claims at the time of the amendment. "Without the benefit of a ruling, many a plaintiff will not . . . be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Among other things, Plaintiff can seek to address any deficiencies the Court referenced, including the inclusion of the scienter allegation that Immunovant raised funds which enabled it to develop IMVT-1402, the successor to IMVT-1401.

## IV.    CONCLUSION

For the foregoing reasons and those detailed in Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the SAC, Plaintiff respectfully requests that the Court reject the R&R's recommendations to dismiss Plaintiff's claims.

DATED:  March 11, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
NATALIE BONO

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
nbono@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*