UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x
:
THERESA PITMAN, Individually and on :
Behalf of All Others Similarly Situated, :
:
Plaintiff, :     Civil Action No. 1:21-cv-00918-KAM-VMS
:
v. :
:
IMMUNOVANT, INC. f/k/a HEALTH :
SCIENCES ACQUISITIONS :
CORPORATION, RODERICK WONG, :
PETER SALZMANN, FRANK M. TORTI, :
ANDREW FROMKIN, DOUGLAS HUGHES, :
GEORGE MIGAUSKY, ATUL PANDE, :
ERIC VENKER, SVB LEERINK LLC, :
LIFESCI CAPITAL LLC, CHARDAN :
CAPITAL MARKETS LLC, GUGGENHEIM :
SECURITIES, LLC, ROBERT W. BAIRD & :
CO. INCORPORATED, and ROIVANT :
SCIENCES LTD., :
:
Defendants. :
:
——————————————————————— x

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS
TO THE FEBRUARY 25, 2024 REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    STANDARD OF REVIEW ............................................................................. 2

III.   ARGUMENT ................................................................................................ 2

      A.      Judge Scanlon Applied The Correct Pleading Standards. ..................................... 3

      B.      Judge Scanlon Correctly Recommended Dismissing This Case As An Inactionable Dispute About Trial Design That, In Turn, Is Based Upon The Interpretation Of Scientific Data. .................................................................. 4

      C.      Judge Scanlon Correctly Recommended Dismissing The Exchange Act Claims. .................................................................................................... 10

            1.     Judge Scanlon correctly found that Plaintiff failed to plead a material misstatement or omission............................................................ 10

            2.     Judge Scanlon correctly found that Plaintiff failed to plead scienter. .................................................................................... 13

      D.      Judge Scanlon Correctly Recommended Dismissing The Securities Act Claims. ............................................................................................... 17

      E.      Judge Scanlon Correctly Recommended Dismissing Claims Based On Items 105 And 303 Of Regulation S-K................................................... 18

      F.      Judge Scanlon Correctly Recommended Dismissing The Control Person Claims. ............................................................................................... 19

      G.      Judge Scanlon Correctly Recommended Denying Leave To Amend. ............... 20

IV.   CONCLUSION.......................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abely v. Aeterna Zentaris*,
  2013 WL 2399869 (S.D.N.Y. May 29, 2013) ............................................................6

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs.*,
  2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) ..........................................................20

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*,
  28 F.4th 343 (2d Cir. 2022) ..................................................................................9

*Ark. Tchr. Ret. Sys. v. Bankrate*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014) .....................................................................19

*CDS Bus. Servs. v. H.M.C. Inc.*,
  2021 WL 4458884 (E.D.N.Y. Sept. 28, 2021) ..........................................................2

*Crown Castle Fiber v. Town of Oyster Bay*,
  2024 WL 1090305 (E.D.N.Y. Mar. 13, 2024) .....................................................13, 16

*Erickson v. Jernigan Cap.*,
  2023 WL 5966785 (S.D.N.Y. Sept. 14, 2023) ...........................................................2

*Garber v. Legg Mason, Inc.*,
  537 F. Supp. 2d 597 (S.D.N.Y. 2008) ....................................................................15

*In re Gen. Elec. Sec. Litig.*,
  844 F. App'x 385 (2d Cir. 2021) ...........................................................................15

*Gillis v. QRX Pharma*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016) ....................................................................11

*Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*,
  2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019) ..........................................................20

*Haynes v. Quality Mkts.*,
  2003 WL 23610575 (E.D.N.Y. Sept. 22, 2003) .........................................................2

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) ......................................................................4

*Housey v. Proctor & Gamble*,
  2022 WL 17844403 (2d Cir. Dec. 22, 2022) ............................................................21

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) .................................................................................13

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*In re Keryx Biopharmaceuticals Sec. Litig.*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)................................................................6

*Kleinman v. Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013)........................................................................7

*Kumaran v. Adm Inv. Servs., Inc.*,
  2023 WL 7328136 (S.D.N.Y. Nov. 6, 2023)............................................................7

*McIntire v. China MediaExpress Holdings*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)................................................................19

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)......................................................7, 8, 11, 18

*In Re Philip Morris Int'l Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) ................................................................ *passim*

*Piligian v. Icahn Sch. of Med. at Mount Sinai*,
  490 F. Supp. 3d 707 (S.D.N.Y. 2020)...........................................................13, 16

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Can. Imperial Bank of Com.*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010)..........................................................16, 17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)........................................................................3

*Rubinstein v. Credit Suisse*,
  457 F. Supp. 3d 289 (S.D.N.Y. 2020)..............................................................10

*S. Cherry St., LLC v. Hennessee Grp.*,
  573 F.3d 98 (2d Cir. 2009).........................................................................16

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)................................................................11

*In re Sibanye Gold Sec. Litig.*,
  2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020)........................................................21

*Tabak v. Canadian Solar*,
  549 F. App'x 24 (2d Cir. 2013) ...................................................................21

*Tellabs v. Makor Issues & Rts.*,
  551 U.S. 308 (2007)...........................................................................14, 15

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016).................................................................7, 8, 11

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Zagami v. Cellceutix Corp.*,
   2016 WL 3199531 (S.D.N.Y. June 8, 2016) ........................................................................6, 7

**Statutes & Rules**

28 U.S.C. § 636(b)(1) ......................................................................................................................2

Fed. R. Civ. P. 72(b)(3)...................................................................................................................2

Defendants submit this response to Plaintiff's Objections to Magistrate Judge Scanlon's February 25, 2024, Report and Recommendation ("R&R"), which recommends that the Court dismiss the operative complaint ("SAC") in its entirety, with prejudice.[1]

## I.    PRELIMINARY STATEMENT

Magistrate Judge Scanlon's well-reasoned, 47-page R&R detailed numerous deficiencies compelling the SAC's dismissal. The simplest and most fundamental of those deficiencies is that Plaintiff's entire case rests on a hindsight disagreement about Immunovant's clinical trial design— a theory the Second Circuit has repeatedly found inactionable under the federal securities laws. In response, Plaintiff does little more than rehash the same arguments Judge Scanlon carefully considered and rejected. This Court should reject those arguments again, adopt the R&R in full, and dismiss the SAC with prejudice.

---

[1] The R&R refers to the operative complaint as "third amended complaint," as it is, in fact, the third amended complaint (and fourth overall) filed in this action. Because the document itself is entitled "Second Amended Complaint," however, Defendants refer to it herein as the "SAC."

Citations to "Obj." refers to Plaintiff's Objections to the February 25, 2024 Report and Recommendation (ECF No. 105); "¶" refers to the SAC (ECF No. 82); "IMVT MTD" refers to the Memorandum of Law in Support of Immunovant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 88); "UW MTD" refers to the Memorandum of Law in Support of Underwriter Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 91); "Roivant MTD" refers to the Memorandum of Law in Support of the Motion to Dismiss of Roivant Sciences Ltd. (ECF No. 93); "Opp." refers to Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the Second Amended Complaint (ECF No. 95); "IMVT Reply" refers to the Reply Memorandum of Law in Further Support of Immunovant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 97); "UW Reply" refers to the Reply Memorandum of Law in Further Support of Underwriter Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 98); and "Roivant Reply" refers to the Reply Memorandum of Law in Support of the Motion to Dismiss of Roivant Sciences Ltd. (ECF No. 99). Unless otherwise noted, defined terms herein have the same meaning as in the R&R, all emphasis is added, and all citations, quotation marks, and alterations are omitted.

## II.   STANDARD OF REVIEW

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Any portion of a report and recommendation "that has been properly objected to" is reviewed *de novo*. Fed. R. Civ. P. 72(b)(3). "Any portion of a report and recommendation to which no specific timely objection is made, or to which only general, conclusory or perfunctory objections are made, is reviewed only for clear error." *CDS Bus. Servs. v. H.M.C. Inc.*, 2021 WL 4458884, at *1 (E.D.N.Y. Sept. 28, 2021). "A clear error review is also appropriate where a party merely restates or rehashes the same arguments that party originally made," *id.*, as such objections "would reduce the magistrate's work to something akin to a meaningless dress rehearsal," *Erickson v. Jernigan Cap.*, 2023 WL 5966785, at *2 (S.D.N.Y. Sept. 14, 2023). Furthermore, "parties may not raise new arguments for the first time in objections to a report and recommendation." *Id.* Even "on *de novo* review, [the Court] will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the Magistrate Judge in the first instance." *Haynes v. Quality Mkts.*, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003).

## III.   ARGUMENT

In a comprehensive, 47-page R&R, Judge Scanlon recommended dismissing the SAC in its entirety. As this Court recognized, "expansive briefing . . . informed Magistrate Judge Scanlon's R&R," and only a "narrow scope of review [is] permitted at this stage." (Mar. 1, 2024, Dkt. Order.) Despite this, Plaintiff largely rehashes the same arguments raised in its opposition to Defendants' motions to dismiss. This Court should review them for clear error and reject them again. *See CDS Bus. Servs.*, 2021 WL 4458884, at *1 ("merely restat[ing] or rehash[ing] the same arguments" merits "clear error review").

A.      **Judge Scanlon Applied The Correct Pleading Standards.**

To begin with, Plaintiff argues that Judge Scanlon applied incorrect pleading standards. (Obj. at 6, 9, 11, 13.) That argument is wrong from every angle.

Judge Scanlon limited her analysis to the facts properly before her. Though Plaintiff seems to suggest otherwise (*id.* at 6, 9, 11), Judge Scanlon declined to consider *every* exhibit to which Plaintiff objected. (*Compare* Opp. at 21–24 (arguing that Exhibits 4, 5, 6, and 13 should not be considered for their truth), *with* R&R at 2 n.3 (declining to consider Exhibits 4, 5, 6, and 13 for their truth).) As for Plaintiff's assertion that "the SAC does not allege facts about the FDA's review of the clinical trials" (Obj. at 11), Plaintiff simply ignores that the SAC contains a multipage explanation of the FDA testing and approval process to which Immunovant's clinical trials were subject. (¶¶ 73–79; *see* ¶ 75 ("Prior to initiating any clinical trials involving human subjects, an IND application must be filed. . . . After submission of the first in human (FIH) study protocol, the FDA has 30 days to review the protocol before the study can be initiated in humans.").)

Judge Scanlon also drew all reasonable inferences in Plaintiff's favor. Plaintiff's only counterexample is Judge Scanlon's conclusion that Defendants' competing interpretation of scientific data was reasonable. (Obj. at 9.) But that conclusion was not the product of "fail[ing] to draw inferences in Plaintiff's favor" (*id.*); it was the clear application of pleading-stage precedent concerning reasonable scientific disagreements. (*Infra* Part III.B); *In Re Philip Morris Int'l Sec. Litig.*, 89 F.4th 408, 420 (2d Cir. 2023) (holding, at the pleading stage, that where a "defendant's competing analysis or interpretation of data is itself *reasonable*, there is no false statement") (emphasis in original).

Finally, Judge Scanlon correctly ruled that Rule 9(b) applies to Plaintiff's Securities Act claims. Where, as here, claims under Sections 11 and 12(a)(2) are "premised on allegations of fraud," Rule 9(b) applies. *Rombach v. Chang*, 355 F.3d 164, 171–72 (2d Cir. 2004). This issue

was addressed at length in the parties' motion to dismiss briefing, including the argument Plaintiff now rehashes that "the SAC separates the Securities Act and Exchange Act claims." (Obj. at 13; *see* IMVT MTD at 39–40; UW MTD at 14–15 n.8; Opp. at 77–78; IMVT Reply at 10 n.8.) And Judge Scanlon's finding on this issue is amply supported. *See, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 (S.D.N.Y. 2021) ("Though plaintiffs separate their claims under the Securities Act and the Exchange Act and disclaim fraud as a basis for their Securities Act claims, their claims rest on the same theory . . . Accordingly, the Securities Act claims are assessed in accordance with Rule 9(b).").

Ultimately, however, Judge Scanlon's conclusions did not turn on whether the Rule 9(b) or Rule 8 pleading standard applies to the Securities Act claims. While Judge Scanlon noted the "heightened fraud standard in the Securities Act context," she concluded that these claims failed because they rested on Plaintiff's "interpretation of the scientific data." (R&R at 21.) As Judge Scanlon explained at length, disagreements about trial design and the interpretation of scientific data cannot support an actionable securities claim as a matter of law—regardless of the applicable pleading standard. (*Id.* at 12–17.)

**B.** **Judge Scanlon Correctly Recommended Dismissing This Case As An Inactionable Dispute About Trial Design That, In Turn, Is Based Upon The Interpretation Of Scientific Data.**

As Judge Scanlon explained, the "overarching issue" in the SAC is whether "the clinical trials for the Drug should have been designed differently" in light of Plaintiff's interpretation of certain scientific data (*e.g.*, pre-clinical monkey studies, scientific literature, other companies' trial designs). (*Id.* at 12–13.) That theory is not cognizable under the federal securities laws, which is fatal to the entire SAC. (*See* IMVT MTD at 23–26 (collecting cases); UW MTD at 5–10 (same); IMVT Reply at 3–4 (same); UW Reply at 1–3 (same).) Unable to contest that settled principle, Plaintiff makes various attempts to avoid it. None is persuasive.

4

*First*, Plaintiff insists that it never had qualms with Immunovant's trial design: "Plaintiff does not allege how Immunovant should have designed its clinical trials," "that Immunovant was required to monitor cholesterol in early clinical trials," or "that there were flaws in the design of the early clinical trials." (Obj. at 7, 11.) That is demonstrably untrue. These are just a few examples from the SAC:

- "elevated cholesterol levels was a potential risk which *needed to be* monitored and assessed" (¶ 91(d));
- "IMVT-1401 clinical studies *should have* monitored and assessed this risk" (¶ 98);
- "Immunovant *should have* designed each of the phase 1 and 2 clinical trials so that each of the participants' cholesterol was tested and monitored" (¶ 119);
- "Immunovant *should have* designed each of its phase 1 and 2 trials to test for and report on all key potential risks, including cholesterol levels" (¶ 304).

Plaintiff's motion to dismiss opposition was even more emphatic:

- "Immunovant *should have* monitored cholesterol levels" (Opp. at 7);
- "IMVT 1401's impact on cholesterol was a potential safety concern that *needed to be* monitored and assessed" (*id.*);
- "Immunovant *was required to* monitor and assess [cholesterol]" (*id.* at 12);
- "Immunovant . . . *was obligated to* monitor potential risks, such as elevated cholesterol" (*id.* at 42).

Plaintiff's motion to dismiss opposition also confirmed *why* the SAC made all those allegations about trial design: they represent Plaintiff's entire theory of liability. (*See, e.g.*, *id.* at 37 ("The statements were materially false *because* Immunovant should have – but failed to – perform ongoing surveillance of . . . cholesterol levels."); *id.* at 46 ("*Since* Immunovant had not monitored the potential risk of elevated cholesterol levels, those statements were false and misleading."); *id.* at 65 ("Plaintiff alleges that *because* Immunovant did not monitor cholesterol in early clinical trials, Defendants . . . misrepresented the safety and tolerability of IMVT-1401.").) Plaintiff cannot wish away its own allegations and arguments now.

5

*Second*, Plaintiff tries to recast this dispute over Immunovant's chosen trial design as a dispute about statements Immunovant made *based on* its chosen trial design. (*See, e.g.*, Obj. at 7 ("Plaintiff focuses exclusively on Defendants' statements about IMVT-1401 and its clinical trials." (emphasis omitted)).) That is pure semantics; "the two are inextricably intertwined." *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *12 (S.D.N.Y. June 8, 2016). Courts consistently reject attempts to mask disputes over trial design in this way. *See, e.g.*, *id.* Indeed, *In re Keryx Biopharmaceuticals Securities Litigation*, 2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) highlights this point. In that case, the plaintiffs alleged, in substance, that "given the extent of the [Phase 2 trial's] methodological flaws, defendants' statements regarding the Phase 2 results were actionable misstatement or half-truths." *Id.* at *10. The court rejected that argument, stating "if this Court were to determine that the statements defendants made were actionable, it would essentially be the 'thin end of the wedge': it would be equivalent to a determination that if a researcher leaves any of its methodology out of its public statements—how it did what it did or was planning to do— it could amount to an actionable false statement or omission. This is not what the law anticipates or requires." *Id.* The same is true here: Plaintiff disagrees with Defendants' statements *because* it disagrees with Immunovant's trial design. (*See, e.g.*, Opp. at 37 ("The statements were materially false *because* Immunovant should have – but failed to – perform ongoing surveillance of . . . cholesterol levels.").) That makes Plaintiff's theory inactionable as a matter of law. *See, e.g.*, *Zagami*, 2016 WL 3199531, at *12 ("Put simply, securities law is not a tool to second guess how clinical trials are designed and managed."); *Abely v. Aeterna Zentaris*, 2013 WL 2399869, at *8 (S.D.N.Y. May 29, 2013) ("[P]laintiff's allegations amount to a non-actionable critique of defendants' study design.").

*Third*, Plaintiff impermissibly bases its criticism of Immunovant's trial design on its own hindsight reinterpretation of scientific data and published literature. According to Plaintiff, Immunovant should have interpreted various scientific data (*e.g.*, pre-clinical monkey studies, scientific literature, other companies' trial designs) differently—*i.e.*, to indicate that elevated cholesterol was a key potential risk that required monitoring. (*See* Obj. at 8–9, 11–13, 15, 19–20.) That is exactly what Plaintiff argued before, and Judge Scanlon rightly rejected it. This Court should review those objections for clear error and adopt the R&R for multiple reasons. *See Kumaran v. ADM Inv. Servs.*, 2023 WL 7328136, at *1 (S.D.N.Y. Nov. 6, 2023) (reviewing for clear error where "the crux of Plaintiffs' objections is that Judge Aaron 'overlooked' Plaintiffs' original arguments," and thus, "Plaintiffs' objections merely reiterate the arguments raised in the original motion").

For one thing, there is no difference between criticizing a trial design and criticizing a defendant's basis for choosing that design. Either way, Plaintiff once again violates the settled principle that "securities law is not a tool to second guess how clinical trials are designed and managed." *Zagami*, 2016 WL 3199531, at *12.

But even setting that aside, "a mere dispute about the proper interpretation of data can[not] form a basis for liability" under the securities laws. *Philip Morris*, 89 F.4th at 420. Indeed, the Second Circuit has consistently recognized—*at the pleading stage*—that where "a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement." *Id.*; *see also Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016); *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013); *accord Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–90 (2015). An interpretation is reasonable "so long as Defendants conducted a 'meaningful' inquiry and in fact held that view." *Tongue*, 816 F.3d at 214.

7

Here, Judge Scanlon correctly found that Defendants conducted a meaningful inquiry and believed that Immunovant's trial design was sound. (R&R at 15–17.) Plaintiff openly admits that the expert summary of Immunovant's pre-clinical monkey studies concluded that the studies showed no significant increase in cholesterol. (¶ 97; *see* R&R at 41–42.) And as Plaintiff acknowledges, FDA approval of the study protocol was a necessary prerequisite to Immunovant proceeding with its clinical trials. (*See* ¶ 75 ("After submission of the first in human (FIH) study protocol, the FDA has 30 days to review the protocol before the study can be initiated in humans."); ¶ 79 ("Ultimately, the FDA has the final authority to determine the balance of (potential) benefits and risks in drugs under development and the FDA may impose a Partial or Complete Clinical Hold if a significant safety issue is identified.").) Thus, as Judge Scanlon correctly observed, "[i]f the issues with cholesterol levels tied to the Drug were as obvious and critical as Plaintiff claims, the FDA would not have permitted the clinical trials to proceed without cholesterol monitoring until Phase 2b." (R&R at 16–17); *see also Philip Morris*, 89 F.4th at 422 ("[T]he FDA's ultimate endorsement of Defendants' interpretation of the clinical-studies data *conclusively* establishes that Defendants' statements were reasonable, and therefore not actionable, under *Tongue* and *Omnicare*." (emphasis in original)). Put simply, Judge Scanlon's conclusion about the "overarching" flaw in Plaintiff's theory of liability was not the product of "fail[ing] to draw inferences in Plaintiff's favor," (Obj. at 8–9); it was the clear application of Second Circuit precedent shielding companies, at the pleading phase, from liability for reasonable scientific disagreements.[2]

---

[2] Plaintiff's recycled arguments about scientific literature that allegedly support its "potential risk" theory fall into the same category. (*See* Obj. at 20–21.) Even if Plaintiff had adequately alleged that Defendants saw any of the literature Plaintiff referenced in the SAC (which is not alleged), Judge Scanlon correctly concluded that Plaintiff's interpretation of those studies is a classic example of a reasonable scientific disagreement—not securities fraud. (*See* R&R at 29, 40 n.14.)

As the R&R demonstrated, the Second Circuit's recent *Philip Morris* decision is one of many cases supporting Judge Scanlon's recommendation. (*See* R&R at 13–16.) In *Philip Morris*, the FDA issued a written order endorsing the company's interpretation of scientific data, "conclusively establish[ing] that Defendants' statements were reasonable." *Philip Morris*, 89 F.4th at 422 (emphasis omitted). That the FDA endorsed Immunovant's trial design more passively— *i.e.*, by accepting Immunovant's submission and allowing human trials to proceed without cholesterol monitoring—does not render *Philip Morris* inapposite. (*Cf.* Obj. at 10–11.) Indeed, even if the FDA had affirmatively *disagreed* with Immunovant's trial design, *Philip Morris* confirms that a meaningful inquiry and honest belief would still make Defendants' statements inactionable as a matter of law. *See Philip Morris*, 89 F.4th at 421 ("Defendants' statements about the implications of their data cannot be misleading merely because a regulatory body disagreed with the defendants' conclusion; rather, so long as the defendants conducted a meaningful inquiry and in fact held the view they expressed, their statements will not be deemed to mislead in a manner that is actionable."). The basic point, as Judge Scanlon explained, is that the FDA's decision to allow Immunovant's trials to proceed without cholesterol monitoring supports "[t]he reasonableness of Defendants' scientific position." (R&R at 16; *see id.* at 17 ("This alleged reasonable scientific disagreement between Plaintiff and Defendants is not the permissible subject of a securities fraud action.").) This should not even be controversial, and, at any rate, Plaintiff offers no basis to disagree.

Plaintiff's disagreement with Immunovant's scientific judgment about trial design and data interpretation is doubly impermissible because it is the product of hindsight. Exchange Act and Securities Act claims cannot rest on attempts to recast the facts with the benefit of hindsight based on subsequent events. *See, e.g.*, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*, 28 F.4th 343,

355 (2d Cir. 2022) (dismissing Exchange Act claims where plaintiffs "argue[d] at length that the [drug] trial was riskier than the Investors (with hindsight) believe was necessary"); *Rubinstein v. Credit Suisse*, 457 F. Supp. 3d 289, 295–96 (S.D.N.Y. 2020) ("A plaintiff may not plead a [Securities Act] claim with the benefit of 20/20 hindsight or base the claim on a backward-looking assessment of the registration statement [or prospectus]."). Yet that is the sole basis for Plaintiff's claims here. Knowing that elevated cholesterol ultimately emerged in human trials, Plaintiff alleges that Immunovant's earlier judgments must have been unreasonable. Even the Former Employee, who now claims that the pre-clinical monkey studies incorrectly interpreted the underlying data, only reexamined the data and reached his conclusions *after* elevated cholesterol emerged in humans. (¶¶ 93–95; R&R at 41–42.) Such hindsight reasoning is not a viable basis for a securities claim.

Thus, Judge Scanlon correctly concluded that Plaintiff's claims fail as a matter of law under established Second Circuit precedent.

### C. Judge Scanlon Correctly Recommended Dismissing The Exchange Act Claims.

For the reasons discussed above, the SAC should be dismissed in its entirety as an inactionable dispute about trial design. (*Supra* Part III.B.) But Judge Scanlon also conducted a detailed analysis of Plaintiff's Exchange Act claims and concluded that they should be dismissed because: (i) Plaintiff failed to plead a material misstatement or omission, and (ii) Plaintiff failed to plead scienter. Judge Scanlon's well-reasoned analysis was correct on both fronts.

#### 1. Judge Scanlon correctly found that Plaintiff failed to plead a material misstatement or omission.

Judge Scanlon carefully analyzed each category of challenged statements: (i) "statements as to results obtained"; (ii) "statements of belief or expectation as to the future of the Drug"; (iii) "statements as to the study designs and the clinical trial designs"; and (iv) "statements as

10

to safety." (R&R at 26–28.) As to each, Judge Scanlon correctly concluded that Plaintiff failed to plead a material misstatement or omission. (*Id.* at 26–30.)

**Opinion Statements.** Judge Scanlon correctly found that most of the challenged statements are inactionable opinions based on the interpretation of scientific data. (*Id.* at 28–29 ("Defendants' fairly general statements about the Drug development were not substantially undermined by Plaintiff's interpretation of the scientific data, namely that the animal studies, literature in the field, diseases treated, and other companies' trial designs show that Defendants' statements were misleading.")); *see Gillis v. QRX Pharma*, 197 F. Supp. 3d 557, 599 (S.D.N.Y. 2016) ("Plaintiffs cannot premise a fraud claim upon a mere disagreement with how defendants chose to interpret the results of the clinical trial."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015) ("Courts have repeatedly held publicly stated interpretations of the results of various clinical studies to be opinions because reasonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions."), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

Plaintiff objects in conclusory fashion, insisting that the R&R "fails to draw inferences in Plaintiff's favor, inappropriately considers facts not properly before the Court, and inappropriately draws inferences in Defendants' favor." (Obj. at 17–18.) But as detailed above, those arguments are meritless. (*Supra* Part III.A.) *Omnicare* made clear that pleading that an opinion is materially misleading "is no small task for an investor." 575 U.S. at 194. "So long as the defendants conducted a meaningful inquiry and in fact held the view they expressed, their statements will not be deemed to mislead in a manner that is actionable." *Philip Morris*, 89 F.4th at 421.

Judge Scanlon also correctly found that statements about compliance with Good Clinical Practices ("GCP") are inactionable opinions under *Philip Morris*. (R&R at 30.) *Philip Morris* held

11

that statements about GCP compliance are necessarily opinions because GCP is not "a set of hard-and-fast rules," but rather is akin to "generally accepted auditing standards whose general and often inherently subjective nature is such that an auditor's statement of compliance with generally accepted auditing standards cannot properly be characterized as a statement of fact." 89 F.4th at 418–19; *see also id.* at 419 ("As a practical matter, we see no meaningful daylight between a statement that 'we complied with Good Clinical Practices' and a statement that 'our clinical practices are good' – the latter of which would *obviously* be a statement of opinion." (emphasis in original)). Plaintiff's focus on the *reason* for the alleged GCP violation (*i.e.*, the failure to monitor cholesterol) (Obj. at 15, 17), cannot transform inactionable opinions about GCP compliance into actionable misrepresentations of verifiable fact. *See Philip Morris*, 89 F.4th at 420 ("[W]e have never held that a statement of opinion can be rendered actionable by the speaker's failure to mention the *possibility* of contrary *opinions*." (emphasis in original)). Besides, as discussed above, Plaintiff's disagreement with Immunovant's trial design is independently inactionable for a host of other reasons. (*Supra* Part III.B.)

**Puffery.** Judge Scanlon correctly determined that many challenged statements are inactionable puffery. (R&R at 29.) Plaintiff objects to this holding in limited part,[3] asserting that "statements about 'first-in-class and best-in-class potential'" cannot be puffery because they are objectively verifiable. (Obj. at 17.) Plaintiff cites no support for that position because there is none. *Philip Morris*—like numerous cases before it—held that statements such as "the best science," "very advanced," and "world-class" are classic puffery, not "determinate, verifiable statements"

---

[3] Plaintiff does not object to the remainder of Judge Scanlon's puffery holdings (R&R at 29), which were supported by ample case law. (*See* IMVT MTD at 29; UW MTD at 21 n.11, 23 n.12; IMVT Reply at 6–7; UW Reply at 4–5.) Nor does Plaintiff object to Judge Scanlon's findings that Defendants' statements about expectations for "anticipated data readouts" and "near-term value drivers" are inactionable. (R&R at 26–27, 29.)

of fact. 89 F.4th at 417–18. The statements in question here are indistinguishable from those in *Philip Morris*, so the R&R is correct.

### 2.    Judge Scanlon correctly found that Plaintiff failed to plead scienter.

In a thorough, 14-page analysis, Judge Scanlon concluded that Plaintiff failed to allege facts creating a strong inference of scienter under the PSLRA's heightened pleading standards. (R&R at 30–44.) Plaintiff objects to two aspects of Judge Scanlon's analysis—and Plaintiff is wrong about both.

**Motive.** Judge Scanlon found that Plaintiff's motive allegations fell far short of pleading a strong inference of scienter. (R&R at 31–36.) In response, Plaintiff objects only to Judge Scanlon's conclusion that Dr. Wong's and Roivant's receipt of earnout shares is akin to incentive compensation (which is common to all executives and, thus, inadequate to plead a strong inference of scienter). (Obj. at 18–19; *see* R&R at 35.) This is the first time Plaintiff has raised that challenge, notwithstanding Defendants' extensive briefing on the subject and citation to multiple cases establishing that "motives that are generally possessed by most corporate directors and officers"—such as a "desire to keep stock prices high to increase officer compensation"—do not suffice to allege scienter. (*See* Roivant MTD at 12–13 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).) "[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020); *see also Crown Castle Fiber v. Town of Oyster Bay*, 2024 WL 1090305, at *1 (E.D.N.Y. Mar. 13, 2024) ("[T]he district court will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."). The Court should therefore reject Plaintiff's new argument and adopt Judge Scanlon's recommendation.

13

Moreover, although Judge Scanlon did not reach Defendants' other arguments regarding the earnout shares, they further support her recommendation. (*See* Roivant MTD at 12–14; IMVT Reply at 17–18; Roivant Reply at 6–7; IMVT MTD at 16–18.) For example, Plaintiff does not—and cannot—allege that Roivant *sold* any earnout shares during the putative class period, and Plaintiff has effectively conceded that the SAC fails to plausibly allege any such sales by Dr. Wong either. (Opp. at 23–24, 66.) As explained in Defendants' motions to dismiss, that is fatal to Plaintiff's motive-and-opportunity theory. (*See* Roivant MTD at 13–14; IMVT MTD at 17–18; IMVT Reply at 17–18 & n.19.) Indeed, courts routinely infer a *lack* of scienter from the absence of stock sales. (Roivant MTD at 13–14 (collecting cases).) And for good reason, as this case illustrates: the notion that any Defendant knew Immunovant stock was a ticking time bomb due to undisclosed potential safety issues and nonetheless chose to hold onto their shares until the bomb exploded is neither "cogent [nor] compelling." *Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 324 (2007). It is facially illogical.

**Recklessness.**[4] Judge Scanlon found that Plaintiff's allegations of "reckless disregard for the key potential risk of elevated cholesterol levels" amount to a "disagreement as to the interpretation of scientific data [which] is not a basis upon which scienter can be sufficiently pled." (R&R at 40.) Plaintiff objects, claiming that Judge Scanlon reached this conclusion "without a meaningful discussion." (Obj. at 19.) In reality, of course, Judge Scanlon's analysis spanned four pages (R&R at 40–43 (discussing pre-clinical monkey studies, scientific literature,

---

[4] Judge Scanlon found that "[n]one of the allegations made by Plaintiff constitutes a sufficient pleading of knowledge of fraud on the part of Dr. Wong, Roivant, Dr. Salzmann or Immunovant. As such, Plaintiff must allege recklessness by pleading an extreme departure from the standards of ordinary care, such that the danger was known to them, the danger was so obvious that they must have been aware of it, they had a duty to monitor but failed to review or check the information to be monitored, or they ignored obvious signs of fraud." (R&R at 40.) Plaintiff does not object to this finding.

and Defendants' roles and backgrounds)), which in turn rested on an even lengthier discussion earlier in the R&R, (*id.* at 12–17 (discussing disputes about trial design and the interpretation of scientific data)). In any event, Plaintiff's position fails on the merits as well.

With respect to the pre-clinical monkey studies, Judge Scanlon correctly concluded that Plaintiff's allegations "indicate disagreement as to the interpretation of data, as between the authors of the studies and the Former Employee, rather than indicating intent by Defendants to commit securities fraud." (*Id.* at 42.) Plaintiff complains that Judge Scanlon "should have accepted as true . . . for pleading purposes" that the expert summary's interpretation of the data "was wrong." (Obj. at 20.) But Plaintiff again ignores that interpretations of scientific data are opinions (*see, e.g.*, R&R at 13 (collecting cases)), and Judge Scanlon was under no obligation to accept as true "unwarranted deductions of facts or legal conclusions masquerading as facts," *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613 (S.D.N.Y. 2008). That is especially true in a scienter analysis under the PSLRA, where courts "must consider plausible, nonculpable explanations" for defendants' conduct. *Tellabs*, 551 U.S. at 323–24; *see In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 389 n.2 (2d Cir. 2021).[5]

With respect to the scientific literature, Judge Scanlon correctly found that "Plaintiff has identified specific studies that it alleges supports its scientific position but Plaintiff has failed to allege that Dr. Wong, Roivant, Dr. Salzmann or Immunovant, reviewed such studies, agreed with the conclusions reached in such studies, and more importantly, agreed with the conclusions that

---

[5] Judge Scanlon further found that the allegation that "the Former Employee was asked by Immunovant to review the animals studies after the Phase 2b clinical trial revealed increased cholesterol in human participants, in conjunction with the trial design monitoring cholesterol not prior to the Phase 2b trial, evidences a response to unanticipated results in the Phase 2b trial, as opposed to knowing or reckless intent to engage in fraud by concealing information for a period of time." (R&R at 42.) Plaintiff does not object to this finding.

Plaintiff alleges should be drawn as to cholesterol-related risks, particularly as to the trial design." (R&R at 43.) Plaintiff objects to this as well, insisting that Judge Scanlon ignored "the widespread existence of literature which would have put Defendants on notice of a connection between albumin reductions and elevations in cholesterol." (Obj. at 21.) But that is not even responsive to Judge Scanlon's finding—there are no allegations that Defendants reviewed those articles, let alone reached the conclusions Plaintiff alleges should be drawn from them, so they cannot create a strong inference of scienter. (R&R at 42–43 (citing *Plumbers & Steamfitters Loc. 773 Pension Fund v. Can. Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010)).) As the Second Circuit has recognized, such allegations can only raise a plausible inference of scienter where the plaintiff alleges an "*egregious* refusal to see the *obvious*, or to *investigate the doubtful*." *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original). The SAC contains no such allegations. Not to mention, the Objection is the first time Plaintiff raised that argument, making it improper. *See Crown Castle*, 2024 WL 1090305, at *1; *Piligian*, 490 F. Supp. 3d at 716.

Finally, Judge Scanlon correctly concluded that Plaintiff's allegations about Dr. Salzman's, Dr. Wong's, and Roivant's backgrounds, education, and positions do not remotely suggest scienter. (R&R at 43.) Plaintiff's only answer is to declare that Judge Scanlon failed to consider these allegations "holistically" with other allegations. (Obj. at 21.) But Plaintiff offers no basis for that speculation; in fact, Judge Scanlon expressly observed that "[a]llegations pertaining to conscious misbehavior or recklessness should be viewed *holistically* and together with the allegations of motive and opportunity to determine whether the complaint supports a strong inference of scienter." (R&R at 30.) Nor can Plaintiff articulate how these allegations move the scienter needle when the case law holds that such allegations "are entitled to *no* weight."

16

*Plumbers & Steamfitters Loc. 773 Pension Fund*, 694 F. Supp. 2d at 300; (*see* IMVT MTD at 19 n.13 (collecting cases)).

  **D. Judge Scanlon Correctly Recommended Dismissing The Securities Act Claims.**

  As discussed above, Judge Scanlon correctly found that the Securities Act claims should be dismissed, regardless of whether they are analyzed under Rule 8 or Rule 9(b). (*Supra* Part III.A; *see* Obj. at 13.) The Securities Act claims concern a small subset of the statements challenged under the Exchange Act and raise no unique issues. Thus, although Plaintiff objects to Judge Scanlon's recommendation to dismiss the Securities Act claims, its objections are wholly duplicative of its objections to the recommendation to dismiss the Exchange Act claims. (*See, e.g.*, Obj. at 12 (arguing that this case is not a "disagreement as to the interpretation of scientific data"); *id.* at 12–13 (incongruously arguing that Defendants' interpretation of scientific data was unreasonable); *id.* at 14–15 (arguing that Defendants' statements of opinion are actionable).)

  Given these conclusions, Judge Scanlon saw no need to address the additional arguments for dismissal of the Securities Act claims that Defendants made in their motions to dismiss. (IMVT MTD at 16–32; UW MTD at 6–30.) Without reiterating all of these arguments, Defendants briefly note two additional points that further support dismissal of these claims.

  First, the Fall 2020 Offering Documents cannot have misled investors about the risk that ultimately came to pass: the emergence of adverse side effects in human trials. That is because the Fall 2020 Offering Documents conspicuously disclosed that risk. (UW MTD at 4–5.) Plaintiff argues that there should have been a specific risk disclosure targeted to elevated cholesterol (*see, e.g.*, Obj. at 1–2), but as noted in Defendants' motions to dismiss, pharmaceutical companies have no legal duty to catalogue every possible side effect that might emerge in clinical trials (*see* UW MTD at 10–17).

17

Second, Plaintiff purports to disclaim scienter for purposes of its Securities Act claims, while simultaneously advancing a theory that requires conscious misconduct. Plaintiff insists that these claims "sound in negligence and not fraud" because the SAC separates out the scienter-based Exchange Act claim. (Obj. at 13.) That argument is unpersuasive—yet even if accepted, it would be fatal to the Securities Act claims. At bottom, these claims challenge Immunovant's scientific judgments about trial design and data interpretation. Even if those opinion statements were wrong, that would not be a basis to challenge them; rather, Plaintiff must allege these opinions were not honestly held—the very theory it purports to have disclaimed. (UW MTD at 6–9, 18 & n.8.)[6]

Thus, Plaintiff identifies nothing that calls into question Judge Scanlon's recommendation that the Securities Act claims should be dismissed.

**E.      Judge Scanlon Correctly Recommended Dismissing Claims Based On Items 105 And 303 Of Regulation S-K.**

Judge Scanlon correctly found that Plaintiff's claims based on Items 105 and 303 of Regulation S-K fail for the same reasons that Plaintiff's other claims fail. (*See, e.g.*, R&R at 22, 23 ("Whether the [alleged omissions] were reasonably likely to materially affect Immunovant's financial condition or operational results is tantamount to asking whether Defendants' scientific position was reasonable, as 'we are dealing not with statements of fact, but with statements about the proper interpretation of data,' or, by extension, its import.").) Plaintiff concedes that these claims rise or fall with its other claims. (*See* Obj. at 15–16 (defending its Item 105 and 303 theories

---

[6] In theory, Plaintiff could try to allege that the opinion statements were honestly held but nonetheless misleading under *Omnicare*. As noted above, however, that is "no small task for an investor," and the Objection does not even try to articulate such a theory. (*Supra* Part III.C.1.)

simply by referring to its earlier objections).) Thus, for the reasons outlined above and in the R&R, Judge Scanlon correctly recommended dismissing Plaintiff's Item 105 and 303 theories as well.[7]

> **F.    Judge Scanlon Correctly Recommended Dismissing The Control Person Claims.**

Given Plaintiff's failure to state a claim under Section 10(b) of the Exchange Act and Sections 11 and 12(a)(2) of the Securities Act, Judge Scanlon correctly recommended dismissing the accompanying control person claims. (R&R at 24, 45–46.) Plaintiff does not dispute that control person claims are derivative and cannot stand alone. Plaintiff's only objections concern its primary claims under Section 10(b), 11, and 12(a)(2) (Obj. at 16, 21), which are addressed above, and do not provide any basis to reject Judge Scanlon's recommendation. (*Supra* Parts III.A–E.)

Moreover, although Judge Scanlon had no need to delve further into the control person claims, Roivant raised another basis for dismissal: Plaintiff's (repeated) failure to allege Roivant's "actual control" over Immunovant and the specific transactions at issue. *See McIntire v. China MediaExpress Holdings*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013) ("To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person."); *Ark. Tchr. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (dismissing control person claim where plaintiff failed to allege "particularized facts suggesting that [the defendant] had control over the alleged misrepresentations at issue in this case"). As detailed in Roivant's motion to dismiss, Plaintiff's theory of control relies almost entirely on descriptions of Roivant's "status" as a controlling shareholder and other threadbare allegations that "simply identif[y] the standard relationship between a company and a large

---

[7] Because Judge Scanlon correctly found that these claims were easily disposed of by her prior analysis, she did not reach Defendants' additional arguments for dismissal of these claims, none of which Plaintiff has successfully countered. (*See* IMVT MTD at 36–39; UW MTD at 12–17; Opp. at 69–73, 78–79; IMVT Reply at 16 n.17; UW Reply at 6–8.)

shareholder." *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, 2019 WL 1437617, at *8 (S.D.N.Y. Mar. 29, 2019). But as countless courts have recognized, "it is not sufficient for [a plaintiff] to allege that [a defendant] has control person *status*; instead, [the plaintiff] must assert that [the defendant] exercised *actual* control over the matters at issue." *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs.*, 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018). Such allegations do not remotely establish "*actual control*" over Immunovant. (*See* Roivant MTD at 6–7 (citing cases); Roivant Reply at 2–4.)

**G.      Judge Scanlon Correctly Recommended Denying Leave To Amend.**

Judge Scanlon recommended denying Plaintiff's request for leave to amend for two sound reasons, only one of which Plaintiff disputes.

*First*, the SAC's "pleading deficiencies" are "inextricably intertwined with Plaintiff's theory of the case and are therefore not curable." (R&R at 46.) Plaintiff does not object to this conclusion.

*Second*, "[m]ultiple pleadings have been filed in this action," and "[g]ranting leave to file another pleading in this action would be unreasonable." (*Id.*) Plaintiff objects that this was the first time it had the benefit of Judge Scanlon's views. (Obj. at 21.) But even now— despite having had many months since the briefing was completed to further investigate its claims—the only allegation Plaintiff proposes to add is one it already raised to Judge Scanlon: "that Immunovant raised funds which enabled it to develop IMVT-1402, the successor to IMVT-1401." (Obj. at 22; *see* Opp. at 67 ("Immunovant raised hundreds of millions of dollars in follow-on stock offerings, which enabled it to have funds to develop IMVT-1402"); *see also* ¶ 190 (alleging that Immunovant "intend[ed] to use the net proceeds from [an] offering, together with its existing cash, to accelerate the development of IMVT-1402").) As Defendants previously noted, the mere "desire to raise capital" is "a goal possessed by virtually all corporate insiders," not a basis for inferring motive.

20

*Tabak v. Canadian Solar*, 549 F. App'x 24, 28 (2d Cir. 2013); (IMVT Reply at 18–19.) Moreover, the challenged statements could not have been motivated by a desire to raise capital when—under Plaintiff's own theory—Defendants allegedly corrected those statements *before* the capital raises. (*See* IMVT MTD at 18 (noting this theory "contradicts Plaintiff's allegation that Immunovant used capital raised *after* the class period (in October 2022) to fund development of IMVT-1402" (citing ¶ 190)).)

The SAC was the fourth complaint filed in this case. Nothing entitles Plaintiff to file a fifth. *See In re Sibanye Gold Sec. Litig.*, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) (Matsumoto, J.) (denying leave to file a second amended complaint when plaintiffs "offer[ed] no indication of what additional facts would make their complaint viable and remedy its legal deficiencies"); *Housey v. Proctor & Gamble*, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (affirming denial of leave to amend a second time).

## IV.   CONCLUSION

For the reasons discussed above, in Defendants' motions to dismiss, and in Judge Scanlon's R&R, Defendants respectfully request that the Court adopt the R&R in full and dismiss the SAC with prejudice.

Dated: March 25, 2024

COOLEY LLP

 /s/ Koji F. Fukumura
Koji F. Fukumura (*pro hac vice*)
Heather M. Speers (*pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420
kfukumura@cooley.com
hspeers@cooley.com

Shannon M. Eagan (*pro hac vice*)
Tijana M. Brien (*pro hac vice*)
3175 Hanover St
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 849-7400
seagan@cooley.com
tbrien@cooley.com

Aric H. Wu
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
Fax: (212) 479-6275
ahwu@cooley.com

*Attorneys for Immunovant, Roderick Wong, Peter Salzmann, Frank M. Torti, Andrew Fromkin, Douglas Hughes, George Migausky, Atul Pande, and Eric Venker*

22

Dated: March 25, 2024

WILLIAMS & CONNOLLY LLP

 */s/ John S. Williams*
John S. Williams
680 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 434-5646
Fax: (202) 434-5029
jwilliams@wc.com

*Counsel for Roivant*


Dated: March 25, 2024

GOODWIN PROCTER LLP

 */s/ Daniel Roeser*
Daniel Roeser
Valerie A. Haggans
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333
droeser@goodwinlaw.com
vhaggans@goodwinlaw.com

Justin D. Ward
100 Northern Ave.
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231
jward@goodwinlaw.com

*Counsel for Leerink Partners LLC (f/k/a SVB Securities LLC, f/k/a SVB Leerink LLC), LifeSci Capital LLC, Chardan Capital Markets LLC, Guggenheim Securities, LLC, and Robert W. Baird & Co. Inc.*

23